## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

In Re:

| | |
|---|---|
| | Chapter 11 |
| | Case No.  24-15755-LMI |
| IVANKOVICH FAMILY LLC | (Jointly administered) |
| A&O FAMILY LLC (FL) | 24-15762-LMI |
| A&O FAMILY LLC (IL) | 24-15767-LMI |
| ATLAS P2 MANAGING MEMBER, LLC, | 24-15770-LMI |

   Debtors.
_____/

IVANKOVICH FAMILY LLC,
A&O FAMILY LLC (FL),
A & O FAMILY LLC (IL),
ATLAS P2 MANAGING MEMBER, LLC,
ANTHONY IVANKOVICH, and
OLGA IVANKOVICH,

 Plaintiffs,

vs.                   Adv. Pro. No.:

JEANETTE IVANKOVICH, SCHILLER
DUCANTO & FLECK, LLP, and STEVEN
IVANKOVICH,

 Defendants.
_____/

**COMPLAINT FOR OBJECTION TO CLAIMS AND INTERESTS OF JEANETTE
IVANKOVICH AND SCHILLER, DUCANTO & FLECK LLP,
<u>AND FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

  Debtors Ivankovich Family LLC, a limited liability company organized under the laws of

Delaware, A&O Family LLC, a limited liability company organized under the laws of Florida

("A&O Family (FL)"), A & O Family LLC a limited liability company organized under the laws

of Illinois ("A&O Family (IL)"), and Atlas P2 Managing Member, LLC, a limited liability

company organized under the laws of Delaware ("Atlas P2") (collectively, "Debtors") and

78383250;1

Anthony and Olga Ivankovich (the "Ivankovichs") (collectively, Debtors and the Ivankovichs are referred to as the "Plaintiffs") file this complaint objecting to proofs of claim and proofs of interest filed by Jeanette Ivankovich ("Jeanette") and the proofs of claim filed by Schiller, Ducanto & Fleck LLP ("Schiller") in each of the Debtors' respective bankruptcy cases (collectively, Jeanette, Schiller, and Steven Ivankovich are referred to as the "Defendants"), and seek declaratory and injunctive relief against all Defendants, and respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

2. This is a core proceeding pursuant to subsections (A), (B), (C), (E), (G), and (O) of 28 U.S.C. § 157(b)(2).

3. Plaintiffs consent to the entry of final orders and judgment by the Bankruptcy Court.

4. Venue lies in this district pursuant to 28 U.S.C. § 1409.

## PARTIES

5. Debtors are limited liability companies with their principal places of business in Miami-Dade County, Florida.

6. Debtors filed the above-captioned proceedings for Chapter 11 bankruptcy on June 10, 2024.

7. Plaintiffs Drs. Anthony Ivankovich and Olga Ivankovich are individuals who reside in Miami-Dade County, Florida.

8. Upon information and belief, Defendant Jeanette, is an individual who resides in Chicago, Illinois.

9. Upon information and belief, Defendant Schiller is an Illinois limited liability partnership with its principal place of business in Chicago, Illinois.

10. Upon information and belief, Defendant Steven Ivankovich is an individual who resides in Miami Dade County, Florida.

11. Defendant Jeanette filed proofs of claim in each of the Debtors' bankruptcies in the amount of $1,138,785.14 for "support" and claimed priority status for such claims as a domestic support obligation (Proof of Claim No. 5-1 in Case No. 24-15755-LMI; Proof of Claim No. 7-1 in Case No. 24-15762-LMI; Proof of Claim No. 5-1 in Case No. 24-15767-LMI; Proof of Claim No. 6-1 in Case No. 24-15770-LMI) (the "Disputed Jeanette Claims").

12. Defendant Jeanette filed proofs of interest in each of the Debtors' bankruptcies for an "unknown" interest "representing a yet to be determined share of the equity" of the Debtors as "marital property" (Proof of Interest No. 6-1 in Case No. 24-15755-LMI; Proof of Interest No. 8-1 in Case No. 24-15762-LMI; Proof of Interest No. 6-1 in Case No. 24-15767-LMI; Proof of Interest No. 7-1 in Case No. 24-15770-LMI) (the "Disputed Interests").

