**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re:<br><br>IVANKOVICH FAMILY LLC,<br>A&O FAMILY LLC (FL),<br>A&O FAMILY LLC (IL)<br>ATLAS P2 MANAGING MEMBER, LLC,<br><br>               Debtors. | Chapter 11<br><br>Case No.  24-15755-LMI<br>(Jointly Administered)<br>        24-15762-LMI<br>        24-15767-LMI<br>        24-15770-LMI<br><br>**Related Docket No. 214** |

### OBJECTION OF P-5 GRA LLC TO THE AGREED MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL OF WEDBUSH SECURITIES, INC. AND CELADON FINANCIAL GROUP

P-5 GRA LLC ("P-5 GRA"), by and through undersigned counsel, hereby submits this objection (this "Objection") to the *Agreed Motion for Order Authorizing Use of Cash Collateral of Wedbush Securities, Inc. and Celadon Financial Group* (the "Motion"; ECF 214).

1. P-5 GRA submits this objection because none of the Debtors is a member or manager of any entity which own the properties referred to throughout this case as the P-5 Portfolio, and they have no authority to encumber the real properties themselves, to assign leases and rents of those properties, or to otherwise encumber any assets of or membership interests in the entities referred to as the Record Owners.

2. The *Declaration of Mark Brown in Support of Motion Authorizing Use of Cash Collateral* (ECF 149-1) lays out the organizational structure of the P-5 Portfolio and correctly identifies Overlook Managing Member LLC ("Overlook") as the ultimate sole owner of the entire stack of portfolio entities. Curiously, the declaration states that Overlook "is an affiliate of Debtors

Ivankovich Family LLC and A&O Illinois by common ownership." (*See* ¶ 10). There is no factual support for this statement.

3. Overlook is owned by two Members, 93% by Steven Ivankovich personally and 7% by P-5 GRA. *See* Exhibits 1-5 (Exhibit 1 is Overlook's operating agreement; Exhibit 2 is Steven Ivankovich's Motion to Dismiss in the Delaware litigation between P-5 GRA and Mr. Ivankovich concerning his failure to make required distributions to P-5 GRA to Overlook from the sale of properties within the P-5 Portfolio; Exhibit 3 is a Delaware books and records complaint previously filed by P-5 GRA concerning, inter alia, Overlook's finances; Exhibit 4 is the loan agreement between the Alliance LPs and Walker & Dunlop Commercial Property Funding, LLC; Exhibit 5 is a recent filing in the Delaware litigation between P-5 GRA and Mr. Ivankovich which further outlines and corporate structure of the P-5 Portfolio and relevant terms of the entities' operating and partnership agreements).

4. Neither Drs. Ivankovich nor the Debtors are members or managers of Overlook or any other entity within the P-5 Portfolio.

5. There has been no notice to P-5 GRA, and the indebtedness of the Pilgrim Coulter Owner, Pilgrim Warwick Owner, and Pilgrim Windtree Owner entities described therein required the express consent of P-5 GRA, which was never sought nor granted.

6. The transactions contemplated before the Court are not authorized by the Overlook Operating Agreement. *See* Exhibit 1. Section 7.10(b) thereof provides:

> **7.10 Major Decisions**
>
> Notwithstanding anything in this agreement to the contrary, neither the LLC, Manager, any Member, nor any officer or representative of the LLC, Manager or any Member shall take any action with respect to a Major Decision without the approval of the Members by Unanimous Vote; provided, however, in the event of a vote of Members pursuant to **Sections 7.10(b), (c), or (g)**, consent to any matter being subject to a vote of the Members shall not be unreasonably withheld, conditioned, or delayed by a Member. For purposes of this Agreement, a "**Major Decision**" shall mean any of the following events:
>
>     (a)    the sale, transfer or assignment of all of LLC's interest in any Pilgrim Entity;
>
>     (b)    the incurrence of indebtedness by the LLC in excess of Fifty Thousand Dollars ($50,000.00); provided that, for the purposes of clarification, "Major Decision" shall not include (i) any indebtedness or obligations of the LLC or any Affiliate of LLC (1) existing on and as of the date of this Agreement, including but not limited to the W&D Loan, or (2) permitted under any documents which govern the internal affairs of the LLC or any Affiliate of LLC ("**Existing Indebtedness**"); or (ii) until such time as the LLC has made the distributions to Members pursuant to **Section 6.04(a)**, any refinancing and/or material modification of Existing Indebtedness, including the W&D Loan (which refinancing and/or material modification may be effectuated by the Manager upon commercially reasonable terms and upon notice provided to the Members within a reasonable time of such refinancing or modification);

7. Contrary to assertions made in the Declaration of Mark Brown, no Debtor ever "invested" in the P-5 Portfolio. Rather, on May 2, 2017, the Overlook entities obtained 100% financing in the total amount of $86,000,000.00 from Walker & Dunlop Commercial Property Funding, LLC. *See* Exhibit 4.

8. At the time of the funding, there were no other loans or indebtedness to any other person or entity.

9. Notably, as the Declaration of Mark Brown describes, the Caribbean Isle and Forest Park properties held by the P-5 Portfolio were sold in 2022. (*See* ¶ 12). He goes on to state that "[t]he net sales price of approximately $30,000,000 was applied to the return of capital and loans of funds previously advanced by A&O Florida and Debtor A&O Family, LLC, a limited liability company organized under the laws of Illinois." *Id*.

10. This is false.

11. The funds derived from the sale of real property owned by Overlook. The Closing Statements are attached at Exhibits 6 and 7.

12. Prior to the closing, counsel for Overlook represented that the net closing proceeds would be disbursed in accordance with the Overlook Operating Agreement. *See* Exhibit 8.

13. The funds were instead misappropriated by Steven Ivankovich in direct contravention of the relevant operating agreements of the P-5 Portfolio entities, all of which require funds to flow upward (never outward) to Overlook for distribution to the members in accordance with the terms of the Overlook operating agreement. Instead, Steven Ivankovich caused funds to flow outward to his parents' trust, a Debtor herein, and has failed to make the distribution of millions of dollars due to P-5 GRA as mandated by the Operating Agreement.

14. P-5 GRA respectfully submits that the $5M loan to the Record Owners in connection with the original cash collateral motion was improvidently approved based on a distorted description of the P-5 Portfolio and omissions concerning the consent needed from P-5 GRA to approve indebtedness in that amount.

15. The Debtors had absolutely no authority to grant any security interest to anyone in the properties owned by the Record Owners. To be clear, although the Motion refers repeatedly to "estate property," the assets of the Record Owners are not estate property and are instead held exclusively for the ultimate benefit of Overlook, which is owned by Steven Ivankovich and P-5 GRA.

16. The Debtors should not be permitted to increase the indebtedness of the Record Owners and should never have been permitted to bind them to a promissory note at all, and the Motion should accordingly be denied.

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated: January 6, 2025 | |
| | GELLERT SEITZ BUSENKELL & BROWN, LLC |
| | */s/ Michael Busenkell* |
| | Michael Busenkell, Esq. (#0066613) |
| | Bradley P. Lehman, Esq. |
| | 1201 N. Orange St., Ste. 300 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 425-5800 |
| | Facsimile: (302) 425-5814 |
| | mbusenkell@gsbblaw.com |
| | blehman@gsbblaw.com |
| | *Attorneys for P-5 GRA LLC* |