# **EXHIBIT 1**

Execution Version

THE LIMITED LIABILITY COMPANY INTERESTS EVIDENCED BY THIS AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER APPLICABLE STATE SECURITIES LAWS (THE "STATE ACTS"), AND MAY BE OFFERED OR SOLD ONLY (1) UPON REGISTRATION OF THE LIMITED LIABILITY COMPANY INTERESTS UNDER THE ACT AND THE STATE ACTS OR PURSUANT TO AN EXEMPTION THEREFROM, AND (2) AFTER COMPLIANCE WITH ALL RESTRICTIONS ON TRANSFER OF LIMITED LIABILITY COMPANY INTERESTS IMPOSED BY THIS AGREEMENT, INCLUDING (WITHOUT LIMITATION) THE PROVISIONS OF ARTICLE IX.

\*   \*   \*   \*   \*

## LIMITED LIABILITY COMPANY AGREEMENT

### OF

## OVERLOOK MANAGING MEMBER LLC

[01269088;2]

# LIMITED LIABILITY COMPANY AGREEMENT OF

## OVERLOOK MANAGING MEMBER LLC

### TABLE OF CONTENTS

Page

ARTICLE I CERTAIN DEFINITIONS ...................................................... 1
ARTICLE II FORMATION; NAME; PLACE OF BUSINESS ......................... 1
    2.01    Formation of LLC; Certificate of Formation ........................... 1
    2.02    Name of LLC ................................................................ 2
    2.03    Place of Business .......................................................... 2
    2.04    Registered Office and Registered Agent ............................... 2
ARTICLE III PURPOSES AND POWERS OF LLC ................................... 2
    3.01    Purposes .................................................................... 2
    3.02    Powers ...................................................................... 3
ARTICLE IV MEMBERS .................................................................. 3
    4.01    Percentage Interests ...................................................... 3
ARTICLE V CAPITAL ..................................................................... 3
    5.01    Capital Contributions .................................................... 4
    5.02    INTENTIONALLY OMITTED ........................................ 5
    5.03    Capital Accounts ......................................................... 5
    5.04    Negative Capital Accounts .............................................. 6
    5.05    No Interest on Capital Contributions or Capital Accounts .......... 6
    5.06    INTENTIONALLY OMITTED ........................................ 6
    5.07    Liability of Members ..................................................... 6
    5.08    Return of Capital ......................................................... 6
ARTICLE VI ALLOCATIONS; DISTRIBUTIONS .................................... 6
    6.01    Allocations ................................................................. 6
    6.02    Distributions Generally .................................................. 6
    6.03    INTENTIONALLY OMITTED ........................................ 7
    6.04    Manner of Distributions ................................................. 7
    6.05    INTENATIONALLY OMITTED ...................................... 7
ARTICLE VII MEMBERS MEETINGS AND ACTIONS; MANAGEMENT ....... 8
    7.01    Meetings and Actions .................................................... 8
    7.02    Management by the Manager ........................................... 8
    7.03    Reimbursement ........................................................... 9
    7.04    Fiduciary Relationships ................................................. 9
    7.05    Other Activities of Members or Manager ............................. 9
    7.06    Certain Transactions ..................................................... 9
    7.07    Indemnification of the Members, the Manager and any Officers .... 10
    7.08    Guarantees ................................................................. 11
    7.09    Delegation of Manager's Rights and Authority ...................... 11
    7.10    Major Decisions .......................................................... 11
ARTICLE VIII BOOKS AND RECORDS; ACCOUNTING; TERM ............... 12
    8.01    Bank Accounts ........................................................... 12
    8.02    Books and Records ....................................................... 12
    8.03    Financial Statements and Information .................................. 12

8.04  Accounting Decisions.................................................................12
8.05  Where Maintained....................................................................12
8.06  Tax Returns.............................................................................13
8.07  Term.......................................................................................13
8.08  Fiscal Year..............................................................................13
ARTICLE IX TRANSFERS................................................................13
9.01  Transfer...................................................................................13
9.02  Exceptions to Prohibition on Transfers ...................................13
9.03  No Right to Withdraw ..............................................................15
9.04  Death or Disability of a Member..............................................15
9.05  Buyout of Deceased Members ..................................................15
ARTICLE X DISSOLUTION AND LIQUIDATION ............................17
10.01  Events Causing Dissolution....................................................17
10.02  Right to Continue Business of the LLC ...................................18
10.03  Cancellation of Certificate .....................................................18
10.04  Distributions Upon Dissolution ..............................................18
10.05  Reasonable Time for Winding Up ...........................................18
ARTICLE XI MISCELLANEOUS PROVISIONS .................................18
11.01  Additional Actions and Documents.........................................18
11.02  Notices ...................................................................................19
11.03  Severability ............................................................................19
11.04  Survival ..................................................................................19
11.05  Waivers ..................................................................................19
11.06  Exercise of Rights ..................................................................19
11.07  Binding Effect ........................................................................20
11.08  Limitation on Benefits of this Agreement ...............................20
11.09  Amendment Procedure ...........................................................20
11.10  Entire Agreement ...................................................................20
11.11  Pronouns................................................................................20
11.12  Headings.................................................................................20
11.13  Governing Law........................................................................21
11.14  Execution in Counterparts.......................................................21
11.15  Representations and Warranties...............................................21
11.16  Confidential Information .........................................................22

ADDENDUM I   Definitions

ADDENDUM II   Tax Allocations Addendum

SCHEDULE A   Members' Names and Addresses, Percentage Interests, and Initial Capital Contributions

# LIMITED LIABILITY COMPANY AGREEMENT
## OF
## OVERLOOK MANAGING MEMBER LLC

THIS LIMITED LIABILITY COMPANY AGREEMENT (this "**Agreement**") of **OVERLOOK MANAGING MEMBER LLC**(the "**LLC**") is entered into as of May 2, 2017, by and among the undersigned Persons listed on **Schedule A** attached hereto (collectively, the "**Members**"), and Steven Ivankovich, an individual, in his capacity as the Manager of the LLC (the "**Manager**").

WHEREAS, the LLC was formed pursuant to the provisions of the Delaware Limited Liability Company Act, as amended from time to time (the "**Delaware LLC Act**"), under the name "OVERLOOK MANAGING MEMBER LLC" by the filing of a Certificate of Formation with the Secretary of State on March 29, 2017 (the "**Certificate**");

WHEREAS, the Members and the Manager desire to enter into this Agreement to set forth the terms of their agreement with respect to the LLC, subject to the terms and conditions hereof.

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members and the Manager, intending to be legally bound, hereby agree as follows:

## ARTICLE I
## CERTAIN DEFINITIONS

Unless the context otherwise specifies or requires, capitalized terms used herein which are not otherwise defined in the text of this Agreement shall have the respective meanings assigned thereto in **Addendum I**, attached hereto and incorporated herein by reference, for all purposes of this Agreement (such definitions to be equally applicable to both the singular and the plural forms of the terms defined). Unless otherwise specified, all references herein to Articles or Sections are to articles or sections of this Agreement.

## ARTICLE II
## FORMATION; NAME; PLACE OF BUSINESS

**2.01    Formation of LLC; Certificate of Formation**

The Members and the Manager hereby:

**2.01(a)**    acknowledge the formation of the LLC as a limited liability company pursuant to the Delaware LLC Act and ratify and approve the execution of the Certificate by the individual named therein as an authorized person and the filing of the Certificate with the Secretary of State;

**2.01(b)** confirm and agree to their status as Members and Manager, respectively, of the LLC and to the Members' ownership of an interest in the LLC (an "**Interest**");

**2.01(c)** execute this Agreement for the purpose of establishing the rights, duties and relationship of the Members and the Manager; and

**2.01(d)** (i) agree that if the laws of any jurisdiction in which the LLC transacts business so require, the appropriate officers or other authorized representatives of the LLC also shall file, with the appropriate office in that jurisdiction, any documents necessary for the LLC to qualify to transact business under such laws; and (ii) agree and obligate themselves to execute, acknowledge and cause to be filed for record, in the place or places and manner prescribed by law, any amendments to the Certificate as may be required, either by the Delaware LLC Act, by the laws of any jurisdiction in which the LLC transacts business, or by this Agreement, to reflect changes in the information contained therein or otherwise to comply with the requirements of law for the continuation, preservation and operation of the LLC as a limited liability company under the Delaware LLC Act.

**2.02    Name of LLC**

The name under which the LLC shall conduct its business is "OVERLOOK MANAGING MEMBER LLC". The business of the LLC may be conducted under any other name permitted by the Delaware LLC Act that is deemed necessary or desirable by the Manager. The Manager or the appropriate officers or other authorized representatives of the LLC promptly shall execute, file and record any assumed or fictitious name certificate required by the laws of the State of Delaware or any state in which the LLC conducts business.

**2.03    Place of Business**

The location of the principal place of business of the LLC shall be 55 East Monroe Street, Suite 3610, Chicago, Illinois 60603. The Manager may hereafter change the principal place of business of the LLC to such other place or places within the United States as the Manager may from time to time determine. If necessary, the Manager shall amend the Certificate in accordance with the applicable requirements of the Delaware LLC Act. The Manager may establish and maintain such other offices and additional places of business of the LLC, either within or without the State of Illinois, as the Manager deems appropriate.

**2.04    Registered Office and Registered Agent**

The street address of the initial registered office of the LLC in the State of Delaware is 1209 Orange Street, Wilmington, Delaware, and the LLC's registered agent at such address is The Corporation Trust Company.

## ARTICLE III
## PURPOSES AND POWERS OF LLC

**3.01    Purposes**

The purposes of the LLC shall be:

**3.01(a)** to serve as the manager, member, and/or managing member of each of PILGRIM Windtree LLC, a Delaware limited liability company, PILGRIM Coulter LLC, a

Delaware limited liability company, PILGRIM Warwick LLC, a Delaware limited liability company, PILGRIM Caribbean Isle LLC, a Delaware limited liability company, and PILGRIM Forest Park LLC, a Delaware limited liability company (each, a "**Pilgrim Entity**" and, collectively, the "**Pilgrim Entities**"), and to enter into, execute, deliver and perform its rights, duties and obligations under the limited liability company agreement of each Pilgrim Entity (as it may be amended or supplemented from time to time, each, a "**Pilgrim Entity Agreement**");

      **3.01(b)**    to engage in any other lawful business permitted by the Delaware LLC Act and the laws of any jurisdiction in which the LLC may do business; and

      **3.01(c)**    to enter into any lawful transaction and engage in any lawful activities in furtherance of the foregoing purposes and such other purposes as may be necessary, incidental or convenient to carry out the business of the LLC as contemplated by this Agreement.

