# **EXHIBIT 2**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

P-5 GRA, LLC, a Delaware limited liability
company,

        Plaintiff,

  v.

STEVEN IVANKOVICH,

        Defendant,

and

VERLOOK MANAGING MEMBER LLC,
ALLIANCE HTFL GP, L.L.C., PILGRIM
CARIBBEAN ISLE LLC, PILGRIM
FOREST PARK LLC, each a Delaware
limited liability company,

        Nominal Defendants.

C.A. No. 2023-1182-LWW

## **DEFENDANT STEVEN IVANKOVICH'S MOTION TO DISMISS**

Defendant Steven Ivankovich, by and through his undersigned counsel,
hereby moves to dismiss the claims alleged against him in this action pursuant to
Court of Chancery Rule 12(b)(6). The grounds for this motion shall be set forth in
Defendant's opening brief being filed contemporaneously herewith.

### ***Signature Page Follows***

{GFM-02066004.DOCX-}

Dated:  May 3, 2024

**GORDON, FOURNARIS
& MAMMARELLA, P.A.**

*/s/ Phillip A. Giordano*
Phillip A. Giordano (No. 5756)
Madeline R. Silverman (No. 6920)
1925 Lovering Avenue
Wilmington, DE 19801
Telephone: (302) 652-2900
Email: pgiordano@gfmlaw.com
msilverman@gfmlaw.com

*Counsel for Defendant,
Steven Ivankovich*

**WORDS: 47/3,000**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| P-5 GRA, LLC, a Delaware limited liability company, | |
| Plaintiff, | |
| v. | C.A. No. 2023-1182-LWW |
| STEVEN IVANKOVICH, | |
| Defendant, | |
| and | |
| OVERLOOK MANAGING MEMBER LLC, ALLIANCE HTFL GP, L.L.C., PILGRIM CARIBBEAN ISLE LLC, PILGRIM FOREST PARK LLC, each a Delaware limited liability company, | |
| Nominal Defendants. | |

## DEFENDANT STEVEN IVANKOVICH'S OPENING BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

Dated:  May 3, 2024

**GORDON, FOURNARIS & MAMMARELLA, P.A.**
Phillip A. Giordano (No. 5756)
Madeline R. Silverman (No. 6920)
1925 Lovering Avenue
Wilmington, DE 19801
Telephone: (302) 652-2900
Email: pgiordano@gfmlaw.com
        msilverman@gfmlaw.com

*Counsel for Defendant,*
*Steven Ivankovich*

{GFM-02062881.DOCX-3}

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................................ii

**INTRODUCTION** ........................................................................................1

**BACKGROUND AND NATURE OF CASE** ...............................................2

    **I.**  **Relevant Organization Structure**............................................3

    **II.**  **Relevant Provisions of the Operating Agreement**....................4

    **III.** **Allegations of Misconduct** ...................................................8

**ARGUMENT** .............................................................................................9

    **I.**  **Standard**................................................................................10

    **II.**  **The Court should dismiss Count I because Plaintiff is not entitled to specific performance in the form of a mandatory distribution.**..............11

    **III.** **Count II's duty of loyalty claim is duplicative of Count I and, therefore, should be dismissed. The remaining fiduciary duty claim in Count II should be dismissed because the claim does not belong to Plaintiff.** .......15

        *1.*  *Count I and Count II's duty of loyalty claim are identical.* ...................15

        *2.*  *Plaintiff fails to state a claim that Defendant breached any fiduciary duties owed to Plaintiff as the Secretary of Alliance HTFL.* .................18

    **IV.** **Count III must be dismissed on grounds of collateral estoppel or, alternatively, *res judicata.***.......................................................20

**CONCLUSION** .........................................................................................27

# TABLE OF AUTHORITIES

**Case**                                                                                           **Page(s)**

*Acierno v. New Castle Cty.*,
    679 A.2d 455 (Del. 1996)..................................................................................23

*Allen v. Encore Energy P'rs, L.P.*,
    72 A.3d 93 (Del. 2013)....................................................................................10

*AM Gen. Hldgs., LLC v. Renco Gp., Inc.*,
    2013 Del. Ch. LEXIS 266 (Del. Ch. Oct. 31, 2013) .....................................17

*Amaysing Techs. Corp. v. Cyberair Communs., Inc.*,
    2004 Del. Ch. LEXIS 72 (Del. Ch. May 28, 2004)......................................15

*Arch Ins. Co. v. Murdock*,
    2018 Del. Super. LEXIS 96 9Del. Super. Ct. Mar. 1, 2018).........................24

*BET FRX Ltd. Liab. Co. v. Myers*,
    2022 Del. Ch. LEXIS 93 (Del. Ch. April 27, 2022)......................................20

*Betts v. Townsends, Inc.*,
    765 A.2d 531 (Del. 2000)................................................................................22

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*,
    27 A.3d 531 (Del. 2011)....................................................................................2

*Cheese Shop Int'l v. Steele*,
    303 A.3d 689 (Del. Ch. 1973) .......................................................................15

*Del. Elec. Coop., Inc. v. EMT Constr. Corp.*,
    2003 Del. Super. LEXIS 158 (Del. Super. May 2, 2003) .............................22

*Dover Historical Soc., Inc. v. City of Dover Planning Comm'n*,
    902 A.2d 1084 (Del. 2006)..............................................................................26

*Estate of Osborn v. Kemp*,
    991 A.2d 1153 (Del. 2010)..............................................................................14

*Fortis Advisors LLC v. Shire US Hldgs., Inc.*,
    2020 Del. Ch. LEXIS 58 (Del. Ch. Feb. 13, 2020) ................................22, 25

*Grunstein v. Silva*,
    2011 Del. Ch. LEXIS 12 (Del. Ch. Jan. 31, 2011)......................................26

*Kaufman v. Nisky*,
2011 Del. Super. LEXIS 595 (Del. Super. Ct. Dec. 20, 2011)...............................23

*Klein v. ECG Topco Hldg., LLC*,
    2022 Del. Ch. LEXIS 167 (Del. Ch. July 8, 2022) ......................................10

*Largo Legacy Grp., LLC v. Charles*,
    2021 Del. Ch. LEXIS 140 (Del. Ch. June 30, 2021)........................16, 18, 25

*Levinhar v. MDG Med., Inc.*,
2009 Del. Ch. LEXIS 199 (Del. Ch. Nov. 24, 2009) ...............................................23

*McGowan v. Ferro*,
    2002 Del. Ch. LEXIS 3 (Del. Ch. Jan. 11, 2002).........................................19

*Savage v. Himes*,
    2010 Del. Super. LEXIS 205 (Del. Super. Ct. May 18, 2010).....................23

*Spring Real Estate, LLC v. Echo/RT Hldgs., LLC*,
    2016 Del. Ch. LEXIS 46 (Del. Ch. Feb. 18, 2016) ......................................14

*State v. Machin*,
    642 A.2d 1235 (Del. Super. Ct. 1993) .........................................................23

*Thermopylae Capital P'rs, L.P. v. Simbol, Inc.*,
    2016 Del. Ch. LEXIS 15 (Del. Ch. Jan. 29, 2016)......................................19

*UtiliSave, LLC v. Miele*,
    2015 Del. Ch. LEXIS 242 (Del. Ch. Sept. 17, 2015)...................................10

*Wenske v. Blue Bell Creameries, Inc.*,
    2018 Del. Ch. LEXIS 530 (Del. Ch. Nov. 13, 2018) ...................................13

*Williams v. White Oak Builders, Inc.*,
   2006 Del. Ch. LEXIS 112 (Del. Ch. June 6, 2006)......................................14

