**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

Chapter 11

In re:

Case No. 24-15755-LMI

IVANKOVICH FAMILY LLC                       (Jointly Administered)
A&O FAMILY LLC (FL),                             24-15762-LMI
A & O FAMILY LLC (IL),                            24-15767-LMI
ATLAS P2 MANAGING MEMBER, LLC,      24-15770-LMI

      Debtors.

_____/

### DEBTORS' EXPEDITED MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE AGAINST JEANETTE IVANKOVICH AND SCHILLER, DUCANTO & FLECK LLP, AND NEAL H. LEVIN FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY

**Basis for Expedited Hearing:** Creditors of the Estate have obtained an *ex parte* Order appointing a receiver over certain assets of Debtors, and in which Debtors have property interests, which receiver is serving without bond or security, and with near-total indemnification for his actions. Debtors do not believe Creditors can pay for the total extent of the damage that could be done by the Receiver on an immediate basis given the Receiver's apparent authority to immediately liquidate all assets he obtains for significantly less than fair market value. Creditors request a hearing on May 27, 2025, at 11:00 a.m., the date on which another hearing in this proceeding is already set. Debtors have made a bona fide effort to resolve the matter without hearing but have not heard back from Creditors' counsel.

Debtors Ivankovich Family LLC ("IF LLC"), A&O Family LLC, a limited liability company organized under the laws of Florida ("A&O FL"), A&O Family LLC, a limited liability company organized under the laws of Illinois ("A&O IL"), and Atlas P2 Managing Member LLC ("Atlas P2") (collectively, "Debtors") move the Court for an order to (i) show cause against

81483590;1

Jeanette Ivankovich ("Jeanette") and Schiller DuCanto & Fleck LLP ("Schiller")[1] and Neal Levin ("Receiver") as to why Jeanette should not be sanctioned for violating the automatic stay, (ii) directing Levin to release any holds against the accounts of the P5 Entities (hereinafter defined) and authorize existing management of the P5 Entities to complete all court-authorized renovations under the existing Cash Collateral Order without interference, and (iii) for other appropriate relief deeming the orders obtained in violation of the automatic stay void and unenforceable.

*First*, Jeanette and her counsel Schiller commenced and continued a proceeding in Cook County Circuit Court of Illinois ("Illinois Divorce Court") that seeks to recover, and appoint a receiver over, Debtors' property (the "Third-Party Complaint"). *Second*, on May 13, 2025, Jeanette and her counsel Schiller in fact, obtained an Order from the Illinois Divorce Court, with no notice to Debtors or any interested parties, appointing a receiver to, *inter alia*, manage and liquidate Debtor Atlas P2's subsidiary, P2 Portfolio Managing Member LLC ("P2"), which subsidiary owns a Celadon Account that is currently subject to an adversary proceeding before this Court. A copy of the Receivership Order is attached as **Exhibit A**. *Third,* Jeanette and her counsel Schiller intervened in a Northern District of Illinois proceeding asserting an interest in the collateral of a loan made by A&O FL to the P5 Entities (defined herein) under the authority of this Court (the "Intervention"), attempting to secure, and in fact securing, by an order entered May 14, 2025, preferred status in the Debtor's loan collateral, contrary to the distribution and oversight scheme established by the Bankruptcy Code.

There has been substantial progress in these jointly-administered cases, which have managed to save over $50 million in value of the P5 Entities from tax sales and proposed a confirmable surplus plan backstopped by such assets, plus $15 million of exit funding by principals

---

[1] Debtors may refer to Jeanette and Schiller as "Creditors" but assert that their claims are disputed and contingent.

Drs. Anthony and Olga Ivankovich.  However, Jeanette and Schiller's stay violations, which effectively prioritize their rights to the detriment of all other creditors, cannot be permitted to continue.

The Receivership Order, obtained on an entirely *ex parte* basis, violates the stay and must be deemed void *ab initio*, as to any enforcement against Debtors or their property, at a minimum. The Receivership Order disregards the jurisdiction and prior decisions of this Bankruptcy Court, and divests Debtor Atlas P2 of its property interest in subsidiary P2, without due process and in violation of the automatic stay.

Indeed, the Receivership Order short-circuits the entire litigation of the Third Party Complaint by granting the ultimate relief sought by Jeanette despite pending Motions to Dismiss, dispenses with procedural protections, ignores traditional limits on extraterritoriality, and circumvents the pending adversary proceeding.  The appointed receiver, Neal H. Levin, Esq., is already attempting to enforce the Receivership Order, with zero bond or security required, and with total indemnity for any of his actions which places at risk the assets subject to the jurisdiction of this Bankruptcy Court, with zero recourse for the Debtors or the rest of their creditors.  Thus, Debtors are left with no choice but to bring the issue to the Court's attention to request an expedited hearing for Jeanette and Schiller  to show cause as to why Jeanette should not be sanctioned for willful violations of the automatic stay, and to grant other appropriate relief.

**RELEVANT FACTUAL BACKGROUND**

**A.**      **Debtors' Bankruptcy Filing**

1.      On June 10, 2024 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code.

2.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no statutory creditors' committee has been appointed in these Chapter 11 cases.

4.      On June 20, 2024, the Court entered an Order granting the joint administration of these Chapter 11 Bankruptcy Cases for procedural purposes only under the above-styled captioned lead case. (ECF No. 15.)

5.      At the outset of these cases, Debtors retained a tax accountant, Mandell Hahm Advisory, and financial advisor, CohnReznick LLP, and their work is ongoing.

6.      Debtors also worked to provide all creditors and interested parties, including Jeanette and Schiller, with access to a secure data room to provide information Jeanette and Schiller requested in order to conduct judicial settlement conferences.  On October 4, 2024, Debtors provided access to the initial tranche of documents and have continued to upload documents on a rolling basis. Debtors also produced documents received from subpoenas to third-party financial institutions.

7.      The Debtors provided over 13,000 pages of documents on this secure data room, prior to a single formal discovery request being issued, which included thousands of pages of bank statements and non-public documents.[2]  In contrast, Jeanette and Schiller have not provided the only document that Debtors requested from early in the proceedings, namely, copies of their invoices that supported their proofs of claims for attorneys' fees.

---

[2] Contrary to representations of Jeanette and Schiller at a recent hearing, the vast majority of the over 13,000 pages of documents provided to-date have been non-public documents, including bank statements, financial data on the primary sources of capitalization of Debtors, and financial and corporate information on the assets proposed to fund the Plan.

8.      To move settlement discussions forward, Debtors focused on providing the documents that Jeanette and Schiller, and other contingent creditors, demanded to conduct the judicial settlement conferences, which included significant financial analysis by Debtors' financial advisors, in hopes that the claims could be resolved amicably and a consensual confirmation reached.

9.      Unfortunately, Jeannette and Schiller opposed every step in the bankruptcy, frequently taking positions contrary to their own economic interests.

10.     Furthermore, Jeanette and Schiller continued, outside of bankruptcy, to pursue actions against Debtors' property, directly and indirectly.

11.     On July 11, 2024, on Jeanette's petition, prosecuted by Schiller, the Illinois Divorce Court entered an Order continuing a temporary restraining order freezing Debtor A&O IL's Chase account, post-petition.

12.     On August 13, 2024, Jeanette, represented by Schiller, filed a Third Party Complaint in the Illinois Divorce Court against, *inter alia,* non-debtors Overlook Managing Member LLC ("Overlook"), Glencoe Family Dwelling LLC, North American Condominium Solutions LLC, Old Town Property Ventures LLC, and Downtown Property Ventures LLC in Illinois Divorce Court, attached as **Exhibit B**.

13.     In the Third Party Complaint, Jeanette alleges that she and Steven together have a marital interest in Overlook, and that Overlook is actually the transferor of $30 million to "A&O Family, LLC." *See* Ex. B, ¶ 54, 61.  Although Jeanette does not disclose it in the Third Party Complaint, the referenced "A&O Family LLC" entity is Debtor, A&O IL.[3]  Based on her asserted

---

[3] Jeanette deliberately obscures the distinction between the two A&O Family LLC entities, despite the fact that the entities have a completely different corporate structure, history, management, and current state of organization.

entitlement to "an equitable distribution" of Overlook and her "marital and equitable interest in" any Overlook funds, ¶¶ 54 and 56, Jeanette requests all alleged transfers—including transfers **to Debtor A&O IL**— be avoided, an attachment be ordered, and a receiver be appointed to take charge of the funds and oversee turnover of the assets. *See* Ex. B (Third Party Complaint) ¶ 70.[4]

14.    The Third Party Complaint's requests for relief against a Debtor, despite the Debtor A&O IL not being named as a defendant, are violations of the automatic stay as acts to exercise control over a Debtor's property.

