## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
**Miami Division**
www.flsb.uscourts.gov

Chapter 11

In re:

Case No. 24-15755-LMI

IVANKOVICH FAMILY LLC                           (Jointly Administered)
A&O FAMILY LLC,                                          24-15762-LMI
A & O FAMILY LLC,                                        24-15767-LMI
ATLAS P2 MANAGING MEMBER, LLC,              24-15770-LMI

Debtors.[1]

_____/

### DEBTORS' OBJECTION TO UNSECURED CLAIM
### OF P-5 GRA, LLC (PROOF OF CLAIM NOS. 2-1, 2-2, and 2-3)

### IMPORTANT NOTICE TO CREDITORS:
### THIS IS AN OBJECTION TO YOUR CLAIM

This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf.  Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended.

If you disagree with the objection or the recommended treatment, you must file a written response WITHIN 30 DAYS from the date of service stated in this objection, explaining why your claim should be allowed as presently filed, and you must mail a copy to Eyal Berger, Esquire, 201 E Las Olas Blvd Suite 1800, Fort Lauderdale, FL 33301 OR YOUR CLAIM MAY BE DISPOSED OF IN ACCORDANCE WITH THE RECOMMENDATION IN THIS OBJECTION.

If your entire claim is objected to and this is chapter 11 case, you will <u>not</u> have the right to vote to accept or reject any proposed plan of reorganization until the objection is resolved, unless you request an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes.

Any written response must contain the case name, case number, and must be filed with the Clerk of the United States Bankruptcy Court:  C. Clyde Atkins United States Courthouse 301 North Miami Avenue, Room 150 Miami, Florida 33128.

---

[1] The cases are jointly administered. The last four digits of each Debtor's EIN are as follows: IVANKOVICH FAMILY LLC (4590), A&O FAMILY LLC, a Florida limited liability company (6789), A&O FAMILY LLC, an Illinois limited liability company (6865), and ATLAS P2 MANAGING MEMBER, LLC (8311).

Debtors A&O Family LLC, a Florida entity ("**A&O FL**"), Ivankovich Family, LLC ("**IF LLC**"), A&O Family LLC, an Illinois entity ("**A&O IL**"), and Atlas P2 Managing Member LLC ("**Atlas P2**") (collectively, "**Debtors**") by and through undersigned counsel, files this objection (the "**Objection**"), pursuant to section 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rule 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 3007-1 for entry of an order disallowing the original and amended proof of claim filed by P-5 GRA, LLC ("**P-5 GRA**") (Proof of Claim Nos. 2-1 and 2-2) against Debtor A&O Florida and the second amended proof of claim filed by P-5 GRA purportedly against all of the Debtors (Proof of Claim Nos. 2-3) (together the "**P-5 Proofs of Claim**").

P-5 GRA has filed numerous lawsuits against Overlook Managing Member LLC ("**Overlook**"), its affiliates, its management, and its principals over the past decade, lodging claims over its supposed 7% ownership interest in Overlook. Most recently, P-5 GRA commenced litigation in Delaware directly against Overlook and its manager, Steven Ivankovich, asserting its rights to receive a distribution from Overlook from proceeds of the sale of two certain Florida properties. In this bankruptcy proceeding, the P-5 Proofs of Claim initially cited to and attached the Complaint as the basis for its claim, until, on May 23, 2025, the Delaware Chancery Court finally denied P-5 GRA's claims on the merits with prejudice. Undeterred, P-5 GRA filed yet another proof of claim, still parroting the exact same legal theories and damages that were denied by the Delaware Chancery Court. As discussed below, the P-5 Proofs of Claim should be disallowed as a matter of law, on well-settled theories of res judicata, collateral estoppel and issue and claim preclusion. In support thereof, Debtors state as follows:

1.     On November 21, 2023 P-5 GRA LLC filed a Verified Complaint (the "**Delaware Complaint**") against Steven Ivankovich, Overlook Managing Member LLC, Alliance HTFL GP, LLC, Pilgrim Caribbean Isle LLC, and Pilgrim Forest Park LLC in the Court of Chancery of the State of Delaware under Case No. 2023-1182 (the "**Delaware Action**").  The Delaware Complaint alleged that P-5 GRA had a right to a distribution of funds from the sale of two Florida properties, known as Caribbean Isle Property and Forest Park Property (collectively, the "**Florida Properties**") based on P-5 GRA's 7% interest in Overlook Managing Member, LLC ("**Overlook**"), a Delaware limited liability company. The Delaware Complaint asserted claims for specific performance to compel Steven Ivankovich, as manager of Overlook "to honor the terms of the [Overlook] Operating Agreement and make a pro rata distribution to Plaintiff", asserted breach of fiduciary duty against Steven Ivankovich for diverting the funds from the sale of the Florida Properties as manager of a downstream entity of Overlook that received the funds, and asserted a breach of contract for failing to produce certain financials required under Overlook's Operating Agreement.

2.     On August 15, 2024, P-5 GRA filed a proof of claim against only A&O FL, asserting a claim for "Fraudulent transfer to Debtor of funds owed to P−5 GRA, LLC" in the amount of $2,469,117.94 (Claim 2-1) ("Original Claim").  The attachment to the Original Claim was the Delaware Complaint, without the referenced exhibits.

3.     Importantly, after filing the Original Claim, P-5 GRA *continued to litigate* the Delaware Action.

4.     On November 15, 2024, the Delaware Chancery Court held argument on the Defendants' pending Motion to Dismiss the Delaware Complaint, making it patently clear that P-5 GRA's claims were unlikely to succeed on the merits.  At that point, P-5 GRA shifted to: (1)

attempting to interfere and obstruct a final decision in the Delaware Action, including by attempting to re-open the pleadings and also stay the decision due to this bankruptcy, and (2) attempting to interfere and obstruct with these bankruptcy proceedings, issuing numerous burdensome and overreaching discovery requests, demanding continuous updates on numbers already provided to them, and knowing full well that the substantive basis of its claims as a contingent creditor in this bankruptcy were on the precipice of being denied in full.