13. Defendant Schiller filed proof of claims in each of the Debtors' bankruptcies in the amount of $425,000 for "attorneys fees" and claimed priority status for such claims as a domestic support obligation (Proof of Claim No. 7-1 in Case No. 24-15755-LMI; Proof of Claim No. 9-1 in Case No. 24-15762-LMI; Proof of Claim No. 7-1 in Case No. 24-15767-LMI; Proof of Claim No. 9-1 in Case No. 24-15770-LMI) (the "Disputed Fees Claims").

14. The Disputed Jeanette Claim, Disputed Interests, and Disputed Fees Claims (collectively, the "Disputed Claims and Interests") arose as a result of the pending divorce

proceedings between Jeanette and Steven Ivankovich ("Steven") (the "Divorce Proceeding").[1]

## FACTUAL BACKGROUND

**A.     History, Ownership, Management and Operations of Debtors**

15.     Prior to the Petition Date, the Debtors were all directly or indirectly engaged in the investment business as part of a family office founded by Plaintiffs, Drs. Anthony and Olga Ivankovich, who are the managers of Debtor A&O Family (FL).

16.     The Ivankovichs, individually and through their trusts, own 99.25% of A&O Family (FL).

17.     Dr. Anthony Ivankovich indirectly owns 80% of Debtor Atlas P2.

18.     Atlas P2 owns a 100% membership interest in P2 Portfolio Managing Member LLC

19.     Debtor Ivankovich Family LLC and A&O Family (IL) are owned by North American Property Ventures Ltd., a Grand Cayman Company, which are beneficially owned by the Ivankovich Family Trust, of which Anthony and Olga are the primary beneficiaries.

20.     Steven Ivankovich ("Steven"), the son of the Ivankovichs, is the manager of the Debtors Atlas P2, Ivankovich Family LLC, and A&O Family (IL).

21.     The Debtors' investments include financing, developing, marketing, and selling commercial real estate through various special purpose entities affiliated with the Debtors.  These investments include properties known as the P-2 Portfolio and the P-5 Portfolio.

22.     The Debtors were initially capitalized by the Ivankovichs, and certain returns of loan and capital to the Ivankovichs from the sales of the P-2 Portfolio and the P-5 Portfolio.

23.     In connection with re-financing of the P-5 Portfolio, opinions of non-consolidation

---

[1] The Divorce Proceeding is pending in the Circuit Court of Cook County, Illinois County Department, Domestic Relations Division as In re: Marriage of Jeanette Ivankovich (Petitioner) and Steven Ivankovich (Respondent), Case No. 2021D9220 (the "Illinois Divorce Court").

were issued, warranting the corporate separateness of the manager, Steven, from the entities he manages.

**B.     Previous Court Rulings Concerning Attempted Collection Actions Against Debtors**

24.     For years, Steven has been a judgment debtor of various entities holding judgment debts against him personally.

25.     From time to time, including during the marriage of Steven and Jeanette, such judgment creditors have attempted to collect their judgments against Steven from the entities that Steven managed, including the Debtors.

26.     Until the Divorce Proceeding, these efforts were unsuccessful and Illinois courts respected corporate formalities of the various limited liability companies, thus precluding creditors' collection efforts for Steven's individual debts against the entities he managed.

27.     In 2022, after the sale of the P-2 Portfolio, a creditor holding a personal money judgment against Steven Ivankovich issued a citation to discover assets to Stifel Financial Corporation ("Stifel").

28.     In response, apparently due to Steven Ivankovich's managerial capacity on the account holders, Stifel disclosed information about, and froze the accounts of, Debtor Ivankovich Family and Debtor Atlas P2's wholly-owned subsidiary, P2 Portfolio Managing Member, LLC, without giving prior notice to the account holders.

29.     The Northern District of Illinois ultimately removed the freeze on the Stifel accounts, and held that the judgment creditor could not establish that these were assets of Steven Ivankovich.

30.     In April 2024, another judgment creditor of Steven issued a citation to discover assets to J.P. Morgan Chase Bank, freezing accounts of various entities over which Steven had

managerial capacity, including A&O Family (IL).

31. The Circuit Court of Cook County, Illinois dismissed the citation on consent, as the assets in the J.P. Morgan Chase Bank accounts were not property of Steven.

32. Due to outstanding judgment debt, Steven had a charging order entered against any interest that he had in various limited liability companies, including Debtor Ivankovich Family, on July 29, 2022, imposing a lien on such membership interests.