### 3.02    Powers

Notwithstanding anything in this Agreement to the contrary, the LLC shall have the right, power, authority and authorization, and is hereby authorized to do any and all acts and things necessary, appropriate, advisable or convenient for the furtherance and accomplishment of the purposes of the LLC and to engage in any kind of activity and to enter into, execute, deliver and perform obligations, agreements and other writings of any kind necessary to or in connection with, or incidental to, the accomplishment of the purposes of the LLC, so long as said activities, obligations, agreements and other writings may be lawfully engaged in, executed, delivered or performed by a limited liability company under the Delaware LLC Act and the laws of any jurisdiction in which the LLC may do business.

## ARTICLE IV
## MEMBERS

### 4.01    Percentage Interests

      **4.01(a)**    Each Member shall have a "**Percentage Interest**," which shall be equal to the initial Capital Contributions made (or deemed made pursuant to **Section 5.01**) by such Member divided by the total initial Capital Contributions made (or deemed made pursuant to **Section 5.01**) by all of the Members, as increased or decreased from time to time pursuant to the terms of this Agreement. Each Member's Percentage Interest as of the date of this Agreement is set forth opposite such Member's name on **Schedule A**.

      **4.01(b)**    **Schedule A** shall be amended from time to time by the Members to the extent necessary to reflect accurately the admission of additional Members in accordance with this Agreement, a change in the Members' Percentage Interests in accordance with this Agreement, or similar events making an amendment to **Schedule A** necessary or appropriate.

      **4.01(c)**    Except as provided in **Section 5.01(d)**, no dilution of the Percentage Interest of a Member shall occur without the express written consent of such Member.

## ARTICLE V
## CAPITAL

### 5.01    Capital Contributions

**5.01(a)**    Except as provided in **Section 5.01(b)**, no Member shall have any obligation to make a Capital Contribution.  No Member shall have any obligation to provide additional financial commitments to the LLC.

**5.01(b)**    The Members shall make initial Capital Contributions to the LLC as of the date of this Agreement by transferring to the LLC the amounts of cash set forth opposite their names on **Schedule A**. In the event that the Manager determines that additional Capital Contributions by the Members are required to pay current operating expenses, current indebtedness and current installments of long-term indebtedness of the LLC when due and in adequate time to obtain all discounts available by reason of prompt payment, each Member shall contribute in cash to the capital of the LLC an amount equal to such Member's pro rata share of the aggregate additional Capital Contribution called for (according to the Percentage Interest held by each Member), within the time and manner determined by the Manager; provided, however, that Manager shall give each Member no less than thirty (30) days' prior notice that an additional Capital Contribution is required.

**5.01(c)**    The current maximum Capital Contributions required to be made by the Members pursuant to this Agreement shall be the amounts of their initial Capital Contributions (the "**Commitments**") as set forth opposite their names on **Schedule A**.

**5.01(d)**    With respect to a Member (or an Affiliate) that fails to make any Capital Contribution that it is required to make under **Section 5.01(b)** when such Capital Contribution is required to be made and fails to cure such default within five (5) business days after receipt of notice from Manager, then such Member shall be considered a "**Defaulting Member**."

(i)    If a Member becomes a Defaulting Member, it shall not be entitled to any additional period in which to cure the default.

(ii)    If a Member becomes a Defaulting Member, at the option of the other Members, it shall sell its Interest to the other Members, for a total purchase price equal to the fair market value of the Defaulting Member's Interest, as determined by a neutral, qualified M.A.I. appraiser selected by the Manager, in its reasonable discretion ("**Initial Appraiser**").  If the fair market value determined by the Initial Appraiser is not acceptable to Defaulting Member, Defaulting Member shall immediately notify Manager and each of Manager and Defaulting Member shall select its own M.A.I. appraiser (neither of which shall be the Initial Appraiser) to determine the fair market value of the Defaulting Member's Interest. The average of the fair market values of the Defaulting Member's Interest determined by both M.A.I. appraisers referred to in the immediately preceding sentence shall be the purchase price of the Defaulting Members' Interest; provided, however, in the event the fair market value determined by either (but not both) M.A.I. appraiser selected pursuant to this sentence is greater or less than the fair market value determined by the Initial Appraiser by at least ten percent (10%), such M.A.I. appraiser's fair market value shall be discounted and the purchase price of the Defaulting Members' Interest shall be the average of the non-discounted M.A.I. appraiser's determined fair market value and the Initial Appraiser's determined fair market value. All reasonable fees of Manager and

Defaulting Member related to determining the fair market value(s) pursuant to this **Section 5.01(d)(ii)** shall be deducted from the purchase price due to such Defaulting Member. The sale of the Interest of a Defaulting Member shall close within a reasonable time after the Contribution Date, but in no event sooner than forty-five (45) days following the Contribution Date.

(iii)    In addition to the rights of the Members that are not Defaulting Members described above, the LLC may avail itself of any or all other appropriate legal remedies available at law or in equity to compel payment of the Defaulting Member's obligations under this Agreement, together with interest thereon at the lower of (A) the "prime rate" (as published in the "Money Rates" section of The Wall Street Journal) plus six (6) percentage points or (B) the highest legal rate, plus reasonable court costs, legal fees and other out-of-pocket expenses incurred in connection with any action to enforce the obligations of the Defaulting Member (but not any consequential damages resulting from a default).

(iv)    The rights and remedies against a Defaulting Member under this **Section 5.01(d)** shall be cumulative, and the exercise or non-exercise of any such right or remedy shall not preclude the assertion of any further right or remedy.

5.02    Notwithstanding **Section 5.01** above, in lieu of additional Capital Contributions provided for in **Section 5.01(b)**, in the event Manager determines, in Manager's discretion, that additional funds are required to pay current operating expenses, current indebtedness and current installments of long-term indebtedness of the LLC when due and in adequate time to obtain all discounts available by reason of prompt payment, Manager may provide notice to the Members that the Members may, in their sole discretion, advance such funds as a loan to the Company. If any Member or its respective Affiliate (the "**Lender**" in this **Section 5.02**) shall make any loan or loans to the Company or advance money on its behalf, the amount of any such loan or advance shall not be an increase in any Capital Account of the lending Member or entitle such lending Member to any increase in its share of the distributions of the Company or subject it to any greater proportion of the losses which the Company may sustain; no loan or advance by a Member or Affiliate of a Member shall be construed as a Capital Contribution or other outlay for ownership interest in the Company. All such advances shall be evidenced by promissory notes which shall be a debt due from the Company to such Lender, as a general unsecured creditor of the Company, repayable upon such commercially reasonable terms and conditions as the Manager may determine and bearing interest at the rate of ten (10%) percent per annum, unless such rates are otherwise mutually agreed upon by the Lender and the Manager.

### 5.03    Capital Accounts

A separate Capital Account shall be established and maintained for each Member in accordance with the Tax Allocations Addendum attached hereto as **Addendum II** and incorporated herein by reference.

#### 5.04    Negative Capital Accounts

Except to the extent the Members are required or elect to make contributions to the capital of the LLC under **Section 5.01**, no Member shall be required to pay to the LLC or to any other Member any deficit or negative balance which may exist from time to time in such Member's Capital Account.

#### 5.05    No Interest on Capital Contributions or Capital Accounts

No Member shall be entitled to receive any interest on its Capital Contributions or its outstanding Capital Account balance.

#### 5.06    INTENTIONALLY OMITTED

#### 5.07    Liability of Members

Except as otherwise provided in the Delaware LLC Act, the debts, obligations and liabilities of the LLC, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the LLC, and none of the Members, the Manager, or any officers, employees or agents of the LLC or shall be obligated personally for any such debt, obligation or liability of the LLC solely by reason of being a Member, the Manager, officer, employee or agent of the LLC. The failure of the LLC to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs under the Delaware LLC Act or this Agreement shall not be grounds for imposing personal liability on any Member, the Manager, officer, employee or agent of the LLC for liabilities of the LLC.

#### 5.08    Return of Capital

Except upon the dissolution of the LLC or as may be specifically provided in this Agreement, no Member shall have the right to demand or to receive the return of all or any part of its Capital Account or its Capital Contributions to the LLC.


### ARTICLE VI
### ALLOCATIONS; DISTRIBUTIONS

#### 6.01    Allocations

Items of income, gains, losses, deductions and credits, and the taxable income, gains, losses, deductions and credits of the LLC, if any, for each Fiscal Year (or portion thereof) shall be allocated to the Members as provided in the Tax Allocations Addendum.

#### 6.02    Distributions Generally

The Manager shall determine, in Manager's reasonable discretion, the level of Cash Reserves and the aggregate amount available for distributions of Cash Available for Distribution. Distribution of Cash Available for Distribution shall be distributed to the Members within thirty (30) days after the end of each month, unless otherwise determined by the Manager in Manager's reasonable discretion.

**6.03    INTENTIONALLY OMITTED**

**6.04    Manner of Distributions**

Subject to the provisions of **Section 6.02**, as and when determined by the Manager, all Cash Available for Distribution shall be distributed as follows:

(a)    First, one hundred percent (100%) to Ivankovich Member until such time as the Ivankovich Member has received the aggregate amount of $12,300,000.00; provided, however, that if Cash Available for Distribution arises from a sale or refinancing of the LLC Assets, then in such event, the same shall be distributed to the Members *pro rata* in accordance with their respective membership interests;

(b)    Second, one hundred percent (100%) to P-5 Member until such time as the P-5 Member has received the aggregate amount of $860,000.00; provided, however, that if Cash Available for Distribution arises from a sale or refinancing of the LLC Assets, then in such event, the same shall be distributed to the Members *pro rata* in accordance with their respective membership interests;

(c)    Third, one hundred percent (100%) to the Members, *pro rata* in accordance with their respective Percentage Interest, until Ivankovich Member has received cumulative distributions pursuant to **Sections 6.04(a)** and **6.04(c)** equal to the 10% IRR Amount;

(d)    Fourth, (i) ninety percent (90%) to the Ivankovich Member and (ii) ten percent (10%) to the P-5 Member, until Ivankovich Member has received cumulative distributions pursuant to **Sections 6.04(a)**, **6.04(c)**, and **6.04(d)** equal to the 15% IRR Amount;

(e)    Fifth, (i) eighty five percent (85%) to the Ivankovich Member and (ii) fifteen percent (15%) to the P-5 Member, until Ivankovich Member has received cumulative distributions pursuant to **Sections 6.04(a)**, **6.04(c)**, **6.04(d)**, and **6.04(e)** equal to the 20% IRR Amount; and

(f)    Thereafter, the remainder, if any, shall be distributed (i) eighty percent (80%) to the Ivankovich Member and (ii) twenty percent (20%) to the P-5 Member.

**6.05    Default**

Notwithstanding any provision herein to the contrary, if at any time the a Member is in default or in violation under this Agreement, any distributions that would otherwise be made to such Member under **Section 6.04(c)**, **Section 6.04(d)** and **Section 6.4(e)** shall instead be distributed to the non-defaulting Member, provided that such amount shall not be considered part of the cumulative distributions made under such sections.