## Rules

Ct. Ch. R. 12(b)(6).........................................................................................1, 2

## Statutes

6 *Del. C.* § 18-305 ......................................................................................2, 10, 20

6 *Del. C.* § 18-1101(e) ...........................................................................................20

## Other Authorities

1 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law
   of Corporations*, § 26 (Perm. Ed., Rev. Vol. 2015).................................13-14

## INTRODUCTION

Defendant files this brief in support of its motion to dismiss pursuant to Court of Chancery Rule 12(b)(6) for Plaintiff's failure to state claims for which relief can be granted. The Complaint alleges that Plaintiff, as a member of Overlook Managing Member LLC ("Overlook" or the "LLC"), is entitled to a distribution from the Manager, Defendant Steven Ivankovich, under the terms of Overlook's operating agreement (the "Operating Agreement"). However, a plain reading of the Operating Agreement against the claims alleged in the Complaint make clear that Plaintiff is not entitled to a distribution. Accepting the facts alleged in the Complaint as true, Plaintiff would only be entitled to a distribution if and when Overlook's assets were sold or refinanced. While the Complaint alleges a sale of certain properties, those properties were owned by a separate and distinct entity. As such, Plaintiff's claim for specific performance of a distribution must be dismissed.

Plaintiff doubles down on its argument for a distribution in its separate claim for breach of the duty of loyalty. As that claim is identical to the breach of contract claim seeking specific performance, that claim should likewise be dismissed. Plaintiff also alleges that as a secretary of one Overlook's subsidiaries, Defendant, as the Manager of Overlook, owed it a duty to provide it with information in order for it to perform its duties as secretary. But that claim is too conclusory and flimsy

to meet the reasonableness standard under Rule 12(b)(6) and, so, must also be dismissed.

Lastly, Plaintiff is seeking damages for the costs that it incurred in prosecuting a prior 6 *Del. C.* § 18-305 books and records action. Despite bringing that books and records action under the Operating Agreement's books and records section, agreeing to dismiss it with prejudice, and an agreement to bear its own costs, Plaintiff attempts to relitigate that case in this action. The doctrines of collateral estoppel and *res judicata* prevent litigants from relitigating that case. As such, Plaintiff's breach of contract claim related to its prior books and records action should be dismissed.

## BACKGROUND AND NATURE OF CASE

On November 21, 2023, Plaintiff P-5 GRA, LLC filed a Verified Complaint alleging breaches of contract, fiduciary duties, and seeking specific performance. When considering a motion to dismiss, the court must accept all well-pleaded factual allegations in the Complaint as true.[1] As such, for purposes of this brief, Defendant relies on the facts alleged in the Complaint, along with the documents cited therein.

---

[1] *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

## I.    Relevant Organization Structure

Plaintiff is a Delaware limited liability company and has a seven percent (7%) membership interest in Overlook.[2] Defendant Steven Ivankovich is also a member of Overlook and owns the remaining ninety-three (93%) membership interest.[3] On or about May 2, 2017, Plaintiff and Mr. Ivankovich entered into the Operating Agreement.[4] According to Section 3.01(a) of the Operating Agreement, Overlook's purpose is to serve as the manager, member, and/or managing member of each of PILGRIM Windtree LLC; PILGRIM Coulter LLC; PILGRIM Warwick LLC; PILGRIM Caribbean Isle LLC; and PILGRIM Forest Park LLC (collectively, the "Pilgrim Entities").

According to the organization chart attached to the Complaint as Exhibit B, PILGRIM Caribbean Isle LLC and PILGRIM Forrest Park LLC are 50/50 members of Alliance HTFL GP, LLC ("Alliance HTFL").[5] Alliance HTFL is the general partner of Alliance HTFL Limited Partnership (DE) ("Alliance HTFL LP"), owning a 0.01% general partner interest in Alliance HTFL LP.[6] PILGRIM Caribbean Isle LLC and PILGRIM Forrest Park LLC are also the limited partners

---

[2] Compl. at ¶¶ 2, 7.
[3] Compl. at ¶ 15.
[4] Compl. at ¶ 11; *see also* Compl. Ex. A (referred to herein as the Operating Agreement).
[5] Compl. at ¶ 20; *see also* Compl. Ex. B (referred to herein as the organization chart).
[6] *See* Compl. Ex. B (organization chart).

{GFM-02062881.DOCX-3}

of Alliance HTFL LP, owning the remaining 99.9% limited partner interest in

Alliance HTFL LP.[7] Alliance HTFL LP is the entity that owned the real properties

located in Florida and referred to in the Complaint as the Forrest Park Property and

the Caribbean Isle Property.[8]

## II.    Relevant Provisions of the Operating Agreement

The crux of the Plaintiff's Complaint is that it was denied a distribution

pursuant to the terms of the Operating Agreement. In short, the Operating

Agreement states that management of Overlook is left largely to the discretion of

the "Manager", Mr. Ivankovich.[9]

Section 6.02 of the Operating Agreement is titled "Distributions Generally"

and states:

> The Manager shall determine, in Manager's reasonable
> discretion, the level of Cash Reserves and the aggregate
> amount available for distribution of Cash Available for
> Distribution. Distribution of Cash Available for
> Distribution shall be distributed to the Members within
> thirty (30) days after the end of each month, unless
> otherwise determined by the Manager in Manager's
> reasonable discretion.[10]

The Operating Agreement defines "**Cash Reserves**" as "the amount of cash

necessary to be maintained in the LLC's cash management fund and/or any

---

[7] *See* Compl. Ex. B (organization chart).
[8] *See* Compl. Ex. B (organization chart); *see also* Compl. at ¶¶ 37-39.
[9] *See* Operating Agreement at Section 7.02.
[10] Operating Agreement at Section 6.02.

accounts for working capital or other reserves or purposes necessary to provide for the foreseeable needs of the LLC."[11]

The Operating Agreement also defines "**Cash Available for Distribution**" as ". . . all cash receipts and funds received by the LLC from any of the Pilgrim Entities or any other business or operations conducted by the LLC (excluding, however, any Capital Contribution), minus, (i) all cash expenditures and (ii) the Cash Reserves. . . ."[12]

Furthermore, Section 6.04 of the Operating Agreement describes the manner in which distributions must be made. In pertinent part, it states that:

> Subject to the provisions of Section 6.02, as and when determined by the Manager, all Cash Available for Distribution shall be distributed as follows:
>
> (a) First, one hundred percent (100%) to Ivankovich Member until such time as the Ivankovich Member has received the aggregate amount of $12,300,000.00; provided, however, that if Cash Available for Distribution arises *from a sale or refinancing of the LLC Assets*, then in such event, the same shall be distributed to the Members pro rata in accordance with their respective membership interests.[13]

The Operating Agreement defines "**LLC Assets**" as "All assets and property, whether tangible or intangible and whether real, personal or mixed, at

---

[11] Operating Agreement at Addendum I.
[12] Operating Agreement at Addendum I.
[13] Operating Agreement at Addendum I (emphasis added).