**B.    Jeanette's Attempt to Seek Stay Relief to Exert Control Over Debtors' Property Is Denied, But She Continues to Prosecute Her State Court Action**

15.    On October 7, 2024, Jeanette filed a motion to determine that stay relief did not apply, or for relief from automatic stay. (ECF No. 123) ("Stay Relief Motion"). In the Stay Relief Motion, she alleged that "property of the bankruptcy estate will be impacted by continuation of the Divorce Proceeding" and that the Divorce Proceedings should continue because "none of the Debtors' schedules or other filings account for **any interest Jeanette may have in the Debtors' assets**" and that Steven should not be allowed "to regain access to certain **assets of Debtors**" (ECF No. 123, ¶ 36-38.)  Jeanette asked this Court to deem that the Divorce Proceeding was not subject to the automatic stay, so that she could pursue a determination of her derivative right to ownership of Debtors as marital property, which she asserted would then cascade to affect the Debtors' assets, and the bankruptcy case as a whole:

> A determination of [ownership] by the Illinois Divorce Court will not only impact the division of marital property in the Divorce Proceeding but **will impact this bankruptcy by altering Debtors'**

---

[4] Specifically, Jeanette requests that the Illinois Divorce Court "find that the transfer of Steven's ownership interest [in Overlook] *and any transfers of funds and/or assets therein* were fraudulent transfers in law and fact, *and that this Court enter an order avoiding all transfers* of the marital properties referenced above [*referring to and including the transfers to Debtor A&O IL*]; *that the Court impose an attachment, constructive trust or other provisional remedy it deems appropriate against the transfers* of said marital assets; . . . *that this Court appoint a receiver to take charge of said transferred funds* and properties *and to oversee the collection of the turnover of the assets*. . .*"

> corporate ownership and authority; reducing or otherwise
> **affecting the Debtors' total assets**, especially the actual value of
> the Celadon Accounts which are Debtors' primary assets; reducing
> or increasing Debtors' liabilities; **affecting Debtors' ability to file
> a feasible plan of reorganization. Furthermore, Jeanette is
> barred from filing the third-party complaints or pursuing other
> actions against the Debtors** who were joined as necessary parties
> in the Divorce Proceeding until the Illinois Divorce Court is advised
> stay relief has been obtained.

ECF No. 123 at ¶ 38.

16.    Among other things, Jeanette requested relief to continue the appeal of a non-final

preliminary injunction that had been entered prepetition, which had ordered Debtors to pay debts

owed by Steven Ivankovich to Jeanette and Schiller from three accounts at Celadon Financial

Group ("Celadon") of P2, Ivankovich Family, and "A&O Family" (without specifying *which* A&O

Family entity) (the "Preliminary Injunction").

17.    Drs. Anthony and Olga Ivankovich, and the Debtors, objected to the Stay Relief

Motion (ECF Nos. 147, 148.)

18.    On October 17, 2024, Debtors filed an adversary proceeding for a determination of

the interests in the Celadon Accounts titled in the names of A&O FL, A&O IL, Ivankovich Family,

and P2. *See* Adv. Pro. No. 24-01411-LMI, ECF No. 1.[5]

19.    The Court held a hearing on the Stay Relief Motion on October 30, 2024.  In an

oral ruling, the Court denied Jeanette stay relief to continue with the appeal of the Preliminary

Injunction, and held that, in the divorce proceedings, Jeanette could not do anything to determine

the interest in the Celadon accounts:

> However, **I am not going to grant stay relief at this time**. So to
> the extent that Mrs. Ivankovich is   seeking to continue with the

---

[5] The adversary also included a count to enjoin any ongoing stay violations of Jeanette Ivankovich given her position
to continue to enforce the Preliminary Injunction, and various assertions in proceedings in Illinois Divorce Court
implicating the Debtors.  The Court dismissed the count without prejudice, ruling that the Debtors could solicit
sanctions for violations by motion in the main case.

preliminary injunction proceeding, that request is denied.  As far as I'm concerned, the best protection  for Mrs. Ivankovich at this time is for the preliminary   injunction to stay in place, and so Mrs. Ivankovich is not   being harmed by that because **there's nothing** that can be done **in terms of determining that level of interest in the  Selidon (phonetic) accounts**, et cetera, that can  appropriately be determined -- **that shouldn't be determined by this Court, because this Court does have core jurisdiction to determine ownership over assets of the estate.**

That doesn't preclude Mrs. Ivankovich, if and as -- **if the matter is not settled and we do have to  go to the adversary proceeding, to make any arguments under Illinois law** with respect to equitable rights,   constructive trust rights, whatever, but those -- and  those would flow from Illinois state, you know, domestic  relations law, but that's not for today, but that's -- but  that's -- it's going to stay where it is for right now.

As far as granting stay relief as to any  other aspects of the domestic relations proceedings, that   motion is denied, as well. If the stay doesn't apply, it  doesn't apply, you go forward.

*See* Excerpt of Ruling at 6:9-7:9.

20.      *See* Transcript and Excerpt of Ruling attached as **Composite Exhibit C**. Thus the Court expressly determined that the stay applied to the appeal of the preliminary injunction dealing with the Celadon Accounts. The Court, however, did determine that the automatic stay did not apply to litigation of ownership interests of Debtors' membership interests between non-debtors, where such litigation made no determination regarding the control or assets within the membership interest.

21.      Despite being directed by the Court, Jeanette delayed for months in submitting the Order on the Stay Relief Motion and refused to agree to any language to submit.  An Order was eventually entered on the Stay Relief Motion on February 7, 2025 denying it in part, and granting it in part, consistently with the Court's oral ruling at the October 30, 2024 hearing. (ECF No. 269.)

8

22.     Prior to the hearing on the Stay Relief Motion, on October 17, 2024, Debtors and Drs. Ivankovich filed an adversary proceeding, with the Doctors requesting a declaration of their membership interests in Debtors against Jeanette. *See* Adv. Pro. No. 24-01411-LMI, ECF No. 1. Jeanette opposed the Doctors' attempts to have this Court determine ownership of Debtors, moved to dismiss those counts, which was denied, and then subsequently requested the Court abstain from the ownership disputes between non-debtors. *Id.*, ECF Nos. 18, 31. Drs. Ivankovich and Debtors argued that this Court could resolve the ownership issue and that the Illinois Divorce Court could not, and that the more expeditious forum would benefit all parties. *Id.*, ECF No. 48 at 6. Ultimately, the Court permissively abstained. *Id.,* ECF No. 53.

23.     After entry of the Order denying the Stay Relief Motion, Jeanette did not initiate any adversary against Debtors for a determination that she had a marital interest in any of their assets, or track any of the relief in the Third Party Complaint which suggested that Debtors had property that Jeanette claimed as a marital asset.

24.     More recently, the Court again affirmed its authority to determine ownership and permissible distributions from the Celadon Accounts. (ECF Nos. 338, 339.) Each order on the interim fee application provides that, "[t]o the extent the Debtors seek to use the assets in the Celadon Accounts to pay approved fees of [the named professional] , such use shall require further motion and entry of an order by <u>this Court</u>."

25.     Despite the stay, Jeanette has continued her prosecution of the Third Party Complaint, without amendment, which, as admitted by Jeanette in the original Stay Relief Motion, necessarily implicates the automatic stay.

26.     Now, even worse, Jeanette has skipped over all of the due process and proper procedures to have the Illinois Divorce Court simply enter judgment—without notice to anyone,

including the Debtors—on the final relief that she requested in her Third Party Complaint, for the appointment of a receiver.

27.    Asserting a renewed interest in expediting a conclusion to the matter, Jeanette and Schiller have run roughshod over basic due process principles of the defendants in the Third Party Complaint.  On May 12, 2025, Creditors submitted an Emergency Ex Parte Petition for Appointment of Receiver And/Or Sequestrator ("Receivership Motion"). A copy is attached as **Exhibit D**. The Receivership Motion was heard without notice to any affected parties and sought waiver of bond in contravention of Illinois law which mandates that bond may only be waived after notice and hearing.

28.    The Motion makes several misleading statements. First, the Motion and Jeanette's sworn supporting affidavit claim there has been *no* accounting for $64 million of funds from Debtors' Celadon Accounts, when that is blatantly false.  Significant work product was provided to Jeanette by CohnReznick that traced the transfers and uses. However, Jeanette asserted that the Illinois Divorce Court needed to "take active intervention and begin to untangle the complicated web Steven has made of the marital estate."  This ignores over 100 pages of tracing reports and explanations already provided to Jeanette and Schiller, ongoing discovery in this bankruptcy case, and the substantial volume of documents already produced.

29.    Jeanette also asserted that Steven, his parents, and "the LLCs" (which is ill-defined but refers to Debtors throughout), would continue to entangle and hide marital assets, with no recognition of this Court's or the oversight of the bankruptcy system, including publicly filed Schedules, Statements of Financial Affairs, and monthly operating reports.  Likewise, while Jeanette reviewed past deficiencies in asset disclosures, in accounting for transfers, and taxes,

Jeanette completely omitted that these bankruptcy estates have provided transparency and disclosures and that the work and discovery is ongoing.[6]

30.     There are no new "bombshells" in Jeanette's allegations. Instead, by and large, these are the same facts that Jeanette alleged in the Third Party Complaint – the same facts that *were to be tried* against the defendants.

31.     Though some attachments are included, the majority of allegations in the Motion are not supported by admissible evidence and are asserted "positions" or opinions.

32.     The Receivership Motion is as notable for what it doesn't say, as for what it does say.

33.     Jeanette's focuses on lack of completed tax returns, but fails to advise in the Motion that taxes for Debtors are in the process of being prepared by the estates' retained tax accountant.[7]

34.     The Motion does <u>not</u> disclose how much the Drs. Ivankovich are currently paying to support her and the children, and does not disclose how much money Jeanette has left, only that she recently received $70,000 and is spending it. The Drs. are providing extensive support including private school tuition, country club membership and so on, which, upon information and belief, provide meals included with the memberships.