5.      On December 30, 2024, P-5 GRA filed an amended proof of claim against only A&O FL, asserting as the basis for the claim, again "Fraudulent transfer to Debtor of funds owed to P−5 GRA, LLC", in the amount of $4,153,764.00. (Claim 2-2) ("Second POC").  There was no explanation in the Second POC for the increased amount, but P-5 GRA's counsel explained the amount was derived from a calculation of P-5 GRA's asserted right to a distribution of funds from the sale of the Florida Properties under Overlook's Operating Agreement.  Again, the sole support attached to Second POC was the Delaware Complaint, without exhibits. Therefore, as of May 23, 2025, the only claims filed by P-5 GRA in this case were based on P-5 GRA's asserted right, under Overlook's Operating Agreement, to receive a distribution of funds from the sale of the Florida Properties – in other words, the exact same claim that was at issue in the Delaware Complaint.

6.      On May 23, 2025, the Delaware Chancery Court dismissed all of P-5 GRA's claims in the Delaware Complaint, with prejudice.  A copy of the Memorandum Opinion of the Delaware Chancery Court is attached as **Exhibit A** (the "Delaware Opinion").

7.      The Delaware Chancery Court held "[i]t is not reasonably conceivable under the LLC Agreement [of Overlook] that P-5 [GRA] is entitled to a mandatory distribution of sale proceeds from the Florida Properties."  Ex. A at p. 8-9.  The Delaware Chancery Court held that the facts pled by P-5 GRA, namely that the Florida Properties were not assets of Overlook, that

Overlook received no cash, and that the sale proceeds were realized by Overlook's downstream entities, all precluded P-5 GRA's claims for mandatory distribution under the LLC Agreement as there was definitively no "Cash Available for Distribution", which was a pre-requisite to entitlement to distribution. Ex. A at p. 10.

8.     The Delaware Chancery Court also rejected the proposition, as a matter of Delaware Law, P-5 GRA's theory that "a subsidiary's sale of assets entitles the parent LLC's members to a cut of the proceeds." Ex. A at p. 10.  Instead, the Delaware Chancery Court held that Delaware law respects corporate separateness and the assets of an LLC's subsidiary, or of an LLC's subsidiary's subsidiary – are not the assets of the parent LLC. Ex. A at p. 11.  The Delaware Chancery Court pointed out that even if Alliance GP were to distribute the proceeds upstream, they would first belong to Alliance LP's members, the Pilgrim Entities, and P-5 GRA was not a member of either of those entities. *Id*.

9.     The Delaware Chancery Court further held that P-5 GRA's claims for breach of fiduciary duty against Steven Ivankovich for allegedly distributing $30 million to his affiliates while making no *pro rata* distribution to P-5 GRA, failed. Ex. A at p. 12.  Under Delaware law, because P-5 GRA's claims were based on Overlook's Operating Agreement, and there was no predicate for a fiduciary duty claim separate from the Operating Agreement's terms, thus, such claim would be construed as a breach of contract claim.  The breach of fiduciary duty claim was therefore duplicative of Count I (as P-5 GRA's counsel admitted), *see* Ex. A at n. 61, and would necessarily fail for the same reasons.  Second, P-5 GRA's claims against Steven Ivankovich for breach of fiduciary duty owed to Alliance GP failed for lack of standing given that P-5 GRA was not a member of that entity.  Ex. A at p. 13.

10.     Simply put, the Delaware Court reviewed Overlook's Operating Agreement and Delaware law, and held that, under Delaware law, there was <u>no</u> legal requirement to distribute funds from the sale of the Florida Properties to P-5 GRA under Overlook's Operating Agreement, and dismissed <u>with prejudice</u> P-5 GRA's claims against Overlook asserting same. The Delaware Court also refused to permit P-5 GRA to amend its pleadings, stating that "P-5 is not entitled to a do-over." There is no question that P-5 GRA's claims against Overlook for distributions are <u>barred</u> by the Order.

11.     Three days after issuance of the Delaware Opinion disposing of its claims on the merits <u>with prejudice</u>, the very same claims that served as the basis for its claims against A&O FL, on May 26, 2025, P-5 GRA filed yet another amended proof of claim. (Claim 2-3) (the "**Third POC**").

12.     The Third POC purports now to be against *all* of the Debtor entities, even though it (and the Original POC and Second POC) were filed only in the A&O FL case. As to these other Debtors whom P-5 GRA never filed an initial claim against, the Third POC is untimely and should be disallowed against these entities on that basis alone. *See* Bankruptcy Rule 3002 (c)(3).

13.     Although the Third POC now does not attach the Delaware Complaint, which was fully and finally adjudicated *against* P-5 GRA, the Third POC still tracks the exact same theory of relief as the Delaware Complaint, and is still based solely on P-5 GRA's rights, as a minority member of Overlook, to compel a distribution of proceeds due to the sale of Florida Properties based on Overlook's Operating Agreement—rights which have now been fully and finally adjudicated by a Delaware Court per the Delaware Opinion.

14.     Although P-5 GRA claims that its Third POC is based on "several other, independent claims against the Debtors" that is belied by most clearly shown by paragraphs 44-46

of the Third POC of P-5 GRA which lays out the *exact same theory* that was rejected by the Delaware Chancery Court, that P-5 GRA is entitled to a distribution of proceeds from the sale of the Florida Properties by virtue of Overlook's Operating Agreement:

### IV. AMOUNT AND CALCULATION OF CLAIM

44.    As stated herein, pursuant to each of the governing operating agreements of the P-5 Portfolio companies, distributions are made by the members and to the members— no other party is entitled to receive distributions from the downstream entities pursuant to the applicable agreements. As assets of the P-5 Portfolio companies are liquidated and profits realized, distributions may only be made to members and are ultimately "upstreamed" to Overlook and its members—including GRA.