**C.    Background on Divorce Proceeding**

33. The Debtors were compelled to commence these Chapter 11 cases in order to obtain access to and prevent the liquidation of the Debtors' investment accounts that were improperly frozen by Celadon Financial Group ("Celadon") due to various rulings in the pending contested Divorce Proceeding.

34. Although the Debtors were not parties to the Divorce Proceeding, and although the assets of Debtors were previously determined by the Northern District of Illinois to not be the assets of Steven, the Illinois Divorce Court entered various rulings implicating the Debtors and the Debtors' assets held in accounts at Celadon.

35. Specifically, the Illinois Divorce Court has entered at least three orders that necessitated the filing of these Chapter 11 cases as follows:

> (i) A temporary restraining order entered against Steven Ivankovich that imposed restrictions on, and required Celadon to monitor, the Debtors' accounts, to determine if any transactions were payments to Steven Ivankovich (the "Celadon TRO"). The requirement that Celadon actively monitor Debtors' accounts and be subjected to multiple subpoenas in the Illinois Divorce Case resulted in Celadon preferring not to continue its business relationship with the Debtors, to the detriment of the Debtors. Ultimately, to avoid uncertainty related to the Illinois Divorce Court's TRO, Celadon and Wedbush Securities Inc. (the clearing agent of the Debtors' securities held in Celadon accounts) ("Wedbush") ultimately froze all of the Debtors' accounts.
>
> (ii) The Illinois Divorce Court, based upon an *ex parte* motion filed by Jeanette

6

      Ivankovich, entered an *ex parte* order freezing all bank accounts at JP Morgan Chase Bank on which Steven Ivankovich had the authority to sign (the "Chase TRO"). The effect of this order, and Chase freezing the accounts, resulted in the inability of the Debtors to transfer to or use multiple Chase bank accounts for ordinary business purposes. The effect of the Chase TRO also prevents related non-debtor affiliates of the Debtors from receiving advances from the Debtors to pay basic items such as, *inter alia*, insurance and real estate taxes on the P-5 Portfolio properties.

    (iii) On May 23, 2024, the Illinois Divorce Court entered a preliminary injunction (the "Preliminary Injunction") that ordered Celadon to liquidate and turn over to Schiller, counsel for Jeanette Ivankovich in the Divorce Proceeding, the assets of the Debtors Ivankovich Family, A&O Family, and Debtor Atlas P2's subsidiary, P2 Portfolio Managing Member LLC in the Celadon accounts, in an amount sufficient to satisfy the outstanding support and maintenance obligations of Steven Ivankovich, and Schiller's legal fees that Steven Ivankovich was ordered to pay.

36.     Prior to the entry of all of the above-referenced orders, the Debtors were not joined as parties to the Illinois Divorce Case.  The Debtors did not receive due process in connection with the Preliminary Injunction that required them to liquidate their assets to pay a personal obligation of Steven – a ruling which ran contrary to prior rulings of Illinois courts that the entities were not responsible for Steven's individual debts.

37.     In making its ruling on the Preliminary Injunction, the Illinois Divorce Court failed to consider, *inter alia*, that:

    (i)     The Debtors were funded and capitalized by Drs. Ivankovichs, who were also not joined as necessary parties to the Divorce Proceedings.

    (ii)     The Debtors had other creditors with rights and interests in any proceeding relating to imposing liability against the Debtors for individual obligations of Steven.

    (iii)     Steven had other creditors, and to the extent that Steven did have equity interests in the Debtors, any distribution on his account was subject to charging orders of such other creditors.

    (iv)     Other creditors had previously attempted to pierce the corporate veil of the

7

Debtors for individual debts of Steven, and such attempts were denied by courts, including the Northern District of Illinois.

(v) Steven did not own the equity interests of any of the Debtors, and to the extent that he did, Jeanette's rights would be limited to Steven's financial interests in the Debtors, which interests were subject to charging orders.

38. Debtors filed an immediate appeal and emergency motion to stay the Preliminary Injunction.

39. The Illinois Divorce Court denied the emergency motion, and the appeal is pending and subject to the automatic stay.

40. Jeanette has not obtained any ruling that she has an interest in any of the Debtors' assets from the Illinois Divorce Court, with the exception of the Preliminary Injunction which is not final and is currently on appeal.

41. Jeanette has not obtained any ruling from the Illinois Divorce Court that she is entitled to any percentage of the equity interests of the Debtors, or any percentage of Steven's equity interest (if any) in the Debtors.