## ARTICLE VII
## MEMBERS MEETINGS AND ACTIONS; MANAGEMENT

### 7.01    Meetings and Actions

**7.01(a)**    Meetings of the Members may be called upon the request of the Manager or the Members holding, in the aggregate, more than twenty-five percent (25%) of the Percentage Interests, upon ten (10) days' notice to all Members in writing or by telephone or facsimile; *provided, however*, that any Member may waive its right to such notice. The failure to provide such notice with respect to any meeting or to state in any such notice all matters considered at the meeting shall not prevent the Members or the Manager from taking action with respect to any matters at the meeting. Meetings may be held by telephone or any other communication by means of which all participating Members and the Manager can simultaneously hear each other during the meeting.

**7.01(b)**    No action may be taken at a meeting of the Members unless a quorum consisting of Members with a majority of the Percentage Interests is present in person, by telephone or by proxy.

**7.01(c)**    Any action to be taken by the Members may be taken without a meeting if a written consent setting forth the action so taken is signed by the Manager and the Members holding a majority of the Percentage Interests.

**7.01(d)**    All Members shall be entitled to vote with respect to all decisions to be made by Members herein (other than matters that this Agreement expressly provides are to be taken by the Manager); *provided, however*, that a Defaulting Member shall not be entitled to vote or otherwise participate in any decision of the Members. To be approved, any action requiring or properly submitted for approval by the Members must be approved by a Majority Vote, except as otherwise expressly required by this Agreement. Members shall not be entitled to cumulative voting.

**7.01(e)**    Whenever the giving of any notice is required by statute or this Agreement, a waiver thereof, in writing and delivered to the LLC signed by the person or persons entitled to said notice, whether before or after the event as to which such notice is required, shall be deemed equivalent to notice. Attendance of a Member at a meeting shall constitute a waiver of notice of such meeting except where a Member attends such meeting for the express purpose of objecting because the meeting was not called or convened in accordance with this Agreement.

### 7.02    Management by the Manager

**7.02(a)**    Subject to the provisions of Section 7.10 hereof, the Manager, exclusively in its managerial capacity (acting on behalf of the LLC), shall have the right, power and authority, to manage, operate and control the business and affairs of the LLC and to do or cause to be done any and all acts, at the expense of the LLC, deemed by the Manager to be necessary or appropriate to effectuate the purposes of the LLC. Third parties dealing with the LLC shall be entitled to rely conclusively upon the power and authority of the Manager of the LLC as set forth herein. Any Manager may but need not be a Member. The Manager may be removed pursuant to Majority Vote.

**7.02(b)**    No Member is an agent of the LLC solely by virtue of being a Member. No Member shall have authority to bind or otherwise act for the LLC solely by virtue of being a

Member except pursuant to an express written delegation of such authority from the Members. This **Section 7.02(b)** supersedes any authority granted to the Members pursuant to Section 18-402 of the Delaware LLC Act. Any Member who takes any action or binds the LLC in violation of this **Section 7.02(b)** shall be solely responsible for any loss and expense incurred by the LLC as a result of the unauthorized action and shall indemnify and hold the LLC harmless with respect to the loss or expense.

        **7.02(c)**     In the event of death, Disability, removal, or resignation of the Manager, the Members shall appoint one or more Managers pursuant to Majority Vote. In the event no Manager is appointed or all Managers have been removed from office, the business of the LLC shall be under the exclusive management of the Members, and in such case, Majority Vote shall be necessary for all decisions affecting the LLC, and individual Members shall have no power as such.

**7.03**    **Reimbursement**

        The Manager shall be entitled to reimbursement from the LLC for all direct expenses incurred by the Manager in connection with the formation, organization, operation and management of the LLC prior to or after the date of this Agreement. Subject to prior written approval from Manager and to the extent of LLC funds available, as determined by Manager, Members shall be entitled to reimbursement from the LLC for their reasonable expenses, if any, incurred and directly in connection with attending meetings of the Members.

**7.04**    **Fiduciary Relationships**

        No Member or the Manager shall be liable to the LLC or the other Members for monetary damages for breach of fiduciary duty as a Member or Manager, as applicable, or otherwise liable, responsible or accountable to the LLC or its Members for monetary damages or otherwise for any acts performed, or for any failure to act; *provided, however,* that this provision shall not eliminate or limit the liability of a Member or the Manager (a) for any breach of the Member's or Manager's duty of loyalty to the LLC or its other Members, (b) for acts or omissions which involve intentional misconduct or a knowing violation of law, or (c) for any transaction from which the Member or the Manager received any improper personal benefit.

**7.05**    **Other Activities of Members or Manager**

        A Member or Manager may have other business interests or may engage in other business ventures of any nature or description whatsoever, whether currently existing or hereafter created. No Member or Manager shall incur any liability to the LLC as a result of such Member's or Manager's pursuit of any such permissible business interests, ventures and competitive activity, and neither the LLC nor the other Members or Manager shall have any right to participate in such other business ventures or to receive or share in any income or profits derived therefrom.

**7.06**    **Certain Transactions**

        The LLC is expressly permitted in the normal course of its business to enter into transactions with any or all Members and/or the Manager; *provided, however*, that the price and other terms of such transactions are fair to the LLC and that the price and other terms of such transactions are not less favorable to the LLC than those generally prevailing with respect to comparable transactions between unrelated parties.

### 7.07    Indemnification of the Members, the Manager and any Officers

**7.07(a)**    The LLC shall indemnify and hold harmless the Members, the Manager, any officers and their employees and agents (individually, in each case, an "**Indemnitee**"), to the fullest extent permitted by law from and against any and all losses, claims, demands, costs, damages, liabilities (joint or several), expenses of any nature (including attorneys' fees and disbursements), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, whether civil, criminal, administrative or investigative, in which the Indemnitee may be involved, or threatened to be involved as a party or otherwise, arising out of or incidental to the business or activities of or relating to the LLC, regardless of whether the Indemnitee continues to be a Member, Manager, officer, or one of their employees or agents, at the time any such liability or expense is paid or incurred; *provided, however*, that this provision shall not eliminate or limit the liability of an Indemnitee (i) for any breach of the Indemnitee's fiduciary duties to the LLC or its Members or (ii) for acts or omissions which involve intentional misconduct or a knowing violation of law.

**7.07(b)**    Expenses incurred by an Indemnitee in defending any claim, demand, action, suit or proceeding subject to this **Section 7.07** shall, from time to time, upon request by the Indemnitee be advanced by the LLC prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the LLC of an undertaking by or on behalf of the Indemnitee to repay such amount, if it shall be determined in a judicial proceeding or a binding arbitration that such Indemnitee is not entitled to be indemnified as authorized in this **Section 7.07**.

**7.07(c)**    The indemnification provided by this **Section 7.07** shall be in addition to any other rights to which an Indemnitee may be entitled under any agreement, vote of the Members, as a matter of law or equity, or otherwise, both as to an action in the Indemnitee's capacity as a Member, Manager, officer, or one of their employees or agents, and as to an action in another capacity, and shall continue as to an Indemnitee who has ceased to serve in such capacity and shall inure to the benefit of the heirs, successors, assigns and administrators of the Indemnitee.  Notwithstanding any provision in this Agreement or any other agreement or writing to the contrary, no provision of this Agreement is intended to or shall eliminate the implied contractual covenant of good faith and fair dealing and no provision of this Agreement is intended to or shall limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing.

**7.07(d)**    The LLC may purchase and maintain insurance on behalf of the Members, the Manager and such other Persons as the Manager shall determine against any liability that may be asserted against or expense that may be incurred by such Persons in connection with the offering of interests in the LLC or the business or activities of the LLC, regardless of whether the LLC would have the power to indemnify such Persons against such liability under the provisions of this Agreement.

**7.07(e)**    An Indemnitee shall not be denied indemnification in whole or in part under this **Section 7.07** or otherwise by reason of the fact that the Indemnitee had an interest in the transaction with respect to which the indemnification applies if the transaction was otherwise permitted or not expressly prohibited by the terms of this Agreement.

**7.07(f)** The provisions of this **Section 7.07** are for the benefit of the Indemnitees, their heirs, successors, assigns and administrators and shall not be deemed to create any rights for the benefit of any other Persons.

### 7.08 Guarantees

No Member shall be required or induced to act as a guarantor of any debts and/or obligations of the LLC to any Person and the refusal of any Member to act in such capacity shall not, in any way, affect such Member's rights under this Agreement.

### 7.09 Delegation of Manager's Rights and Authority

The Manager may delegate to any Person or Persons the rights and powers of the Manager to manage and control the business and affairs of the LLC pursuant to the terms of this Agreement.

### 7.10 Major Decisions

Notwithstanding anything in this agreement to the contrary, neither the LLC, Manager, any Member, nor any officer or representative of the LLC, Manager or any Member shall take any action with respect to a Major Decision without the approval of the Members by Unanimous Vote; provided, however, in the event of a vote of Members pursuant to **Sections 7.10(b), (c),** or **(g)**, consent to any matter being subject to a vote of the Members shall not be unreasonably withheld, conditioned, or delayed by a Member. For purposes of this Agreement, a "**Major Decision**" shall mean any of the following events:

(a) the sale, transfer or assignment of all of LLC's interest in any Pilgrim Entity;

(b) the incurrence of indebtedness by the LLC in excess of Fifty Thousand Dollars ($50,000.00); provided that, for the purposes of clarification, "Major Decision" shall not include (i) any indebtedness or obligations of the LLC or any Affiliate of LLC (1) existing on and as of the date of this Agreement, including but not limited to the W&D Loan, or (2) permitted under any documents which govern the internal affairs of the LLC or any Affiliate of LLC ("**Existing Indebtedness**"); or (ii) until such time as the LLC has made the distributions to Members pursuant to **Section 6.04(a)**, any refinancing and/or material modification of Existing Indebtedness, including the W&D Loan (which refinancing and/or material modification may be effectuated by the Manager upon commercially reasonable terms and upon notice provided to the Members within a reasonable time of such refinancing or modification);

(c) the granting of guarantees of third party indebtedness for borrowed money, granting of guarantees of third party obligations outside of the ordinary course of business, or in excess of Fifty Thousand Dollars ($50,000.00) in the ordinary course of business, and refinancing and material modification of the terms of such guarantees; provided that, for the purposes of clarification, "Major Decision" shall not include, until such time as the LLC has made the distributions to Members pursuant to **Section 6.04(a)**, any guarantees given pursuant to refinancing and/or material modification of Existing Indebtedness, including the W&D Loan;

(d) except as otherwise permitted by the terms of this Agreement, the merger, consolidation, sale of all or substantially all of the assets, liquidation (partial or complete)

or dissolution of the LLC, or the acquisition by the LLC of another business (either by asset or stock or partnership interest purchase) or any equity of another entity;

(e)     except as otherwise permitted by the terms of this Agreement, the making of any tax election;

(f)     the election to continue the existence and operation of the LLC pursuant to the provisions of **Section 10.01**; and

(g)     after such time as the LLC has made the   distributions to Members pursuant to **Section 6.04(a)**, replacing the Manager or transfer or assignment of Interests by a Member which would cause a change in Control of the LLC.