{GFM-02062881.DOCX-3}

any time owned by or held for the benefit of the LLC."[14] And it defines "**LLC**" as

"Overlook Managing Member LLC, a Delaware limited liability company."[15]

Also relevant to Plaintiff's Count III of the Complaint are Sections 8.02,

8.03, and 8.06 of the Operating Agreement. Section 8.02 states:

> The Manager shall keep, or cause to be kept, accurate, full and complete books and accounts showing assets, liabilities, income, operations, transactions and the financial condition of the LLC. Such books and accounts shall be prepared on the cash or accrual basis of accounting, as determined by the Manager to be appropriate. Any Member, or its respective designee, shall have access thereto at any reasonable time during regular business hours and shall have the right to copy said records at its expense.[16]

Section 8.03 states:

> The Manager shall cause to be prepared and distributed to the Members (at the expense of the LLC) such financial statements, reports and information concerning the business and affairs of the LLC, including Members' equity and changes in financial position, reports of the activities of the LLC, and statements of the amounts distributed to the Members, as the Manager determines to be appropriate, or as may be required by the Delaware LLC Act or by any other law or regulation of any regulatory body applicable to the LLC.[17]

---

[14] Operating Agreement at Addendum I.
[15] Operating Agreement at Addendum I.
[16] Operating Agreement at Section 8.02.
[17] Operating Agreement at Section 8.03.

And Section 8.06 of the Operating Agreement relates to Overlook's tax returns and states that the Manager shall cause them to be prepared and delivered to the Members.[18]

The Operating Agreement contains an exculpation clause for the Members and the Managers. Section 7.04 states that:

> No Member or the Manager shall be liable to the LLC or the other Members for monetary damages for breach of fiduciary duty as a Member or Manager, as applicable, otherwise liable, responsible or accountable to the LLC or its Members for monetary damages or otherwise for any acts performed, or for any failure to act; *provided, however,* that this provision shall not eliminate or limit the liability of a Member or the Manager (a) for any breach of the Member's or Manager's duty of loyalty to the LLC or its other Members, (b) for acts or omissions which involve intentional misconduct or a knowing violation of law, or (c) for any transaction from which the Member or the Manager received any improper personal benefit.[19]

Lastly, the Plaintiff makes reference to an Amended and Restated Limited Liability Company Agreement for Alliance HTFL (the "Alliance OA") and states that "it provides that [Alliance HTFL] distributions are to be made to the members at the times and in the aggregate amounts determined by the members."[20] Paragraph 24 of the Complaint goes on to state that "Plaintiff is the Secretary of Alliance HTFL under the Alliance OA with authority and responsibility for

---

[18] Operating Agreement at Section 8.06.
[19] Operating Agreement at Section 7.04.
[20] Compl. at ¶ 23.

attending meetings with Ivankovich to conduct the business of Alliance HTFL and to exclusively perform the tasks set forth in Section 11 of the Alliance OA."[21]

## III.    Allegations of Misconduct

The Complaint contains three counts. Count I is essentially a breach of contract claim for which the Plaintiff seeks specific performance in the form of a distribution. The Plaintiff claims that on April 1, 2022, the Forrest Park Property and the Caribbean Isle Property were sold for a total amount of approximately $35,000,000.[22] The Complaint goes on to state that Mr. Ivankovich caused Alliance HTFL to distribute $30,000,000 of those proceeds to A&O Family LLC, which Plaintiff claims is a company controlled by and for the benefit of Mr. Ivankovich's family.[23] The Plaintiff then claims that pursuant to the Operating Agreement, Mr. Ivankovich, as Manager, should have distributed no less than $2,469,117.94 to Plaintiff for its portion of a distribution of Cash Available for Distribution.[24] That amount is approximately 7% (*i.e.*, Plaintiff's membership interest) of $35,000,000.[25] In short, Plaintiff's Count I claims that Mr. Ivankovich "unjustly and without explanation failed and refused to make a distribution to

---

[21] Compl. at ¶ 24.
[22] Compl. at ¶¶ 37-39.
[23] Compl. at ¶ 40.
[24] Compl. at ¶ 41.
[25] *See* Compl. at ¶ 50.

Plaintiff under the Operating Agreement . . . ."[26] It claims that Mr. Ivankovich's failure to make a distribution of the Cash Available for Distribution "is an unreasonable use of discretion in violation of the Operating Agreement . . . ."[27]

Count II of Plaintiff's Complaint is nearly identical to Count I, except that the Plaintiff also claims that Mr. Ivankovich also breached his fiduciary duties to Plaintiff "by refusing to provide the information necessary for Plaintiff to fulfill its duties as Secretary of Alliance HTFL [LLC]."[28]

Count III of the Complaint is another breach of contract claim. This count is based on Sections 8.02, 8.03, and 8.06 of the Operating Agreement. It states that Mr. Ivankovich "failed and refused to provide the [f]inancial [i]nformation to Plaintiff, forcing Plaintiff to incur the burden and expense of seeking the [f]inancial [i]nformation in the courts rather than providing it in accordance with the plain terms of the Operating Agreement."[29]

---

[26] Compl. at ¶ 51.
[27] Compl. at ¶ 52.
[28] Compl. at ¶ 53.
[29] Compl. at ¶ 64.

{GFM-02062881.DOCX-3}

## ARGUMENT

### I. Standard

"Under Rule 12(b)(6), all well-pleaded allegations are accepted as true and reasonable inferences are drawn in the non-movant's favor."[30] "A complaint must be dismissed where it 'does not assert sufficient facts that, if proven, would entitle the plaintiff to relief.'"[31] Moreover, the court generally "will consider only the pleadings on a motion to dismiss under Court of Chancery Rule 12(b)(6)."[32] However, "[a] judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint or (2) the document is not being relied upon to prove the truth of its contents."[33] The organization documents of the various entities mentioned in the Complaint along with the documents filed in Plaintiff's 6 *Del. C.* § 18-305 books and record case, *P-5 GRA, LLC v. Overlook Managing Members, LLC*, C.A. No. 2023-0765-LM (the "Books and Records Action"), are all referenced in the Complaint and integral to Plaintiff's claims. As such, those documents may be considered by the Court.

---

[30] *Klein v. ECG Topco Hldg., LLC*, 2022 Del. Ch. LEXIS 167, at *11 (Del. Ch. July 8, 2022) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).
[31] *Id*. at *12 (quoting *In re Crimson Exploration Inc. Stockholder Litig.*, 2014 Del. Ch. LEXIS 213, at *26 (Del. Ch. Oct. 24, 2014)).
[32] *UtiliSave, LLC v. Miele*, 2015 Del. Ch. LEXIS 242, at *17 (Del. Ch. Sept. 17, 2015).
[33] *Allen v. Encore Energy P'rs, L.P.*, 72 A.3d 93, 96 n.2 (Del. 2013) (citations omitted).

**II.    The Court should dismiss Count I because Plaintiff is not entitled to specific performance in the form of a mandatory distribution.**

According to the Operating Agreement, the Manager determines, in his reasonable discretion, the level of Cash Reserves and the amount available for distributions of Cash Available for Distribution.[34] As described above, Cash Available for Distribution is all the money received by Overlook from "the Pilgrim Entities or any other business or operations conducted by the LLC," minus cash expenditures and the Cash Reserves.[35] That is, the Cash Available for Distributions could come from funds received by the Pilgrim Entities (*e.g.*, distributions from those entities) or from funds received from any other business conducted by Overlook, such as a sale of an Overlook asset. In fact, if there is a sale of an Overlook asset, then pursuant to Section 6.04 of the Operating Agreement, the Cash Available for Distribution attributable to the proceeds from that sale must be distributed to the Members *pro rata* based upon their membership interest.[36] It is according to this provision (6.04) that Plaintiff claims it is entitled to a distribution of $2,469,117.94.[37]

---

[34] *See* Operating Agreement at 6.02.
[35] Operating Agreement at Addendum I.
[36] Operating Agreement at 6.04 (". . . if Cash Available for Distribution arises from a sale or refinancing of the LLC Assets, then in such event, ***the same shall be distributed*** to the Members *pro rata* in accordance with their respective membership interests) (emphasis added).
[37] Compl. at ¶¶ 46-53.