35.     Jeanette does not cite a single case or any evidence to support her contention that Atlas P2's subsidiary, P2 Portfolio Managing Member, LLC, is an alter ego of Steven Ivankovich—other than the prepetition Preliminary Injunction.  Nor does she perform an analysis of any of the other entities she contends are alter egos of Steven Ivankovich.  Instead, the Motion for Receiver has conclusory statements, about items that supposedly "are clearly marital assets",

---

[6] Most recently, discovery has been delayed by Jeanette's incarceration of Steven Ivankovich.
[7] Tax preparation for the P2 and P5 entities, which have been requested by other parties in this case, are also in progress.

that one can only get away with when the motion cannot be subject to any opposition. Indeed, one of the first reports that Jeanette and Schiller were provided copy of was from Debtors' financial advisor tracing how Debtors' assets, and the P5 Portfolio, originated from investments owned and/or capitalized by Drs. Ivankoviches, not Steven.

36.      Unfortunately, Jeanette was able to weaponize, with omissions that misled the court (and *ex parte*, with no one to correct her), the true status of the bankruptcy proceedings, the disclosures provided and in progress, and the professional work still underway.

37.      Although the Receivership Motion requested an order be entered to appoint a receiver over all business entities and assets, except as prohibited by the automatic stay in bankruptcy, attached to the Motion is a draft Receivership Order, which specifically asserts receiver control over specific Debtor property, P2 Portfolio Managing Member, LLC ("P2 Portfolio"), which is listed as an asset of the schedules of Atlas P2. *See* Ex. D at 125-133.

38.      Jeanette and Schiller are well aware that P2 Portfolio is an asset of the estate, and were provided documents evidencing same in the data room.

39.      Thus, despite's Jeanette's representation in the Motion that she is not seeking *any* relief against the Debtors, she in fact, sought direct relief against the Debtors' property.

40.      After a brief *ex parte* hearing between only Schiller and the Judge, the Illinois Divorce Court entered the Order verbatim as prepared by Jeanette and Schiller. Attached as **Exhibit E** is a copy of the transcript of the *ex parte* hearing on May 13, 2025.

41.      In addition to seeking direct relief against the Debtors and their property, the Receivership Order carefully does *not* carve out all property of Debtors' estates from the mandates of the Order – only paying lip service through mention of "control or possession of ***the assets that has [sic] filed for bankruptcy*** in the Southern District of Florida including Ivankovich Family

LLC, A&O Family LLC (Florida), and A&O Family LLC (Illinois)". ¶ 3.[8] The peculiar and obtuse phrasing could easily be interpreted only as preventing the receiver from actually taking control or possession of the Debtor <u>entities themselves</u>, but not all property of the estates.  The extremely broad and overreaching provisions could be interpreted as permitting the receiver to take control over the P5 Entities, Debtor A&O Family's loaned funds to these P5 Entities,[9] as well as other interests of Debtors in property.  Indeed, the Receivership Order expressly directs the Receiver to take control of Overlook Managing Member LLC, despite Jeanette having received a documents showing the Debtor A&O FL's interest in that entity, as well as the interest it has, based on the plan obligations of Overlook's subsidiaries, the P5 Entities.

42.      In violation of Illinois law, the Receivership Order waives security or bond ex parte and provides exculpation for all but "willful and wanton acts and omissions" and complete indemnification of the Receiver.[10] (¶¶ 19, 20.) Paired together, if the Receiver takes control of a

---

[8] As this Court is well aware, an "asset" does not file bankruptcy, an entity does, but the property of the bankruptcy estate which is subject to the automatic stay is broadly defined under 11 U.S.C.§ 541 to encompass all legal and equitable interests of the debtor in property as of the commencement of the case.

[9] Indeed, the Receiver has already frozen the accounts of the P5 Entities, and initially froze the account containing the Debtor A&O Family's loaned funds to these P5 Entities. As of the filing of this Motion, only the freeze on the account containing Debtor A&O Family's loaned funds to these P5 Entities has been released.

[10] Dispensing with a bond absent a hearing, and total indemnification, is not even permissible under Illinois law, further evidencing the problems with *ex parte* proceedings:

735 ILCS 5/2-415) (from Ch. 110, par. 2-415)

Sec. 2-415. Appointment of and actions against receivers. (a) Before any receiver shall be appointed the party making the application shall give bond to the adverse party in such penalty as the court may order and with security to be approved by the court conditioned to pay all damages including reasonable attorney's fees sustained by reason of the appointment and acts of such receiver, in case the appointment of such receiver is revoked or set aside. <u>Bond need not be required, when for good cause shown, and upon notice and full hearing,</u> the court is of the opinion that a receiver ought to be appointed without such bond.

(b) On an application for the appointment of a receiver, the court may, in lieu of appointing a receiver, permit the party in possession to retain such possession upon giving bond with such penalty and with such security and upon such condition as the court may order and approve; and the court may remove a receiver and restore the property to the possession of the party from whom it was taken upon the giving of a like bond.

(c) <u>Every receiver of any property appointed by any court of this State may be sued in respect of any act</u> or transaction of the receiver in carrying on the business connected with the property, without the previous leave of the court in which the receiver was appointed; but the action shall be subject to the jurisdiction of the court in which the receiver was appointed, so far as the same is necessary to the ends of justice.

(Source: P.A. 83-707.)

property of Debtors and negligently burns it to the ground or dissipates it to a recipient who can never repay same, there is literally zero recourse for Debtors or their creditors. There are numerous other dangers to the Receivership Order, such as giving unbridled authority to sell assets for 1/3 less than their fair market value (as determined by the Receiver himself) without any judicial oversight.

43.    The Receiver has attempted to control the P5 Portfolio, and various bank accounts of the P5 Portfolio.  The property manager has confirmed that operating and rents accounts have been frozen. Attached as **Exhibit F** is a declaration from the property manager. Thus, the plan guarantors' undertaking, which is under the supervision of this Court, could be in jeopardy to the detriment of all creditors, and exclusively serve Jeanette.

44.    Debtors recognize the emotional history in this bitter divorce proceeding, but in this proceeding, Debtors have preserved the status quo of the estate property, attempted to settle multiple creditors' disputed claims through significant efforts and financial analyses, and even absent settlement, have a proposed a surplus plan where Jeanette's disputed support claim will be pre-paid even prior to allowance. Jeanette and Schiller's willful stay violations to obtain control and possession over plan funding assets, with no notice or due process to the nondebtors affected, was designed to interfere with the bankruptcy administration and property of the estates, and endanger all creditors' interests in distribution, to their sole benefit.  Jeanette and Schiller should not be above the rules of the automatic stay.

45.    Notably, Debtors had several meet-and-confers with Jeanette's and Schiller's counsel about the relief sought in the Third Party Complaint and concerns it was attempting to reach property of the estates.  A copy of these emails are attached as **Exhibit G**. Prior to filing this Motion, Debtors attempted to confer with Jeanette's and Schiller's counsel, but were unable to do

14

so. The discussions which preceded the *ex parte* submissions of the receivership order make Jeanette and Schiller's stay violations all the more willful. Debtors also contacted the Receiver concerning his assertion of control over the P5 Entities' accounts, and a copy of these emails are attached as **Exhibit H**. Although the Receiver indicated he has notified the bank to release said accounts, as of the filing of this Motion only one account has been released that contains the loaned funds from Debtor A&O FL.

**C.    Jeanette's Attempt to Exert Control Over Debtor's Property Interest in the Secured Loan to the P5 Entities is Denied, But She Intervenes to Take Control Over Debtor's Collateral for the Loan**

46.    In the course of this case, and over Jeanette's and Schiller's objection, the Court authorized Debtor A&O FL to make a loan to the record owners of three Texas apartment complexes known as the "P-5 Portfolio": Pilgrim Warwick Owner LLC, Pilgrim Coulter Owner, LLC, Pilgrim Windtree Owner, LLC ("P-5 Entities") (ECF No. 149) (the "Cash Collateral Motion"), which loan was secured by all of the assets of the P-5 Entities, including deeds of trust on the three properties.

47.    The Cash Collateral Motion explained A&O FL's interest in making the loan, given its previous investments in the P-5 Entities, the amounts loaned would pay taxes, insurance, and save the properties from tax sales that would wipe out the investments completely. In addition, the loan would be used to improve the real properties and would add value to the plan, as the P-5 Entities agreed to be plan guarantors of A&O FL's obligations.

48.    Jeanette opposed the Cash Collateral Motion, (ECF No. 168), arguing that she had an interest in the RBC account that A&O FL proposed to make the loan from, under multiple theories, including by: (i) a lien by a citation under Illinois law, (ii) a potential future ruling that A&O FL's equity that might be deemed marital property, or (iii) a derivative interest through

Steven as marital property. *See* Transcript of November 13, 2024 hearing, attached as **Exhibit I** at p. 22-24.  Debtors countered that there was no property dispute pending, and any interest Jeanette might have was adequately protected by, *inter alia*, a replacement lien in the security interests A&O FL received in the P5 Entities' property, which property included escrowed funds pending in the Northern District of Illinois. *Id*. at 10, 45.

49.    Jeanette also contended that the Bankruptcy Court should deny the Cash Collateral Motion as the Bankruptcy Court would not have jurisdiction over the P5 Entities, *see* Ex. I at 27, but that argument was also rejected by the Court. *Id*. at 49.

50.    Jeanette's objections to the Cash Collateral Motion  were overruled. At the hearing on the Cash Collateral Motion, the Court again repeated, as at the Stay Relief Hearing, that "**ultimately jurisdiction over property of the estate is in this court**." *See* Ex. I at p. 24. The Court found that Jeanette's interests in the RBC account, if any, were adequately protected by the proposed replacement liens. *Id*. at p. 48. Further, the Court determined that the circumstances of the loan, including the promise of the P5 Entities to undertake to fund plan obligations of A&O FL, demonstrated the loan was appropriate. *Id*. at 49.  The Bankruptcy Court specifically ordered that the P5 Entities were subject to the jurisdiction of the Bankruptcy Court for the loan and related enforcement of the plan guaranty obligation. *Id*. at 49; ECF No. 177.