45.    Distributions to Overlook's members are made pursuant to the waterfall prescribed in section 6.04 of the Overlook LLCA. *See supra* at ¶ 12.

46.    As calculated pursuant to section 6.04 of the Overlook LLCA, GRA—as a member of Overlook—is entitled to not less than the principal amount of $4,153,764.00, based on the proceeds from the Sale Transaction.[2]

15.    The Third POC parrots the allegations of the Delaware Complaint that was dismissed with prejudice, even attaching the Overlook's Operating Agreement as the very first exhibit.  The Third POC also repeats the same faulty premise that the Delaware Chancery Court rejected as a matter of Delaware law: that P-5 GRA can enforce operating agreements when it is not a member of such entity.[3] Notably, P-5 GRA sought to supplement the record with these additional operating agreements *and was denied.* Ex. A at 16.

16.    Essentially, the only new allegations in the Third POC then, are that an Economic Interest Agreement exists which P-5 GRA alleges is void anyways[4], and the existence of an order issued by an Illinois court in a case to which neither P-5 GRA or the Debtors were parties, which

---

[2] Sale Transaction is defined on page 3 of the Addendum to the Third POC as the sale of the Florida Properties. *Cf.* paras. 37 in the Delaware Complaint.
[3]
[4] See Addendum to Third POC at p. 10.

order is not alleged to change anything about P-5 GRA's claim or the basis for same. Though P-5 GRA acknowledges that the Delaware Opinion was issued, it states that regardless, this Court should essentially reconsider the exact same issue that the Delaware Chancery Court examined, and come to the opposite conclusion.

17. Just as the Delaware Chancery Court denied P-5 GRA a "do-over", so too must this Court by disallowing the Third POC. *See In re Smart Communications Holding, Inc. et al*, Case No. 8:24-bk-07106-RCT (DE 203, 221) (disallowing proofs of claim and interest based on res judicata and collateral estoppel effect of state court judgment).

18. The preclusive doctrines of *res judicata*, claim preclusion, issue preclusion, and collateral estoppel serve an important function, bringing finality to litigation. *See In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993). And, given the identity of the issues and privity of parties in this case, all of the doctrines apply here. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979); *see also Kordash v. United States*, 51 F.4th 1289 (11th Cir. 2022); *see also Seminole Tribe of Florida v. Biegalski*, 757 Fed. Appx. 851 (11th Cir. 2018).

19. State law governs whether or not a state court judgment bars a subsequent federal action. *Precision Air Parts, Inc. v. Avco Corp.*, 736 F. 2d 1499, 1503 (11th Cir. 1984) (citing *Cleckner v. Republic Van & Storage Co., Inc.,* 556 F.2d 766, 768 (5th Cir. 1977)).

20. Under Delaware law, collateral estoppel applies where (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *State v. Machin*, 642 A.2d 1235, 1239 (Del. Super. 1993) (citing *United States v. Rogers*, 960 F.2d 1501, 1508 (10th

8

Cir. 1992)); *see also Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000). Here, all of the elements are met: (1) the same issue of P-5 GRA's entitlement to distribution of proceeds from the Florida Properties based on the Overlook Operating Agreement was decided in the Delaware Action and is at the core of both the Third POC, (2) the Delaware Action has been finally adjudicated on the merits, (3) P-5 GRA, against whom the doctrine is invoked, was a party to the prior adjudication, and (4) P-5 GRA had a full and fair opportunity to litigate the issue. Additional collateral estoppel applies to P-5 GRA's claims to the extent that they are based on a breach of fiduciary duty as well, as the Delaware Opinion held that there could be no breach of fiduciary duty of Steven Ivankovich, and thus P-5 GRA's claim for "aiding and abetting" what has already been adjudicated to *not* be a breach of fiduciary duty, likewise fails.

21.     Under Delaware law, "[t]he modern transactional view of the doctrine of res judicata" does not require the same cause of action but rather "permits the doctrine to be invoked to bar litigation between the same parties if the claims in the later litigation arose from the same transaction that formed the basis of the prior adjudication." *Maldonado v. Flynn*, 417 A.2d 378, 381 (Del. Ch. 1980). Here, the same transaction is alleged in both the Delaware Complaint and the P-5 GRA Proofs of Claim: the sale of the Florida Properties causing P-5 GRA to be allegedly entitled to a distribution.

22.     Furthermore, the *Rooker-Feldman*[5] doctrine and the Full Faith and Credit Act, 28 U.S.C. § 1738 both compel this Court to accord the Order with the same preclusive effect that they

---

[5] Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction to review state court decisions. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Doe v. Fla. Bar*, 630 F.3d 1336, 1340 (11th Cir. 2011). Review of state court final judgments is reserved for state appellate courts or, as a last resort, the U.S. Supreme Court. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). The doctrine applies both to those claims that were actually raised in the state court and those "inextricably intertwined" with the state court judgment. *Id.* In both instances, federal courts lack subject matter jurisdiction to hear the claims. *See, e.g., Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1323 (S.D. Fla. 2011). The Eleventh Circuit explained that a federal claim is inextricably intertwined with a state court judgment: "(1) where the success of the federal claim would 'effectively nullify' the state-court judgment; and (2) where the federal claim 'succeeds only

would be accorded in state court, preventing P-5 GRA, who lost in state court litigation, from re-litigating the issues in this court. *See Efron v. Candelario*, 110 F. 4th 1229 (11th Cir. 2024); *In re Zoernack*, 289 BR 220 (Bankr. M.D. Fla. 2003); *Pelletier v. Zweifel,* 921 F.2d 1465, 1501 (11th Cir. 1991). After all, this court has no appellate jurisdiction over the state court. *See In re Optical Technologies, Inc.*, 272 BR 771, 774 (Bankr. M.D. Fla. 2001).