42. Jeanette has not obtained any ruling from the Illinois Divorce Court as to the assets comprising the marital estate, or that the Debtors' assets are marital property.

### COUNT ONE
### Objection to Allowance, Amount and Priority Status of Disputed Jeanette Claims
*Debtors v. Jeanette*

43. Plaintiffs reincorporate the allegations in paragraphs 1-42, as though fully set forth herein.

44. The Disputed Jeanette Claims filed by Jeanette do not establish a basis for any liability of any of the Debtors for the obligations set forth therein and should be disallowed in full.

45. The apparent exclusive basis for the Disputed Jeanette Claims against the Debtors is the Preliminary Injunction issued by the Illinois Divorce Court.

46. The Preliminary Injunction is a nonfinal order that was entered without due process afforded to the Debtors, and which is currently pending on appeal. Therefore, it should be given no force or effect in this bankruptcy case.

47. Regardless, the Preliminary Injunction was improper on its face and Jeanette Ivankovich's Disputed Jeanette Claims asserted in reliance thereon should be disallowed.

48. The Debtors were not parties to the Illinois divorce proceeding, and were not afforded due process of law to oppose the Illinois Divorce Court's judgment against their assets and restrictions of their accounts/activities.

49. The Debtors are not Steven Ivankovich's alter egos, and any preliminary finding in the Preliminary Injunction to the contrary fails to consider necessary and relevant evidence, fails to respect the Debtors' separate corporate existence, and disregards controlling law.

50. Moreover, the Preliminary Injunction failed to take into account that there were two separate A&O Family LLC entities, and improperly failed to distinguish between the two companies in its Preliminary Injunction, thus making the order unenforceable due to its vagueness.

51. The claims asserted in the Disputed Jeanette Claims in reliance on the Preliminary Injunction should also be disallowed on the basis that the Illinois Divorce Court exceeded the permissible bounds of the relevant state law concerning transferability of limited liability interests.

52. In sum, the Disputed Jeanette Claims against Debtors' estates should be disallowed because the substantive and procedural defects in the non-final Preliminary Injunction preclude it from being relied upon as a basis for any claims against the Debtors.

53. The Disputed Jeanette Claims should also be disallowed on the basis that the Illinois

Divorce Court exceeded the permissible bounds of the relevant state law concerning transferability of limited liability interests.

54. Alternatively, the Disputed Jeanette Claims should be disallowed in accordance with any final order on the Preliminary Injunction by a court of competent jurisdiction, after exhaustion of all appeals.

55. Moreover, the portion of the Disputed Jeanette Claims for "accruing interest" against the Debtors' estates should be disallowed.

56. The Disputed Jeanette Claims include at least $62,338.76 in accrued interest, which is asserted to continue to accrue to this day. Assertion of amounts for unmatured interest calculated after Debtors' Petition Dates is improper. *See* 11 U.S.C. § 502(b)(2).

57. Even if allowed (which they should not be), the Disputed Jeanette Claims are not entitled to priority status as a domestic support obligation as a matter of law.

58. Under 11 U.S.C. § 101(14A)(A), the term "domestic support obligation" means "a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is— owed to or recoverable by— a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative, or a governmental unit."

59. Jeanette is not a spouse of the Debtors, but rather, a spouse of Steven. While the claim would be a "domestic support obligation" as to Steven, it is not a "domestic support obligation" of the Debtors.

60. As corporate entities, Debtors cannot owe domestic support obligations within the meaning of the bankruptcy code. *In re Raymond & Assocs. LLC*, 619 B.R. 14, 17 (S.D. Ala.), *aff'd*

*sub nom. In re Raymond & Assocs., LLC*, 841 F. App'x 138 (11th Cir. 2020) ("a corporate entity cannot have a domestic support obligation."). *See also Tucker v. Oliver*, 423 B.R. 378, Bankr. L. Rep. (CCH) ¶ 81692 (W.D. Okla. 2010) (claimant, as the debtors' former daughter-in-law, did not have a domestic support obligation as to debtors under 11 U.S.C. § 101(14A)(A)).

61. Therefore, even if the Disputed Jeanette Claims are allowed pursuant to a final order of a court of competent jurisdiction, priority status should be disallowed.

62. The Disputed Jeanette Claims are duplicative of the Disputed Fees Claim, and should be further disallowed on that basis.