## ARTICLE VIII
## BOOKS AND RECORDS; ACCOUNTING; TERM

### 8.01    Bank Accounts

All funds of the LLC shall be deposited in its name in such checking and savings accounts, time deposits or certificate of deposit, or other accounts at such banks as shall be designated by the Manager.  The Manager shall arrange for the appropriate conduct of such account or accounts.

### 8.02    Books and Records

The Manager shall keep, or cause to be kept, accurate, full and complete books and accounts showing assets, liabilities, income, operations, transactions and the financial condition of the LLC.  Such books and accounts shall be prepared on the cash or accrual basis of accounting, as determined by the Manager to be appropriate.  Any Member, or its respective designee, shall have access thereto at any reasonable time during regular business hours and shall have the right to copy said records at its expense.

### 8.03    Financial Statements and Information

The Manager shall cause to be prepared and distributed to the Members (at the expense of the LLC) such financial statements, reports and information concerning the business and affairs of the LLC, including Members' equity and changes in financial position, reports of the activities of the LLC, and statements of the amounts distributed to the Members, as the Manager determines to be appropriate, or as may be required by the Delaware LLC Act or by any other law or regulation of any regulatory body applicable to the LLC.

### 8.04    Accounting Decisions

All decisions as to accounting matters, except as specifically provided to the contrary herein, shall be made by the Manager, in Manager's reasonable discretion and in the manner in the best interests of the LLC.

### 8.05    Where Maintained

The books, accounts and records of the LLC at all times shall be maintained at the LLC's principal office or at such other location designated by the Manager.

**8.06    Tax Returns**

**8.06(a)**    The Manager, at the expense of the LLC, shall cause to be prepared and delivered to the Members, within one hundred eighty (180) days after the end of each Fiscal Year, copies of all federal and state income tax returns for the LLC for such Fiscal Year, one copy of which shall be filed by the Manager with the appropriate tax authorities.

**8.06(b)**    Steven Ivankovich is designated as the "tax matters partner" (as defined in the Code) of the LLC and is authorized and required to represent the LLC (at the expense of the LLC) in connection with all examinations of the affairs of the LLC by any federal, state, or local tax authorities, including any resulting administrative and judicial proceedings, and to expend funds of the LLC for professional services and costs associated therewith. The "tax matters partner" shall keep all Members and the Manager fully informed of the progress of any such examination, audit or other proceeding. The Manager and any Member with a Percentage Interest of at least five percent (5%) (and any person who was a Member with a Percentage Interest of at least five percent (5%) in the year to which such examination, audit or other proceeding relates) shall have the right to participate in such examination, audit or other proceeding. Each Member and former Member agrees to cooperate with the "tax matters partner" and to do or refrain from doing any or all things reasonably required by the "tax matters partner" in connection with the conduct of such proceedings.

**8.07    Term**

The LLC commenced on the date upon which the Certificate was duly filed with the Secretary of State and shall continue until dissolved and liquidated in accordance with the provisions of **Article X**.

**8.08    Fiscal Year**

The Fiscal Year of the LLC for financial, accounting, Federal, state and local income tax purposes initially shall be the calendar year (the "**Fiscal Year**"). The Manager shall have authority to change the beginning and ending dates of the Fiscal Year if the Manager, in its reasonable discretion, deems such change to be necessary or appropriate.

### ARTICLE IX
### TRANSFERS

**9.01    Transfer**

**9.01(a)**    The term "transfer," when used in this **Article IX** with respect to an Interest, shall include any sale, assignment, gift, pledge, hypothecation, mortgage, exchange or other disposition, except that such term shall not include any pledge, mortgage or hypothecation of or granting of a security interest in an Interest in connection with any financing obtained on behalf of the LLC.

**9.01(b)**    A Member shall have no right to Transfer any Interest or portion thereof except as expressly required or permitted under **Section 5.01(d)** or this **Article IX**.

**9.02    Exceptions to Prohibition on Transfers**

**9.02(a)**    A Member may transfer all or part of such Member's Interest only to: (i) the LLC; (ii) a Member; (iii) an Affiliate of such Member; (iv) for bona fide family estate

planning purposes, a spouse, parent, descendant, or sibling of a Member or a trust or other entity for the benefit of a Member or a Member's spouse, parent, descendant, or sibling; or (v) subject to the prior written approval of Manager and Majority Vote of Members and provided no other provision of this Agreement specifically prohibits or conditions such transfer, to any other Person, subject to the following limitations:

       (i)     No assignment of any Interest may be made if the assignment is pursuant to a transaction constituting a "sale or exchange" (within the meaning of Section 708(b)(1)(B) of the Code) of the Interest and if the Interest sought to be assigned, when added to the total of all other Interests assigned within a period of twelve (12) consecutive months prior thereto, would, in the opinion of legal counsel for the LLC, result in the LLC being deemed to have been terminated within the meaning of Section 708 of the Code.

       (ii)    The Manager may prohibit any assignment of an Interest in the LLC if in the opinion of legal counsel to the LLC, such assignment would require filing of a registration statement under the Securities Act or would otherwise violate any Federal or state securities or "Blue Sky" laws (including any investment suitability standards) or regulations applicable to the LLC or the Interests.

       (iii)   No transfer, assignment or negotiation on any date of an Interest may be made to any Person if in the opinion of legal counsel for the LLC, it would result in the LLC being treated as an association taxable as a corporation.

**9.02(b)**    Subject to the provisions of **Sections 4.01(c)** and **7.10(g)**, any transferee of an Interest shall become a substituted Member only upon (i) the express written consent of the Manager, in Manager's sole and absolute discretion; and (ii) the transferee agreeing to be bound by all the terms and conditions of the Certificate and this Agreement as then in effect. Unless and until a transferee is admitted as a substituted Member, the transferee shall have no right to exercise any of the powers, rights and privileges of a Member hereunder but shall enjoy all economic rights, benefits and privileges applicable to the Interest being transferred as provided in **Section 9.02(f)**. This provision shall not affect the rights of a purchaser under **Section 9.05**.

**9.02(c)**    The LLC, the Manager, each Member, and any other Person or Persons having business with the LLC need deal only with Members who are admitted as Members or as substituted Members of the LLC, and they shall not be required to deal with any other person by reason of transfer by a Member or by reason of the death of a Member, except as otherwise provided in this Agreement. In the absence of the substitution (as provided herein) of a Member for a transferring or a Deceased Member, any payment to a Member or to a Member's executors or administrators shall acquit the LLC, the Manager and the Members of all liability to any other persons who may be interested in such payment by reason of an assignment by, or the death of, such Member.

**9.02(d)**    Members who shall have assigned all their interest in any Interests in accordance with the provisions of this **Article IX** shall cease to be Members of the LLC with respect to such Interests as of the date that such assignment is given effect by the LLC in accordance with the terms of this **Article IX**. A purported assignment of an Interest not in accordance with the provisions of this **Article IX** shall not be given effect for any purpose.

**9.02(e)** Any Person who is the transferee or assignee of the Interest of a Member in accordance with the terms of this **Article IX**, and who has satisfied the requirements of this **Section 9.02** shall become a Member when the Manager (or the Members, subject to the provisions of **Section 7.10(g)**) has accepted such Person as a Member, the books and records of the LLC reflect such Person as admitted to the LLC as a Member, and when such Person shall have satisfied the conditions of **Section 11.15** and shall have paid all reasonable legal fees and filing costs in connection with such admission.

**9.02(f)** Any Person who is the assignee of any of the Interest of a Member in accordance with the terms of this **Article IX**, but who does not become a Member shall be entitled to all the rights of an assignee of an interest under the Act, including the right to receive distributions from the LLC and the share of taxable items attributable to the Interest assigned to such Person, but shall not be deemed to be the owner of an Interest for any other purpose under this Agreement. If any such Person desires to make a further assignment of any such Interest, such Person shall be subject to all the provisions of this **Article IX** to the same extent and in the same manner as any Member desiring to make an assignment of an Interest.

**9.02(g)** Any Member who assigns or exchanges all or any portion of its Interest must notify the LLC and the Manager of such assignment or exchange. Such notification must be in writing and must be within fifteen (15) days of the assignment or exchange. Such notification must include the names and addresses of the transferor and transferee, the taxpayer identification numbers of the transferor and the transferee, the date of the assignment or exchange, and any other information required by the Manager.

### 9.03    No Right to Withdraw

No Member shall have any right to resign, retire or otherwise withdraw from the LLC without the express written consent of the Manager.

### 9.04    Death or Disability of a Member

Upon the death of a Member who is an individual, the personal representative of the estate of such Member may exercise all such Member's rights for the purpose of settling such Member's estate. Upon the Disability of a Member who is an individual, then the guardian, conservator, or other legal representative of such Member's property may exercise all such Member's rights for the purpose of administering such Member's property. If a Member is a corporation, limited liability company, trust, or other entity and is dissolved or terminated, the powers of such Member may be exercised by its legal representative or successor for the purpose of dissolving or terminating such Member's existence. Notwithstanding anything to the contrary in this **Section 9.04** or elsewhere in this Agreement, any personal representative, guardian, conservator, successor, or other legal representative of a Deceased Member: (i) shall be subject to and shall first comply with the provisions of **Section 9.05** of his Agreement; and (ii) shall not become or be deemed a substituted Member or have the rights of a Member under this Agreement until and unless such Person has observed all of the requirements of **Section 9.02** of this Agreement.

### 9.05    Buyout of Deceased Members

**9.05(a)** Subject to the terms and conditions of this Agreement and Delaware law, upon the death or Disability of a Member (in either case referred to as a "**Deceased Member**"), the other Members shall have the right, but not the obligation, to purchase all of the

Interest held by such Deceased Member immediately prior to Deceased Member's death or Disability within ninety (90) days of such death or Disability.