Was the sale of the Forrest Park Property and Caribbean Isle Property for approximately $35 Million the sale of an LLC Asset, such that it would trigger a distribution under Section 6.04 of the Operating Agreement? The answer is no.

The answer is no because, according to the Complaint, the Forest Park Property and the Caribbean Isle Property are assets of Alliance HTFL LP.[38] And According to the Complaint, the LLC Assets consist of just the membership interests in the PILGRIM Entities and not one of those entities was sold or refinanced.[39] Nonetheless, Plaintiff appears to claim that the Forrest Park Property and Caribbean Isle Property are LLC Assets. "LLC Assets" is a defined term. As explained above the Operating Agreement defines LLC Assets as: "All assets and property . . . ***owned by or held for the benefit of the LLC***."[40] The Operating Agreement further defines "LLC" as "Overlook Managing Member LLC, a Delaware limited liability company."[41] Absent from both definitions is a clause that would include Overlook's subsidiaries' assets as Assets of Overlook.

Including Overlook's downstream entities' assets as part of the "LLC Assets" is also at odds with Paragraph 40 of the Complaint, which alleges that Mr. Ivankovich caused Alliance HTFL (the general partner of Alliance HTFL LP) to

---

[38] Compl. at ¶¶ 37-39; *see also* Compl. Ex. B (organization chart).
[39] *See* Compl. Ex. B (organization chart).
[40] Operating Agreement at Addendum I (emphasis added).
[41] Operating Agreement at Addendum I.

wire $30,000,000 of the sale proceeds from those properties to A&O Family, LLC. The Complaint does not claim that Overlook wired that $30,000,000 to A&O Family, LLC. Nor does the Complaint state that Overlook received any cash from the sale of those properties.[42]

 If Plaintiff's claim is that Alliance HTFL, as the general partner of Alliance HTFL LP, wrongfully transferred $30,000,000 to an alleged interested third-party and did not instead distribute the proceeds to its limited partners, PILGRIM Caribbean Isle LLC and PILGRIM Forrest Park LLC, then that claim would belong to PILGRIM Caribbean Isle LLC and PILGRIM Forrest Park LLC, not Plaintiff. And that claim wouldn't even be a breach claim under the Operating Agreement. Plaintiff is neither a member of PILGRIM Caribbean Isle LLC nor PILGRIM Forrest Park LLC. According to the Complaint, Overlook is the sole member of those entities. In Delaware, "there exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors."[43] Consequently, the doctrine of corporate separateness bars Plaintiff's claim to a distribution.

---

[42] If Overlook did ultimately receive the proceeds, or any portion thereof, from the sale of the properties, Section 6.04's prescribed manner of distribution would mean that Mr. Ivankovich would be paid first until he received $12,300,000 because those proceeds would not have been from the sale or refinance of an LLC Asset.

[43] *Wenske v. Blue Bell Creameries, Inc.*, 2018 Del. Ch. LEXIS 530, at *9 (Del. Ch. Nov. 13, 2018); *see also* 1 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of*

The Forrest Park Property and the Caribbean Isle Property are not assets of Overlook. As explained in *Spring Real Estate, LLC v. Echo/RT Hldgs., LLC*,[44] "a parent's ownership of all of the shares of the subsidiary does not make the subsidiary's assets the parent's."[45] By the terms of the Operating Agreement, if there was not a sale of an LLC Asset, then Plaintiff is not entitled to specific performance in the form of a distribution. As such, there was no sale of an "LLC Asset" and, so, the Court should dismiss Count I of the Complaint.

Lastly, and notwithstanding Plaintiff's failure to state a claim for breach of the Operating Agreement, it's unclear if Plaintiff is otherwise entitled to specific performance. Specific performance requires proof by clear and convincing evidence that: (1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) the balance of the equities tips in favor of the party seeking performance.[46] For a legal remedy to act as a bar to equitable relief, courts often analyze whether the assessment of money damages is impracticable or somehow fails to do justice.[47] Breach of contract damages may be deemed an inadequate

---

*Corporations* § 26, at 82, 84-85 (Perm. Ed., Rev. Vol. 2015) ("A subsidiary corporation is presumed to be a separate and distinct entity from its parent corporation.").

[44] 2016 Del. Ch. LEXIS 46 (Del. Ch. Feb. 18, 2016) (internal quotations omitted).

[45] *Id.* at *9; *see also Roseton OL, LLC v. Dynegy Hldgs., Inc.*, 2011 Del. Ch. LEXIS 113, at *62 n.110 (Del. Ch. July 29, 2011) ("The parent's ownership of all of the shares of the subsidiary does not make the subsidiary's assets the parent's. . . .").

[46] *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) (citations omitted).

[47] *See Williams v. White Oak Builders, Inc.*, 2006 Del. Ch. LEXIS 112, at *16 (Del. Ch. June 6, 2006).

remedy if it is impossible or extremely difficult to measure the loss caused by the breach, such as where the subject matter of the contract is unique.[48] Importantly, it is the performance due to the party seeking performance that must be unique.[49]

It can hardly be said that damages here would be an inadequate remedy or that the performance is unique. In fact, Plaintiff seeks damages for the exact same conduct in its mirror image fiduciary duty count. It is unclear from the Complaint if this specific performance count is even directed at Mr. Ivankovich in his individual capacity or if it should be made against Overlook. Nevertheless, there is certainly an adequate remedy at law, either by requiring Overlook or Mr. Ivankovich, in his individual capacity, to pay Plaintiff damages for the alleged breach of the Operating Agreement.

**III.  Count II's duty of loyalty claim is duplicative of Count I and, therefore, should be dismissed. The remaining fiduciary duty claim in Count II should be dismissed because the claim does not belong to Plaintiff.**

*1.    Count I and Count II's duty of loyalty claim are identical.*

As discussed above, Count II is a breach of contract claim dressed up as a breach of the duty of loyalty. If, as argued above, there was no sale of an LLC Asset, then Section 2.04's requirement that the Manager make a pro rata

---

[48] *See Amaysing Techs. Corp. v. Cyberair Communs., Inc.*, 2004 Del. Ch. LEXIS 72, at *15-16 (Del. Ch. May 28, 2004); *see also Cheese Shop Int'l v. Steele*, 303 A.3d 689, 691 (Del. Ch. 1973), *rev'd on other grounds*, 311 A.2d 870 (Del. 1973).
[49] *Cheese Shop Int'l, Inc.*, 303 A.2d at 691.

distribution to Plaintiff cannot be triggered. Assuming for argument's sake that the Court were to find that Plaintiff has a claim for which relief could be granted as it relates to the discretionary distribution, then whether or not Mr. Ivankovich breached his duty of loyalty to Plaintiff as a Member of Overlook would necessarily require the same analysis as Count I's breach of contract claim.

Delaware law authorizes a party to bring claims against an LLC's manager for both breach of contract and breach of fiduciary duty.[50] However, "Delaware law is clear that fiduciary duty claims may not proceed in tandem with breach of contact claims absent an independent basis for the fiduciary duty claims apart from the contractual claims. This rule stems from the primacy of contract law over fiduciary law in this state."[51]

"[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim" and thus "any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." Here, the Operating Agreement states the standard by which the Manager shall determine both the level of Cash Reserves and the amount available for distribution of Cash Available for Distribution. That

---

[50] *See, e.g.*, *Largo Legacy Grp., LLC v. Charles*, 2021 Del. Ch. LEXIS 140 (Del. Ch. June 30, 2021).