51.    After the entry of the Order granting the Cash Collateral Motion, Jeanette did not seek turnover of the remaining funds in A&O FL's RBC account, by adversary proceeding or otherwise. Nor did she challenge the Court's jurisdiction asserted over the P5 Entities, or the Cash Collateral Order granting her a replacement lien in the security interests A&O FL received for the loan (the "DIP Loan Documents") to the same validity, priority, and extent, if any, that she had in the RBC account.

52.     However, Jeanette subsequently intervened to claim an interest in the P5 Entities'
property of the P5 Entities in a case styled *Zhu Zhai Holdings Limited et al v. Steven Ivankovich*,
Case No. 2020-CV-4985 pending in the Northern District of Illinois (the "Escrow Proceeding").
In the Escrow Proceeding, a creditor of Steven Ivankovich claimed entitlement to $1.5 million of
proceeds from an escrow account maintained by a lender of the P-5 Entities.

53.     These proceeds would have been disbursed to the P-5 Entities by their former lender
post-closing, and the P-5 Entities requested disbursement of such funds.  Jeanette's intervention in
the Escrow Proceeding, after the Cash Collateral Order, was an attempt to collect property that is
the collateral of the Debtors, without first obtaining stay relief.

54.     On May 14, 2025, the Special Master in the Escrow Proceeding issued a Report
and Recommendation ("Escrow Report") divesting the P-5 Entities of their interest in the escrowed
funds based on a determination that the funds were "Steven's property." A copy of the Escrow
Report is attached as **Exhibit J**. However crucially, in making that determination, the Special
Master apparently received arguments from Jeanette as to the ownership of property of the
Debtors, specifically the sale proceeds which were in part transferred to Debtor A&O IL.

55.     The Special Master decided that because he would deem such proceeds "Steven's
property" based on the evidence Jeanette presented, then these escrowed proceeds would also be
deemed "Steven's property."  Again, Jeanette circumvented the jurisdiction of this Court to decide
the core issue of ownership of Debtors' property, and argued it in an outside proceeding to which
Debtor A&O IL was not joined.

**D.**      **Debtors File a Surplus Plan with Prepayment of Jeanette's Claim Prior to Allowance**

56.      Although two judicial settlement conferences were conducted, Debtors have not reached an agreement with Jeanette and Schiller thus far.

57.      Nevertheless, the progress in the bankruptcy case has been substantial.  Debtors have filed a plan and disclosure statement, which has since been amended to provide even more favorable treatment to Jeanette by proposing Drs. Ivankovich fund a trust up front to prepay her support claim against Debtors, with no clawback provisions if the claim is ultimately not allowed.

58.      Jeanette has effectively ignored Debtors' good faith attempts to provide for payment of the support claim in full, and the Doctors' offers to prepay such claim, and, at the last hearing, asserted that she should be entitled to continue discovery of every detail of every asset and interest of Debtors notwithstanding the Debtors' proposal to pay any allowed claim in full.

59.      To that end, Jeanette and Schiller continue to pursue scorched earth litigation, which culminated in the *ex parte* motion to appoint a receiver and Receivership Order – both are violations of the stay and should be deemed *void ab initio* as to Debtors and their property.

## LEGAL STANDARD

60.      Section 362 of the Bankruptcy Code provides a debtor with a breathing spell from creditors, stopping all collection efforts, harassment, and foreclosure actions. *Ellison v. Northwest Eng'g Co.*, 707 F. 2d 1310, 1311 (11th Cir. 1983). The automatic stay remains in place until entry or denial of discharge or, alternatively, until dismissal or closure of a bankruptcy case.

61.      In particular, Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

62.      "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a).

63.    A stay violation is willful if the violating party (1) knew the automatic stay was in effect, and (2) intended the actions that violated the stay. *In re Lyubarsky*, 615 B.R. 924, 929 (Bankr. S.D. Fla. 2020) (citing *Jove Eng'g v. IRS (In re Jove Eng'g, Inc.*), 92 F.3d 1539, 1555 (11th Cir. 1996)). In those instances, § 362(k) permits an injured individual to recover actual damages, including costs and attorneys' fees. *Id*. at 934.

64.    It does not matter whether the violator specifically intended to violate the stay; all that matters is that the violator intended to perform the act. *In re Daya Medicals, Inc*., 560 B.R. 855, 859 (Bankr. S.D. Fla. 2016) (internal citations omitted). In some circumstances, injured debtors may also recover punitive damages. § 362(k); 615 B.R. at 929.

65.    As this Court has previously observed, "continuing to litigate any action in state court while a bankruptcy case is pending without first seeking leave of the bankruptcy court is likely to lead to trouble." *In re: James Meredith*, No. 24-19263-MAM, 2025 WL 1348621, at *3 (Bankr. S.D. Fla. May 8, 2025).  "If a creditor is not sure whether the property belongs to the estate, the proper course is to move for stay relief first, secure an appropriate order, and then continue litigation, not the other way around." *Id*.

66.    Here, the circumstances are even more alarming, given that Creditors specifically solicited stay relief to pursue estate property in the pending divorce proceedings, but were denied. As detailed below, the Creditors' actions were willful violations of the stay.

**ARGUMENT AND INCORPORATED MEMORANDUM OF LAW**

**A.    Creditors' Third Party Complaint Violated the Automatic Stay By Requesting a Determination, and Recovery, of Property of the Estate**

67.    Although certain proceedings for dissolution of a marriage and collection of domestic support obligations are excepted from the scope of the automatic stay's prohibition on commencing or continuing a proceeding, that exception only extends to cover property that is *not*

"property of the estate." *See* Section § 362(b)(2)(A) and (B); *In re Greenhouse*, 641 B.R. 711, 716 (Bankr. S.D. Fla. 2022).

68.    This is not a new issue in this case.  As the Court stated at two separate hearings, including the hearing on Jeanette's Stay Relief Motion, this Court has "core jurisdiction" to determine "ownership over assets of the estate" and "property of the estate", and such proceedings are not excepted from the automatic stay.  And in this case, the Court expressly declined to lift the stay for Jeanette to pursue property of the estates, as she had requested, including expressly denying Jeanette relief from stay to pursue the appeal of the Preliminary Injunction concerning the Celadon Accounts.

69.    Nevertheless, the Third Party Complaint seeks a determination of Jeanette's interest in the actual assets of Debtors (as opposed to just the equity of Debtors), by arguing Jeanette has both a "marital interest" and an "equitable interest" in certain "funds" from a property sale, alleges that those funds in which she had an interest were transferred to Debtor A&O Family LLC[11], and others, demands that all transfers of those funds be avoided and recovered for her, and/or a receiver appointed over them. *See* Ex. B (Third Party Complaint), ¶ 56, 61, 63, 70.  Critically, Jeanette does not exclude from her request for turnover or receiver those funds which remain in Debtor A&O IL's, or any other Debtor's, possession, and it has been admitted from the start of this bankruptcy proceeding that some of these funds cited in the Third Party Complaint remain in Debtors' investment accounts (ECF No. 12 at 2.)

---

[11] Though Jeanette does not specify which A&O Family entity, in an intentional effort to obfuscate the differences between the two entities, she is well aware based on documents produced that the relevant A&O entity was Debtor A&O IL.

70.     Thus, on its face, the Third Party Complaint seeks to "obtain possession" over "property of the estate" in violation of the automatic stay, regardless of the fact that Debtors are not named parties.

71.     Jeanette also asserts an interest in recovering Debtor A&O IL's assets based on a fraudulent transfer theory. *See* Ex. B (Third Party Complaint), ¶ 55, 56, 61, 65-67, 70. Fraudulent transfer actions seeking recovery of property are clear stay violations as acts to obtain possession of the estate within § 362(a)(3) and to "recover a claim against the debtor that arose before the commencement of the case." § 362(a)(1). Even if not directed at a debtor, fraudulent transfer claims against subsequent transferees may nonetheless be considered estate property, or alternatively actions to recover claims against the debtor within the meaning of § 362(a)(1). *Cf. In re MortgageAmerica Corp.,* 714 F.2d 1266 (5th Cir. 1983) (considering fraudulent transfer actions as property of the estate because the debtor is considered to have a continuing legal or equitable interest in the property fraudulently transferred) with *In re Colonial Realty Co.,* 980 F.2d 125, 131–32 (2d Cir. 1992) ("[T]hird-party action[s] to recover fraudulently transferred property [are] properly regarded as undertaken to recover a claim against the debtor and [are] subject to the automatic stay pursuant to § 362(a)(1)." (citation and internal quotations omitted)). In either case, stay relief is required, and here none was obtained and the Stay Relief Motion was denied.

72.     The relief sought by Jeanette from the Illinois Divorce Court is especially troubling since Jeanette *did not* file a proof of claim in the A&O IL bankruptcy case on behalf of Overlook derivatively as a purported shareholder, or directly in her own name as a creditor of or interest holder in Overlook based on the claims she sets forth in her Third Party Complaint. Jeanette is in essence seeking relief in the Divorce Court that violates the automatic stay in order to pursue a claim that Jeanette knows is barred because of her failure to timely file a proof of claim.