23.    Nothing has changed in the Third POC compared to the Delaware Complaint – it is the *exact same theory* with the *same* damages sought. The Order issued by the Delaware Chancery Court is res judicata as to the claims that could have been, but were not, alleged, and collateral estoppel as to all of the issues that were actually decided, including whether Overlook's operating agreement was violated by not distributing proceeds from the sale of the Florida Properties.  Furthermore, there is no allegation of any capital service, good, or other consideration provided by P-5 GRA to any of the Debtors.  As such, any claims of P-5 GRA can only be derivative in nature such that collateral estoppel and Rooker Feldman doctrine still compel disallowance.

24.    Indeed, the Third POC demonstrates that P-5 GRA's claim, and its burdensome and overreaching discovery in this bankruptcy case, is an end-run to what the Delaware Court would not grant to P-5 GRA, because (as determined by the Delaware Chancery Court), P-5 GRA did not have any legal right to obtain same.  P-5 GRA has used this bankruptcy venue to continue to try to expand its rights as a minority shareholder to beyond what it is legally entitled to claim, and is attempting to have this Bankruptcy Court consider the exact same issues of their entitlement to distribution based on Overlook's Operating Agreement. The Court should reject P-5 GRA's request for yet another "do-over", as did the Delaware Chancery Court.

---

to the extent that the state wrongly decided the issues.'"  *Springer v. Perryman*, No. 10-12059, 2010 WL 4230633, at *1 (11th Cir. 2010) (per curiam) (quoting *Casale*, 558 F.3d at 1260).

25.    **Reservation of Rights.**  The Debtors reserve the right to supplement this Claim Objection with additional legal authority and factual support.  Given the complete lack of merit in filing a clearly barred claim based on theories that have been completely rejected by a state court, the Debtors reserve all rights, including the right to seek attorneys' fees and costs under 28 U.S.C. § 1927 and the court's inherent contempt powers.

**WHEREFORE**, the Debtors respectfully requests that this Court enter an order (i) sustaining this Objection to P-5 GRA LLC's Proofs of Claim (Claim Nos. 2-1, 2-2 and 2-3) , (ii), disallowing P-5 GRA LLC's Proofs of Claim in their entirety, (iii) granting such other and further relief as may be just.

Dated: May 26, 2025                        By:    */s/ Eyal Berger*

Eyal Berger, Esq.
Florida Bar Number:  0011069
Email: eyal.berger@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL  33301
Tel:  954-463-2700
Fax:  954-463-2224

-and-

Amanda Klopp, Esq.
Florida Bar No. 124156
Email: amanda.klopp@akerman.com
**AKERMAN LLP**
777 South Flagler Drive
Suite 1100 – West Tower
West Palm Beach, Florida 33401
Tel: 561-653-5000
Fax: 561-659-6316
*Counsel for Debtors-in-Possession*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 26, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case, and on May 27, 2025 by U.S. Mail below.

By: _____*/s/ Eyal Berger*_____
Eyal Berger, Esq.

**Via U.S. Mail**
Matthew R. Brooks
Troutman Pepper Locke LLP
875 Third Avenue
New York, NY 10022
matthew.brooks@troutman.com

12

# Exhibit A

EFiled:  May 23 2025 02:53PM EDT
Transaction ID 76335748
Case No. 2023-1182-LWW

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| P-5 GRA, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>STEVEN IVANKOVICH,<br><br>        Defendant,<br><br>    and<br><br>OVERLOOK MANAGING MEMBER LLC, ALLIANCE HTFL GP, L.L.C., PILGRIM CARIBBEAN ISLE LLC, PILGRIM FOREST PARK LLC, each a Delaware limited liability company,<br><br>        Nominal Defendants. | C.A. No. 2023-1182-LWW |

## MEMORANDUM OPINION

Date Submitted: April 1, 2025
Date Decided: May 23, 2025

Michael Busenkell, Bradley P. Lehman, GELLERT SEITZ BUSENKELL & BROWN, LLC, Wilmington, Delaware; Keith A. McKenna, MCKENNA LAW, Jersey City, New Jersey; *Counsel for Plaintiff P-5 GRA, LLC*

Phillip A. Giordano, Geoffrey A. Boylston, Madeline R. Silverman, GORDON, FOURNARIS, MAMMARELLA, P.A., Wilmington, Delaware; *Counsel for Defendant Steven Ivankovich*

**WILL, Vice Chancellor**

A minority member of a Delaware limited liability company is suing the managing member for breach of the LLC agreement.  It claims that asset sales by downstream subsidiaries of the LLC entitle it to distributions at the parent level.  Neither the LLC agreement nor well-pleaded allegations in the minority member's complaint support this theory.  Delaware's respect for corporate separateness further undermines it.

The minority member's other claims fare no better.  One claim, for breach of fiduciary duty, is duplicative of the contract claim.  The other, which seeks books and records, was previously dismissed with prejudice by the minority member.

This case is therefore dismissed in full.

## I.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Verified Complaint and the documents it incorporates by reference.[1]

### A.    Overlook and the Pilgrim Entity Subsidiaries

Plaintiff P-5 GRA, LLC is a Delaware limited liability company with its principal place of business in New York.[2]  It holds a 7% membership interest in nominal defendant Overlook Managing Member LLC ("Overlook")—another

---

[1] Verified Compl. (Dkt. 1) ("Compl.").

[2] *Id.* ¶ 2.

Delaware limited liability company.[3]  Defendant Steven Ivankovich, an Illinois resident, holds the remaining 93%.[4]

Overlook is governed by the May 2017 Limited Liability Company Agreement (the "LLC Agreement").[5]  It designates Ivankovich as Overlook's "Manager."[6]  As Manager, he has "the right, power, and authority, to manage, operate and control the business and affairs of [Overlook] and to do or cause to be done any and all acts . . . deemed by [him] to be necessary or appropriate to effectuate the purposes of [Overlook]."[7]

Overlook's purpose is to "serve as the manager, member, and/or managing member of each of PILGRIM Windtree LLC . . . , PILGRIM Coulter LLC . . . , PILGRIM Warwick LLC . . . , PILGRIM Caribbean Isle LLC . . . , and PILGRIM Forest Park LLC . . . ."[8]  Two of these entities—nominal defendants PILGRIM Caribbean Isle LLC and PILGRIM Forest Park LLC (together, the "Pilgrim Entities")—are wholly-owned subsidiaries of Overlook.[9]

---

[3] *Id.* ¶¶ 4, 12.