63. The Disputed Jeanette Claims are also internally duplicative, as they seek the same amount four times, from each of the Debtors, and should be disallowed on this basis.

**WHEREFORE**, Plaintiffs request that the Court (i) strike and disallow any claim filed by Jeanette against the Debtors, including disallowance of the Disputed Jeanette Claims in full or, alternatively, (ii) if, and to the extent that, the Disputed Jeanette Claims are allowed pursuant to the entry of a final order by a court with jurisdiction over the Debtors, deny priority status, and (iv) grant all other relief that is just and proper.

### COUNT TWO
### Objection to Disputed Interests
*Ivankovichs v. Jeanette*

64. Plaintiffs reincorporate the allegations in paragraphs 1-42, as though fully set forth herein.

65. The Disputed Interests filed by Jeanette fail to establish any basis for an equity ownership interest in any of the Debtors, and should be disallowed in full.

66. Contrary to the allegations in the Disputed Interests, Jeanette has no equity interest in the Debtors, and is not entitled to any interest in Debtors' equity.

67. Jeanette has obtained no marital property settlement in the Divorce Proceeding that would entitle her to the Debtors' equity.

68. Jeanette is not entitled to any equity interest in Debtors because, *inter alia,*:

(i) Steven does not own any equity interest in the Debtors.

(ii) The Ivankoviches have a beneficial and equitable interest in the Debtors, based on their ownership interests and funding of Debtors.

(iii) Relevant state law concerning transferability of limited liability interests limits Jeanette's ability to assert an equity interest in the Debtors.

(iv) Relevant state law concerning charging orders and priority limits Jeanette's ability to assert an equity interest in the Debtors.

69. The Disputed Interests should be disallowed.

WHEREAS, Plaintiff Ivankovichs request that the Court enter an Order disallowing the Disputed Interests, and for all other relief that is just and proper.

### COUNT THREE
### Objection to Disputed Fees Claims
*Debtors v. Schiller*

70. Plaintiffs reincorporate the allegations in paragraphs 1-42 and 43-63, as though fully set forth herein.

71. The Disputed Fees Claims fail to establish any basis for any liability of the Debtors for the obligations set forth therein and should be disallowed in full.

72. To the extent the Disputed Fees Claims are based on the Preliminary Injunction, he Preliminary Injunction was improper, entered without due process of law, and the Disputed Fees Claims should be disallowed for the same reasons that the Disputed Jeanette Claims should be disallowed pursuant to paragraphs 46-53.

73. Furthermore, the Disputed Fees Claims are duplicative of $425,000 of the Disputed Jeanette Claims, and should be further disallowed on that basis.

74. The Disputed Fees Claims are also not entitled to priority as a domestic support obligation.

75. Even if allowed (which they should not be), the Disputed Fees Claims are not entitled to priority status as a domestic support obligation as a matter of law.

76. Under 11 U.S.C. § 101(14A)(A), the term "domestic support obligation" means "a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is— owed to or recoverable by— a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative, or a governmental unit."

77. Jeanette is not a spouse of the Debtors, but rather, a spouse of Steven. While the claim for attorneys' fees of Jeanette would be a "domestic support obligation" as to Steven, it is not a "domestic support obligation" of the Debtors.

78. As corporate entities, Debtors cannot owe domestic support obligations within the meaning of the bankruptcy code. *In re Raymond & Assocs. LLC*, 619 B.R. 14, 17 (S.D. Ala.), *aff'd sub nom. In re Raymond & Assocs., LLC*, 841 F. App'x 138 (11th Cir. 2020) ("a corporate entity cannot have a domestic support obligation."). *See also Tucker v. Oliver*, 423 B.R. 378, Bankr. L. Rep. (CCH) ¶ 81692 (W.D. Okla. 2010) (claimant, as the debtors' former daughter-in-law, did not have a domestic support obligation as to debtors under 11 U.S.C. § 101(14A)(A)).

79. Therefore, even if the Disputed Fees Claims is allowed pursuant to a final order of a court of competent jurisdiction, priority status should be disallowed.

80. The Disputed Fees Claims are also internally duplicative, as they seek the same amount four times, from each of the Debtors, and should be disallowed on this basis.