**9.05(b)**    If the other Members exercise their right to purchase all of the Interest held by a Deceased Member, the purchase price shall equal the fair market value of such Interest determined as set forth in this **Section 9.05(b)**.  The other Members and the representative of such Deceased Member shall attempt to mutually agree on the fair market value of such Interest, with the assistance of the Manager.  If the other Members and the representative of such Deceased Member are unable to reach such an agreement within the ninety (90) day period during which the other Members' purchase right was exercisable, then either the other Members or the representative of such Deceased Member may demand, by written notice given to the others within ten (10) days thereafter, that such fair market value be determined by appraisal under the following valuation procedure.  The other Members and the representative of such Deceased Member shall attempt in good faith, within fifteen (15) days after demand for appraisal, to mutually agree on a single appraiser.  If the other Members and the representative of such Deceased Member fail to agree on such single appraiser within such fifteen (15) day period, then the other Members and the representative of such Deceased Member, shall each, within fifteen (15) days thereafter, choose one appraiser.  A third appraiser shall be selected by the two appraisers so designated.  Each appraiser must be a qualified person having at least five (5) years of experience appraising interests in entities that invest in and operate hospitality related properties.  If the two appraisers so selected shall be unable to agree on a third appraiser within ten (10) days, the third appraiser shall be selected by the American Arbitration Association to serve as herein provided.  Should either the other Members or the representative of such Deceased Member fail or refuse to appoint an appraiser within such fifteen (15) day period, then the single appraiser shall have the right to decide alone and such appraiser's decision shall be final and binding to all parties.  If any appraiser shall be unable to act, a new appraiser shall be appointed within ten (10) days after such inability occurs, such appointment to be made in the same manner as hereinabove provided for the appointment of the appraiser who is unable to act.  The appraisers shall determine the fair market value of such Interest and deliver a written statement of the same to the other Members, the representative of such Deceased Member, and the Manager within sixty (60) days after the last appraiser has been engaged.  For purposes of this Agreement, such fair market value shall be (i) the valuation jointly determined by the three appraisers; or (ii) if the three appraisers are unable to agree upon a valuation, then each of the appraisers shall make its own determination and the fair market value shall be determined as follows:

(i)    If the low valuation is less than ten percent (10%) lower than the middle valuation and the high valuation is less than ten percent (10%) higher than the middle valuation, the fair market value shall equal the average of the values determined by the three appraisers;

(ii)    If the low valuation is more than ten percent (10%) lower than the middle valuation and the high valuation is more than ten percent (10%) higher than the middle valuation, the low and the high valuations shall be disregarded and the middle valuation shall be the fair market value; or

(iii)    If only one valuation is more than ten percent (10%) higher or lower than the middle valuation, such valuation shall be disregarded and the fair market value shall equal the average of the valuations determined by the remaining appraisers.

{01269088;2}    16

**9.05(c)**    If there is only one appraiser appointed pursuant to **Section 9.05(b)**, the cost of such appraiser shall be borne equally by the other Members and such Deceased Member.  If there is more than one appraiser, each party shall bear the cost of any appraiser appointed by such part and such parties shall bear equally the cost of any appraiser appointed by the other appraisers.

**9.05(d)**    Unless the other Members and the representative of such Deceased Member otherwise agree, the closing of the purchase of such Interest pursuant to this **Section 9.05** shall take place at the LLC's principal office at 10:00 a.m. (local time) on the date that is ten (10) days after the date of the appraisers' decision or of the date of agreement by the other Members and the representative of such Deceased Member as to the fair market value of such Interest; provided that if the date for closing as so determined is not a normal business day, the closing shall take place on the next normal business day thereafter.  At such closing, the other Members shall pay the purchase price to the representative of such Deceased Member in cash, by wire transfer or certified or cashier's check and the representative of such Deceased Member shall deliver such deeds, bills of sale, assignments, and other agreements and instruments, and shall take all such other reasonable actions, in connection with any purchase and sale pursuant to this **Section 9.05** as the other Members and the Manager shall request, including removing any lien or encumbrance attached to its Interest so that good title to such Interest shall be conveyed to other Members free and clear of any mortgage, pledge, lien or encumbrance (other than any lien securing financing obtained by the LLC).

**9.05(e)**    The purchase price under this **Section 9.05** shall be allocated among the other Members, *pro rata*, in proportion to their respective Percentage Interests or as the other Members may otherwise agree by unanimous consent.  Upon the consummation of a sale under this **Section 9.05**, the Percentage Interest of each other Member shall be adjusted as if each such other Member made that portion of the Capital Contributions actually made by the separated Deceased Member that bears the same ratio to the total Capital Contributions by the separated Deceased Member as such other Member's share of the purchase price in such sale bears to the total purchase price.

# ARTICLE X
## DISSOLUTION AND LIQUIDATION

### 10.01   Events Causing Dissolution

Unless the Members, pursuant to a Unanimous Vote, elect to continue the existence and operation of the LLC, the LLC shall be dissolved and its affairs wound up upon the occurrence of any of the following events:

**10.01(a)**    the Majority Vote of the Members to dissolve and wind up the affairs of the LLC;

**10.01(b)**    the sale of all or substantially all of the LLC's assets; or

**10.01(c)**    the occurrence of any event that, under the Delaware LLC Act, would cause the dissolution of the LLC or that would make it unlawful for the business of the LLC to be continued.

**10.02    Right to Continue Business of the LLC**

Upon an event described in **Sections 10.01(a)** through **10.01(c)** (but not an event described in **Section 10.01(c)** that makes it unlawful for the business of the LLC to be continued), the LLC thereafter shall be dissolved and liquidated unless, within ninety (90) days after such event, an election to continue the business of the LLC shall be made in writing by the Manager. If such an election to continue the LLC is made, then the LLC shall continue until another event causing dissolution in accordance with this **Article X** shall occur.

**10.03    Cancellation of Certificate**

Upon the dissolution and the completion of winding up of the LLC, the Certificate shall be canceled in accordance with the provisions of Section 18-203 of the Delaware LLC Act, and the Manager (or any other person or entity responsible for winding up the affairs of the LLC) shall promptly notify the Members of such dissolution.

**10.04    Distributions Upon Dissolution**

**10.04(a)**    Upon the dissolution of the LLC, the Manager (or any other person or entity responsible for winding up the affairs of the LLC) shall proceed without any unnecessary delay to sell or otherwise liquidate the LLC Assets and pay or make due provision for the payment of all debts, liabilities and obligations of the LLC.

**10.04(b)**    The Manager (or any other person or entity responsible for winding up the affairs of the LLC) shall distribute the net liquidation proceeds and any other assets of the LLC remaining after the payment of all debts, liabilities and obligations of the LLC (including, without limitation, (i) all amounts owing to a Member under this Agreement or under any agreement between the LLC and a Member entered into by the Member other than in its capacity as a Member in the LLC, (ii) all amounts owing to any Pilgrim Entity pursuant to the LLC's obligation under any Pilgrim Entity Agreement), the payment of expenses of liquidation of the LLC, and the establishment of a reasonable reserve in an amount estimated by the Manager to be sufficient to pay any amounts reasonably anticipated to be required to be paid by the LLC to the Members as set forth in Article VI.

**10.05    Reasonable Time for Winding Up**

A reasonable time shall be allowed for the orderly winding up of the business and affairs of the LLC and the liquidation of its assets pursuant to **Section 10.04** in order to minimize any losses otherwise attendant upon such a winding up.

# ARTICLE XI
## MISCELLANEOUS PROVISIONS

**11.01    Additional Actions and Documents**

The Manager and each of the Members hereby agrees to take or cause to be taken such further actions, to execute, acknowledge, deliver and file or cause to be executed, acknowledged, delivered and filed such further documents and instruments, and to use best efforts to obtain such consents, as may be necessary or as may be reasonably requested in order to fully effectuate the purposes, terms and conditions of this Agreement, whether before, at or after the closing of the transactions contemplated by this Agreement.

**11.02    Notices**

All notices, demands, requests or other communications which may be or are required to be given, served, or sent by the Manager or a Member pursuant to this Agreement shall be in writing and shall be (i) hand delivered (including delivery by courier), (ii) mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, (iii) given by e-mail, or (iv) sent via nationally recognized overnight courier, addressed as set forth on **Schedule A**.    In addition, notice may be given by email at the email address set forth on **Schedule A** for the party to whom notice is given, and such notice shall be deemed given and served upon transmission so long as such notice is also given on the promptly thereafter via a method provided for in the preceding sentence. The Manager and each Member may designate by notice in writing a new address to which any notice, demand, request or communication may thereafter be so given, served or sent. Each notice, demand, request or communication which shall be delivered, mailed or transmitted in the manner described above shall be deemed sufficiently given, served, sent or received for all purposes (w) on the day hand delivered (including delivered by courier), (x) one (1) day after being deposited with a nationally recognized overnight courier, (y) upon transmission by e-mail, so long as such notice is also given on the same day via a method provided for in (i), (ii), or (iv) above, and (z) three (3) days after being sent via certified or registered mail.

**11.03    Severability**

The invalidity of any one or more provisions hereof or of any other agreement or instrument given pursuant to or in connection with this Agreement shall not affect the remaining portions of this Agreement or any such other agreement or instrument or any part thereof, all of which are inserted conditionally on their being held valid in law; and if one or more of the provisions contained herein or therein should be invalid, or should operate to render this Agreement or any such other agreement or instrument invalid, this Agreement and such other agreements and instruments shall be construed as if such invalid provisions had not been inserted.

**11.04    Survival**

It is the express intention and agreement of the Manager and the Members that all covenants, agreements, statements, representations, warranties and indemnities made in this Agreement shall survive the execution and delivery of this Agreement.

**11.05    Waivers**

Neither the waiver by the Manager or a Member of a breach of or a default under any of the provisions of this Agreement, nor the failure of the Manager or a Member, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right, remedy or privilege hereunder, shall thereafter be construed as a waiver of any subsequent breach or default of a similar nature, or as a waiver of any such provisions, rights, remedies or privileges hereunder.

**11.06    Exercise of Rights**

No failure or delay on the part of the Manager, a Member or the LLC in exercising any right, power or privilege hereunder and no course of dealing between the Members or between a Member and the LLC or between a Member and the Manager shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or

privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein expressly provided are cumulative and not exclusive of any other rights or remedies which the Manager, a Member or the LLC would otherwise have at law or in equity or otherwise.

**11.07  Binding Effect**

Subject to any provisions hereof restricting assignment, this Agreement shall be binding upon and shall inure to the benefit of the Manager, the Members and their respective heirs, devises, executors, administrators, legal representatives, successors and assigns.

**11.08  Limitation on Benefits of this Agreement**

Subject to **Section 7.07** and **Section 8.06(b)**, it is the explicit intention of the Manager and the Members that no person or entity other than the Manager, the Members and the LLC is or shall be entitled to bring any action to enforce any provision of this Agreement against the Manager, any Member or the LLC, and that the covenants, undertakings and agreements set forth in this Agreement shall be solely for the benefit of, and shall be enforceable only by, the Manager, the Members (or their respective successors and assigns as permitted hereunder) and the LLC.

**11.09  Amendment Procedure**

Amendments to **Schedule A** to reflect actions taken pursuant to **Section 5.01(d)(ii)** may be made by the Manager, without any prior notice to or approval of Members.  Any other amendment or modification to this Agreement may be made upon the approval of the Members by a Majority Vote, provided that any amendment that would adversely affect the interests of a Member, as reasonably determined by the Member to be affected, shall require the approval of such Member.  Accordingly, prior notice of any amendment (including any amendment which the Manager believes does not require the consent of the Members), other than amendments pursuant to the first sentence of his Section, shall be given to all of the Members.