[51] *Id*. at *42 n. 124 (quoting *Renco Grp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 Del. Ch. LEXIS 25, at *22-25 (Del. Ch. Jan. 29, 2015).

standard is the Manager's reasonable discretion.[52] Recall that Cash Available for

Distribution is all the funds received by Overlook from any of the Pilgrim Entities

or any other business or operations conducted by Overlook, minus cash

expenditures and Cash Reserves.[53] And Cash Reserves is the amount of cash

necessary, as determined by the Manager,[54] for working capital necessary for the

foreseeable needs of Overlook.[55]

     In order for Plaintiff to state a valid breach of contract claim it must

inevitably plead the same facts for a breach of the duty of loyalty claim. Even if the

Plaintiff were to argue that the breach of loyalty claim has the additional element

of a conflicted transaction (*i.e.*, the payment to A&O Family LLC[56]) in an attempt

to trigger the exception to the rule that a fiduciary duty claim can survive a motion

to dismiss despite sharing "a common nucleus of operative facts"[57], it's that

conflicted transaction that would be the subject of whether Defendant acted

reasonable in determining the amount of Cash Available for Distribution in the

breach of contract analysis. If it were truly a conflicted transaction (and were it not

entirely fair), then it could be said that Defendant did not act reasonably, which is

---

[52] *See* Operating Agreement at Section 6.02.
[53] *See* Operating Agreement at Addendum I.
[54] *See* Operating Agreement at Section 6.02.
[55] *See* Operating Agreement at Addendum I.
[56] Compl. at ¶ 40.
[57] *See AM Gen. Hldgs., LLC v. Renco Gp., Inc.*, 2013 Del. Ch. LEXIS 266, at *33-35 (Del. Ch. Oct. 31, 2013).

just another way of saying that the Plaintiff has alleged that Defendant breached the Operating Agreement.

   2.    *Plaintiff fails to state a claim that Defendant breached any fiduciary duties owed to Plaintiff as the Secretary of Alliance HTFL.*

Count II does contain an additional allegation that "Ivankovich breached his fiduciary duties to Plaintiff . . . by refusing to provide the information necessary for Plaintiff to fulfill its duties as Secretary of Alliance HTFL."[58] According to the Complaint, "Alliance HTFL" is Alliance HTFL GP, LLC, the general partner of Alliance HTFL LP, and is governed by the "Alliance OA".[59] It's according to this Alliance OA that Plaintiff claims it was appointed as Secretary of Alliance HTFL and is entitled to information necessary for it to fulfill its duties as Secretary. Plaintiff did not attach the Alliance OA to the Complaint. Nevertheless, even accepting these facts as true, Plaintiff has not stated a claim for which relief can be granted.

First, Plaintiff has not alleged that the Secretary of HTFL is owed fiduciary duties.[60] As alleged, the claim belongs to Alliance HTFL, not Plaintiff, and would

---

[58] Compl. at ¶ 58.

[59] Compl. at ¶¶ 4, 23; *see also* Compl. Ex. B (organization chart).

[60] *Largo Legacy Grp., LLC*, 2021 Del. Ch. LEXIS at *28 ("It is well-settled that a claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty.") (citing *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).

be against Mr. Ivankovich in whatever his role in Alliance HTFL is. The

Complaint is silent on this fact. Plaintiff fails to explain how it, Alliance HTFL, or

even Overlook has been harmed by Defendant's failure to provide it with

information necessary to perform its duties as Secretary of Alliance HTFL. As

such, this claim is too thin and deficient of facts to survive a motion to dismiss.[61]

If, ultimately, this claim properly belongs to Alliance HTFL, then Plaintiff

lacks standing to bring a claim on Alliance HTFL's behalf because, according to

Plaintiff, its members are PILGRIM Caribbean Isle LLC and PILGRIM Forest

Park LLC. Plaintiff is not a member or manager of either of those entities.

And if Plaintiff is bringing this claim as a member of Overlook and seeking

monetary damages against Mr. Ivankovich as a Member or Manager of Overlook,

then Operating Agreement's exculpation provision would absolve him of the

alleged conduct. Section 7.04 states that:

> No Member or the Manager shall be liable to the LLC or
> the other Members for monetary damages for breach of
> fiduciary duty as a Member or Manager, as applicable, or
> otherwise liable, responsible or accountable to the LLC or

---

[61] *See Thermopylae Capital P'rs, L.P. v. Simbol, Inc.*, 2016 Del. Ch. LEXIS 15, *39-40
(Del. Ch. Jan. 29, 2016) (holding that "for the 'reasonableness' part of the standard to
have meaning, a complaint . . . that omits necessary facts available pre-discovery to a
plaintiff—relying instead on mere conclusory assertions—cannot survive  a motion under
Rule 12(b)(6)") (citing *In re Morton's Restaurant Grp., Inc. S'holders Litig.*, 74 A.3d 656
(Del. Ch. 2014)); *see also McGowan v. Ferro*, 2002 Del. Ch. LEXIS 3, at *9 (Del. Ch.
Jan. 11, 2002) ("Conclusory statements that are devoid of factual details to support an
allegation of knowing participation will fall short of the pleading requirement needed to
survive a Rule 12(b)(6) motion to dismiss.") (internal quotations omitted).

> its Members for monetary damages or otherwise for any acts performed, **or for any failure to act**; *provided, however,* that this provision shall not eliminate or limit the liability of a Member or the Manager (a) for any breach of the Member's or Manager's duty of loyalty to the LLC or its other Members, (b) for acts or omissions which involve intentional misconduct or a knowing violation of law, or (c) for any transaction from which the Member or the Manager received any improper personal benefit.[62]

This section is permitted under Section 18-1101(e) of the Delaware LLC Act. "'In the shadow of an exculpation clause, a plaintiff must plead non-exculpated claims to survive a motion to dismiss.'"[63] Plaintiff has not pleaded a non-exculpated claim related to Mr. Ivankovich's alleged duty to provide it with information. And so, this claim should be dismissed.

## IV.    Count III must be dismissed on grounds of collateral estoppel or, alternatively, *res judicata*.

On July 27, 2023, Plaintiff filed the complaint in the Books and Records Action against Overlook (the "Books and Records Complaint").[64] The Books and Records Complaint relies on the same Article 8 sections in the Operating Agreement (8.02, 8.03, and 8.06) as Plaintiff's current Count III. The Books and Records Complaint also states that in addition to 6 *Del. C.* § 18-305, the Books and

---

[62] Operating Agreement at Section 7.04 (emphasis added).

[63] *BET FRX Ltd. Liab. Co. v. Myers*, 2022 Del. Ch. LEXIS 93, at *16 (Del. Ch. April 27, 2022) (quoting *DG BF, LLC v. Ray*, 2021 Del. Ch. LEXIS 37, at *24-25 (Del. Ch. Mar. 1, 2021)).

[64] *See* Compl. at ¶¶ 33, 50, and 64. The Books and Records Complaint attached hereto as Exhibit A.

Records Action is being brought pursuant to the Operating Agreement.[65] And

paragraph 25 of the Books and Records Complaint states that Overlook is in breach

of its contractual obligations under the Operating Agreement.[66]

The Books and Record Action was later dismissed by stipulation of the

parties, with prejudice.[67] The Dismissal states that "IT IS HEREBY STIPULATED

AND AGREED, by the parties hereto, through their undersigned counsel, that the

above-captioned case, is hereby dismissed **with prejudice** pursuant to Court of

Chancery Rule 41(a) with **each party agreeing to pay their own respective

costs**."[68]

Here, Count III is a breach of contract claim being brought against Mr.