73.    The filing of the Stay Relief Motion itself is an admission of the fact that her actions in the Third Party Complaint were stay violations.  However, when stay relief was not granted, Jeanette continued to proceed with an action for turnover of, and appointment of a receiver for, Debtors' property by the Third Party Complaint, which directly implicated property of the Debtors' estates.

74.    Because Jeanette had the benefit of the Court's ruling on her Stay Relief Motion, her continued attempts to control property of the Debtors' estates in other forums, by the Third Party Complaint, and most recently by the Receivership Order, constitute willful violations of the stay.

**B.    Creditors Violated the Automatic Stay by Requesting the Receivership Order Which Asserts Control Over Estate Property**

75.    Jeanette and Schiller also violated the automatic stay by moving for an *ex parte* Receivership Order which specifically solicited the receiver to take possession and control over Debtor Atlas P2's subsidiary, P2.

76.    Debtor Atlas P2's schedules clearly list P2 as a wholly-owned subsidiary of the Debtor. ECF No. 41 at 3. The periodic operating report has listed P2 as the property of Atlas P2. ECF Nos. 106, 261. No one has ever contested that Atlas P2 is the 100% owner of P2.

77.    The Receivership Order, which directs the receiver to "take control of …P2 Portfolio Managing Member LLC"  is a clear, willful exercise of control over property of the estate. § 362(a)(2).  Moreover, to the extent the Receivership Order can be interpreted to give the receiver the ability to take control of the P2 Celadon account, it would also constitute a stay violation given this Court's previous orders denying stay relief for Jeanette to proceed against this account, deeming Jeanette adequately protected, and asserting jurisdiction to determine whether this Celadon Account is property of the estate, and distributions from this account.  And, assertion

of control over a Celadon Account to recover Jeanette's claim against Atlas P2 from the Celadon

P2 Account, is in violation of § 362(a)(2).

78.     The inclusion of P2 specifically as an entity for the receiver to take control of (and

exclusion of Atlas P2 from the sentence directing the receiver to not take control of the bankruptcy

filers) is being done with the apparent purpose to circumvent this Court's ruling denying stay relief,

and the jurisdiction of this Court to determine ownership of P2's Celadon Account, which is the

subject of the pending adversary proceeding. Actions taken against nondebtors, with the intention

of wresting control of the Debtor's adversary proceeding and exerting pressure to have it

dismissed, constitute a violation of the automatic stay. *In re Congregation Birchos Yosef*, 535 B.R.

629, 633-34 (Bankr. S.D.N.Y. 2015).

79.     Courts have often found actions to appoint receivers to violate the stay.  Actions to

appoint a receiver violate the automatic stay where they interfere with property rights of debtors,

or interfere with debtor's right to share in the proceeds of claims. *Matter of Edisto Res. Corp.*, 158

B.R. 954, 957 (Bankr. D. Del. 1993) (a receiver's assertion of management rights of a debtor

majority-shareholder over a non-debtor corporation was a stay violation); *Fed. Home Loan Mortg.

Corp. v. Holme Circle Realty Corp.*, 146 B.R. 135, 137 (E.D. Pa. 1992); *In re Daya Medicals, Inc.*,

560 B.R. 855, 864 (Bankr. S.D. Fla. 2016).

80.     Furthermore, even actions of a receiver that do not directly threaten to deplete the

estate (as the Receivership Order actually does here), can "imperil the orderly administration of

the bankruptcy proceeding" *Matter of Rimsat, Ltd.*, 98 F.3d 956, 961 (7th Cir. 1996) (receiver's

actions to enlarge powers over assets of debtor was violation of automatic stay). Where actions

against non-debtor parties that would detrimentally affect the bankruptcy estate or would impair

the debtor's opportunity to reorganize, a court may grant injunctive relief to prevent same under Section 105(a), *In re Casner*, 302 B.R. 695, 701 (Bankr. E.D. Cal. 2003).

81.     This Court already denied stay relief thus effectively determining the stay extended to the P2 Celadon Account. To the extent the automatic stay does not extend to the P2 Celadon Account for the foregoing reasons, the Court should extend the stay. Other creditors of P2 and Atlas P2 have interests, and the P2 Celadon account has been committed to fund the plan.

82.     In addition to the specific stay violation against Atlas's interest in P2, and the P2 Celadon Account, the Receivership Order violates the stay by potentially opening the door to the receiver taking control over Overlook, the P5 Entities, and their assets, which currently include funds of A&O FL for the court-approved DIP loan.  Given the P5 Entities are subject to the jurisdiction of this bankruptcy court, have committed to guaranty the plan and provide documents to the bankruptcy court on an ongoing basis, A&O FL has an equitable interest in Overlook, and A&O FL has a perfected interest in the P5 Entities' property, any attempt to take control of them – directly or through Overlook Managing Member LLC is a violation of the automatic stay. And, given that Jeanette initially opposed the Cash Collateral Motion, an action to wrest control of a plan guarantor to thwart the plan constitutes an attempt to re-litigate and evade the prior decisions of the Bankruptcy Court. Just as this Court denied Jeanette's prior attempt to let the P5 Entities' assets completely wither on the vine and be liquidated at a tax sale, here too, under the circumstances in these proceedings, the Court should deem the stay applies or extend the stay to prevent a significant devaluation or total loss of the asset which would prejudice all creditors. Further, the Court should require the Receiver immediately release any holds against any of the P5 accounts and authorize the existing management of P5 to complete all renovations authorized by the Court under the Cash Collateral Order without any interference from the Receiver.

83.     The Receivership Order is incredibly broad, and proposes to impose a myriad of obligations upon Debtors that are inconsistent with this Court's exclusive jurisdiction over the estate the automatic stay, and discovery rules.  In all respects, and having been obtained in violation of the automatic stay, the Receivership Order should be deemed *void ab initio* as to Debtors and all property of the Debtors' estates, i.e., all assets and entities in which the Debtors have a legal or equitable interest.

**C.     Creditors Willfully Violated the Stay by The Intervention Which Requested a Determination of and Asserted Control Over Debtors' Property**

84.     Jeanette and Schiller also violated the automatic stay by intervening in a case pending before a Special Master involving approximately $1.5 million of proceeds from an escrow account, which proceeds are property of affiliates of Debtors that operate multi-family apartments in Texas known as the "P-5 Portfolio", and pursuing a determination that the P5 Entities, who were entitled to the escrowed funds (which would have been collateral for the loan to A&O FL) did not own them. Jeanette's actions ultimately sought to impair collateral for the Debtor A&O FL's loan to the P-5 Entities, and obtain priority status for herself.

85.     A "direct attempt to secure preferred status for a discrete group of creditors runs directly counter to the distribution and oversight scheme established by the Code."  *In re Ionosphere Clubs, Inc*., 111 B.R. 423, 433 (Bankr. S.D.N.Y. 1990*), aff'd in part sub nom. In re Ionosphere Clubs Inc*., 124 B.R. 635 (S.D.N.Y. 1991).  In *Ionosphere Clubs, Inc*., a group of pilots filed a lawsuit requesting that the Court freeze funds of the Debtor's airlines "until the question is decided whether or not these monies belong to beneficiaries of the retirement plans."  *Id*.  The Bankruptcy Court held this was an unequivocal violation of the automatic stay, as an action to seek to exercise control over property of the Estate.  Moreover, the Bankruptcy Court rejected the creditors' contention that the assets "were not Eastern's assets but…are assets of the [creditors]".

86.     The same situation is present here. Jeanette and Schiller sought a determination that the escrowed funds in which P5 Entities had a legal interest, which would have been further collateral for the A&O FL loan and thus a property interest for a Debtor, were not the P5 Entities' assets, but were assets owned by Steven Ivankovich.  This was a violation of the automatic stay as an action seeking control over  property of the estate.

87.     Further, as evidenced by the Escrow Report by the Special Master issued on May 14, 2025, which indeed divested the P5 Entities of their interest and Debtor A&O of its property, Jeanette's showing of proof was not limited to just the escrowed funds.  Instead, Jeanette and Schiller presented evidence about transfers to the Debtors, and argued to the Special Master that Steven owned such funds, despite this Court's prior pronouncements that it had jurisdiction to determine ownership and what was, or was not, property of the estate.  Now, Jeanette and Schiller will undoubtedly attempt to argue this Order here.  To the extent that the Order violated the stay, the Escrow Report should be deemed void *ab initio* as to the Debtors.

## CERTIFICATE OF CONFERRAL

88.     Prior to filing this Motion, undersigned made several attempts to confer with counsel for Creditors, identifying the various stay violations, herein but received no response necessitating the filing of this Motion.

## CONCLUSION

"The entirety of bankruptcy jurisprudence in the United States, including the Bankruptcy Act, the present Bankruptcy Code, and more than 200 years of case law including numerous Supreme Court decisions, hammers home the idea that bankruptcy is at its core an equitable proceeding dealing with a specific *res*, the bankruptcy estate*." In re CCH John Eagan II Homes, L.P.*, No. 15-31082-EPK, 2016 WL 6088134, at *5 (Bankr. S.D. Fla. Oct. 18, 2016).  Jeanette and

Schiller's recent actions, as outlined herein, seek in multiple ways to circumvent the function that is the most "core to the bankruptcy process" of "the determination of what is, and what is not, included in the bankruptcy estate." *Id.* For the reasons stated here, the Court should order Jeanette and Schiller to show cause why Jeanette should not be sanctioned, and order that all actions taken in violation of or resulting from the violation of the automatic stay, including the Receivership Order and Escrow Report, are void *ab initio*.