[4] *Id.* ¶ 15.

[5] *See* Compl. Ex. A ("Overlook LLC Agreement").

[6] *Id.* at 1 (Recitals).

[7] *Id.* § 7.02(a).

[8] *Id.* § 3.01(a).

[9] Compl. ¶ 21; *see* Compl. Ex. B (Organization Chart).

2

### B.    The Alliance Entities and Florida Properties

Further down the entity structure, the Pilgrim Entities are each 50% members of Alliance HTFL GP, LLC ("Alliance GP").[10]   Alliance GP is governed by an Amended and Restated Limited Liability Company Agreement.[11]   P-5 is the secretary of Alliance GP.[12]  P-5 is not a member of Alliance GP.[13]

Alliance GP holds a .01% membership interest in Alliance ATFL Limited Partnership (DE) Property Borrower LP ("Alliance LP").[14]  The Pilgrim Entities together hold the other 99.9% of Alliance LP's membership interests.[15]

Alliance LP owned two real properties in Florida called Forest Park and Caribbean Isle (together, the "Florida Properties").[16]  In late March or early April 2022, the Florida Properties were sold for $35 million.[17]  A few days after closing, Ivankovich caused Alliance LP to transfer $30 million to A&O Family, LLC—a

---

[10] Compl. ¶ 20; *see* Compl. Ex. B.

[11] Compl. ¶ 23.

[12] *Id.* ¶ 24.

[13] *See id.* ¶ 20.

[14] Compl. Ex. B.

[15] *Id.*

[16] Compl. ¶¶ 37-39.

[17] *Id.* ¶¶ 25, 37-39.

Florida limited liability company controlled by and for the benefit of Ivankovich's family.[18]

The entity structure before the Florida Properties were sold is as follows:[19]



## C.    This Litigation

None of the proceeds from the sale of the Florida Properties were sent upstream to the Pilgrim Entities or Overlook.[20]   P-5 believes that Ivankovich's failure to distribute to it a portion of the sale proceeds violated the LLC Agreement.[21]

---

[18] *Id.* ¶ 40.

[19] Compl. Ex. B.

[20] *See* Tr. Oral Arg. on Def.'s Mot. Dismiss (Dkt. 34) ("Hr'g Tr.") 9-10; Compl. ¶ 39.

[21] Compl. ¶¶ 51-52.

It insists that it is entitled to $2,469,117.94—a 7% pro rata share of the proceeds of the $35 million sale.[22]

In July 2023, P-5 filed a books and records suit in this court against Overlook.[23]  After some discovery, the parties filed a stipulated proposed order of dismissal with prejudice, which was granted on October 9, 2023.[24]

The next month, on November 21, P-5 filed this plenary suit against Ivankovich.[25]  On May 3, 2024, Ivankovich moved to dismiss the Complaint and, in doing so, raised several pleading deficiencies.[26]  Rather than amend the Complaint, P-5 opposed the motion to dismiss.[27]  Briefing was completed on July 1, 2024.[28]  Oral argument on the motion to dismiss was held on November 15, 2024 and taken under advisement.[29]

P-5 proceeded to file two additional motions.  The first sought leave to either "supplement the record" on the motion to dismiss, file an amended complaint, or

---

[22] *Id.* ¶¶ 41, 50.

[23] Verified Compl., *P-5 GRA, LLC v. Overlook Managing Member, LLC*, C.A. No. 2023-0765-LM (Del. Ch. July 27, 2023) (Dkt. 1); *see* Compl. ¶ 50; Dkt. 25, Ex. A ("Books and Records Compl.").

[24] Stipulation and Order of Dismissal with Prejudice, *P-5 GRA, LLC v. Overlook Managing Member, LLC*, C.A. No. 2023-0765-LM (Del. Ch. Oct. 9, 2023) (Dkt. 23).

[25] Compl.

[26] Def.'s Opening Br. in Supp. of Mot. Dismiss (Dkt. 25) ("Def.'s Opening Br.").

[27] Pl.'s Opp'n to Def.'s Mot. Dismiss (Dkt. 30) ("Pl.'s Answering Br.").

[28] *See* Def.'s Reply Br. in Supp. of Mot. Dismiss (Dkt. 31).

[29] Dkt. 34.

dismiss the Complaint without prejudice.[30]  The second is a motion to stay this suit in deference to a bankruptcy proceeding involving separate Ivankovich-affiliated entities.[31]  After those motions were fully briefed, I took the pending matters under advisement as of April 1, 2025.[32]

## II.    LEGAL ANALYSIS

I begin my analysis with Ivankovich's motion to dismiss and conclude that it must be granted.  The Complaint is dismissed with prejudice.  The relief sought by P-5's motion to supplement and motion to stay do nothing to change that outcome.

### A.    The Motion to Dismiss

The crux of P-5's Complaint is that Ivankovich was obligated to distribute proceeds from the sales of the Florida Properties upstream to Overlook, so that P-5 would receive a pro rata portion.  Two of the counts in the Complaint relate to this theory.  Count I is styled as a claim for specific performance, which seeks the payment of distributions.[33]  Count II is a claim for breach of fiduciary duty for Ivankovich's distribution of $30 million to his affiliated entity.[34]

---

[30] Pl.'s Mot. to Suppl. the R. on Def.'s Mot. to Dismiss, or Alternative, Req. for Leave to File Am. Compl. or That Dismissal of Compl. Be Without Prejudice (Dkt. 35) ("Pl.'s Mot. Suppl.").