**WHEREFORE**, Plaintiffs request that the Court (i) disallow the Disputed Fees Claims in full or, alternatively, (ii) if, and to the extent that, the Disputed Fees Claims are allowed pursuant to the entry of a final order by a court with jurisdiction over the Debtors, deny priority status, and (iii) grant all other relief that is just and proper.

## COUNT FOUR
### Request for Injunctive Relief for Stay Violations
*Debtors v. Defendants Jeanette and Schiller*

81. Plaintiffs reincorporate the allegations in paragraphs 1-42, as though fully set forth herein.

82. The continued enforcement of the Illinois Divorce Court's Preliminary Injunction and restriction on Debtors' business activities and bank accounts is a violation of the automatic stay. *See* 11 U.S. Code § 362(a)(2) ("a petition filed . . . operates as a stay, applicable to all entities, of . . . the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title").

83. The continued enforcement of the Preliminary Injunction continues to prejudice Debtors, as interest continues to accrue against the Debtors' estates and the Debtors' business activities and bank accounts continue to be restricted.

84. The continued enforcement of the Preliminary Injunction against Debtors operates as a stay violation.

85. Debtors request the court enter an injunction against Jeanette and Schiller from continuing to enforce the Preliminary Injunction against Debtors, who were never parties to the Divorce Proceeding. *See* Fed. R. Bankr. Pro. 7065.

86. The Debtors also are aware that post-petition, that various forms of relief sought in the Divorce Proceeding continue to involve assertions and argument relating to the ownership of the Debtors, namely, that Jeanette Ivankovich continues to assert that Steven Ivankovich, at particular points in time, held an ownership interest in one or more of the Debtors.

87. To the extent that Defendants Jeanette and Schiller attempt to obtain control or a direct interest in any of the Debtors' assets in the Divorce Proceedings, such actions would be a violation of automatic stay under 11 U.S.C. § 362.

88. Therefore, Debtors request the Court enter an injunction prohibiting the Defendants Jeanette and Schiller from seeking to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, and declare void ab initio all actions that have or will take place in violation of the automatic stay under 11 U.S.C. § 362.

**WHEREFORE**, Debtors respectfully requests that this Court enter a final judgment in their favor: (i) entering an injunction against Defendants' continued enforcement of the Preliminary Injunction; (ii) entering an injunction against any violation of the automatic stay under 11 U.S.C. § 362 and declaring *void ab initio* all actions that have taken place, or might take place, in violation of the automatic stay, and (iii) for all other and further relief that is just and proper.

**COUNT FIVE**
**Declaratory Relief that Debtors Owns Celadon Accounts**
*Debtors v. Defendants Jeanette and Schiller*

89. Debtors reincorporate the allegations in paragraphs 1-42, as though fully set forth herein.

90. Debtors seek a declaration that they own their Celadon accounts, listed in their respective schedules, and that P2 Portfolio Managing Member LLC owns its respective Celadon account.

91. Debtor A&O Family (IL) seeks declaratory relief that it owns the Celadon account

15

ending in 1441 listed on its schedules.

92. Debtor Ivankovich Family LLC seeks declaratory relief that it owns the Celadon account ending in 1442 listed on its schedules.

93. Debtor A&O Family (FL) seeks declaratory relief that it owns the Celadon account ending in 1444 listed on its schedules.

94. Debtor Atlas P2 seeks declaratory relief that its subsidiary, P2 Portfolio Managing Member LLC owns the Celadon account ending in 1441 listed on the Periodic Report for the entity. (ECF No. 106.)

95. The Celadon accounts are titled in each of the titleholders names, respectively, and have always been so titled from inception of the accounts.

96. Under relevant corporate state law, a limited liability company's assets are not available to satisfy the debts of their managers or owners.

97. However, the Preliminary Injunction has caused a genuine bona fide dispute between the parties as to whether Debtors own their respective Celadon accounts, and whether individual creditors of Steven have a direct interest in these accounts as a result of such order.

98. There is a justiciable question regarding the existence or non-existence of some right, status, immunity, power, or privilege.

99. There is a bona fide, actual, present, and practical need for the declaratory relief sought.

100. The Preliminary Injunction has created an uncertainty or insecurity with respect to rights, status, or other legal relations relating to Debtors' ownership, right, title, and interest in the assets in the Celadon accounts.

101. Plaintiff Debtors are entitled to a declaratory judgment under Chapter 86, Florida

Statutes, that they own their respective Celadon accounts, listed in their respective schedules, and that Debtor Atlas P2's subsidiary P2 Portfolio Managing Member LLC owns its respective Celadon account.