**11.10  Entire Agreement**

This Agreement (including the Addenda and Schedules hereto) contains the entire agreement between the Manager and the Members with respect to the transactions contemplated herein, and supersedes all prior oral or written agreements, commitments or understandings with respect to the matters provided for herein and therein.

**11.11  Pronouns**

All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the person or entity may require.

**11.12  Headings**

Article, Section and subsection headings contained in this Agreement are inserted for convenience of reference only, shall not be deemed to be a part of this Agreement for any purpose, and shall not in any way define or affect the meaning, construction or scope of any of the provisions hereof.

**11.13  Governing Law**

This Agreement, the rights and obligations of the parties hereto, and any claims or disputes relating thereto, shall be governed by and construed in accordance with the laws of the State of Delaware (but not including the choice of law rules thereof).

**11.14  Execution in Counterparts**

To facilitate execution, this Agreement may be executed in as many counterparts as may be required; and it shall not be necessary that the signatures of, or on behalf of, each party, or that the signatures of all persons required to bind any party, appear on each counterpart; but it shall be sufficient that the signature of, or on behalf of, each party, or that the signatures of the persons required to bind any party, appear on one or more of the counterparts.  All counterparts shall collectively constitute a single agreement.  It shall not be necessary in making proof of this Agreement to produce or account for more than a number of counterparts containing the respective signatures of, or on behalf of, all of the parties hereto.

**11.15  Representations and Warranties**

**11.15(a)**  By executing this Agreement, each Member makes and confirms the following representations and warranties:

(i)    The Member understands that this investment opportunity is intended to be exempt from registration under the Securities Act of 1933, by virtue of Section 4(2) of such act and, in accordance therewith and in furtherance thereof, the Member represents and warrants as follows:

(A)    The Member understands that all documents, records and books pertaining to this investment have been made available for inspection by it, its attorney and/or its accountant;

(B)    The Member and/or its advisor(s) have had a reasonable opportunity to ask questions of and receive information and answers from a person or persons acting on behalf of the LLC concerning the investment and all such questions have been answered and all such information has been provided to the full satisfaction of the Member;

(C)    The Member has such knowledge and experience in financial, tax and business matters so as to enable it to utilize the information made available to it in connection with the investment in order to evaluate the merits and risks of the investment and to make an informed investment decision with respect thereto;

(D)    The Member is making the investment solely for its own account as principal, for investment purposes only and not with a view to the resale or distribution thereof, in whole or in part, and no other person has a direct or indirect beneficial interest in such investment;

(E)    The Member will not sell or otherwise transfer its investment or any portion thereof without registration under the Securities Act or an exemption therefrom or compliance with the provisions of this Agreement, and fully understands and agrees that it must bear the economic risk of its or his purchase for an indefinite period of time

because, among other reasons, neither the investment nor any interest in the LLC has been or will in the future be registered under the Securities Act or under the securities laws of certain states and, therefore, such interests cannot be resold, pledged, assigned or otherwise disposed of unless they are subsequently registered under the Securities act and under the applicable securities laws of such states or unless an exemption from such registration is available. The Member further understands that the LLC has no obligation to register Interests on its behalf or to assist the Member in complying with any exemption from registration, and the Member understands that sales or transfers of the Interests are further restricted by the provisions of this Agreement.

(ii) If the undersigned is a corporation, partnership, trust or other entity, it is authorized and qualified to become a member in, and authorized to make its capital contributions to, the LLC, and the person signing this Agreement on behalf of such entity has been duly authorized by such entity to do so.

**11.15(b)**    The foregoing representations, warranties and agreements, together with all other representations and warranties made or given by the Member in any other written statement or document delivered in connection with the transactions contemplated hereby, shall be true and correct in all respects on and as of the date of this Agreement and shall survive such date.

### 11.16   Confidential Information

Except as authorized or directed by Manager, each Member agrees that he or she shall not, except as may be required by law or court order, directly or indirectly publish or disclose to any person or entity other than any Member's attorneys, partners, investors, accountants, members, representatives and advisors for the purpose of obtaining or soliciting the professional advice of such parties (collectively, "**Exempt Third Parties**") any confidential information of the LLC, any Pilgrim Entity, or any confidential information of others which has come into the possession of the LLC or any Pilgrim Entity, and each Member agrees that he or she shall not use any such confidential information for his or her own personal use or advantage or make it available to third parties (except for Exempt Third Parties) for any use.


[SIGNATURES APPEAR ON FOLLOWING PAGES]

**IN WITNESS WHEREOF,** the undersigned have duly executed this Limited Liability Company Agreement as of the day and year first hereinabove set forth.

**MANAGER**

By: _____

Steven Ivankovich, an individual

**MEMBERS**

By: _____

Steven Ivankovich, an individual

**P-5 GRA, LLC**
a Delaware limited liability company

By:    GRA EQUITIES, LLC
       a Connecticut limited liability company
       Member


       By:    _____
       Name:  Gary A. Romaniello
       Title: Sole Member

**IN WITNESS WHEREOF**, the undersigned have duly executed this Limited Liability Company Agreement as of the day and year first hereinabove set forth.

**MANAGER**

By: _____
       Steven Ivankovich, an individual

**MEMBERS**

By: _____
       Steven Ivankovich, an individual

**P-5 GRA, LLC**
a Delaware limited liability company

By:    GRA EQUITIES, LLC
       a Connecticut limited liability company
       Member

       By: _____
       Name:   Gary A. Romaniello
       Title:    Sole Member

*[Signature Page to LLC Agreement of Overlook Managing Member LLC]*

## ADDENDUM I

## DEFINITIONS

**Affiliate or Affiliated Person:** When used with reference to a specified Person, (i) any Person that directly or indirectly through one or more intermediaries Controls or is Controlled by or is under common Control with the specified Person, (ii) any Person that is an officer or director of, general partner in or trustee of, or serves in a similar capacity with respect to, the specified Person or of which the specified Person is an officer, director, general partner or trustee, or with respect to which the specified Person serves in a similar capacity, (iii) any Person for which an officer or director of, general partner in or trustee of, or individual serving in a similar capacity with respect to, the specified Person serves in any such capacity, (iv) any Person that, directly or indirectly, is the beneficial owner of ten percent (10%) or more of any class of equity securities of the specified Person or of which the specified Person is directly or indirectly the owner of ten percent (10%) or more of any class of equity securities, and (v) any relative or spouse of the specified Person who makes his or her home with that of the specified Person.

**Agreement:** This Limited Liability Company Agreement, as it may be amended or supplemented from time to time.

**Capital Account:** The capital account established and maintained for each Member pursuant to the Tax Allocations Addendum in **Addendum II** attached hereto.

**Capital Contribution:** Any property (including cash) contributed to the LLC by or on behalf of a Member and in accordance with the terms of this Agreement.

**Cash Available for Distribution:** means, with respect to any period, all cash receipts and funds received by the LLC from any of the Pilgrim Entities or any other business or operations conducted by the LLC (excluding, however, any Capital Contributions), minus (i) all cash expenditures and (ii) the Cash Reserves. Any distribution of property shall be treated as a distribution of cash in the amount of the fair market value of such property.

**Cash Reserves:** means the amount of cash necessary to be maintained in the LLC's cash management fund and/or any accounts for working capital or other reserves or purposes necessary to provide for the foreseeable needs of the LLC.

**Certificate:** The Certificate of Formation of the LLC, dated March 29, 2017, and any and all amendments thereto, filed on behalf of the LLC with the Secretary of State, as required under the Delaware LLC Act.

**Code:** The Internal Revenue Code of 1986, as in effect and hereafter amended, and, unless the context otherwise requires, applicable regulations thereunder. Any reference herein to a specific section or sections of the Code shall be deemed to include a reference to any corresponding provision of future law.

**Commitment**: As defined in **Section 5.01(c)**.

**Contribution Date:** As defined in **Section 5.01(d)(ii)**.

**Control:** (including with correlative meanings, such as "Controlling," "Controlled by" and "under common Control with") means, as applied to any entity, the possession, directly or indirectly, of the power to direct or cause the direction of the management

and operations of such entity, whether through the ownership of voting securities or other ownership interests, by contract or otherwise.

**Deceased Member**: As defined in **Section 9.05(a)**.

**Defaulting Member:** A Member that fails to provide (either directly or through an affiliate) any Capital Contribution to the LLC that such Member is required to provide within ten (10) business days of the date such Capital Contribution is required to be made.

**Delaware LLC Act:** The Delaware Limited Liability Company Act, as amended.

**Disability**: The substantial inability of a Member or Manager to perform his or her duties as a Member or Manager under this Agreement, by reason of illness, accident or other physical or mental disability for a continuous period of at least six (6) months or an aggregate of nine (9) months during any continuous twelve-month period.

**Exempt Third Parties:** As defined in **Section 11.16**.

**Existing Indebtedness:** As defined in **Section 7.10(b)**.

**Fiscal Year:** As defined in **Section 8.08**.

**Indemnitee:** As defined in **Section 7.07(a)**.

**Initial Appraiser:** As defined in **Section 5.01(d)(ii)**.

**Interest:** With respect to each Member, such Member's interest in the LLC, including its Percentage Interest.

**Ivankovich Member:** means Steven Ivankovich, an individual, in his capacity as a Member of the LLC and holding such Interests as shown on **Schedule A** attached hereto.

**LLC:** Overlook Managing Member LLC, a Delaware limited liability company.

**LLC Assets:** All assets and property, whether tangible or intangible and whether real, personal or mixed, at any time owned by or held for the benefit of the LLC.

**Major Decision:** As defined in **Section 7.10**.

**Majority Vote:** With respect to any matter, the vote or written consent of the Members whose aggregate Percentage Interests exceed fifty percent (50%) of the aggregate Percentage Interests of all Members entitled to vote thereon.

**Manager:** Steven Ivankovich, an individual.

**Member:** Ivankovich Member, P-5 Member, and any other Person who in the future shall execute and deliver this Agreement, or other documents as the Members deem necessary or appropriate to evidence such Person's agreement to be admitted as a member and be bound by the terms and conditions of the Certificate and this Agreement, and admitted to the LLC as a new or substitute member pursuant to the provisions hereof.

**P-5 Member:** means P-5 GRA, LLC, a Delaware limited liability company, in its capacity as a Member of the LLC and holding such Interests as shown on **Schedule A** attached hereto

**Percentage Interest:** As defined in **Section 4.01(a)**.

**Person:** Any individual, corporation, association, partnership, limited liability company, joint venture, trust, estate, or other entity or organization.

**Pilgrim Entities or Pilgrim Entity:** As defined in **Section 3.01(a)**.

**Pilgrim Entity Agreement:** As defined in **Section 3.01(a)**.

**Secretary of State:** The office of the Secretary of State of the State of Delaware.

**Securities Act:** The Securities Act of 1933, as amended.

**Tax Allocations Addendum:** The Addendum attached to the Agreement as **Addendum II** and incorporated herein by reference.