Ivankovich, as Manager of Overlook, pursuant to Sections 8.02, 8.03, and 8.06 of

the Operating Agreement. Notably, Plaintiff is no longer seeks documents from the

Company or Mr. Ivankovich, but instead claims "damages in the amount to be

determined at trial as a direct and proximate result of Ivankovich's breaches of the

Operating Agreement." This claim should be dismissed under the doctrine of

collateral estoppel or *res judicata* if the Court finds that Mr. Ivankovich, as the

Manager of Overlook, is in privity with Overlook.

---

[65] *See* Ex. A at 1.
[66] *See* Ex. A at 6.
[67] *See* <u>Exhibit B</u> attached hereto (the "Dismissal").
[68] *See* Ex. B (emphasis added).

{GFM-02062881.DOCX-3}

21

"Under the doctrine of *res judicata*, a party is foreclosed from bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties."[69] Similarly, where a court or administrative agency has decided an issue of fact necessary to its decision, the doctrine of collateral estoppel precludes relitigation of that issue in a subsequent suit or hearing concerning a different claim or cause of action involving a party to the first case."[70] "Essentially, *res judicata* bars a court or administrative agency from reconsidering conclusions of law previously adjudicated while collateral estoppel bars relitigation of issues of fact previously adjudicated."[71]

*Res judicata* and collateral estoppel are affirmative defenses.[72] "When a defendant asserts an affirmative defense, like *res judicata*, as a basis for pleading stage dismissal, that motion to dismiss will be granted only if 'the plaintiff can prove no set of facts to avoid it . . . .'"[73]

Collateral estoppel will bar a court's consideration of an issue when:

---

[69] *Betts v. Townsends, Inc.*, 765 A.2d 531, 534 (Del. 2000) (citing *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999)).

[70] *Id.* (citing *Messick v. Star Enter.*, 655 A.2d 1209, 1211 (Del. 1995)).

[71] *Id.* (citing *M.G. Bancorporation*, 737 A.2d at 520).

[72] *Fortis Advisors LLC v. Shire US Hldgs., Inc.*, 2020 Del. Ch. LEXIS 58, at *5 (Del. Ch. Feb. 13, 2020) (citing Del. Ch. Ct. R. 8(c), and *MHS Capital Ltd. Liab. Co. v. Goggin*, 2018 Del. Ch. LEXIS 151, at *42-43 (Del. Ch. May 10, 2018) (describing *res judicata* as an affirmative defense); *see also Del. Elec. Coop., Inc. v. EMT Constr. Corp.*, 2003 Del. Super. LEXIS 158, at *11 n.28 (Del. Super. May 2, 2003) (describing collateral estoppel as an affirmative defense).

[73] *Id.* (quoting *Reid v. Spazio*, 970 A.2d 176, 183-84 (Del. 2009)).

> (1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[74]

The issue in the Books and Record Action is identical with Count III in this case. They both rely on Sections 8.02. 8.03, and 8.06 of the Operating Agreement. The Books and Records Action was dismissed ***with prejudice***, which for purposes of collateral estoppel and *res judicata* means that it was fully adjudicated.[75] "When parties 'voluntarily dismiss the action, knowing that they either received the full

---

[74] *State v. Machin*, 642 A.2d 1235, 1239 (Del. Super. Ct. 1993); *see also Acierno v. New Castle Cty.*, 679 A.2d 455, 459 (Del. 1996).

[75] *RBC Capital Mkts., Ltd. Liab. Co. v. Educ. Loan Tr. IV*, 87 A.3d 632, 643 (Del. 2014) ("In general, a dismissal with prejudice constitutes a final decree for *res judicata* purposes.") (emphasis in original); *see also Kaufman v. Nisky*, 2011 Del. Super. LEXIS 595, at *2 (Del. Super. Ct. Dec. 20, 2011) ("In Delaware, a dismissal with prejudice is considered an adjudication on the merits. When an action has been dismissed on its merits, the *res judicata* doctrine forecloses a losing party from reasserting for a second time the same cause of action against the same party.") (emphasis in original); *Savage v. Himes*, 2010 Del. Super. LEXIS 205, at *8-9 (Del. Super. Ct. May 18, 2010) ("A dismissal with prejudice is [an] adjudication on the merits and res judicata forecloses a losing party from asserting an adjudicated claim against the same party.") (internal quotations omitted); *Levinhar v. MDG Med., Inc.*, 2009 Del. Ch. LEXIS 199, at *27 (Del. Ch. Nov. 24, 2009) ("And the fifth element is satisfied because this court's order dismissing the Section 225 Action with prejudice is a final judgment for res judicata purposes.").

relief to which they were legally entitled, ***or that they waived their rights to seek further relief***, the dismissal is tantamount to a judgment on the merits.'"[76]

      The party against whom the doctrine is invoked (Plaintiff) was the plaintiff in the Books and Records Action and had a full and fair opportunity to litigate the issue in the prior action. In fact, according to the Books and Records Complaint, Plaintiff sought, in addition to the inspection records, an award of "its costs and expenses incurred in bringing and prosecuting [that] action, including reasonable attorneys' fees."[77] In this action, Count III claims damages to be proven later at trial.[78] But according to the Complaint, the Plaintiff was harmed by the alleged breaches of Sections 8.02. 8.03, and 8.06 of the Operating Agreement because it was forced to "incur the burden and expense of seeking the Financial Information in the courts."[79] According to the Stipulation of Dismissal, those claims were waived by not only the dismissal with prejudice, but also by the agreement that "each party [agrees] to pay their own respective costs."[80] The Plaintiff was

---

[76] *Arch Ins. Co. v. Murdock*, 2018 Del. Super. LEXIS 96, at *15 (Del. Super. Ct. Mar. 1, 2018) (quoting *Fields v. Frazier*, 2005 Del. Super. LEXIS 385, at *6 (Del. Super. Ct. Nov. 21, 2005) (emphasis added)).

[77] Ex. A at 7.

[78] Compl. at ¶ 66.

[79] Compl. at ¶ 64.

[80] Ex. B.

litigating the same claim in the prior action and then dismissed it with prejudice, agreeing that it would pay its on costs.[81]

"The doctrine of *res judicata* 'exists to provide a definite end to litigation, prevent vexatious litigation, and promote judicial economy.'"[82] "As a threshold procedural bar, res judicata 'extends to all issues which might have been raised and decided in the first suit . . . .'"[83] "'In essence, the doctrine of res judicata serves to prevent a multiplicity of needless litigation of issues' by requiring a party to litigate all of their claims arising from a single transaction in one cause of action.'"

"In Delaware, *res judicata* will bar a claim when the defendant is able to satisfy a five-part test:

> (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at

---

[81] In *Largo Legacy Grp., LLC v. Charles*, 2021 Del. Ch. LEXIS 140 (Del. Ch. June 30, 2021), the defendant moved to dismiss a breach of contract claim based on its alleged failure to provide information to the plaintiff. *Id.* at *46. The defendant argued that the plaintiff abandoned its claim for a breach of contract when it voluntarily dismissed its prior books and records action. *Id.* Vice Chancellor Zurn, recognizing the defendant's frustration, held that "whether [p]laintiff received the information sought in the [b]ooks and [r]ecords [a]ction ha[d] no bearing at the pleading stage on [p]laintiff's right to receive the information under the [o]perating [a]greement, nor on m[]anager's contractual obligation to provide the information." While this ruling may seem to cut against Defendant's arguments, there is a key difference between this case and *Largo*. In *Largo*, the parties dismissed the case ***without prejudice*** under Del. Ct. Ch. R. 41(a). *See* Exhibit C. Dismissals pursuant to Rule 41(a) are without prejudice, unless otherwise stated. Moreover, unlike the plaintiff in *Largo*, the Plaintiff here is not actually seeking book and records.