The Debtors filed this case to ensure that a single forum would determine, if necessary, what is property of the estates, with appropriate due process, and avoid the piecemeal strategy of Jeanette and Schiller which now, more than once, involves orders entered without notice and with no consideration of any creditors of the estates other than Jeanette and Schiller. Now at the veritable finish line where all claims will be fully paid, they are attempting to derail the administration of the case and obtain a more superior footing to Debtors' other creditors, with no limits or safeguards. The Court should sanction the violations of the automatic stay.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (i) show cause against Jeanette Ivankovich ("Jeanette") and Schiller DuCanto & Fleck LLP ("Schiller")[12] and Neal Levin ("Receiver") as to why Jeanette should not be sanctioned for violating the automatic stay, (ii) directing Levin to release any holds against the accounts of the P5 Entities and authorize existing management of the P5 Entities to complete all court-authorized renovations under the existing Cash Collateral Order without interference, and (iii) for other appropriate relief deeming the orders obtained in violation of the automatic stay void and unenforceable.

---

[12] Debtors may refer to Jeanette and Schiller as "Creditors" but assert that their claims are disputed and contingent.

Dated: May 20, 2025

By: */s/ Eyal Berger*
Eyal Berger, Esq.
Florida Bar Number: 0011069
Email: eyal.berger@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL  33301
Tel:  954-463-2700
Fax:  954-463-2224
*Counsel for Debtors-in-Possession*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 20, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served (i) on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case below; and (ii) on May 21, 2025 by U.S. Mail to the parties listed on the attached creditor mailing matrices.

By:   */s/ Eyal Berger*
Eyal Berger, Esq.

## SERVICE LIST

**24-15755-LMI Notice will be electronically mailed to:**

eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Debtor A & O Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Debtor Ivankovich Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Debtor A&O Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Interested Party A&O Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Debtor Altas P2 Managing Member LLC

Eyal Berger, Esq. on behalf of Interested Party A&O Family LLC (Illinois)

eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Interested Party Altas
P2 Managing Member LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff A & O
Family LLC (IL)
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff A&O Family
LLC (FL)
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Atlas P2
Managing Member, LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Ivankovich
Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Anthony
Ivankovich
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Olga
Ivankovich
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Steven J Brotman on behalf of Interested Party P-5
GRA LLC
steven.brotman@troutman.com,
Irene.rabba@troutman.com;AutoDocket@troutman.c
om;Pierce.rigney@troutman.com;Gary.marsh@trout
man.com;Matthew.brooks@troutman.com

Michael S Budwick, Esq on behalf of Defendant
Steven Ivankovich
mbudwick@melandbudwick.com,
ltannenbaum@melandbudwick.com;mrbnefs@yahoo

.com;mbudwick@ecf.courtdrive.com;ltannenbaum@
ecf.courtdrive.com;phornia@ecf.courtdrive.com

Michael S Budwick, Esq on behalf of Interested Party
Steven Ivankovich
mbudwick@melandbudwick.com,
ltannenbaum@melandbudwick.com;mrbnefs@yahoo
.com;mbudwick@ecf.courtdrive.com;ltannenbaum@
ecf.courtdrive.com;phornia@ecf.courtdrive.com

Michael G Busenkell on behalf of Interested Party P-
5 GRA LLC
mbusenkell@gsbblaw.com, blehman@gsbblaw.com

Heidi A Feinman on behalf of U.S. Trustee Office of
the US Trustee
Heidi.A.Feinman@usdoj.gov

Alexa Garcia Chinchilla on behalf of Interested Party
Anthony Ivankovich
achinchilla@kttlaw.com

Alexa Garcia Chinchilla on behalf of Interested Party
Olga Ivankovich
achinchilla@kttlaw.com

Alexa Garcia Chinchilla on behalf of Plaintiff
Anthony Ivankovich
achinchilla@kttlaw.com

Alexa Garcia Chinchilla on behalf of Plaintiff Olga
Ivankovich
achinchilla@kttlaw.com

Dan L Gold on behalf of U.S. Trustee Office of the
US Trustee
Dan.L.Gold@usdoj.gov

Gary A Goldstein on behalf of Debtor A & O Family
LLC
gagpa@aol.com, michael@rglawfirm.us

Gary A Goldstein on behalf of Debtor A&O Family
LLC
gagpa@aol.com, michael@rglawfirm.us

Gary A Goldstein on behalf of Debtor Altas P2
Managing Member LLC
gagpa@aol.com, michael@rglawfirm.us

Gary A Goldstein on behalf of Debtor Ivankovich
Family LLC
gagpa@aol.com, michael@rglawfirm.us

Amanda Klopp on behalf of Debtor A & O Family
LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Debtor A&O Family
LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Debtor Altas P2
Managing Member LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Debtor Ivankovich
Family LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Interested Party A&O
Family LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Interested Party A&O
Family LLC (Illiniois)
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Interested Party Altas P2
Managing Member LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff A & O Family
LLC (IL)
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff A&O Family
LLC (FL)
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff Atlas P2
Managing Member, LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff Ivankovich
Family LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Ari Newman, Esq. on behalf of Interested Party RBC
Capital Markets, LLC and Royal Bank of Canada
newmanar@gtlaw.com,
perezan@gtlaw.com;mialitdock@gtlaw.com;miaecfb
ky@gtlaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Darrell Winston Payne on behalf of Creditor Schiller
DuCanto & Fleck LLP
dpayne@stearnsweaver.com,
cveguilla@stearnsweaver.com

Darrell Winston Payne on behalf of Creditor Jeanette
Ivankovich
dpayne@stearnsweaver.com,
cveguilla@stearnsweaver.com

Darrell Winston Payne on behalf of Defendant
Schiller Ducanto & Fleck, LLP
dpayne@stearnsweaver.com,
cveguilla@stearnsweaver.com

Darrell Winston Payne on behalf of Defendant
Jeanette Ivankovich
dpayne@stearnsweaver.com,
cveguilla@stearnsweaver.com

Patricia A Redmond on behalf of Creditor Schiller
DuCanto & Fleck LLP
predmond@stearnsweaver.com,
jmartinez@stearnsweaver.com;mfernandez@stearns
weaver.com

Patricia A Redmond on behalf of Creditor Jeanette
Ivankovich
predmond@stearnsweaver.com,

jmartinez@stearnsweaver.com;mfernandez@stearns
weaver.com

Patricia A Redmond on behalf of Defendant Schiller
Ducanto & Fleck, LLP
predmond@stearnsweaver.com,
jmartinez@stearnsweaver.com;mfernandez@stearns
weaver.com

Patricia A Redmond on behalf of Defendant Jeanette
Ivankovich
predmond@stearnsweaver.com,
jmartinez@stearnsweaver.com;mfernandez@stearns
weaver.com

David L Rosendorf, Esq on behalf of Interested Party
Anthony Ivankovich
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Interested Party
Olga Ivankovich
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff A & O
Family LLC (IL)
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff A&O
Family LLC (FL)
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff Atlas
P2 Managing Member, LLC
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff
Ivankovich Family LLC
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff
Anthony Ivankovich
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff Olga
Ivankovich
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

Luis Salazar, Esq. on behalf of Interested Party
Township Capital, LLC

Luis@Salazar.Law, luis-salazar-
4791@ecf.pacerpro.com;Ceide@salazar.law;Lee-
Sin@Salazar.Law;Suarez@Salazar.Law;Lorenzo@S
alazar.Law;MSalazar@Salazar.Law

Luis Salazar, Esq. on behalf of Interested Party
Township GP Fund II, LP
Luis@Salazar.Law, luis-salazar-
4791@ecf.pacerpro.com;Ceide@salazar.law;Lee-
Sin@Salazar.Law;Suarez@Salazar.Law;Lorenzo@S
alazar.Law;MSalazar@Salazar.Law

Luis Salazar, Esq. on behalf of Interested Party
Township Orlando, LLC
Luis@Salazar.Law, luis-salazar-
4791@ecf.pacerpro.com;Ceide@salazar.law;Lee-
Sin@Salazar.Law;Suarez@Salazar.Law;Lorenzo@S
alazar.Law;MSalazar@Salazar.Law

**VIA U.S. MAIL**

ATTACHED CREDITOR MAILING
MATRICES

4

Label Matrix for local noticing
113C-1
Case 24-15755-LMI
Southern District of Florida
Miami
Tue May 20 17:25:28 EDT 2025

A&O Family LLC
791 Crandon Blvd Ph 6
Key Biscayne, FL 33149-2202

A&O Family LLC (Illiniois)
791 Crandon Blvd Ph 6
Key Biscayne, FL 33149-2202

Altas P2 Managing Member LLC
791 Crandon Blvd Ph 6
Key Biscayne, FL 33149-2202

Ivankovich Family LLC
791 Crandon Blvd Ph 6
Key Biscayne, FL 33149-2202

Schiller DuCanto & Fleck LLP
c/o Patricia A. Redmond, Esq.
Stearns Weaver Miller Weissler Alhadeff
Stearns Weaver Miller Weissler Alhadeff
Miami, FL 33130 United States

Township Capital, LLC
c/o Salazar Law, LLP
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129-1458

Township GP Fund II, LP
c/o Salazar Law, LLP
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129-1458

Township Orlando, LLC
c/o Salazar Law, LLP
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129-1458

Anthony & Olga Ivankovich
c/o David L. Rosendorf, Esq.
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd.,9th Floor
Miami, FL 33134-6039