[31] Mot. to Stay Proceedings (Dkt. 42) ("Pl.'s Mot. Stay").

[32] *See* Minute Order (Dkt. 47).

[33] Compl. ¶¶ 45-53.

[34] *Id.* ¶¶ 54-59.

P-5 also asserts that Ivankovich has refused to provide it with Overlook's financial information.  In Count III, it claims that Ivankovich breached the Operating Agreement by failing to provide it with certain books and records.[35]

Ivankovich has moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The standard that governs the motion is as follows:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[36]

Although I "must draw reasonable inferences in favor" of the plaintiff, I am "not required to accept every strained interpretation of [its] allegations."[37]  "[N]either inferences nor conclusions of fact unsupported by allegations of specific facts" must be "accepted as true."[38]

---

[35] *Id.* ¶¶ 62-66.

[36] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citation omitted).

[37] *Id.*; *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[38] *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999) (citation omitted), *aff'd sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).

### 1. The Specific Performance Claim

In Count I, P-5 alleges that it "requires an order of specific performance from a court of equity compelling Ivankovich to honor the terms of the [LLC] Agreement and make a pro rata distribution to [P-5]."[39]  Specific performance is "a form of relief, not a cause of action."[40]  That relief is unavailable here because P-5 seeks money damages in the form of distributions.[41]  P-5 conceded at oral argument that it is "[j]ust looking for money" in Count I.[42]

Even if I were to view Count I as a breach of contract claim seeking money damages, it fails on the merits.  The LLC Agreement is governed by Delaware law, which interprets contracts based on the plain meaning of their terms.[43]  It is not

---

[39] Compl. ¶ 53.

[40] *See Quadrant Structured Prods. Co., v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014); *see also HT Hldgs. LLC v. Envysion, Inc.*, 2019 WL 5424508, at *3 (Del. Ch. Oct. 22, 2019) ("A decree of specific performance is a remedy, not a cause of action."); *Addy v. Piedmonte*, 2009 WL 707641, at *23 (Del. Ch. Mar. 18, 2009).

[41] *See Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997-98 (Del. 2004) (affirming that specific performance is unavailable where money damages are an adequate remedy).

[42] Hr'g Tr. 23.

[43] *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party.  We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage." (first quoting *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005) and then quoting *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396 (Del. 2010))).

reasonably conceivable under the LLC Agreement that P-5 is entitled to a mandatory distribution of sale proceeds from the Florida Properties.

The LLC Agreement provides that, as Manager of Overlook, Ivankovich may determine "in [his] reasonable discretion, the level of Cash Reserves and the aggregate amount available for distributions of Cash Available for Distribution."[44] The "Cash Available for Distribution" is "all cash receipts and funds received by [Overlook] from any of the Pilgrim Entities or any other business or operations conducted by [Overlook]" less "cash expenditures" and "Cash Reserves."[45]

The LLC Agreement also sets out the priorities for distributions to Overlook's members. The first $12.3 million of distributions go to Ivankovich, unless the "Cash Available for Distribution arises from a sale or refinancing of the LLC Assets[.]"[46] If the "Cash Available for Distribution arises from a sale or refinancing of the LLC Assets," then under Section 6.04 of the LLC Agreement, the funds are "distributed to the Members pro rata in accordance with their respective membership interests."[47] Section 6.04 is the provision that P-5 invokes in seeking a pro rata distribution.[48]

---

[44] Overlook LLC Agreement § 6.02.

[45] *Id.* at Addendum I. "Cash Reserves" are "the amount of cash necessary to be maintained in [Overlook's] cash management fund and/or any accounts for working capital or other reserves or purposes necessary to provide for the foreseeable needs of [Overlook]." *Id.*

[46] *Id.* § 6.04(a).

[47] *Id.*

[48] Compl. ¶ 28.

To plead a right to a pro rata distribution under Section 6.4 of the LLC Agreement, P-5 would need to show that Overlook had "Cash Available for a Distribution" gained from the sale of an "LLC Asset."[49]  But the Florida Properties at issue were not "LLC Asset[s]," which are defined as "[a]ll assets and property . . . owned by or held for the benefit of [Overlook]."[50]  The Florida Properties belonged to a downstream entity of Overlook—Alliance LP.[51]  There is no suggestion in the Complaint that Overlook ever received cash from the sale of the Florida Properties.  In fact, P-5 acknowledges that the sale proceeds were "realized by Overlook's downstream entities."[52]

P-5 seems to believe that a subsidiary's sale of assets entitles the parent LLC's members to a cut of the proceeds.[53]  The basis for that understanding is unclear.  The

---

[49] Overlook LLC Agreement § 6.04.

[50] *Id.* at Addendum I.

[51] Compl. ¶¶ 20, 33, 40.

[52] *Id.* ¶ 39; *id.* ¶ 40 ("On or about April 6, 2022, Ivankovich caused Alliance [GP] to distribute via wire transfer Thirty Million Dollars ($30,000,000.00) of the proceeds from the sale of the [Florida Properties] to A&O Family LLC, a Florida family limited liability company controlled by and for the benefit of Ivankovich's family.").  In its answering brief, P-5 argues that its claim concerns a "sale of Overlook's assets."  Pl.'s Answering Br. 6.  The Complaint says no such thing.  P-5 cannot amend its Complaint through briefing.  *See Cal. Pub. Emps. Ret. Sys. v. Coulter*, 2002 WL 31888343, at *12 (Del. Ch. Dec. 18, 2002) ("Arguments in briefs do not serve to amend the pleadings.").

[53] *See* Hr'g Tr. 25-27.  At oral argument, P-5's counsel stated that the governing agreements of the Pilgrim Entities required them to send funds up the chain to Overlook.  *Id.* at 28-29.  This assertion is both unpleaded and unbriefed.  The Pilgrim Entities' limited liability company agreements are not in the record.