**WHEREFORE**, Debtors request (a) declaratory judgment that (i) Debtor A&O Family (IL) owns the Celadon account ending in 1441 listed on its schedules, (ii) Debtor Ivankovich Family LLC owns the Celadon account ending in 1442 listed on its schedules, (iii) Debtor A&O Family (FL) seeks declaratory relief that it owns the Celadon account ending in 1444 listed on its schedules, (iv) Debtor Atlas P2's subsidiary, P2 Portfolio Managing Member LLC owns the Celadon account ending in 1441 listed on the Periodic Report for the entity, and (b) all other relief as just and proper.

## COUNT SIX
### Declaratory Relief as to Ownership of Debtors
*Ivankovichs v. Jeanette Ivankovich and Steven Ivankovich*

102. Plaintiffs reincorporate the allegations in paragraphs 1-42, as though fully set forth herein.

103. The Ivankovichs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that (i) Steven Ivankovich does not have any legal or equitable interest in the Debtors or Atlas P2's subsidiary, P2 Portfolio Managing Member, LLC, and (ii) that Jeanette Ivankovich does not have any indirect interest in the Debtors or P2 Portfolio Managing Member, LLC because Steven Ivankovich does not have any legal or equitable interest in the Debtors or Atlas P2's subsidiary, P2 Portfolio Managing Member, LLC.

104. The Ivankovichs assert that, under the relevant corporate organizational documents and corporate law, they directly or indirectly have the sole or majority beneficial interest in all of the Debtor entities, and P2 Portfolio Managing Member, LLC.

105. However, the prior non-final orders entered in the Divorce Proceeding, *inter alia*,

have caused a genuine bona fide dispute between the parties as to whether the Ivankovichs have the sole or majority beneficial interest in all of the Debtor entities, as such orders purport to make factual findings that Steven Ivankovich has a partial or sole membership interest in one or more of the Debtors and P2 Portfolio Managing Member, LLC.

106. The prior orders entered in the Divorce Proceeding conflict with allegations in other pending litigation against Atlas P2 by contingent creditors of the Debtors' estate.

107. The prior orders entered in the Divorce Proceeding are invalid and *void ab initio* as to the Ivankovichs, who were not joined as parties in such proceeding, and as to other interest holders in the Debtors, as they purport to divest the Ivankoviches and other interest holders of their right, title, and interest in these entities.

108. There is an actual controversy as to the ownership of the Debtors.

109. There is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

110. There is a justiciable question regarding the existence or non-existence of some right, status, immunity, power, or privilege.

111. There is a bona fide, actual, present, and practical need for the declaratory relief sought.

112. The orders entered in the Divorce Proceeding have created an uncertainty or insecurity with respect to rights, status, or other legal relations relating to the Ivankovichs' sole or majority beneficial ownership in the Debtors.

113. The Ivankovichs are entitled to a declaratory judgment under Chapter 86, Florida Statutes, of a declaration of ownership in the Debtors, specifically that (i) Steven Ivankovich does not have any legal or equitable interest in the Debtors or Atlas P2's subsidiary, P2 Portfolio

Managing Member, LLC, and (ii) that Jeanette Ivankovich does not have any indirect interest in the Debtors or P2 Portfolio Managing Member, LLC.

**WHEREFORE**, the Ivankoviches request that the Court enter an order for (a) declaratory judgment determining that (i) Steven Ivankovich does not have any legal or equitable interest in the Debtors or Atlas P2's subsidiary, P2 Portfolio Managing Member, LLC, and (ii) that Jeanette Ivankovich does not have any indirect interest in the Debtors or P2 Portfolio Managing Member, LLC, and (b) all other and further relief as is just and proper.

Dated: October 17, 2024                Respectfully submitted,

By: /*s/ Eyal Berger*/
**AKERMAN LLP**
Eyal Berger, Esq.
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Tel: 954-463-2700
Fax: 954-463-2224
Email: eyal.berger@akerman.com
*Counsel for Debtors-In-Possession*

By: /*s/ David L. Rosendorf*/
**KOZYAK TROPIN & THROCKMORTON, LLP**
David L. Rosendorf
FL Bar No. 996823
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
Email: dlr@kttlaw.com
*Counsel for Anthony & Olga Ivankovich*