**Unanimous Vote:** With respect to any matter, the vote or written consent of the Members whose aggregate Percentage Interests equal to one hundred percent (100%) of the aggregate Percentage Interests of all Members entitled to vote thereon.

**W&D Loan:** means that loan in the approximate original principal amount of $86,000,000 made on or about the date of this Agreement by Walker & Dunlop Commercial Property Funding, LLC (and/or any of its successors and/or assigns) to Alliance HTTX Limited Partnership and Alliance HTFL Limited Partnership.

[End of Addendum]

## ADDENDUM II

## TAX ALLOCATIONS ADDENDUM

1.    Certain Additional Definitions

Unless otherwise provided in this **Addendum II**, all capitalized terms used in this **Addendum II** shall have the meanings assigned to them in the Agreement of which this **Addendum II** is a part.  In addition, the following definitions shall be for all purposes applied to the terms used in this **Addendum II**.

"Adjusted Capital Account" means the Capital Account maintained for each Member as of the end of each Fiscal Year (i) increased by any amounts which such Member is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5) and (ii) decreased by the items described in Regulations Sections 1.704-1(b)(2)(ii)(d)(4),    1.704-1(b)(2)(ii)(d)(5)    and 1.704-1(b)(2)(ii)(d)(6).    The foregoing definition of Adjusted Capital Account is intended to comply with the provisions of Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

"Adjusted Capital Account Deficit" means, with respect to any Member, the deficit balance, if any, in such Member's Adjusted Capital Account as of the end of the relevant Fiscal Year.

"Carrying Value" means at the time such property is acquired by the LLC (i) with respect to a property contributed by a Member to the LLC, the fair market value of such property and (ii) with respect to any other LLC property, the adjusted basis of such property for federal income tax purposes, all as of the time of determination.  The Carrying Value of any property shall be reduced in each case (but not below zero) by all Depreciation with respect to such property and shall be adjusted from time to time in accordance with this **Addendum II**, and to reflect changes, additions or other adjustments to the Carrying Value for dispositions and acquisitions of LLC properties, as deemed appropriate by the Tax Matters Member.

"Depreciation" means, for each Fiscal Year, an amount equal to the federal income tax depreciation, amortization, or other cost recovery deduction allowable with respect to an asset for such year, except that if the Carrying Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such year or other period, Depreciation shall be an amount which bears the same ratio to such beginning Carrying Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such year bears to such beginning adjusted tax basis; *provided, however*, that if the federal income tax depreciation, amortization, or other cost recovery deduction for such year is zero, Depreciation shall be determined with reference to such beginning Carrying Value using any reasonable method selected by the Tax Matters Member.

"Net Profit" or "Net Loss" shall mean for each Fiscal Year the LLC taxable income or taxable loss for such Fiscal Year, determined in accordance with this **Addendum II**.

"Nonrecourse Deductions" has the meaning set forth in Regulations Section 1.704-2(b)(1), and the amount of Nonrecourse Deductions for a Fiscal Year shall be determined in accordance with the rules of Regulations Section 1.704-2(c).

"Nonrecourse Liability" has the meaning set forth in Regulations Section 1.752-1(a)(2).

"Partially Adjusted Capital Account" means, with respect to any Member for any Fiscal Year or other period, the Capital Account balance of such Member at the beginning of such period, adjusted as set forth in Section 2 of this **Addendum II** for all contributions and distributions during such period and all special allocations pursuant to Section 4 of this **Addendum II** with respect to such period, but before giving effect to any allocation with respect to such period pursuant to Section 3 of this **Addendum II**.

"Partner Minimum Gain" means an amount, with respect to each Partner Nonrecourse Debt, equal to the Partnership Minimum Gain that would result if such Partner Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Regulations Section 1.704-2(i)(3).

"Partner Nonrecourse Debt" has the meaning set forth in Regulations Section 1.704-2(b)(4).

"Partner Nonrecourse Deductions" has the meaning set forth in Regulations Section 1.704-2(i)(2), and the amount of Partner Nonrecourse Deductions with respect to a Partner Nonrecourse Debt for a Fiscal Year shall be determined in accordance with the rules of Regulations Section 1.704-2(i)(2).

"Partnership Minimum Gain" has the meaning set forth in Regulations Section 1.704-2(b)(2), and the amount of Partnership Minimum Gain, as well as any net increase or decrease in Partnership Minimum Gain, for a Fiscal Year shall be determined in accordance with the rules of Regulations Section 1.704-2(d).

"Regulations" means the Treasury Regulations promulgated under the Code.

"Target Capital Account" means, with respect to any Member for any Fiscal Year or other period, an amount (which may be either a positive or negative balance) equal to the difference between (i) the hypothetical distribution (if any) such Member would receive from the LLC if (a) Pilgrim Entities made liquidating distributions to their members in an amount equal to the Carrying Value of the LLC's interest in the Pilgrim Entities, and (b) all LLC assets, including cash on hand and any amounts required to be contributed to the LLC if the LLC were liquidated, were sold for cash equal to their Carrying Value (taking into account any adjustments to Carrying Value for such period), all LLC liabilities were satisfied in cash according to their terms (limited, with respect to each nonrecourse liability of the LLC, to the Carrying Value of the assets securing such liability), and the net proceeds to the LLC of such sale (after satisfaction of said liabilities) were distributed in full pursuant to **Article VI** of the Agreement on the last day of such period, minus (ii) such Member's share of Partnership Minimum Gain and Partner Minimum Gain, determined as provided in Section 4 of this **Addendum II** immediately prior to such deemed sale and minus (iii) the amount such Member would be required to return to the LLC if the LLC were liquidated at such time.

"Tax Matter Member" shall mean the "tax matters partner" as determined pursuant **Section 8.06(b)** of the Agreement.

2.       Capital Accounts of the Members

A.    The LLC shall maintain for each Member a separate Capital Account in accordance with the rules of Regulations Section 1.704-1(b)(2)(iv). Such Capital Account shall be increased by (i) the fair market value of all actual and deemed contributions of cash or property made by such Member to the LLC pursuant to this Agreement (ii) all items of LLC income and gain (including income and gain exempt from tax) computed in accordance with Section 2.B hereof and allocated to such Member pursuant to Section 3 or Section 4 hereof, and (iii) any liabilities of the LLC assumed by the Member or secured by property distributed to the Member from the LLC and decreased by (x) the fair market value of all actual and deemed distributions of cash or property made to such Member pursuant to this Agreement (y) all items of LLC deduction and loss computed in accordance with Section 2.B hereof and allocated to such Member pursuant to Section 3 or Section 4 hereof and (z) any liabilities of the Member assumed by the LLC or secured by property contributed by the Member to the LLC.

B.    For purposes of computing the amount of any item of income gain, deduction or loss to be reflected in the Members' Capital Accounts, unless otherwise specified in this Agreement  the determination, recognition and classification of any such item shall be the same as its determination, recognition and classification for federal income tax purposes determined in accordance with Section 703(a) of the Code (for this purpose all items of income, gain, loss or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in taxable income or loss), with the following adjustments:

(1)    Except as otherwise provided in Regulations Section 1.704-1(b)(2)(iv)(m), or as otherwise required under the Code the computation of all items of income, gain, loss and deduction shall be made without regard to any adjustments pursuant to Section 732, 734 and 743 of the Code which may be made by the LLC, provided that the amounts of any adjustments to the adjusted bases of the assets of the LLC made pursuant to Section 734 of the Code as a result of the distribution of property by the LLC to a Member (to the extent that such adjustments have not previously been reflected in the Members' Capital Accounts) shall be reflected in the Capital Accounts of the Members in the manner and subject to the limitations prescribed in Regulations Section 1.704-1(b)(2)(iv) (m)(4).

(2)    The computation of all items of income, gain, and deduction shall be made treating amounts described in Sections 705(a)(1)(B) of the Code as income and amounts described in 705(a)(2)(B) of the Code as an expense.

(3)    Any income, gain or loss attributable to the taxable disposition of any LLC property shall be determined as if the adjusted basis of such property as of such date of disposition were equal in amount to the LLC's Carrying Value with respect to such property as of such date.

(4)    In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Fiscal Year.

(5)    If the Carrying Value of any LLC asset is adjusted pursuant to Section 2.D hereof, the amount of any such adjustment shall be taken into account as gain or loss from the disposition of such asset.

C.      Generally, a transferee of an interest in the LLC shall succeed to a *pro rata* portion of the Capital Account of the transferor.

D.      (1)      Consistent with the provisions of Regulations Section 1.704-1(b)(2)(iv)(f), and at the times and as provided in Section 2.D(2) hereof, the Carrying Values of all LLC assets shall be adjusted upward or downward to equal their fair market value.

(2)      Such adjustments shall be made as of the following times: (a) immediately prior to the acquisition of an additional interest in the LLC by any new or existing Member in exchange for more than a *de minimis* capital contribution; (b) immediately prior to the distribution by the LLC to a Member of more than a *de minimis* amount of property as consideration for an interest in the LLC; (c) immediately prior to the liquidation of the LLC within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g), (d) in connection with the grant of an interest in the LLC (other than a *de minimis* interest) as consideration for the provision of services to or for the benefit of the LLC; and (e) under generally accepted industry accounting practices, provided substantially all of the property (excluding money) consists of stock, securities, commodities, options, warrants, futures, or similar instruments that are readily tradable on an established securities market provided however that adjustments pursuant to clauses (a), (b), (d) and (e) above shall be made only if the Tax Matters Member determines that such adjustments are necessary or appropriate to reflect the relative economic interests of the Members in the LLC.

(3)      In accordance with Regulations Section 1.704-1(b)(2)(iv)(e), the Carrying Value of LLC assets distributed in kind shall be adjusted upward or downward to equal the greater of (i) the fair market value of such property or (ii) the nonrecourse indebtedness to which the property is subject as of the time any such asset is distributed.

(4)      Fair market value for purposes of this **Addendum II**, shall be determined by the Tax Matters Member using such reasonable method of valuation as it may adopt. The Tax Matters Member shall allocate such aggregate fair market value among the assets of the LLC in such manner as it determines in its reasonable discretion to arrive at a fair market value for individual properties.

E.      The provisions of the Agreement (including this **Addendum II**) relating to the maintenance of Capital Accounts are intended to comply with Regulations Section 1.704-1(b), and shall be interpreted and applied in a manner consistent with such Regulations. If the Tax Matters Member shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto (including, without limitation, debits or credits relating to liabilities which are secured by contributed or distributed property or which are assumed by the LLC or the Members) are computed in order to comply with such Regulations, the Tax Matters Member may make such modification it deems appropriate, provided that it is not likely to have a material effect on the amounts distributable to any Member pursuant to the Agreement. The Tax Matters Member also shall (i) make any adjustments that are necessary or appropriate to

maintain equality between the Capital Accounts of the Members and the amount of LLC capital reflected on the LLC's balance sheet, as computed for book purposes, in accordance with Regulations Section 1.704-1(b)(2)(iv)(q), and (ii) make any appropriate modifications if unanticipated events might otherwise cause this Agreement not to comply with Regulations Section 1.704-1(b).