[82] *Fortis Advisors LLC*, 2020 Del. Ch. LEXIS at *5 (quoting *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009)).

[83] *Id.* (quoting *LaPoint*, A.2d 185 at 192).

> bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.[84]

Here, the Court of Chancery clearly had jurisdiction over Books and Records Action. As discussed above, Count III's issues are identical as those in the Books and Records Action. And the Books and Records Action was decided on the merits for the reasons discussed above. The only real question for *res judicata* purposes is whether Mr. Ivankovich is in privity with Overlook. For purposes of this case, they are.

"Two parties are in privity for purposes of *res judicata* where the 'relationship between two or more persons is such that a judgment involving one of them may justly be conclusive on the others, although those others were not party to the lawsuit. A critical factor for the privity analysis is whether the interests of a party to the first suit and the party in question in the second suit are aligned.'"[85] In *Grunstein,* the court held that the defendant could not show that the plaintiff in both actions were in privity because the plaintiff was only a minority owner of the company in the prior action, and not an officer or director of that company, such

---

[84] *Id.* (*Dover Historical Soc., Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1092 (Del. 2006)).
[85] *Grunstein v. Silva*, 2011 Del. Ch. LEXIS 12, *25 (Del. Ch. Jan. 31, 2011) (quoting *Levinhar v. MDG Med., Inc.*, 2009 Del. Ch. LEXIS 199, at *27-31 (Del. Ch. Nov. 24, 2009)).

that their "interests are so closely aligned that it would be fair to preclude his claims under *res judicata*."[86] Defendant is the 93% Member of Overlook and is its sole Manager. As such, their interests are so closely aligned that it is fair to conclude that they are in privity for purposes of *res judicata*.

---

[86] *Id.*

{GFM-02062881.DOCX-3}

## CONCLUSION

Plaintiff's Complaint falls short of stating claims for which relief can be granted. For the reasons discussed above, the Court, pursuant to Court of Chancery Rule 12(b)(6), must dismiss the Complaint in its entirety.

Dated:  May 3, 2024

**GORDON, FOURNARIS**
**& MAMMARELLA, P.A.**

*/s/ Phillip A. Giordano*
Phillip A. Giordano (No. 5756)
Madeline R. Silverman (No. 6920)
1925 Lovering Avenue
Wilmington, DE 19801
Telephone: (302) 652-2900
Email: pgiordano@gfmlaw.com
        msilverman@gfmlaw.com

*Counsel for Defendant,*
*Steven Ivankovich*

**WORDS:  6,836/14,000**

# **<u>EXHIBIT A</u>**

EFiled: Jul 27 2023 10:28AM EDT
Transaction ID 70495282
Case No. 2023-0765-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

-----------------------------------------------------------X

P-5 GRA, LLC,                                              C.A. No.

                                   Plaintiff,

 v.


OVERLOOK MANAGING MEMBERS, LLC

                                   Defendant.

-----------------------------------------------------------X

## <u>VERIFIED COMPLAINT</u>

Plaintiff, complaining of defendants, by and through his attorneys, alleges as follows:

## NATURE OF THE ACTION

This is an action under 6 *Del. C.* § 18-305 ("Section 18-305") and pursuant to the Operating Agreement dated January 27, 2014 (the "Operating Agreement") to compel Overlook Managing Members, LLC (the "Company" or "Overlook") to make its books and records available for inspection and copying by P-5 GRA, LLC in its capacity as a member of the Company. Appended as <u>Exhibit A</u> is P-5 GRA, LLC's April 2, 2023 inspection demand to the Company (the "Demand").

1

**PARTIES, JURSIDICTION & VENUE**

1.      Plaintiff P-5 GRA, LLC ("Plaintiff") was and is a resident of the State of New York and has offices located at 200 Chambers Street, Unit 6D, New York, New York.

2.      Defendant Overlook is organized under the laws of the State of Delaware with a registered agent for service of process, in the State of Delaware, upon the Corporation Trust Company located at 1209 Orange Street, Wilmington, New Castle County, Delaware.

3.      At all relevant times. Plaintiff was a member of and has an ownership interest in Overlook.

**FACTUAL BACKGROUND**

**OVERLOOK FORMED AS A DELAWARE LLC**

4.      Overlook was formed pursuant to the provisions of the Delaware Limited Liability Company Act (the "Delaware LLC Act") through the filing of a Certificate of Formation on March 29, 2017.

**THE OVERLOOK OPERATING AGREEMENT**

5.      On or about May 2, 2017, Plaintiff became a member in Overlook by executing the Operating Agreement.

6.      Overlook was and is to serve as the manager, member and/or managing member of each of PILGRIM Windtree LLC, PILGRIM Coulter LLC, PILGRIM

2

Warwick LLC, PILGRIM Caribbean Isel LLC and PILGRIM Forest Park, LLC (from time to time collectively the "PILGRIM Entities") and to enter into, execute, deliver and perform its rights, duties and obligations under the limited liability company agreement for each PILGRIM Entity.

7.      Section 8.02 of the Operating Agreement provides: "The Manager shall keep, or cause to be kept, accurate, full and complete books and accounts showing assets, liabilities, income, operations, transactions and the financial condition of the LLC. Such books and accounts shall be prepared on the cash or accrual basis of accounting, as determined by the Manager to be appropriate. Any Member, or its respective designee, shall have access thereto at any reasonable time during regular business hours and shall have the right to copy said records at its expense."

8.      Section 8.03 of the Operating Agreement provides: "The Manager shall cause to be prepared and distributed to the Members (at the expense of the LLC) such financial statements, reports and information concerning the business and affairs of the LLC, including Members' equity and changes in financial position, reports of the activities of the LLC, and statements of the amounts distributed to the Members, as the Manager determines to be appropriate, or as may be required by the Delaware LLC Act or by any other law or regulation of any regulatory body applicable to the LLC."

3

9.    Section 8.06 of the Operating Agreement requires that the Manager prepare and deliver to the Members, within 180 days of the end of the Fiscal Year, copies of all federal and state income tax returns.

**PLAINTIFF'S REQUEST FOR FINANCIAL INFORMATION**

10.    Plaintiff requested from Defendant Overlook but has not received copies of tax return(s), financial information and access to inspect Overlook's books and records (collectively the "Financial Information").

11.    Plaintiff sought from Defendant Overlook information under the above sections of the Operating Agreement.  See Exhibit A.

12.    Defendant Overlook has failed to respond or provide the requested information.

13.    On June 21, 2023, Defendant Overlook confirmed that information responsive to the Plaintiff's request is available but has failed and refused to permit Plaintiff to inspect and copy the same.  See Exhibit B.

14.    Defendant Overlook provided an excel spreadsheet and summary schedule and advised that tax returns were filed for the years 2020 and 2021 but refused to provide a copy to the Plaintiff.  See Exhibit C.

15.    Plaintiff's request for the Financial Information is for a purpose reasonably related to Plaintiff interest as a member of Overlook.

16.    Plaintiff's request is authorized under Section 18-305 of the Delaware Limited Liability Company Act.

17.    Defendant Overlook has not provided the Financial Information as requested which is deemed denied.

## COUNT I

### (Order Compelling Inspection of Books and Records)

18.    Plaintiff repeats and realleges the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

19.    Plaintiff has delivered the Demand to inspect books and records of the Company.  Plaintiff has fully complied with the provisions of Section 18-305 respecting the form and manner of demanding inspection of the Company's books and records.