Anthony Ivankovich
c/o David L. Rosendorf, Esq.
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd.,9th Floor
Miami, FL 33134-6039

Celadon Financial Group, LLC
89 Headquarters Plaza North
PMB 1483
10 North Park Place
Morristown, NJ 07960-7120

Celedon Financial Group
Paul Waldman, Esquire
10 North Park Place, Suite 420
Stirling, NJ 07980

Chuchak & Tescon PC
620 South Riverside Plaza, Suite 1700
Chicago, IL 60606

Chuhak & Tecson, P.C., Attn: Michael Debre
120 S. Riverside Plaza, Suite 1700
Chicago, IL 60606-3911

Delaware Taxing Authority
Division of Revenue
820 N. French Street
Wilmington, DE 19801-3530

Florida Department of Revenue
Bankruptcy Unit
PO Box 6668
Tallahassee, FL 32314-6668

(p)ILLINOIS DEPARTMENT OF REVENUE
BANKRUPTCY UNIT
PO BOX 19035
SPRINGFIELD IL 62794-9035

Internal Revenue Service
Department of Treasury
P.O. Box 7346
Philadelphia, PA 19101-7346

Jeanette Ivankovich
c/o Schiller DuCanto & Fleck LP
Tanya J Stanish, Esq.
321 North Clark Street
Chicago, IL 60654-4714

Jeanette lvankovich
c/o Patricia A. Redmond, Esq.
150 West Flagler St.
Suite 2200
Miami, FL 33130-1545

Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Olga Ivankovich
c/o David L. Rosendorf, Esq.
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd.,9th Floor
Miami, FL 33134-6039

P-5 GRA LLC
Keith McKenna, Esquire
11 Broadway, Suite 615
New York, NY 10004-1490

Pami Grand Too LLC
c/o Douglas Johnson, Esquire
203 N La Salle Street, Suite 2100
Chicago, IL 60601-1226

Paul Waldman
Celadon Financial Group
89 Headquarters Plaza North PMB 1483
Morristown, NJ 07960-6834

Royal Bank of Canada
c/o RBC Capital Markets, LLC
Credit Operations
250 Nicollet Mall, Suite 2000
Minneapolis, MN 55401-2802

Schiller DuCanto & Fleck LLP
c/o Patricia A. Redmond, Esq.
150 West Flagler St.
Suite 2200
Miami, FL 33130-1545

Schiller DuCanto & Fleck LP
Attn: Tanya J Stanish Esq
321 North Clark Street
Chicago, IL 60654-4714

Township Capital LLC
c/o David Safvati, Esquire
Sklar Kirsh LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

Township Capital, LLC
c/o Michael D. Sirota, Esq.
25 Main Street
Court Plaza North
Hackensack, NJ 07601-7015

Township GP Fund II LP
c/o David Safvati, Esquire
Sklar Kirsh LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

Township GP Fund II, LP
c/o Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Township Orlando LLC
c/o David Safvati, Esquire
Sklar Kirsh LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

Township Orlando LLC
c/o Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Wedbush Securities, Inc.
c/o Clearing Services, Inc.
1000 Wilshire Blvd Ste 900
Los Angeles CA 90017-2466

Wedbush Securities, Inc.
c/o Clearing Services, Inc.
P.O. Box 30014
Los Angeles, CA 90030-0014

Amanda Klopp
Akerman LLP
777 South Flagler Dr Suite 1100
West Palm Beach, FL 33401-6172

Andrew Hahm
Mandell Hahm Advisory Group, Ltd.
1033 Skokie Blvd., Suite 330
Northbrook, IL 60062-4108

Bradley P. Lehman, Esq.
1201 N Orange St., Ste 300
Wilmington, DE 19801-1167

David M Bass
25 Main St
Hackensack, NJ 07601-7015

Eyal Berger Esq.
Akerman LLP
201 E Las Olas Blvd #1800
Ft Lauderdale, FL 33301-4442

Gary A Goldstein
111 S Calvert St 27 Flr
Baltimore, MD 21202-6146

Gary W. Marsh, Esq.
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, GA 30308-2305

Jeanette Ivankovich
c/o Patricia A. Redmond
150 West Flagler Street, Suite 200
Stearns Weaver Miller Weissler Alhadeff
Miami, FL 33130-1557

Jeffery M. Heftman
Schoenberg Finkel Beederman Bell Glazer
300 S. Wacker Drive
Suite 1500
Chicago, IL 60606-6762

Matthew D Elster
Beermann LLP
161 North Clark Street Suite 3000
Chicago, IL 60601-3346

(c)MATTHEW R. BROOKS, ESQ.
TROUTMAN PEPPER LOCKE LLP
875 3RD AVE FL 15
NEW YORK NY  10022-7254

Michael D Sirota
25 Main St
Court Plaza North
Hackensack, NJ 07601-7015

Morgan Handwerker
Schiller DuCanto & Fleck, LLP
321 N. Clark St., Suite 1200
Chicago, IL 60654-4758

Steven Ivankovich
c/o Michael S. Budwick, P.A.
Meland Budwick, P.A.
200 South Biscayne Blvd., Ste 3200
Miami, FL 33131-5323

Stuart A Neiberg
2401 NW Boca Raton Blvd
Boca Raton, FL 33431-6632

Tanya J. Stanish
Schiller DuCanto & Fleck, LLP
321 N. Clark St., Suite 1200
Chicago, IL 60654-4758

Vonn R. Christenson
Christenson Law Firm LLP
472 W Putnam Ave
Porterville, CA 93257-3321

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Illinois Department of Revenue
Bankruptcy Unit
P.O. Box 19035
Springfield, IL 62794


Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).


Matthew R. Brooks, Esq.
TROUTMAN PEPPER LOCKE LLP
875 Third Avenue
New York, NY 10022


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)P-5 GRA LLC                          (u)RBC Capital Markets, LLC and Royal Bank of          (u)Yacht Daddy, LLC


(u)Miami                                (u)Jeffrey Hefman, Esquire                             (d)Anthony Ivankovich
                                        Schoenberg Finkel Law Firm                             c/o David L. Rosendorf, Esq.
                                        300 S Walker Dr, Suite 1500                            Kozyak Tropin & Throckmorton LLP
                                        IL 60860-6000                                          2525 Ponce de Leon Blvd.
                                                                                               9th Floor
                                                                                               Miami, FL 33134-6039

(d)Olga Ivankovich                      End of Label Matrix
c/o David L. Rosendorf, Esq.            Mailable recipients     54
Kozyak Tropin & Throckmorton LLP        Bypassed recipients      7
2525 Ponce de Leon Blvd.                Total                   61
9th Floor
Miami, FL 33134-6039

Label Matrix for local noticing
113C-1
Case 24-15762-LMI
Southern District of Florida
Miami
Tue May 20 17:26:00 EDT 2025

A&O Family LLC
791 Crandon Blvd Ph 6
Key Biscayne, FL 33149-2202

Township Capital, LLC
c/o Salazar Law, LLP
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129-1458

Township GP Fund II, LP
c/o Salazar Law, LLP
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129-1458

Township Orlando, LLC
c/o Salazar Law, LLP
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129-1458

Anthony & Olga Ivankovich
c/o David L. Rosendorf, Esq.
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd.,9th Floor
Miami, FL 33134-6039

Celedon Financial Group
Paul Waldman, Esquire
10 North Park Place, Suite 420
Stirling, NJ 07980

Chuchak & Tescon PC
620 South Riverside Plaza, Suite 1700
Chicago, IL 60606

Chuhak & Tecson, P.C., Attn: Michael Debre
120 S. Riverside Plaza, Suite 1700
Chicago, IL 60606-3911

Florida Department of Revenue
Bankruptcy Unit
PO Box 6668
Tallahassee, FL 32314-6668

Internal Revenue Service
Department of Treasury
P.O. Box 7346
Philadelphia, PA 19101-7346

Jeanette Ivankovich
c/o Patricia Redmond, Esq.
150 West Flagler St.
Suite 2200
Miami, FL 33130-1545

Jeanette Ivankovich
c/o Schiller DuCanto & Fleck LP
Tanya J Stanish, Esq.
321 North Clark Street
Chicago, IL 60654-4714

Jeanette lvankovich
c/o Patricia A. Redmond, Esq.
150 West Flagler St.
Suite 2200
Miami, FL 33130-1545

Michael Busenkell
1201 N. Orange St.
Suite 300
Wilmington, DE 19801-1167

Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

P-5 GRA LLC
Keith McKenna, Esquire
11 Broadway, Suite 615
New York, NY 10004-1490

P-5 GRA, LLC
1201 N. Orange Street
Suite 300
Wilmington, DE 19801-1167

Pami Grand Too LLC
c/o Douglas Johnson, Esquire
203 N La Salle Street, Suite 2100
Chicago, IL 60601-1226

Royal Bank of Canada
c/o RBC Capital Markets, LLC
Credit Operations
250 Nicollet Mall Suite 2000
Minneapolis, MN 55401-2802

Schiller DuCanto & Fleck LLP
c/o Patricia A. Redmond, Esq.
150 West Flagler St.
Suite 2200
Miami, FL 33130-1545

Schiller DuCanto & Fleck LP
Attn: Tanya J Stanish Esq
321 North Clark Street
Chicago, IL 60654-4714

Township Capital LLC
c/o David Safvati, Esquire
Sklar Kirsh LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

Township Capital, LLC
c/o Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Township GP Fund II LP
c/o David Safvati, Esquire
Sklar Kirsh LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