Complaint does not say which provision of the LLC Agreement P-5 believes was breached.    Nor does P-5's answering brief, which neglected to respond to Ivankovich's contractual arguments.[54]  P-5 chose instead to limit its argument to the availability of specific performance.[55]

In any event, Delaware law does not support P-5's unbriefed theory.    In Delaware, "there exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors."[56] The assets of an LLC's subsidiary—or, here, the assets of its subsidiary's subsidiary—are not the assets of the parent LLC.[57]  If Alliance GP were to distribute the proceeds upstream, they would first belong to Alliance LP's members, the Pilgrim Entities.  P-5 is not a member of either.

---

[54] *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[55] *See* Pl.'s Answering Br. 8-9.

[56] *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018); *see also Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006) (explaining that Delaware law is "built on the idea that the separate legal existence of corporate entities should be respected—even when those separate corporate entities are under common ownership and control").

[57] *Cf. Spring Real Est., LLC v. Echo/RT Hldgs., LLC*, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016) (explaining the general rule that, absent veil piercing, "a parent has no property interest in the assets of a subsidiary"); *Roseton OL, LLC v. Dynegy Hldgs., Inc.*, 2011 WL 3275965, at *15 n.110 (Del. Ch. July 29, 2011) ("The parent's ownership of all of the shares of the subsidiary does not make the subsidiary's assets the parent's.") (citation omitted).

2.    The Fiduciary Duty Claim

Count II is a claim for breach of fiduciary duty.  P-5 alleges that Ivankovich breached his duty of loyalty in two ways.  First, Ivankovich "secur[ed] an improper benefit for himself and engag[ed] in intentional wrongdoing with respect to the distribution of $30 million to himself while making no pro rata distribution to [P-5]."[58]  Second, Ivankovich "refus[ed] to provide the information necessary for [P-5] to fulfill its duties as Secretary of Alliance [GP]."[59]  Neither theory supports a reasonably conceivable breach of fiduciary duty claim.

P-5's theory regarding the distribution fails because it implicates requirements of the LLC Agreement.  "[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim" and "any fiduciary claims arising out of the same facts that underlie the contract obligations [are] foreclosed as superfluous."[60]  There is no predicate for a fiduciary duty claim separate from the LLC Agreement's terms.[61]

---

[58] Compl. ¶ 58.

[59] *Id.*

[60] *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

[61] *See MHS Cap. LLC v. Goggin*, 2018 WL 2149718, *8 (Del. Ch. May 10, 2018) ("Delaware law is clear that fiduciary duty claims may not proceed in tandem with breach of contract claims absent an 'independent basis for the fiduciary duty claims apart from the contractual claims.'" (quoting *Renco Grp., Inc. v. MacAndrews AMG Hldgs.*, 2015 WL 394011 (Del. Ch. Jan. 29, 2015))).  P-5's counsel conceded at argument that Count II is duplicative of Count I.  Hr'g Tr. 35.

The theory regarding alleged duties owed to P-5 as secretary of Alliance GP also fails. "A claim for breach of fiduciary requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty."[62] P-5 does not—and cannot—identify what fiduciary duties Ivankovich, as Alliance GP's Manager, owed to Alliance GP's company secretary.[63] To the extent that P-5 contends Ivankovich breached a fiduciary duty to Alliance GP, it cannot pursue a claim on the entity's behalf because it is not an Alliance GP member.[64]

### 3.    The Breach of Contract Claim

Count III is a breach of contract claim regarding P-5's information rights. It alleges that Ivankovich breached Sections 8.02, 8.03, and 8.06 of the LLC Agreement, which allegedly require the Manager to give P-5 financial information about Overlook.[65] This precise claim was raised in P-5's earlier books and records litigation, which it opted to dismiss with prejudice.[66] P-5 cannot raise it anew.

"The doctrine of collateral estoppel 'precludes a party to a second suit involving a different claim or cause of action from the first from relitigating an issue

---

[62] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).

[63] Hr'g Tr. 36.

[64] *See Dover Hist. Soc. v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (discussing a plaintiff's burden to demonstrate standing).

[65] Compl. ¶¶ 63-66.

[66] Dkt. 25, Ex. B (Stipulation and Order of Dismissal with Prejudice).

necessarily decided in a first action involving a party to the first case.'"[67]    Collateral

estoppel will bar a court's consideration of an issue when:

> (1) The issue previously decided is identical with the one
> presented in the action in question, (2) the prior action has been
> finally adjudicated on the merits, (3) the party against whom the
> doctrine is invoked was a party or in privity with a party to the
> prior adjudication, and (4) the party against whom the doctrine is
> raised had a full and fair opportunity to litigate the issue in the
> prior action.[68]

These elements are met here.

First, P-5's 2023 books and records action sought "copies of tax return(s),

financial information and access to inspect Overlook's books and records."[69]    It also

requested its "costs and expenses incurred in bringing and prosecuting th[e] action,

including reasonable attorneys' fees."[70]    Count III of the present Complaint likewise

seeks as damages the fees and costs from the books and records suit.[71]    According

to P-5's counsel, it also seeks the production of books and records.[72]

---

[67] *Nelson v. Emerson*, 2008 WL 1961150, at *6 (Del. Ch. May 6, 2008) (citing *One Virginia Ave. Condo. Ass'n of Owners v. Reed*, 2005 WL 1924195, at *10 (Del. Ch. Aug. 8, 2005)).

[68] *State v. Machin*, 642 A.2d 1235, 1239 (Del. Super. 1993) (citing *United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992)); *see also Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000).

[69] Books and Records Compl. ¶ 10.

[70] *Id.* at 7.

[71] Compl. ¶ 64.

[72] *See* Hr'g Tr. 19, 33, 37.  This request for relief is unpleaded.