3.    General Allocation Rules

After giving effect to the special allocations set forth in Section 4 of this **Addendum II**, all Net Profit and Net Loss (and to the extent necessary, as set forth in clauses (i), (ii) and (iii) of this Section 3, items of gross income, gain, expense and loss) of the LLC shall be allocated among the Members as follows:

(i)    If the LLC has a Net Profit for any Fiscal Year (determined prior to giving effect to this clause (i)), each Member whose Partially Adjusted Capital Account is greater than its Target Capital Account shall be allocated items of LLC expense or loss for such Fiscal Year equal to the difference between its Partially Adjusted Capital Account and Target Capital Account. If the LLC has insufficient items of expense or loss for such Fiscal Year to satisfy the previous sentence with respect to all such Members, the available items of expense or loss shall be divided among such Members in proportion to such difference.

(ii)    If the LLC has a Net Loss for any Fiscal Year (determined prior to giving effect to this clause (ii)), each Member whose Partially Adjusted Capital Account is less than its Target Capital Account shall be allocated items of LLC gain or income for such Fiscal Year equal to the difference between its Partially Adjusted Capital Account and Target Capital Account. If the LLC has insufficient items of income or gain for such Fiscal Year to satisfy the previous sentence with respect to all such Members, the available items of income or gain shall be divided among such Members in proportion to such difference.

(iii)    Any remaining Net Profit or Net Loss (as computed after giving effect to clauses (i) and (ii) of this Section 3) (and to the extent necessary to achieve the purposes hereof, items of income, gain, loss and deduction) shall be allocated among the Members so as to reduce, proportionately, the differences between their respective Partially Adjusted Capital Accounts and Target Capital Accounts for the period under consideration. To the extent possible, a Member shall be allocated a share of LLC items pursuant to this clause (iii) in a manner that corresponds to such Member's right to share in distributions under **Article VI**.

4.    Special Allocation Rules.

Notwithstanding any other provision of the Agreement or this **Addendum II**, the following special allocations shall be made in the following order:

A.    <u>Minimum Gain Chargeback.</u>    Except as otherwise provided in Regulations Section 1.704-2(f), if there is a net decrease in Partnership Minimum Gain during any Fiscal Year, each Member shall be specially allocated items of LLC income and gain for such year (and, if necessary, subsequent years) in an amount equal to such Member's share of the net decrease in Partnership Minimum Gain, as determined under Regulations Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Regulations Sections 1.704-2(f)(6) and 1.704(j)(2). This Section 4.A is intended to comply with the minimum gain chargeback requirements in Regulations Section 1.704-2(f) and shall be interpreted consistently therewith

B.    <u>Partner Minimum Gain Chargeback.</u>    Except as otherwise provided in Regulations Section 1.704-2(i)(4), if there is a net decrease in Partner Minimum Gain attributable to a Partner Nonrecourse Debt during any Fiscal Year, each Member who has a share of the Partner Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(5), shall be specially allocated items of LLC income and gain for such year (and, if necessary, subsequent years) in an amount equal to such Member's share of the net decrease in Partner Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(5). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Regulations Section 1.704-2(i)(4). This Section 4.B is intended to comply with the minimum gain chargeback requirement in such Section of the Regulations and shall be interpreted consistently therewith.

C.    <u>Qualified Income Offset.</u>    If any Member unexpectedly receives any adjustments, allocations or distributions described in Regulations Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6), with respect to such Fiscal Year, and such Member has an Adjusted Capital Account Deficit, items of LLC income and gain (consisting of a *pro rata* portion of each item of LLC income, including gross income and gain for the Fiscal Year) shall be specially allocated to such Member in an amount and manner sufficient to eliminate, to the extent required by the Regulations, its Adjusted Capital Account Deficit created by such adjustments, allocations or distributions as quickly as possible; provided that an allocation pursuant to this Section 4.C be made only if and to the extent that such Member would have an Adjusted Capital Account Deficit after all other allocations provided for in this Section 4 have been tentatively made as if this Section 4.C were not in the Agreement. This Section 4.C is intended to constitute a "qualified income offset" under Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

D.    <u>Gross Income Allocation.</u>    If any Member has an Adjusted Capital Account Deficit at the end of any Fiscal Year (after taking into account allocations to be made under the preceding paragraphs hereof with respect to such Fiscal Year), each such Member shall be specially allocated items of LLC income and gain (consisting of a *pro rata* portion of each item of LLC income, including gross income and gain for the Fiscal Year) in an amount and manner sufficient to eliminate, to the extent required by the Regulations, its Adjusted Capital Account Deficit.

E.    <u>Nonrecourse Deductions.</u>    Nonrecourse Deductions for any Fiscal Year shall be allocated to the Members in accordance with the Percentage Interests of such Members.

If the Tax Matters Member determines in its good faith discretion that the LLC's Nonrecourse Deductions must be allocated in a different ratio to satisfy the safe harbor requirements of the Regulations promulgated under Section 704(b) of the Code, the Tax Matters Member is authorized, upon notice to the Members, to revise the prescribed ratio for such Fiscal Year to the numerically closest ratio which would satisfy such requirements.

      F.     <u>Partner Nonrecourse Deductions.</u>  Any Partner Nonrecourse Deductions for any Fiscal Year shall be specially allocated to the Member who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Regulations Sections 1.704-2(b)(4) and 1.704-2(i).

      G.     <u>Code Section 734 and 743 Adjustments.</u>  To the extent an adjustment to the adjusted tax basis of any LLC asset pursuant to Section 734(b) or 743(b) of the Code is required, pursuant to Regulations Section 1.704-1(b)(2)(iv)(m), or otherwise to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis), and such item of gain or loss shall be specially allocated to the Members in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations.

      5.     <u>Allocations for Tax Purposes</u>

      A.     Except as otherwise provided in this Section 5, for federal income tax purposes, each item of income, gain, loss and deduction shall be allocated among the Members in the same manner as its correlative item of "book" income, gain, loss or deduction is allocated pursuant to Sections 3 and 4 of this **Addendum II**.

      B.     Items of income, gain, loss, and deduction shall be allocated for federal income tax purposes among the Members as follows:

      (1)    (a)    In the case of property contributed to the LLC, such items attributable thereto shall be allocated among the Members consistent with the principles of Section 704(c) of the Code to take into account the variation between the Carrying Value of such property and its adjusted basis for U.S. federal income tax purposes at the time of contribution (taking into account Section 5.C of this **Addendum II**); and

            (b)    In the case of a property for which the Carrying Value has been adjusted pursuant to Section 2.D of this **Addendum II**, such items shall take account of any variation between the adjusted basis for U.S. federal income tax purposes of such property and its Carrying Value in the same manner as under Section 704(c) of the Code and the Regulations thereunder.

      C.     To the extent Regulations promulgated pursuant to Section 704(c) of the Code permit an entity that is treated as a partnership for federal income tax purposes to utilize alternative methods to eliminate the disparities between the Carrying Value of property and its adjusted basis, the Tax Matters Member shall have the authority to elect the method to be used by the LLC and such election shall be binding on all Members.

[End of Addendum]

# ADDENDUM III

## INTERNAL RATE OF RETURN CALCULATION

This Addendum III describes the calculation of Internal Rate of Return contemplated by Article VI of this Agreement, to which this Addendum III is attached and of which this Addendum III forms a part. Except as otherwise indicated in this Addendum III, each capitalized term used herein shall have the meaning given to the same elsewhere in the Agreement.

### A.    CERTAIN DEFINITIONS.

**10% IRR Amount:** means, with respect to a Member, an amount, which, if such amount were distributed to such Member as of the date of determination, together with the sum of all prior distributions to such Member pursuant to **Section 6.04(a)** through **6.04(b)** would provide such Member with a cumulative ten percent (10%) Internal Rate of Return compounded quarterly with respect to its Capital Contributions (including the return of its Capital Contributions), calculated in accordance with this Addendum III.

**15% IRR Amount:** means, with respect to a Member, an amount, which, if such amount were distributed to such Member as of the date of determination, together with the sum of all prior distributions to such Member pursuant to **Section 6.04(a)** through **6.04(c)** would provide such Member with a cumulative fifteen percent (15%) Internal Rate of Return compounded quarterly with respect to its Capital Contributions (including the return of its Capital Contributions), calculated in accordance with this Addendum III.

**20% IRR Amount:** means, with respect to a Member, an amount, which, if such amount were distributed to such Member as of the date of determination, together with the sum of all prior distributions to such Member pursuant to **Section 6.04(a)** through **6.04(d)** would provide such Member with a cumulative twenty percent (20%) Internal Rate of Return compounded quarterly with respect to its Capital Contributions (including the return of its Capital Contributions), calculated in accordance with this Addendum III.

**Distributions:** means all distributions made to any Member pursuant to Article VI of the Agreement.

**Internal Rate of Return:** means the internal rate of return calculated pursuant to the provisions of this Addendum III.

**IRR Rate:** means the cumulative 10% Internal Rate of Return, cumulative 15% Internal Rate of Return, or cumulative 20% Internal Rate of Return, as applicable.

**Time 0:** means the date of this Agreement.

### B.    ASSUMPTIONS.    For the purpose of performing the calculations described in this Addendum III:

      (1)    **Periods.**  All calculations shall be based on consecutive 3-month periods, the first of which shall commence at Time 0 (except that the final period ending on the date as of which the calculation is made may be a partial period).

      (2)    **Timing of Capital Contributions and Distributions.**  For purposes of each calculation under part C below, each Capital Contribution after Time 0 and each Distribution after Time 0 will be considered to have been made as of the last day of the month during which such Capital Contribution has been made or Distribution has been paid.

      C.    **CALCULATION OF INTERNAL RATE OF RETURN.**  The amount as of any particular date that the Members must receive in order to achieve an IRR Rate, compounded quarterly, equals the positive amount, if any, by which (1) the future value as of such date at the IRR Rate, compounded quarterly, of all Capital Contributions made on or before such date, exceeds (2) the future value as of such date at the IRR Rate, compounded quarterly, of all Distributions made on or before such date.

## SCHEDULE A

Members' Names and Addresses, Percentage Interests, and Initial Capital Contributions

| MEMBERS' NAMES AND ADDRESSES | PERCENTAGE INTEREST | INITIAL CAPITAL CONTRIBUTION |
|---|---|---|
| P-5 GRA, LLC<br>200 Chambers Street, Unit 6D<br>New York, NY 10007<br>Email: gary@overlookassetmgmt.com<br>Attn: Gary A. Romaniello | 7.00% | $7.00 |
| Steven Ivankovich<br>55 E Monroe, Suite 3610<br>Chicago, IL 60603<br>Email:<br>steven.ivankovich@atlasresidentialusa.com | 93.00% | $93.00 |
| **TOTAL** | 100.00% | $100.00 |