20.    Plaintiff has stated a proper purpose for the Demand.

21.    Plaintiff has limited the Demand to materials that this Court has recognized as falling within the legitimate scope of a books and records demand under Section 18-305 for members of closely held businesses to evaluate their interests.

22.    Plaintiff is entitled to inspect books and records and receive certain information from the Company pursuant to the Operating Agreement.  Plaintiff's inspection rights under the Operating Agreement are contractual rights distinct from

5

and in addition to its rights under Section 18-305. The Company's failure to respond to the Demand ignores Plaintiff's contractual right to access the Company's books and records under the Operating Agreement.

23.    The Company has wrongfully failed to respond to Plaintiff's inspection of the materials under Section 18-305 and the Operating Agreement.

24.    In short, Plaintiff has stated proper purposes for the Demand, set forth sufficiently specific descriptions of the records sought for inspection, and the records sought are plainly within the scope necessary to serve the purpose for the Demand.

25.    The Company is therefore in violation of Section 18-305 and in breach of its contractual obligations under the Operating Agreement by refusing the Demand.

26.    By reason of the foregoing, Plaintiff is entitled to an order compelling the inspection and copying of all materials requested in the Demand.

27.    Plaintiff has no adequate remedy at law.

28.    Given the Company's failure to respond at all to the Demand, Plaintiff seeks recovery from the Company of all attorneys' fees and costs associated with enforcing its rights under the Operating Agreement and Section 18-305.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order granting the following relief:

A.    Summarily directing Overlook Managing Members, LLC, its officers, directors, agents, and employees forthwith to permit P-5 GRA, LLC to inspect and make copies of all the materials specified in this Complaint;

B.    Awarding P-5 GRA, LLC its costs and expenses incurred in bringing and prosecuting this action, including reasonable attorneys' fees; and

C.    Granting such other and further relief as may be just and equitable under the circumstances.

Dated: July 27, 2023        GELLERT SCALI BUSENKELL & BROWN, LLC

                            /s/ Michael Busenkell
                            Michael Busenkell (3933)
                            1201 N. Orange Street, Suite 300
                            Wilmington, DE 19801
                            Telephone: (302) 416-3341
                            Email: mbusenkell@gsbblaw.com

                            and

                            MCKENNA LAW
                            Keith McKenna, Esq.
                            (To be admitted *pro hac vice*)
                            101 Hudson Street, 21st Floor
                            Jersey City, NJ 07302
                            Telephone: 201-633-6550
                            Email: keith.mckenna@mcklaw.net

                            *Attorneys for Plaintiff P-5 GRA, LLC*

7

# **EXHIBIT B**

**GRANTED**

EFiled: Oct 09 2023 02:56PM EDT
Transaction ID 71045982
Case No. 2023-0765-LM

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

----------------------------------------------------------X

P-5 GRA, LLC,                                     C.A. No.: 2023-0765-LM

                   Plaintiff,

       v.

OVERLOOK MANAGING MEMBER, LLC,

                  Defendant.

----------------------------------------------------------X

## STIPULATION AND [PROPOSED] ORDER OF DISMISSAL WITH PREJUDICE

IT IS HEREBY STIPULATED AND AGREED, by the parties hereto, through their undersigned counsel, that the above-captioned case, is hereby dismissed with prejudice pursuant to Court of Chancery Rule 41(a) with each party agreeing to pay their own respective costs.

Dated:  October 9, 2023

| GELLERT SCALI BUSENKELL & BROWN, LLC<br><br>*/s/ Michael Busenkell*<br>Michael Busenkell (3933)<br>1201 N. Orange Street, Suite 300<br>Wilmington, DE 19801<br>Telephone: (302) 416-3341<br>Email: mbusenkell@gsbblaw.com<br><br>and<br><br>MCKENNA LAW<br>Keith McKenna, Esq.<br>(admitted *pro hac vice*)<br>101 Hudson Street, 21st Floor<br>Jersey City, NJ 07302<br>Telephone: 201-633-6550<br>Email: keith.mckenna@mcklaw.net<br><br>*Attorneys for Plaintiff P-5 GRA, LLC* | BERGER HARRIS LLP<br><br>*/s/ Michael W. McDermott*<br>Michael W. McDermott, Esq.<br>David B. Anthony, Esq.<br>1105 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801<br><br><br>*Attorneys for Defendant Overlook Managing Member, LLC* |
|---|---|

SO ORDERED, this _____ day of _____, 2023

_____
Magistrate Loren Mitchell

2

This document constitutes a ruling of the court and should be treated as such.

| | |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Loren Mitchell |
| **File & Serve Transaction ID:** | 71044284 |
| **Current Date:** | Oct 09, 2023 |
| **Case Number:** | 2023-0765-LM |
| **Case Name:** | P-5 GRA, LLC, v. OVERLOOK MANAGING MEMBERS, LLC |
| **Court Authorizer:** | Loren Mitchell |

**/s/ Judge Loren Mitchell**

# **EXHIBIT C**

**GRANTED**

EFiled: Jan 21 2021 01:32PM EST
Transaction ID 66273122
Case No. 2019-0869-MTZ

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LARGO LEGACY GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0869-MTZ |
| | ) | |
| LARGO HOTEL, LLC, | ) | |
| a Delaware limited liability Company, | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION AND [PROPOSED] ORDER OF DISMISSAL

IT IS HEREBY STIPULATED AND AGREED by the parties through their undersigned counsel, that the above-captioned action is hereby dismissed pursuant to Court of Chancery Rule 41(a) with each party to bear its own fees and costs.

GREENBERG TRAURIG, LLP                    BAYARD, P.A.

/s/ Samuel L. Moultrie                              /s/ Jason C. Jowers
Lisa Zwally Brown (#4328)                      Jason C. Jowers (#4721)
Samuel L. Moultrie (#5979)                     600 North King Street
The Nemours Building                              Suite 400
1007 North Orange Street, Suite 1200     Wilmington, Delaware 19801
Wilmington, Delaware 19801                   (302) 655-5000
(302) 661-7000
*Attorneys for Plaintiff*                            *Attorneys for Defendant*

Dated: January 21, 2021


**SO ORDERED** this_____day of_____, 2021.


_____
                                                            Vice Chancellor

This document constitutes a ruling of the court and should be treated as such.

|  |  |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Morgan Zurn |
| **File & Serve Transaction ID:** | 66272785 |
| **Current Date:** | Jan 21, 2021 |
| **Case Number:** | 2019-0869-MTZ |
| **Case Name:** | Largo Legacy Group, LLC vs Largo Hotel, LLC |
| **Court Authorizer:** | Morgan Zurn |

**/s/ Judge Morgan Zurn**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| P-5 GRA, LLC, a Delaware limited liability company, | |
| Plaintiff, | |
| v. | C.A. No. 2023-1182-LWW |
| STEVEN IVANKOVICH, | |
| Defendant, | |
| and | |
| VERLOOK MANAGING MEMBER LLC, ALLIANCE HTFL GP, L.L.C., PILGRIM CARIBBEAN ISLE LLC, PILGRIM FOREST PARK LLC, each a Delaware limited liability company, | |
| Nominal Defendants. | |

## [PROPOSED] ORDER GRANTING DEFENDANT STEVEN IVANKOVICH'S MOTION TO DISMISS

WHEREAS, Defendant Steven Ivankovich ("Ivankovich") having filed a

Motion to Dismiss (the "Motion") and good cause having been shown;

IT IS HEREBY ORDERED, this ___ day of _____ 2024, that:

1.    The Motion is GRANTED; and

2.    The claims alleged against Defendant Ivankovich in the above-

captioned action are dismissed with prejudice.

_____
Vice Chancellor Lori W. Will