Township GP Fund II, LP
c/o Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Township Orlando LLC
c/o David Safvati, Esquire
Sklar Kirsh LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

Township Orlando LLC
c/o Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Wedbush Securities, Inc.
c/o Clearing Services, Inc.
P.O. Box 30014
Los Angeles, CA 90030-0014

Amanda Klopp
Akerman LLP
777 South Flagler Dr Suite 1100
West Palm Beach, FL 33401-6172

Eyal Berger Esq.
Akerman LLP
201 E Las Olas Blvd #1800
Ft Lauderdale, FL 33301-4442

Gary A Goldstein
111 S Calvert St 27 Flr
Baltimore, MD 21202-6146

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

(u)Jeffrey Hefman, Esquire
Schoenberg Finkel Law Firm
300 S Walker Dr, Suite 1500
IL 60860-6000

(d)Royal Bank of Canada
c/o RBC Capital Markets, LLC
Credit Operations
250 Nicollet Mall, Suite 2000
Minneapolis, MN 55401-2802

End of Label Matrix
Mailable recipients    32
Bypassed recipients     3
Total                  35

```
Label Matrix for local noticing       A & O Family LLC                      Township Capital, LLC
113C-1                                 791 Crandon Blvd Ph 6                 c/o Salazar Law, LLP
Case 24-15767-LMI                      Key Biscayne, FL 33149-2202           2121 SW 3rd Avenue, Suite 200
Southern District of Florida                                                 Miami, FL 33129-1458
Miami
Tue May 20 17:26:30 EDT 2025


Township GP Fund II, LP                Township Orlando, LLC                 Anthony & Olga Ivankovich
c/o Salazar Law, LLP                   c/o Salazar Law, LLP                  c/o David L. Rosendorf, Esq.
2121 SW 3rd Avenue, Suite 200          2121 SW 3rd Avenue, Suite 200         Kozyak Tropin & Throckmorton, LLP
Miami, FL 33129-1458                   Miami, FL 33129-1458                  2525 Ponce de Leon Blvd.,9th Floor
                                                                             Miami, FL 33134-6039


Celedon Financial Group                Chuchak & Tescon PC                   Chuhak & Tecson, P.C., Attn: Michael Debre
Paul Waldman, Esquire                  620 South Riverside Plaza, Suite 1700 120 S. Riverside Plaza, Suite 1700
10 North Park Place, Suite 420         Chicago, IL 60606                     Chicago, IL 60606-3911
Stirling, NJ 07980


(p)ILLINOIS DEPARTMENT OF REVENUE      Internal Revenue Service              Jeanette Ivankovich
BANKRUPTCY UNIT                        Department of Treasury                c/o Patricia A. Redmond, Esq.
PO BOX 19035                           P.O. Box 7346                         150 West Flagler St.
SPRINGFIELD IL 62794-9035              Philadelphia, PA 19101-7346           Suite 2200
                                                                             Miami, FL 33130-1545


Jeanette Ivankovich                    Jeanette lvankovich                   Michael D. Sirota, Esq.
c/o Schiller DuCanto & Fleck LP        c/o Patricia A. Redmond, Esq.         Court Plaza North
Tanya J Stanish, Esq.                  150 West Flagler St.                  25 Main Street
321 North Clark Street                 Suite 2200                            Hackensack, NJ 07601-7083
Chicago, IL 60654-4714                 Miami, FL 33130-1545


Office of the US Trustee               P-5 GRA LLC                           Pami Grand Too LLC
51 S.W. 1st Ave.                       Keith McKenna, Esquire                c/o Douglas Johnson, Esquire
Suite 1204                             11 Broadway, Suite 615                203 N La Salle Street, Suite 2100
Miami, FL 33130-1614                   New York, NY 10004-1490               Chicago, IL 60601-1226


Schiller DuCanto & Fleck LLP           Schiller DuCanto & Fleck LP           Township Capital LLC
c/o Patricia A. Redmond, Esq.          Attn: Tanya J Stanish Esq             c/o David Safvati, Esquire
150 West Flagler St.                   321 North Clark Street                Sklar Kirsh LLP
Suite 2200                             Chicago, IL 60654-4714                1880 Century Park East, Suite 300
Miami, FL 33130-1545                                                         Los Angeles, CA 90067-1631


Township Capital, LLC                  Township GP Fund II LP                Township GP Fund II, LP
c/o Michael D. Sirota, Esq.            c/o David Safvati, Esquire            c/o Michael D. Sirota, Esq.
Court Plaza North                      Sklar Kirsh LLP                       Court Plaza North
25 Main Street                         1880 Century Park East, Suite 300     25 Main Street
Hackensack, NJ 07601-7083              Los Angeles, CA 90067-1631            Hackensack, NJ 07601-7083


Township Orlando LLC                   Township Orlando LLC                  Wedbush Securities, Inc.
Michael D. Sirota                      c/o David Safvati, Esquire            c/o Clearing Services, Inc.
Court Plaza North                      Sklar Kirsh LLP                       1000 Wilshire Blvd Ste 900
25 Main Street                         1880 Century Park East, Suite 300     Los Angeles CA 90017-2466
Hackensack, NJ 07601-7083              Los Angeles, CA 90067-1631


Amanda Klopp                           Eyal Berger Esq.                      Gary A Goldstein
Akerman LLP                            Akerman LLP                           111 S Calvert St 27 Flr
777 South Flagler Dr Suite 1100        201 E Las Olas Blvd #1800             Baltimore, MD 21202-6146
West Palm Beach, FL 33401-6172         Ft Lauderdale, FL 33301-4442
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Illinois Department of Revenue
Bankruptcy Unit
P.O. Box 19035
Springfield, IL 62794

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| (u)Miami | (u)Jeffrey Hefman, Esquire | End of Label Matrix | |
| | Schoenberg Finkel Law Firm | Mailable recipients | 29 |
| | 300 S Walker Dr, Suite 1500 | Bypassed recipients | 2 |
| | IL 60860-6000 | Total | 31 |

Label Matrix for local noticing
113C-1
Case 24-15770-LMI
Southern District of Florida
Miami
Tue May 20 17:27:08 EDT 2025

Altas P2 Managing Member LLC
791 Crandon Blvd Ph 6
Key Biscayne, FL 33149-2202

Township Capital, LLC
c/o Salazar Law, LLP
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129-1458

Township GP Fund II, LP
c/o Salazar Law, LLP
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129-1458

Township Orlando, LLC
c/o Salazar Law, LLP
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129-1458

Anthony & Olga Ivankovich
c/o David L. Rosendorf, Esq.
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd.,9th Floor
Miami, FL 33134-6039

Celedon Financial Group
Paul Waldman, Esquire
10 North Park Place, Suite 420
Stirling, NJ 07980

Christenson Law Firm LLP
472 W. Putnam Avenue
Porterville, CA 93257-3321

Chuchak & Tescon PC
620 South Riverside Plaza, Suite 1700
Chicago, IL 60606

Chuhak & Tecson, P.C., Attn: Michael Debre
120 S. Riverside Plaza, Suit 1700
Chicago, IL 60606-3911

Delaware Taxing Authority
Division of Revenue
820 N. French Street
Wilmington, DE 19801-3530

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
Department of Treasury
P.O. Box 7346
Philadelphia, PA 19101-7346

Jeanette Ivankovich
c/o Patricia A. Redmond, Esq.
150 West Flagler St.
Suite 2200
Miami, FL 33130-1545

Jeanette Ivankovich
c/o Schiller DuCanto & Fleck LP
Tanya J Stanish, Esq.
321 North Clark Street
Chicago, IL 60654-4714

Jeanette lvankovich
c/o Patricia A. Redmond, Esq.
150 West Flagler St.
Suite 2200
Miami, FL 33130-1545

Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

P-5 GRA LLC
Keith McKenna, Esquire
11 Broadway, Suite 615
New York, NY 10004-1490

Pami Grand Too LLC
c/o Douglas Johnson, Esquire
203 N La Salle Street, Suite 2100
Chicago, IL 60601-1226

Schiller DuCanto & Fleck LLP
c/o Patricia A. Redmond, Esq.
150 West Flagler St.
Suite 2200
Miami, FL 33130-1545

Schiller DuCanto & Fleck LP
Attn: Tanya J Stanish Esq
321 North Clark Street
Chicago, IL 60654-4714

Township Capital LLC
c/o David Safvati, Esquire
Sklar Kirsh LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

Township Capital, LLC
c/o Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Township GP Fund II LP
c/o David Safvati, Esquire
Sklar Kirsh LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

Township GP Fund II, LP
c/o Michael D. Sirota, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601-7083

Township Orlando LLC
c/o David Safvati, Esquire
Sklar Kirsh LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

Township Orlando LLC
c/o Michael D. Sirota
25 Main Street, Court Plaza North
Hackensack, NJ 07601

Amanda Klopp
Akerman LLP
777 South Flagler Dr Suite 1100
West Palm Beach, FL 33401-6172

Eyal Berger Esq.
Akerman LLP
201 E Las Olas Blvd #1800
Ft Lauderdale, FL 33301-4442

Gary A Goldstein
111 S Calvert St 27 Flr
Baltimore, MD 21202-6146

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
Department of Treasury
Kansas City, MO 64999

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| (u)Miami | (u)Jeffrey Hefman, Esquire | End of Label Matrix | |
| | Schoenberg Finkel Law Firm | Mailable recipients | 30 |
| | 300 S Walker Dr, Suite 1500 | Bypassed recipients | 2 |
| | IL 60860-6000 | Total | 32 |