Second, P-5's books and records action was voluntarily dismissed with prejudice.[73]  "In Delaware, a dismissal with prejudice is considered an adjudication on the merits."[74]  When parties "voluntarily dismiss[] [an] action, knowing that they either received the full relief to which they were legally entitled, or that they waived their rights to seek further relief, the dismissal is tantamount to a judgment on the merits."[75]

Third, the doctrine is invoked against P-5—the plaintiff in the books and records action.

Fourth, P-5 had a full and fair opportunity to pursue its books and records action.  It chose to dismiss that suit with prejudice.[76]

*            *            *

Litigation decisions have consequences.  P-5 chose to dismiss its prior books and records action with prejudice.  It opted to answer Ivankovich's motion to dismiss

---

[73] Dkt. 25, Ex. B (Stipulation and Order of Dismissal with Prejudice).

[74] *Kaufman v. Nisky*, 2011 WL 7062500, at *1 (Del. Super. Dec. 20, 2011).

[75] *See Fields v. Frazier*, 2005 WL 3193820, *2 (Del. Super. Nov. 21, 2005).

[76] P-5 relies on *Largo Legacy Gp., LLC v. Charles*, where the court concluded that a subsequent action was not precluded by an earlier books and records action.  2021 WL 2692426, at *19 (Del. Ch. June 30, 2021).  The books and records action there was dismissed *without* prejudice, meaning that the dismissal was not on the merits.  *See* Stipulation and Order of Dismissal, *Largo Legacy Group, LLC v. Largo Hotel, LLC*, C.A. No. 2019-0869-MTZ, 2021 WL 214663 (Del.Ch. Jan. 21, 2021).  Dismissals under Rule 41(a) are without prejudice, unless otherwise stated. Ct. Ch. R. 41(a).

15

in this suit instead of amending its Complaint.  And it neglected to brief any argument for breach of the LLC Agreement regarding distributions.

P-5 is not entitled to a do-over.  Its efforts to obtain one, which I address next, are baseless.

### B.    The Motion to Supplement

After oral argument on the motion to dismiss, P-5 moved to "supplement the record on Defendant's Motion to Dismiss in light of [] newly discovered documents."[77]   The referenced documents are the limited liability company agreements for certain downstream entities of Overlook.[78]  Alternatively, P-5 asks for permission to amend its Complaint.[79]  These requests are denied.

P-5 cites no procedural basis to "supplement the record" on a motion to dismiss—particularly after the motion was fully briefed, argued, and submitted for decision by the court.  It  relies on precedent which concerns the application of the *Pope* test to reopen a trial record.[80]  The record before me on the motion to dismiss is based only on the Complaint and documents incorporated into or integral to it.[81]

---

[77] Pl.'s Mot. Suppl. ¶ 11.

[78] *Id.* ¶¶ 4-5; *see id.* Exs. A, B.

[79] Pl.'s Mot. Suppl. ¶ 25.

[80] *Id.* ¶¶ 14-15 (citing *Pope Invs. LLC v. Benda Pharm., Inc*., 2010 WL 3075296, at *1 (Del. Ch. July 26, 2010)).

[81] *See Gen. Motors*, 897 A.2d at 168 ("The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion to dismiss.").

Its request to amend the Complaint is also improper.  P-5 maintains that it "came to realize [certain documents] likely existed" after oral argument on the motion to dismiss that it could get through "channels" other than Ivankovich.[82]  But nothing prevented P-5 from locating these documents *before* filing its Complaint.  P-5 also could have sought the documents and amended its Complaint *after* Ivankovich moved to dismiss.[83]  It must now live with its choice to stand on the Complaint.[84]

## C.    The Motion to Stay

While the motion to dismiss and motion to supplement were pending, P-5 filed yet another motion.[85]  This time, it asked for a stay in deference to a bankruptcy proceeding involving the A&O Family LLC and related entities.[86]

I decline to exercise my discretion to grant a stay.[87]  There are no overlapping parties or issues between this action and the bankruptcy case.  P-5 argues that, as in

---

[82] Pl.'s Reply in Supp. Mot. Suppl. (Dkt. 40) ¶ 1.

[83] *See* Ct. Ch. R. 15(a)(5)(A)(i).

[84] *See Braddock v. Zimmerman*, 906 A.2d 776, 783 (Del. 2006) ("[W]hen confronted with a motion to dismiss pursuant to . . . Ch. Ct. R. 12(b)(6), (c) or 23.1, [the plaintiff must] elect to either: stand on the complaint and answer the motion; or, to amend or seek leave to amend the complaint before the response to the motion was due.").

[85] *See* Pl.'s Mot. Stay.

[86] *Id.* ¶ 13.  The debtors are Ivankovich Family, LLC; A&O Family, LLC; A & O Family, LLC, and Atlas P2 Managing Member, LLC.  *Id.* ¶ 2.

[87] *See In re TGM Enters., L.L.C.*, 2008 WL 4261035, at *1 (Del. Ch. Sept. 12, 2008) ("The Court's right to grant a stay is within the exclusive discretion of the Court.").

the bankruptcy matter, "Ivankovich's liability is a central issue in this case."[88]  But Overlook is not a debtor.  Whether Ivankovich breached the LLC Agreement or his fiduciary duties as Overlook's manager is not before the bankruptcy court.  The release of claims involving Ivankovich's potential liability to the debtors is irrelevant to the claims P-5 brings here.  No judicial economy would be promoted by a stay, given that the Complaint fails to state a viable claim.[89]

## III.    CONCLUSION

Counts I and II fail to state a claim on which relief can be granted.  Count III is barred by the dismissal with prejudice of the prior books and records action.  The motion to supplement and motion to stay are denied.   This action is dismissed in its entirety with prejudice.

---

[88] Pl.'s Mot. Stay ¶ 12.

[89] To the extent that Ivankovich seeks fee-shifting for the motion to stay and motion to supplement, I cannot conclude that the motions—though meritless —were filed in bad faith.  Each party will bear its own costs under the American Rule.