**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:                                                          Chapter 11

                                                               Case No.  24-15755-LMI
IVANKOVICH FAMILY LLC                          (Jointly administered)
A&O FAMILY LLC (FL)                                            24-15762-LMI
A&O FAMILY LLC (IL)                                            24-15767-LMI
ATLAS P2 MANAGING MEMBER, LLC,                 24-15770-LMI

            Debtors.

_____/


### NOTICE OF FILING REDLINE VERSION OF PROPOSED SECOND AMENDED JOINT DISCLOSURE STATEMENT OF DEBTORS IN SUPPORT OF DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION

Debtors Ivankovich Family LLC, A&O Family LLC, a Florida entity, A&O Family LLC,

an Illinois entity, and Atlas P2 Managing Member LLC, by and through its undersigned counsel,

hereby gives notice of filing the attached redline version of the proposed Second Amended Joint

Disclosure Statement Of Debtors In Support Of Debtors' Amended Joint Plan Of Reorganization.


Dated: May 30, 2025                    By:    _/s/ Eyal Berger_____
                                       Eyal Berger, Esq.
                                       Florida Bar Number:  0011069
                                       Email: eyal.berger@akerman.com
                                       **AKERMAN LLP**
                                       201 East Las Olas Boulevard, Suite 1800
                                       Fort Lauderdale, FL  33301
                                       Tel:  954-463-2700 /Fax:  954-463-2224
                                       -and-
                                       Amanda Klopp, Esq.
                                       Florida Bar No. 124156
                                       Email: amanda.klopp@akerman.com
                                       **AKERMAN LLP**
                                       777 South Flagler Drive
                                       Suite 1100 – West Tower
                                       West Palm Beach, Florida 33401
                                       Tel: 561-653-5000 /Fax: 561-659-6316
                                       *Counsel for Debtors-in-Possession*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case as listed in the below service list.

By: */s/ Eyal Berger* _____
Eyal Berger, Esq.

## SERVICE LIST

**24-15755-LMI Notice will be electronically mailed to:**

Eyal Berger, Esq. on behalf of Debtor A & O Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Debtor A&O Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Debtor Altas P2 Managing Member LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Debtor Ivankovich Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Interested Party A&O Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Interested Party A&O Family LLC (Illiniois)
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Interested Party Altas P2 Managing Member LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff A & O Family LLC (IL)
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff A&O Family LLC (FL)
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Atlas P2 Managing Member, LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Ivankovich Family LLC
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Anthony Ivankovich
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Olga Ivankovich
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Steven J Brotman on behalf of Interested Party P-5 GRA LLC
steven.brotman@troutman.com,
Irene.rabba@troutman.com;AutoDocket@troutman.com;Pierce.rigney@troutman.com;Gary.marsh@troutman.com;Matthew.brooks@troutman.com

Michael S Budwick, Esq on behalf of Defendant Steven Ivankovich
mbudwick@melandbudwick.com,

ltannenbaum@melandbudwick.com;mrbnefs@yahoo
.com;mbudick@ecf.courtdrive.com;ltannenbaum@
ecf.courtdrive.com;phornia@ecf.courtdrive.com

Michael S Budwick, Esq on behalf of Interested Party
Steven Ivankovich
mbudick@melandbudwick.com,
ltannenbaum@melandbudwick.com;mrbnefs@yahoo
.com;mbudick@ecf.courtdrive.com;ltannenbaum@
ecf.courtdrive.com;phornia@ecf.courtdrive.com

Michael G Busenkell on behalf of Interested Party P-
5 GRA LLC
mbusenkell@gsbblaw.com, blehman@gsbblaw.com

Heidi A Feinman on behalf of U.S. Trustee Office of
the US Trustee
Heidi.A.Feinman@usdoj.gov

Alexa Garcia Chinchilla on behalf of Interested Party
Anthony Ivankovich
achinchilla@kttlaw.com

Alexa Garcia Chinchilla on behalf of Interested Party
Olga Ivankovich
achinchilla@kttlaw.com

Alexa Garcia Chinchilla on behalf of Plaintiff
Anthony Ivankovich
achinchilla@kttlaw.com

Alexa Garcia Chinchilla on behalf of Plaintiff Olga
Ivankovich
achinchilla@kttlaw.com

Dan L Gold on behalf of U.S. Trustee Office of the
US Trustee
Dan.L.Gold@usdoj.gov

Gary A Goldstein on behalf of Debtor A & O Family
LLC
gagpa@aol.com, michael@rglawfirm.us

Gary A Goldstein on behalf of Debtor A&O Family
LLC
gagpa@aol.com, michael@rglawfirm.us

Gary A Goldstein on behalf of Debtor Altas P2
Managing Member LLC
gagpa@aol.com, michael@rglawfirm.us

Gary A Goldstein on behalf of Debtor Ivankovich
Family LLC
gagpa@aol.com, michael@rglawfirm.us

Amanda Klopp on behalf of Debtor A & O Family

LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Debtor A&O Family
LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Debtor Altas P2
Managing Member LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Debtor Ivankovich
Family LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Interested Party A&O
Family LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Interested Party A&O
Family LLC (Illiniois)
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Interested Party Altas P2
Managing Member LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff A & O Family
LLC (IL)
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff A&O Family
LLC (FL)
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff Atlas P2
Managing Member, LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff Ivankovich
Family LLC
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Ari Newman, Esq. on behalf of Interested Party RBC
Capital Markets, LLC and Royal Bank of Canada

3

newmanar@gtlaw.com,
perezan@gtlaw.com;mialitdock@gtlaw.com;miaecfb
ky@gtlaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Darrell Winston Payne on behalf of Creditor Schiller
DuCanto & Fleck LLP
dpayne@stearnsweaver.com,
cveguilla@stearnsweaver.com

Darrell Winston Payne on behalf of Creditor Jeanette
Ivankovich
dpayne@stearnsweaver.com,
cveguilla@stearnsweaver.com

Darrell Winston Payne on behalf of Defendant
Schiller Ducanto & Fleck, LLP
dpayne@stearnsweaver.com,
cveguilla@stearnsweaver.com

Darrell Winston Payne on behalf of Defendant
Jeanette Ivankovich
dpayne@stearnsweaver.com,
cveguilla@stearnsweaver.com

Patricia A Redmond on behalf of Creditor Schiller
DuCanto & Fleck LLP
predmond@stearnsweaver.com,
jmartinez@stearnsweaver.com;mfernandez@stearns
weaver.com

Patricia A Redmond on behalf of Creditor Jeanette
Ivankovich
predmond@stearnsweaver.com,
jmartinez@stearnsweaver.com;mfernandez@stearns
weaver.com

Patricia A Redmond on behalf of Defendant Schiller
Ducanto & Fleck, LLP
predmond@stearnsweaver.com,
jmartinez@stearnsweaver.com;mfernandez@stearns
weaver.com

Patricia A Redmond on behalf of Defendant Jeanette
Ivankovich
predmond@stearnsweaver.com,
jmartinez@stearnsweaver.com;mfernandez@stearns
weaver.com

David L Rosendorf, Esq on behalf of Interested Party
Anthony Ivankovich
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Interested Party

Olga Ivankovich
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff A & O
Family LLC (IL)
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff A&O
Family LLC (FL)
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff Atlas
P2 Managing Member, LLC
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff
Ivankovich Family LLC
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff
Anthony Ivankovich
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

David L Rosendorf, Esq on behalf of Plaintiff Olga
Ivankovich
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

Luis Salazar, Esq. on behalf of Interested Party
Township Capital, LLC
Luis@Salazar.Law, luis-salazar-
4791@ecf.pacerpro.com;Ceide@salazar.law;Lee-
Sin@Salazar.Law;Lorenzo@Salazar.Law

Luis Salazar, Esq. on behalf of Interested Party
Township GP Fund II, LP
Luis@Salazar.Law, luis-salazar-
4791@ecf.pacerpro.com;Ceide@salazar.law;Lee-
Sin@Salazar.Law;Lorenzo@Salazar.Law

Luis Salazar, Esq. on behalf of Interested Party
Township Orlando, LLC
Luis@Salazar.Law, luis-salazar-
4791@ecf.pacerpro.com;Ceide@salazar.law;Lee-
Sin@Salazar.Law;Lorenzo@Salazar.Law

79793097;1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

Field Code Changed

In re:                                                        Chapter 11 Cases

                                                              Case No. 24-15755-LMI
IVANKOVICH FAMILY LLC                                         (Jointly Administered)
A&O FAMILY LLC (FL),                                          24-15762-LMI
A & O FAMILY LLC (IL),                                        24-15767-LMI
ATLAS P2 MANAGING MEMBER, LLC                                 24-15770-LMI

        Debtors.

---

**SECOND AMENDED JOINT DISCLOSURE STATEMENT OF DEBTORS IN
SUPPORT OF DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION**

---

**AKERMAN LLP**
Eyal Berger, Esq.
Florida Bar Number:  0011069
Email: eyal.berger@akerman.com
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL  33301
Tel:  954-463-2700
Fax:  954-463-2224

        -and-

**AKERMAN LLP**
Amanda Klopp, Esq.
Florida Bar No. 124156
Email: amanda.klopp@akerman.com
777 South Flagler Drive
Suite 1100 – West Tower
West Palm Beach, Florida 33401
Tel: 561-653-5000
Fax: 561-659-6316

*Counsel for Debtors-in-Possession*

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE PLAN. ACCEPTANCE
MAY NOT BE SOLICITED UNTIL THE DISCLOSURE STATEMENT HAS BEEN
APPROVED BY THE BANKRUPTCY COURT UNDER SECTION 1125 OF THE
BANKRUPTCY CODE. THE FORM OF DISCLOSURE STATEMENT HAS BEEN
SUBMITTED TO THE BANKRUPTCY COURT, BUT HAS NOT BEEN APPROVED.**

81632608;2

**TABLE OF CONTENTS**

I.    Executive Summary of Plan

II.    Introduction

    A.    Purpose of this Document

    B.    Deadlines for Voting and Objecting; Date of Confirmation Hearing

    C.    Disclaimer

III.    Background

    A.    Description and History of the Debtors' Businesses, Assets and Sources of Plan Funding and Plan Guarantors

    B.    Management of the Debtors During Bankruptcy

    C.    Events Leading to Chapter 11 Filing

    D.    Significant Events during the Bankruptcy Case

    E.    Avoidable Transfers and Insider Releases

    F.    Claims Scheduled and Asserted Against Debtors and Pending Claim Objections

IV.    Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests

    A.    What Is the Purpose of the Plan of Reorganization?

    B.    Unclassified Claims

    C.    Classes of Claims and Equity Interests

    D.    Means of Implementing the Plan

    E.    Risk Factors

    F.    Executory Contracts and Unexpired Leases

    G.    Tax Consequences of Plan

V.    Confirmation Requirements and Procedures

    A.    Who May Vote or Object

    B.    Votes Necessary to Confirm the Plan

    C.    Absolute Priority Rule Satisfied

81632608;2

     D.  Best Interests of Creditor Test Satisfied

     E.  Feasibility / Ability to Fund Plan

     F.  Creditor Recourse

VI.  <u>Effect of Confirmation of Plan</u>

     A.  Discharge of Debtor

     B.  Releases and Injunctions

     C.  Modification of Plan

     D.  Final Decree

VII.  <u>Definitions</u>

**<u>APPENDICES</u>**

Exhibit A: Copy of Proposed Plan of Reorganization

Exhibit B: Spreadsheet of Asserted and Allowed Claims Against Debtor

Exhibit C: Liquidation Analysis

81632608;2

I.    **Executive Summary of Plan**

      The Debtors Ivankovich Family, LLC, A&O Family, LLC (IL), A&O Family, LLC (FL), and Atlas P2 Managing Member, LLC (collectively, the "**Debtors**") filed for Chapter 11 bankruptcy on June 10, 2024 (the "**Petition Date**"). This Disclosure Statement is submitted to creditors for use in evaluation of the Plan. The following chart summarizes the estimated claims amounts, proposed treatment, voting rights and projected plan recovery for each class of creditor:

| Claim or Interest | Class | Allowed Amount | Proposed Treatment of Allowed Claims | Voting Rights | Projected Plan Recovery |
|---|---|---|---|---|---|
| Administrative Claims | Unclassified | $2,300,000 (estimated) | Payment on Effective Date. | None | 100% |
| Priority unsecured tax claims | Unclassified | $0 (estimated) | Payment on Effective Date. | None | 100% |
| Secured claim of Celadon / Wedbush Securities | 1 | $6,000,000 (estimated) | Reorganized Debtors shall pay each claim against them, respectively from each of their assets, the full amount of the allowed secured claims within sixty (60) days of the Effective Date. | Impaired /Entitled to Vote | 100% |
| Secured claim of Royal Bank of Canada | 2 | $6,000,000 (estimated) | Reorganized Debtor A&O Family, LLC (FL) shall pay the full amount of the allowed secured claims within sixty (60) days of the Effective Date using the Reorganized Debtor's A&O Family, LLC (FL)'s' assets. | Impaired/ Entitled to Vote | 100% |
| Allowed Claim of Jeanette Ivankovich for Domestic Support Obligations | 3 | $0 (Disputed claims in the amount of $1,138,785.14 asserted against Debtors) | Any Allowed Class 3 Claim shall be satisfied in full by the Reorganized Debtors within fourteen (14) days of entry of a final order allowing any Class 3 Claim. Additionally, Drs. Anthony and Olga Ivankovich shall fund the Support Trust (described herein) on behalf of the Debtors to advance reasonable and necessary expenses of their grandchildren, and any payments made by the Support Trust shall reduce | Unimpaired /Deemed to Accept | 100% |

81632608;2

| Claim or Interest | Class | Allowed Amount | **Proposed Treatment of Allowed Claims** | **Voting Rights** | **Projected Plan Recovery** |
|---|---|---|---|---|---|
| | | | the amount of any allowed claim by the amount of the payments. | | |
| Allowed Unsecured Claims | 4 | $100,000 estimated (Disputed claims aggregating in excess of $44,000,000 asserted against Debtors) | Reorganized Debtors shall pay, respectively from each of their assets, the holder of an Allowed Class 4 Claim the full amount of any Allowed Class 4 Claim within fourteen (14) days of entry of a final order allowing any Class 4 Claim | Unimpaired / Deemed to Accept | 100% |
| Allowed Equity Interests of the Debtor A&O Family, LLC (IL) | 5 | | Holders of Allowed Equity Interests shall retain their interests. | Unimpaired / Deemed to Accept | 100% |
| Allowed Equity Interests of the Debtor Ivankovich Family, LLC | 6 | | Holders of Allowed Equity Interests shall retain their interests. | Unimpaired / Deemed to Accept | 100% |
| Allowed Equity Interests of the Debtor Atlas P2 Managing Member, LLC | 7 | | Holders of Allowed Equity Interests shall retain their interests. | Unimpaired / Deemed to Accept | 100% |
| Allowed Equity Interests of the Debtor A&O Family, LLC (FL) | 8 | | Holders of Allowed Equity Interests shall retain their interests. | Unimpaired / Deemed to Accept | 100% |
| | Total: | $14,400,000 in estimated allowed amount. (Disputed claims aggregating in excess of $46,000,000.) | | | |

5

The following chart summarizes the assets funding, or guaranteeing, the Plan:

| Assets Funding Claims Against All Estates | Value |
|---|---|
| Plan Funding by secured loan of up to $15,000,000 from Dr. Anthony Ivankovich and Dr. Olga Ivankovich | $15,000,000 |
| | |
| **Assets Funding or Guaranteeing Claims Against A&O Family, LLC (FL):** | **Value** |
| A&O Family LLC (FL) Cash, Bonds, Certificates of Deposit, Securities (value as of 1/31/2025) | $25,209,896 |
| Plan Guarantors, up to maximum of P-5 Properties Equity | $33,900,000 (est.) |
| Sunseeker Yacht owned by Yacht Daddy LLC | $11,500,000 (est.) |
| **Subtotal:** | **$70,609,896** |
| | |
| **Assets Funding Claims Against A&O Family, LLC (IL)** | |
| A&O Family LLC (IL) Celadon Account (value as of 1/31/2025) | $1,752,475 |
| | |
| **Assets Funding Claims Against Ivankovich Family LLC** | |
| Ivankovich Family LLC Celadon Account (value as of 1/31/2025) | $2,607,547 |
| | |
| **Assets Funding Claims Against Atlas P2 Managing Member, LLC** | |
| Assets of P2 Portfolio Managing Member LLC (net of secured loans) [1] | $4,605,623 |
| | |
| **Total:** | **$94,575,541** |

---

[1] The liquid asset of Atlas P2 is the equity of P2 Portfolio Managing Member, LLC, its wholly-owned subsidiary.

81632608;2

II.    **Introduction**

    Debtors file this joint disclosure statement (the "**Disclosure Statement**") pursuant to 11 U.S.C. § 1125 and Fed. R. Bankr. P. 3016(b) and (c), together with the Debtors' Plan of Reorganization (the "**Plan**"). A copy of the Plan is attached hereto as **Exhibit A** and is incorporated herein by reference. All capitalized terms not defined in the Disclosure Statement shall have the definition set forth in the Plan.

    A.    **Purpose of this Document**

This Disclosure Statement describes:

- Events leading to the Petition Date;

- The Debtors and significant events during the bankruptcy cases;

- How the Plan proposes to treat claims or equity interests;

- Who can vote on or object to the Plan;

- What factors the United States Bankruptcy Court for the Southern District Of Florida (the "**Court**") will consider when deciding whether to confirm the Plan;

- Why the Debtors believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and

- The effect of confirmation of the Plan.

    Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

    B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

    The Court has not yet confirmed the Plan described in this Disclosure Statement. A separate order has been entered setting the following information:

- Time and place of the hearing to finally approve this Disclosure Statement and confirm the Plan;

- Deadline for voting to accept or reject the Plan; and

- Deadline for objecting to the adequacy of Disclosure Statement and confirmation of the Plan.

7

81632608;2

If you want additional information about the Plan or the voting procedures, you should contact Debtors' counsel, Eyal Berger, Esq., Akerman LLP, 201 East Las Olas Boulevard, Suite 1800, Fort Lauderdale, Florida, 33301, Email: eyal.berger@akerman.com, Telephone: (954) 463-2700, and Amanda Klopp, Esq. Akerman LLP, 777 South Flagler Drive, Suite 1100 West Tower, West Palm Beach, Florida 33401, amanda.klopp@akerman.com, Telephone: (561) 653-5000.

**C.    Disclaimer**

The Court has court has yet to approve this Disclosure Statement, and the Court has not yet determined whether the Plan meets the legal requirements for confirmation.

**III.    <u>Background</u>**

**A.    Description and History of the Debtors' Businesses, Assets and Sources of Plan Funding and Plan Guarantors**

Prior to the Petition Date, the Debtors were all directly or indirectly engaged in the investment business as part of a family office founded by Drs. Anthony and Olga Ivankovich, who are the managers of Debtor A&O Family (FL).  Steven Ivankovich, the son of Drs. Anthony and Olga Ivankovich, is the manager of the Debtors Atlas P2, Ivankovich Family LLC, and A&O Family (IL).  Drs. Anthony and Olga Ivankovich, individually and through their trusts, own 99.25% of A&O Family (FL).  Dr. Anthony Ivankovich indirectly owns 80% of Debtor Atlas P2. Debtor Ivankovich Family LLC and A&O Family (IL) are owned by North American Property Ventures Ltd., a Grand Cayman Company.

The Debtors' investments include financing, developing, marketing, and selling commercial real estate through various special purpose entities affiliated with the Debtors. The investments and assets relevant to the Debtors' plan funding, the claims asserted in this case, and the reason for filing this bankruptcy case, are described below.

**1.    <u>P-5 Portfolio</u>**

Prepetition, A&O Family (FL) funded a portfolio of multi-family properties known as the "P-5 Portfolio" which were organized and operated through limited liability special purpose entities that owned and developed five apartment complexes identified as: (1) Caribbean Isle, located at 3503 Caribbean Isle, Kissimmee, FL, (2) Forest Park, located at 2829 S. Oakland Forest Drive, Oakland Park, FL, (3) The Warwick, located at 2400 Arrowhead Drive, Abilene, TX, (4) Coulter Landing, located at 7208 S.W. 34th Ave., Amarillo, TX, and (5) Wind Tree, located at 3631 Brennan Blvd, Amarillo, TX.

In April 2022, Caribbean Isle and Forest Park were both sold to an unrelated third party, resulting in approximately $30,000,000 of net proceeds.  In connection with the closing, the first mortgage holder on all five properties, Walker & Dunlop Commercial Property Funding, LLC ("**<u>Walker & Dunlop</u>**") was fully satisfied.  Walker & Dunlop had control of an escrow account to pay for real estate taxes, insurance, and reserves for the P-5 Portfolio properties, which contained approximately $1,544,549 at closing.  Though the escrow account was required to be turned over at closing to the special purpose entities operating the remaining properties in P-5 Portfolio, the

8

escrow account was frozen in connection with litigation by a judgment creditor of Steven Ivankovich.

Each of the Texas apartment complexes are owned by a special purpose limited liability company. The record owners of The Warwick, Coulter Landing, and Wind Tree are Pilgrim Warwick Owner LLC, Pilgrim Coulter Owner LLC, and Pilgrim Windtree Owner LLC, respectively (the "**P-5 Record Owners**"). Debtors incorporate the specific description and disclosures relating to the P-5 Portfolio as described in their *Motion for Order Authorizing Use of Cash Collateral* (ECF No. 149) ("**Cash Collateral Motion**").

As of the Petition Date, the dispute over the escrowed funds remained pending in the Northern District of Illinois, and inability of the special purpose entities to access the escrowed funds due to the pending disputes created cash shortfalls for operational expenses, including real estate taxes, leading to the filing of the Cash Collateral Motion. The Court permitted A&O Family (FL) to use $5,000,000 of cash collateral to make a secured loan to fund the P-5 Portfolio real estate taxes, mechanic's liens, insurance and improvements. There is estimated equity of $33,900,000 in the remaining P-5 properties, after accounting for the secured loan of $5,000,000. The owners of the P-5 Portfolio properties agreed, as part of the secured loan of cash collateral, to guarantee the funding of the claims against the estate of Debtor A&O Family (FL).

As of the Petition Date, there were pending litigation claims against the parent company of the P-5 Portfolio by its minority owner, in the Delaware Chancery Court. The range of the value of Real Property in the P-5 Portfolio was calculated, on the low end, by using its tax assessed value, and, on the high end, by following an income approach which assumes a stabilized cashflow of rents.

2.    P-2 Portfolio

Prepetition, Debtor Atlas P2 was the indirect owner, through wholly-owned limited liability companies, of two special purpose entities known as: (1) Atlas Alexandria & Parc Vue LLC that was the owner of an apartment complex located at 10649 Bastille Lane, Orlando, Florida ("**Parc Vue**"); and (2) Atlas Crowntree Lakes LLC that was the owner of an apartment complex located at 5759 Crowntree Lane, Orlando, Florida ("**Crowntree**") (Parc View and Crowntree are referred to as the "**P-2 Portfolio**"). On December 28, 2021, the aforementioned special purpose entities closed on the sale of Parc Vue and Crowntree to unrelated third parties APV Property Owner LLC and CTL Property Owner LLC.

After the sale of the P-2 Portfolio, a creditor holding a personal money judgment against Steven Ivankovich issued a citation to discover assets to Stifel Financial Corporation ("**Stifel**"). In response, apparently due to Steven Ivankovich's managerial capacity on the account holders, Stifel disclosed information about, and froze the accounts of, Debtor Ivankovich Family and Atlas P2's wholly-owned subsidiary, P2 Portfolio Managing Member, LLC, which held some of the P-2 Portfolio proceeds, without giving prior notice to the account holders. The Northern District of Illinois ultimately removed the freeze on the Stifel accounts, as the judgment creditor could not establish that these were assets of Steven Ivankovich.

Currently, proceeds of $8,055,000.00[2] (as of January 31, 2025) from the sale of the P-2 Portfolio are invested in securities in an account of Atlas P2's wholly-owned subsidiary, P2 Portfolio Managing Member, LLC at Celadon Financial Group ("**Celadon**"), and these assets are being committed to funding the Plan, specifically any claims allowed solely against Debtor Atlas P2 Managing Member, LLC.

As of the Petition Date, there were pending litigation claims involving the P-2 Portfolio in California by a minority owner of a minority owner of Debtor Atlas P2, as discussed further in *Debtors' Omnibus Objection to Claims of Township Entities* (ECF No. 134), and *Agreed Motion to Lift the Automatic Stay* (ECF No. 198), which is incorporated by reference herein.

### 3.    Investment Accounts

The Debtors, and Atlas P2's wholly-owned subsidiary, P2 Portfolio Managing Member LLC, have various securities, bonds, and other investments in accounts maintained with Celadon, Busey, RBC, Wells Fargo and in other investments.  The balances as of January 31, 2025 are as follows:

- A&O Family, LLC (FL): $25,209,896
- A&O Family, LLC (IL): $1,752,475
- Ivankovich Family LLC: $2,607,547
- P2 Portfolio Managing Member LLC: $4,605,623[3]

### 4.    Yacht Daddy, LLC

Yacht Daddy, LLC is a Delaware LLC that is 100% owned by A&O Family (FL).  Yacht Daddy, LLC owns a 2023 Sunseeker Yacht, which was purchased for approximately $14 million on December 23, 2022, and is subject to no liens or encumbrances.  Debtors incorporate in this Disclosure Statement the Periodic Reports on Yacht Daddy, LLC filed on September 20, 2024 and January 31, 2025. (ECF Nos. 105 and 262.) Yacht Daddy, LLC has agreed to be a Plan Funder, and liquidate the Sunseeker Yacht within two (2) years of the Effective Date to fund any remaining Allowed Claims asserted against Debtors A&O Family, LLC (FL).  The current value of the 2023 Sunseeker Yacht was determined by its original purchase price, accounting for a small depreciation as a result of use.

### 5.    Drs. Anthony and Olga Ivankovich

Dr. Olga Ivankovich and Dr. Anthony Ivankovich shall provide the Debtors plan funding of up to $15,000,000 in the form of a secured loan with a first position lien on all assets of the Reorganized Debtors, including all commercial tort claims ~~and~~ but expressly excluding claims under Chapter 5 of the Bankruptcy Code, in the amounts, and to the extent, that are respectively loaned to each Reorganized Debtor to pay the allowed claims against such entities.

---

[2] Subject to a secured margin loan of $3,449,377.00, as of January 31, 2025.

[3] Net of secured loans not treated as part of the Plan.

Dr. Olga Ivankovich and Dr. Anthony Ivankovich are the ultimate beneficial owners of the Debtors and related entities.[4]  The Debtors, along with some of the related Debtor entities providing collateral to fund the Plan, are illiquid.  Absent the personal cash contributions by Dr. Olga Ivankovich and Dr. Anthony to the Plan, they would be forced to liquidate Debtor assets at their liquidation value. Dr. Olga Ivankovich and Dr. Anthony are personally funding the Plan with their own funds as a secured loan to preserve and ultimately maximize the value of the Debtors' assets, which value they assert ultimately belongs to them.

Moreover, Drs. Olga Ivankovich and Dr. Anthony Ivankovich are the grandparents of the children of Steven and Jeanette Ivankovich and desire to ensure that their grandchildren's expenses are taken care of, and thus have agreed to fund the Support Trust as a part of the Plan.  Although Drs. Olga Ivankovich and Dr. Anthony Ivankovich dispute any legal obligation to pay the support obligations of their son, Steven Ivankovich, in addition to a desire to ensure their grandchildren's living, health and education expenses are provided for, they desire to end the relentless harassment of Dr. Olga Ivankovich by Jeanette Ivankovich, which has come in the form of text messages threatening Dr. Olga Ivankovich and disparagement of Dr. Olga Ivankovich to her grandchildren.

**B.**    **Events Leading to Chapter 11 Bankruptcy**

1.    <u>The Divorce Proceeding</u>

The Debtors were compelled to commence these Chapter 11 cases in order to obtain access and prevent the liquidation of the Debtors' investment accounts that were improperly frozen by Celadon due to various rulings in the pending contested divorce case of Steven Ivankovich and Jeanette Ivankovich (the "**Divorce Proceeding**").[5]  On November 2, 2023, the Illinois Divorce Court entered a support order ("**Support Order**") requiring, among other things, Steven Ivankovich to pay (1) child support, as contemplated under 750 ILCS 5/505, in the amount of $6,933 per month until each child reaches the age of majority ("**Child Support**"); and (2) temporary maintenance, as contemplated under 750 ILCS 5/504, in the amount of $14,180 per month ("**Maintenance**"). In total, Steven Ivankovich was required to pay $21,113 in Child Support and Maintenance for the duration set forth in 750 ILCS 5/504 and 5/505.

Although the Debtors were not parties to the Divorce Proceeding, and although the assets of Debtors were previously determined by the Northern District of Illinois to not be the assets of Steven Ivankovich, the Illinois Divorce Court entered various rulings implicating the Debtors and the Debtors' assets.  Specifically, the Illinois Divorce Court has entered at least three orders that necessitated the filing of these Chapter 11 cases as follows:

a)    A temporary restraining order entered against Steven Ivankovich that imposed restrictions on, and required Celadon to monitor, the Debtors'  accounts, to

---

[4] This assertion is disputed by Jeanette Ivankovich, who has filed proofs of interest in this bankruptcy case. Pursuant to the Court's recent order of abstention in the pending adversary, the determination of the equity interests will be in the Divorce Proceeding (hereinafter described).

[5] The divorce case is pending in the Circuit Court of Cook County, Illinois County Department, Domestic Relations Division as In re: Marriage of Jeanette Ivankovich (Petitioner) and Steven Ivankovich (Respondent), Case No. 2021D9220 (the "**Illinois Divorce Court**")

81632608;2

determine if any transactions were payments to Steven Ivankovich (the "**Celadon TRO**"). The requirement that Celadon actively monitor Debtors' accounts and be subjected to multiple subpoenas in the Illinois Divorce Case resulted in Celadon preferring not to continue its business relationship with the Debtors, to the detriment of the Debtors. Ultimately, to avoid uncertainty related to the Illinois Divorce Court's TRO, Celadon and Wedbush Securities Inc. (the clearing agent of the Debtors' securities held in Celadon accounts) ("**Wedbush**") ultimately froze all of the Debtors' accounts.

b) The Illinois Divorce Court, based upon an *ex parte* motion filed by Jeanette Ivankovich, entered an *ex parte* order freezing all bank accounts at JP Morgan Chase Bank on which Steven Ivankovich had the authority to sign ("**Chase TRO**"). The effect of this order, and Chase freezing the accounts, resulted in the inability of the Debtors to transfer to or use multiple Chase bank accounts for ordinary business purposes. The effect of the Chase TRO also prevented related non-debtor affiliates of the Debtors from receiving advances from the Debtors to pay basic items such as, *inter alia*, insurance and real estate taxes on the P-5 Portfolio properties.

c) On May 23, 2024, the Illinois Divorce Court entered a preliminary injunction (the "**Preliminary Injunction**") that ordered Celadon to liquidate and turn over to Schiller, DuCanto & Fleck ("**Schiller**"), counsel for Jeanette Ivankovich in the Divorce Proceeding, the assets of the Debtors in the Celadon accounts, in an amount sufficient to satisfy the outstanding support and maintenance obligations of Steven Ivankovich, and Schiller's legal fees that Steven Ivankovich was ordered to pay.

The Debtors were not parties to the Illinois Divorce Case and filed an immediate appeal and emergency motion to stay the Preliminary Injunction.[6] The Illinois Divorce Court denied the emergency motion, and the appeal is pending.

Celadon notified the Illinois Divorce Court and the Debtors that it was unable to comply with the turnover order because the securities were actually held by Wedbush. The Illinois Divorce Court and counsel for Jeanette Ivankovich advised Celadon that the turnover order had been extended to include Wedbush, and directed Celadon to order Wedbush to turn over the Debtors' funds and commence the account liquidation process.

The forced liquidation of the Debtors' investments with Celadon and Wedbush would cause substantial harm to the Debtors as many of the securities were acquired on margin and a forced liquidation could collectively yield at least $1,000,000 in damages.

2.    Disputes Relating to Repayments of Certain Debts

In addition to the issues arising from the Illinois Divorce Case, there also exist certain disputes as to the Debtors' obligations to repay certain debts or judgments owed by insiders or

---

[6] After the institution of the bankruptcy cases, and despite the automatic stay, the Illinois Divorce Court issued an order purporting to add the Debtors as parties to the Divorce Proceeding.

81632608;2

affiliates of the Debtors in various venues concerning the P-5 Portfolio and the P-2 Portfolio, as stated above.  The potential for conflicting pre-judgment restraints, and the attendant disruption to the Debtors' and its affiliates' operations which was occurring pre-suit, was further reason for the Chapter 11 filing.

    **C.    Significant Events During the Bankruptcy Case**

    1.    <u>Retention of Professionals</u>

During the pendency of these Chapter 11 Cases, the Debtors sought and obtained Court approval for the retention of Eyal Berger, Esq. and the firm of Akerman LLP ("**Counsel**") to act as general bankruptcy counsel for the Debtors throughout the entirety of these proceedings. (ECF No. 57.)

In addition, on July 19, 2024, the Debtors obtained court approval to retain Andrew Hahm, CPA, MST and Mandell Hahm Advisory Group, Ltd. ("**Mandell Hahm**") as accountants to prepare financial statements and tax returns for the Debtors and assist with other compliance and financial disclosure requirements in this bankruptcy.  (ECF No. 58.)  On September 4, 2024, the Debtors obtain court approval to retain CohnReznick LLP ("**CohnReznick**") as financial advisors to assist the Debtors in preparing monthly operating reports, and in the preparation of financial statements and other reports as may be required by the Court or under the U.S. Trustee Guidelines. (ECF No. 98.)

Special counsel was retained to litigate pending proceedings against Debtors in out-of-state venues.  On October 22, 2024, the Debtors obtained court approval to retain Vonn R. Christenson and the Christenson Law Firm LLP as special counsel to defend Debtor Atlas P2 in the pending proceedings against it in the California litigation concerning the P-2 Portfolio.  (ECF Nos. 143, 151.)  On October 22, 2024, Debtors obtained court approval to retain Jeffrey M. Heftman Esq. and Schoenberg Finkel Beederman Bell Glazer, LLC as Special Counsel in the pending Divorce Proceeding, and appeal of the Preliminary Injunction, in the event that stay relief was granted for such proceedings to continue against Debtors. (ECF Nos. 144, 153.)

    2.    <u>Cash Collateral</u>

As referenced above, the Court granted approval for the Debtor A&O Family, LLC (FL) to use the cash collateral of Royal Bank of Canada, to protect its existing investment in the P-5 Portfolio and prevent the P-5 Portfolio properties from being sold at tax sales and eliminating over $38 million of otherwise unencumbered equity.  Debtor A&O Family, LLC (FL) obtained court approval to make a secured loan of $5,000,000 to the P-5 Record Owners in order to pay real estate taxes, mechanics' liens, insurance, and improvements, and will receive a first-priority senior mortgage on the P-5 Properties owned by the P-5 Record Owners.  As a condition to granting the loan, the P-5 Record Owners agreed to guarantee the payment of all Allowed Claims against the estate of Debtor A&O Family, LLC (FL).

    3.    <u>Claim Objections</u>

Debtors objected to the twelve claims filed by the Township Capital, LLC, Township GP Fund II, LP and Township Orlando, LLC ("**Township Entities**"), collectively totaling

13

$480,000,000. Docket No. 134. The Court entered an agreed order disallowing eleven of these claims, with only a single claim of $40,000,000 remaining as a disputed claim against Atlas P2, which shall be liquidated in the California proceeding. (ECF No. 197.) Debtors project that the maximum amount allowed against the Atlas P2 estate will be $8,400,000, as same is the maximum amount sought in the pending litigation. Solely for purposes of any need to solicit votes (should the need arise) and to address any confirmation objection that the Township Entities may interpose against the Amended Plan, the Debtors have consented to estimate the maximum amount of the claims owed to the Township Entities to aggregate $14,000,000 and to have said maximum claims be apportioned in the amounts of $6,500,000, $6,500,000, and $1,000,000 across the three Township Entities in accordance with the respective alleged indirect equity ownership they assert in Debtor Atlas P2.

4.    Stay Relief

On October 7, 2024, Jeanette Ivankovich, who filed a purported priority claim for a domestic support obligation against Debtors, and proofs of interest against each Debtor, moved to confirm the automatic stay was inapplicable, or alternatively, for stay relief or abstention, to permit her to liquidate her alleged DSO claim against Debtors, and determine issues of Steven Ivankovich's alleged ownership of the Debtors, in the Illinois Divorce Court. (ECF No. 123.) This relief was opposed by Debtors, and Drs. Anthony and Olga Ivankovich, who assert beneficial ownership over all Debtors. Docket No. 147, 148. The Court rejected that the stay was inapplicable, and denied stay relief with respect to any proceedings against the Debtors' property or concerning the management or control of Debtors.

On December 4, 2024, the Court granted agreed stay relief to the Township Entities to liquidate their remaining claim against Debtor Atlas P2 in the pending California litigation. Docket Nos. 198, 200.

5.    Adversary Proceeding

On October 17, 2024, Debtors and Drs. Anthony and Olga Ivankovich filed an adversary proceeding against Jeanette Ivankovich, Schiller Ducanto & Fleck LLP and Steven Ivankovich. The adversary proceeding includes claims: (1) objecting to the duplicative proofs of claims asserting DSOs and priority status, as corporate debtors cannot have DSOs, (2) objecting to the disputed proofs of interest filed by Jeanette Ivankovich based on Steven Ivankovich's alleged ownership interest in Debtors, (3) seeking injunctive relief for stay violations, and (4) seeking declaratory relief as to the ownership of the Celadon accounts and the ownership of Debtors.

On February 26, 2025, the Court abstained from the counts objecting to the disputed proofs of interest filed by Jeanette Ivankovich based on Steven Ivankovich's alleged ownership interest in Debtors, and seeking declaratory relief as to the ownership of the Celadon accounts and the ownership of Debtors, in favor of those issues being determined by the Illinois Divorce Court on the basis of comity and respect for state law. The Plan does not depend on resolution of the equity dispute, as any equity security holders (whoever they may ultimately be deemed to be), retain equity. The Adversary Proceeding remains pending as to the determination of Debtors' objections to the proofs of claims filed by Jeanette Ivankovich. Any claim ultimately allowed will be, as part of Class 3, paid in full under the Plan by the relevant Debtor that such claim is allowed against.

14

6.    Judicial Settlement Conferences

Debtors have scheduled judicial settlement conferences with two sets of creditors in order to potentially resolve plan treatment issues: (1) Jeanette Ivankovich and Schiller, DuCanto & Fleck LLP, and (2) the Township Entities.  These judicial settlement conferences are expected to take place in February and March 2025 and are ongoing as of the filing of this Amended Disclosure Statement. The Debtors will modify the Plan to incorporate any settlement reached in these judicial settlement conferences.

**D.    Avoidable Transfers and Insider Releases**

The Debtors do not intend to pursue preference, fraudulent conveyance, or other avoidance actions for purposes of funding the Plan, nor is analysis of these transfers necessary prior to confirmation, given that the Debtors' existing assets and each claim pursuant to by the Plan funding provided by the Plan Guarantors, exceeds the maximum projected amount of any claims that can be asserted against the Debtors.

The Plan provides for the release of Debtors' claims against Dr. Anthony Ivankovich and Dr. Olga Ivankovich in exchange for their plan funding.

**E.    Claims and Interests Scheduled and Asserted Against Debtors and Pending Claim and Interest Objections**

A chart attached as **Exhibit B** hereto lists the scheduled and asserted claims and interests against the Debtors, including the allowed amount of each claim pursuant to the consensual treatment negotiated or the applicable objection, and the proposed treatment of each claim under the Plan.

As noted above, Debtors have objected to proofs of claims asserted by the Township Entities, Jeanette Ivankovich, and Schiller.  Drs. Anthony and Olga Ivankovich have objected to the proofs of interest filed by Jeanette Ivankovich.  Debtors anticipate resolving all claim objections, whether in the respective venue for the prepetition pending litigation or before the Bankruptcy Court, after confirmation of the Plan.  Debtors project that the maximum amount of unsecured claims allowed against the estates will be $10,976,346.[7]

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

---

[7] The Debtors' Liquidation Analysis projects that accounting for the risk of an adverse ruling on certain of the contingent claims asserted against the Debtors' estates that the true projected allowed unsecured claims will not exceed $5,000,000.

81632608;2

IV.   **Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests**

A.   **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.   **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. Therefore, the following claims have not been placed in any class:

1.    Administrative expenses

Administrative expenses are costs or expenses of administering the Debtors' chapter 11 case which are allowed under § 503(b) of the Code. Administrative expenses include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, and compensation for services and reimbursement of expenses awarded by the court under § 330(a) of the Code. The Code requires that all administrative expenses be paid on the Effective Date, unless a particular claimant agrees to a different treatment. The Code also requires that fees owed under section 1930 of title 28, including quarterly and court fees, have been paid or will be paid on the Effective Date.

The following chart lists the Debtors' estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Plan Treatment |
|---|---|---|
| Statutory U.S. Trustee Quarterly Fees | $50,000 | Paid in full on the Effective Date in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors |
| CohnReznick – professional fees | $1,300,000 | Paid in full on the Effective Date in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors |
| Mandell Hahm – professional fees | $100,000 | Paid in full on the Effective Date in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors |

16

| Akerman LLP – Debtors' attorneys' fees and costs | $800,000 | Paid in full on the Effective Date in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors |
|---|---|---|
| Jeffrey M. Heftman Esq. and Schoenberg Finkel Beederman Bell Glazer, LLC | $0 | Paid in full on the Effective Date in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors |
| Vonn R. Christenson and the Christenson Law Firm LLP | $50,000 | Paid in full on the Effective Date in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors |
| **Total:** | **$2,300,000** | Paid in full on Effective Date in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors |

       2.    <u>Priority Tax Claims</u>

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. § 511, in regular installments paid over a period not exceeding five years from the order of relief.

Each holder of a priority tax claim will be paid as allowed under 11 U.S.C. § 1129(a)(9) or as otherwise authorized and agreed to by the Debtors and the claimant.

       **C.**    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan. Notably, a claim will be deemed an Allowed Claim only following a final, nonappealable order by a court of competent jurisdiction. Only claims deemed Allowed Claims will be subject to payment, in each case, at 100% recovery.  <u>To the extent a Holder of an Allowed Claim is entitled to post-petition interest, the Plan would pay such interest in full.</u>

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The Allowed Claim of Jeanette Ivankovich for Domestic Support Obligations is any Class 3 Claim (defined herein) of Jeanette Ivankovich or Schiller Ducanto & Fleck LLP that is allowed by a Final Order. Due to the priority status asserted by Jeanette Ivankovich and Schiller Ducanto & Fleck LLP (which has been disputed by Debtors), the claims are separately classified from the General Unsecured Claims.

17

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

Holders of Equity Interests are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders.

The following chart lists all classes and their proposed treatment under the Plan:

| Claim or Interest | Class | Allowed Amount | Proposed Treatment of Allowed Claims | Voting Rights | Projected Plan Recovery |
|---|---|---|---|---|---|
| Administrative Claims | Unclassified | $2,300,000 (estimated) | Payment on Effective Date. | None | 100% |
| Priority unsecured tax claims | Unclassified | $0 (estimated) | Payment on Effective Date. | None | 100% |
| Secured claim of Celadon / Wedbush Securities | 1 | $6,000,000 (estimated) | Reorganized Debtors shall pay each claim against them, respectively from each of their assets, the full amount of the allowed secured claims within sixty (60) days of the Effective Date. | Impaired /Entitled to Vote | 100% |
| Secured claim of Royal Bank of Canada | 2 | $6,000,000 (estimated) | Reorganized Debtor A&O Family, LLC (FL) shall pay the full amount of the allowed secured claims within sixty (60) days of the Effective Date using the Reorganized Debtor's A&O Family, LLC (FL)'s' assets. | Impaired/ Entitled to Vote | 100% |
| Allowed Claim of Jeanette Ivankovich for Domestic Support Obligations | 3 | $0 (Disputed claims in the amount of $1,138,785.14 asserted against Debtors) | Any Allowed Class 3 Claim shall be satisfied in full by the Reorganized Debtors within fourteen (14) days of entry of a final order allowing any Class 3 Claim. Additionally, Drs. Anthony and Olga Ivankovich shall fund the Support Trust (described herein) on behalf of the Debtors to advance reasonable and necessary expenses of their grandchildren, and any payments made by the Support Trust shall reduce | Unimpaired /Deemed to Accept | 100% |

18

| Claim or Interest | Class | Allowed Amount | Proposed Treatment of Allowed Claims | Voting Rights | Projected Plan Recovery |
|---|---|---|---|---|---|
| | | | the amount of any allowed claim by the amount of the payments. | | |
| Allowed Unsecured Claims | 4 | $100,000 estimated (Disputed claims aggregating in excess of $44,000,000 asserted against Debtors) | Reorganized Debtors shall pay, respectively from each of their assets, the holder of an Allowed Class 4 Claim the full amount of any Allowed Class 4 Claim within fourteen (14) days of entry of a final order allowing any Class 4 Claim | Unimpaired / Deemed to Accept | 100% |
| Allowed Equity Interests of the Debtor A&O Family, LLC (IL) | 5 | | Holders of Allowed Equity Interests shall retain their interests. | Unimpaired / Deemed to Accept | 100% |
| Allowed Equity Interests of the Debtor Ivankovich Family, LLC | 6 | | Holders of Allowed Equity Interests shall retain their interests. | Unimpaired / Deemed to Accept | 100% |
| Allowed Equity Interests of the Debtor Atlas P2 Managing Member, LLC | 7 | | Holders of Allowed Equity Interests shall retain their interests. | Unimpaired / Deemed to Accept | 100% |
| Allowed Equity Interests of the Debtor A&O Family, LLC (FL) | 8 | | Holders of Allowed Equity Interests shall retain their interests. | Unimpaired / Deemed to Accept | 100% |

Support Trust shall mean:

Dr. Anthony Ivankovich and Dr. Olga Ivankovich shall fund a revocable trust with up to $21,000 per month for seven (7) years (the "Support Trust"). The Support Trust shall be pre-funded with $504,000 as of the Effective Date through a loan made by Dr. Anthony Ivankovich

19

and Dr. Olga Ivankovich pursuant to Section 7 below.  Dr. Olga Ivankovich shall serve as Trustee of the Support Trust. Jeanette Ivankovich may submit requests for reasonable and actual expenses for herself and the children of Steven Ivankovich (the "Support Funding Requests") to be funded and disbursed from the Support Trust as follows: (i) direct payments from the Trustee to any payee identified in the Support Funding Requests; and (ii) the aggregate amount of Support Funding Requests shall not exceed $21,000 for any calendar month.  For the avoidance of doubt, the Support Trust shall not be obligated to fund any Support Funding Requests for the following categories of expenses: (i) legal fees and costs; (ii) alcohol; (iii) gambling; (iv) drugs not proscribed by a licensed medical professional; and (v) luxury goods and services.[8] In recognition of the purpose of the Support Trust, any amounts funded from the Support Trust on behalf of Jeanette Ivankovich shall satisfy in part and setoff the Illinois Divorce Court's Support Order against Steven Ivankovich.

Any amounts funded from the Support Trust on behalf of Jeanette Ivankovich shall be deducted from any payment due on any Allowed Claim of Jeanette Ivankovich for Domestic Support Obligations. By way of example, if Jeanette Ivankovich requests, and is funded, $500,000 from the Support Trust, and is determined to have an Allowed Claim of Jeanette Ivankovich for Domestic Support Obligations against any of the Debtors for $1,500,000, then the payment due on the Allowed Claim of Jeanette Ivankovich for Domestic Support Obligations would be $1,000,000.

If the Allowed Claim of Jeanette Ivankovich for Domestic Support Obligations is ultimately determined to be $0, there shall be no impact on the entitlement of the Jeanette Ivankovich to the amounts already received from the Support Trust.

For the avoidance of doubt, Jeanette Ivankovich is not required to submit any expenses to the Support Trust.  Instead, the Support Trust is an optional method for Jeanette Ivankovich to receive funding, prior to the final determination of any Allowed Claim of Jeanette Ivankovich for Domestic Support Obligations, without any penalty if the Allowed Claim of Jeanette Ivankovich for Domestic Support Obligations is ultimately determined to be $0

### D.    Means of Implementing the Plan

1.    <u>Reorganized Debtors and Plan Funders</u>

All assets of each Reorganized Debtor will vest in them, respectively. The Plan will be funded, under the terms detailed in Article VII of the Plan, by (1) current cash and cash equivalents of Reorganized Debtors, (2) exit financing up to $15,000,000 million from Dr. Olga Ivankovich and Dr. Anthony Ivankovich as detailed in Section 7.02 of the Plan, (3) the Guarantors, and (4) Yacht Daddy, LLC.  A description of assets held by the Plan Funders is detailed in Section III(A) of this Disclosure Statement.

The disbursing agent for the Support Trust shall be the Trustee, Dr. Olga Ivankovich.

---

[8] The definition of "luxury goods and services" used in this section of the Plan shall have the same meaning as detailed in 11 U.S.C. Section 523(a)(2)(C) as applied in In re Shaw, 294 B.R. 652 (Bankr. W.D. Pa. 2003) (holding luxuries, as a matter of law, constitute extravagances or self-indulgences).

81632608;2

    2.    <u>Post-confirmation Management</u>

The post-confirmation management of Reorganized Debtors A&O Family, LLC (FL) shall consist of: (i) Mark Brown who shall serve as the Chief Investment Officer and disbursing agent and shall not receive a separate salary or benefits that exceed his current compensation for management of the P5 entities at the salary of $_____ per year; (ii) Nancy Webber who shall serve as the Chief Operating Officer at no additional cost to her existing at the salary of $175,000 per year; and (iii) Dr. Olga Ivankovich who shall serve as manager and shall not receive any compensation or benefits for her role as manager. Reorganized Debtors A&O Family, LLC (FL) shall not be obligated to fund any compensation or benefits to any of the officers and managers of Reorganized Debtors.

Prepetition, Mark Brown was the Manager of Titan Financial Services, LLC. He previously served as a Managing Director of Credit Suisse in the Investment Banking Division, based in New York. I was Head of the Commercial Real Estate team within Securitized Products, Asset Finance Group. Prior to joining Credit Suisse in September 2013, I was a Senior Managing Director in the BGC Partners' Real Estate Capital Markets team. Prior to joining BGC, I was a founding member of 801 Capital Finance, which provided a broad array of clients with commercial real estate and capital markets expertise regarding asset capitalization and finance, asset sales and dispositions, fund management and advisory and consulting services. Titan serves as asset manager for certain investments that were funded by the Ivankovich family office entities, including A&O Florida.

Prepetition, Nancy Webber was the COO of A&O Family (FL) and has held this role since April 2023. In this role, her duties included overseeing the day to day operations and processes of the family office, strategies to improve efficiency and productivity of operations, collaborating with family members, and investment professionals to align operational goals with overall business strategy, managing and optimizing company resources, monitoring key performance indicators and driving continuous improvement. Prior to April 2023, Nancy Webber served as a Series 7 Registered Client Service Associate at Stifel, where she provided both administrative and operational support to assist a team of financial advisors, and assisted, prepared and executed client centric planning and investing.

Retention of the executives, who have institutional and operational knowledge of Debtors' and their assets, eliminates potential disruptions to operations and preserves value attributable to the executives' experience.

    E.    **Risk Factors**

There is limited risk in the implementation of the Plan. Two limited potential risks are (1) the Township Entities' claim is allowed at the maximum $40 million asserted against Debtor Atlas P2, and Atlas P2 does not have sufficient funding, and (2) that Debtors are unable to liquidate the Sunseeker at a value close to acquisition value. However, the expense and time of marketing the Sunseeker owned by Yacht Daddy, LLC is mitigated by the secured loan of the maintenance expenses by Drs. Anthony and Olga Ivankovich. Otherwise, there is limited risk in

the successful completion of the Plan because the Plan is primarily funded by cash or liquid investment-grade securities.

Each Creditor and each of their respective advisors must carefully read and consider the assumptions which are part of the projections in determining whether to vote for or against the Plan.

### F.    Executory Contracts and Unexpired Leases

Article 6 of the Plan states Reorganized Debtors will be conclusively deemed to have assumed all executory contracts and/or unexpired leases not expressly rejected prior to the Effective Date of the Plan.

Assumption means that the Debtors have elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days the date upon which an order entered by this Court rejects said lease or contract.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### G.    Tax Consequences of the Plan

**Creditors and equity interest holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

## V.    <u>Confirmation Requirements and Procedures</u>

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

The Debtors' collective cash and cash equivalents as proposed under the Plan exceed all alleged claims asserted against the Debtors. Further the Plan seeks to pay all claims in full, which

81632608;2

treatment satisfies the best interests of the creditors and obviates the need for a liquidation analysis pursuant to section 1129(a)(7).

**A.    Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Debtors believe that two of the classes, Classes 1 and 2 are impaired and that holders of claims in these classes are therefore entitled to vote to accept or reject the Plan. The Debtors believe that Classes 3, 4, 5, 6, 7 and 8 are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.    What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtors have scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case was August 19, 2024.*

2.    What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.    Who is **Not** Entitled to Vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

23

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- holders of Administrative Expense Claims.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

    4.    <u>Who Can Vote in More Than One Class</u>

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.**    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below.

    1.    <u>Votes Necessary for a Class to Accept the Plan</u>

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) he holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

    2.    <u>Treatment of Nonaccepting Classes</u>

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly and is fair and equitable toward each impaired class that has not voted to accept the Plan.

81632608;2

*You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.*

    **C.**    **Debtors Assert that the Absolute Priority Rule Satisfied**

The Bankruptcy Code and other applicable law establish the priority for distribution of funds in bankruptcy cases.  These priority provisions are sometimes referred to as the "absolute priority rule."  Normally, and subject to exceptions not relevant here, valid secured claims are first paid to the extent of the amount of the claim or the value of the claimant's collateral (if less than the claim).  Any property in the bankruptcy estate, net of valid secured claims described above, is first distributed to holders of priority claims.  After the payment of priority claims, unsecured creditors share *pro rata* in the remaining funds until paid in full.  Equity holders (*i.e.*, stockholders) are paid only after all creditors have been paid.

The Debtors assert that the absolute priority rule is satisfied by the Plan as the Plan provides for payment of 100% of Allowed Claims.

    **D.**    **Debtors Assert that the Best Interests of the Creditors Test Satisfied**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a liquidation under chapter 7 of the Bankruptcy Code.

The Debtors assert that the best interests of creditors test is satisfied because the Plan provides for 100% recovery for holders of Allowed Claims, and the contribution of funds by non-debtors' Drs. Ivankoviches, Yacht Daddy, LLC and the guaranty by the P-5 Record Owners, establishes that no better recovery could be achieved in a liquidation under chapter 7 of the Bankruptcy Code which would only liquidate Debtors' assets.  Therefore, the Debtors believe the Plan satisfies the best interests of the creditors test as to claims.

The best interests of equity holders is also satisfied by the Plan because equity retains equity, and there is no better recovery than could be achieved in a liquidation under chapter 7 of the Bankruptcy Code.

    **E.**    **Feasibility / Ability to Fund Plan**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.  The Debtors have filed regular monthly operating reports, and periodic reports in this case, that evidence the substantial liquid assets available to fund the Plan. Further, the disclosures made in the Cash Collateral Motion evidence the ability of the Plan Guarantors to guarantee claims to A&O Family, LLC (FL).

The Debtors believe that the Reorganized Debtors will have enough cash or liquid assets on hand on the Effective Date to pay all the claims and expenses that are entitled to be paid on that date.  Since the Debtors and Plan Funders have assets significantly in excess of the maximum projected distribution, and Drs. Ivankoviches have liquid assets exceeding $30,000,000 and

81632608;2

therefore have sufficient amounts available to fund the exit financing to Debtors, the Plan is feasible.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

### F.    Creditor Recourse

All creditors will be bound by the terms and provisions under the Plan, including the releases more particularly described in Section VI (B) below and Article IX of the Plan.

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.  Additionally, a creditor or equity interest holder who has voting rights may vote against the Plan.  To the extent permitted by law, creditors who reject the Plan may seek recourse for collection or enforcement of the creditor's interests outside the Bankruptcy Court.

***You Should Consult Your Attorney About Your Recourse Rights and Options in the Acceptance or Rejection of the Plan.***

## VI.    <u>Effect of Confirmation of Plan</u>

### A.    Discharge Of Debtors

On the confirmation date of this Plan, the Reorganized Debtors will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Reorganized Debtors will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; (iii) of a kind specified in § 1141(d)(6)(B), or (iv) as specifically permitted pursuant to paragraph 7 of the *Amended Agreed Order Sustaining, in Part, Debtors' Omnibus Objection to Claims of Township Entities* (ECF No. 197).

### B.    Releases and Injunctions

**On the confirmation date of this Plan, without the need for execution or delivery of any additional documentation or orders of the Bankruptcy Court, and in exchange for valuable consideration of under this Plan, Dr. Anthony Ivankovich and Dr. Olga Ivankovich ("Released Parties") will be fully and finally released and forever discharged from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, controversies, agreements, promises, damages, judgments, debts, encumbrances, liens, remedies, and demands, of every kind and nature whatsoever, in law or in equity, which could be brought or asserted by or on behalf of the Debtors against the Released Parties (collectively, "Released Claims").  The Released Claims shall expressly exclude any obligations of the Released Parties pursuant to the Plan.  For the avoidance of all doubt, the aforementioned Released Claims expressly exclude: (i) any independent claims that any non-debtor can assert against any Released Party, including the existing claims by the Township**

26

81632608;2

**Entities in the Second Amended Complaint attached as Exhibit "1" to ECF No. 238; and (ii) any claims that a creditor holding an allowed claim against any of the Debtors has the legal right to assert against any other Debtor, including the Township Entities' express rights detailed in the Bankruptcy Court's** *Amended Agreed Order Sustaining, In Part, Debtors' Omnibus Objection to Claims of Township Entities* **(ECF No. 197).**

**The Releases in the Plan and contained herein are not intended to be or function as a bar order of any kind. The Releases are narrowly tailored to not target any independent claims of any party or creditor. The Releases are provided to facilitate the implementation of the Plan through the Plan Funders, which Plan seeks to pay all creditor claims in full, which payment in turn will eliminate the standing of any party or creditor from asserting a satisfied claim against a Plan Funder.**

**Except as specifically provided in the Plan, neither the Debtors, nor their employees, representatives (other than Steven Ivankovich), members, advisors, attorneys, accountants, financial advisors, or agents (collectively "Exculpated Parties"), shall have or incur, and are hereby released from, any claim, obligation, cause of action or liability to one another or to any holder of a claim or interest, or any other party in interest, or any of their respective officers, directors, shareholders, members, employees, representatives, advisors, attorneys, accountants, financial advisors, or agents, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases from the Petition Date through the Effective Date of this Plan, including: (i) the negotiation and pursuit of confirmation of this Plan, (ii) the consummation of this Plan, (iii) the administration of this Plan, or (iv) the property to be distributed under the Plan, except for their gross negligence, willful misconduct, or actual fraud, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan. For the avoidance of doubt, Steven Ivankovich is expressly excluded from the definition of Exculpated Parties.**

**Except as otherwise specifically provided in the Plan or the Confirmation Order, all entities and persons, and any successor, assigns or representatives of such entities and persons, who have held, hold, or may hold claims, rights, causes of action, liabilities, equity interests, or any other interests based on any act or omission, transaction, or other activity of any kind or nature related to the Debtors, Debtors in Possession, or the Chapter 11 Cases that occurred prior to the Effective Date ("Enjoined Claim"), regardless of the filing, lack of filing, allowance or disallowance of such claim or interest, and regardless of whether such entity or person has voted to accept the Plan, shall be precluded and permanently enjoined on and after the Effective Date from (a) the commencement or continuation in any manner of any claim, action or other proceeding of any kind with respect to any Enjoined Claim, against (i) any assets of the Debtors, (ii) any assets re-vested in the Reorganized Debtors, (iii) the Debtors, Reorganized Debtors, or the Released Parties, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order with respect to any Enjoined Claim, against (i) any assets of the Debtors, (ii) any assets re-vested in the Reorganized Debtors, (iii) the Debtors, Reorganized Debtors, or the Released Parties; (c) the creation, perfection, or enforcement of any encumbrance or lien of any kind with respect to any Enjoined Claim, against (i) any assets of the Debtors, (ii) any assets re-vested in the Reorganized Debtors, (iii) the Debtors, Reorganized Debtors, or the Released Parties; and (d) taking any action whatsoever with respect to any Released Claims against**

81632608;2

**(i) any assets of the Debtors, (ii) any assets re-vested in the Reorganized Debtors, (iii) the Debtors, Reorganized Debtors, or the Released Parties. For the avoidance of doubt, claims against Steven Ivankovich are expressly excluded from the definition of Enjoined Claims.**

### C.    Modification of Plan

The Plan proponents may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan proponents may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### D.    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponents, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VII.    Definitions

Administrative Claim shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case in connection with preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Title 28 of the United States Code.

Administrative Claims Bar Date means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

Allowed Administrative Claim means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

Allowed Claim means either: (i) a claim that has been filed or listed in the Debtors' schedules as undisputed, and is not subject to any objection by any interested party as of the Effective Date; or (ii) a claim that has been allowed by the Bankruptcy Court pursuant to the entry of an order overruling all objections that is not subject to any stay, reconsideration, or further appeal.

Allowed Interest means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtors with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which: (1) no objection to the allowance thereof has been interposed within any applicable period of

limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court, or (2) which has been objected to and allowed by a Final Order.

Allowed Priority Claim means a Priority Claim pursuant to §507, exclusive of §507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

Allowed Priority Tax Claim means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

Allowed Unsecured Claim means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

Appeal Period means the time for filing a notice of appeal as specified in Rule 8002 of the Bankruptcy Rules.

Assets means each and every item of Property of the Estates and every interest of the Debtors and its respective Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtors, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtors' books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

Bankruptcy Cases means the Debtors' bankruptcy cases that are pending before the United States Bankruptcy Court for the Southern District of Florida, Miami Division, pursuant to Chapter 11 of the Bankruptcy Code, Case Numbers 24-15755-LMI, 24-15762-LMI, 24-15767-LMI, and 24-15770-LMI.

Bankruptcy Code or Code means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, including any amendments thereto, in effect during the Bankruptcy Cases.

Bankruptcy Court or Court means the United States Bankruptcy Court for the Southern District of Florida, Miami Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

Bar Date means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in the Bankruptcy Case.

Cash means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

29

81632608;2

Causes of Action means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtors, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtors not otherwise approved by the Bankruptcy Court; provided, however, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

Claim means, "claim" as defined in Bankruptcy Code § 101(5).

Class means any Class into which Claims or Interests are classified pursuant to the Plan.

Class 1 Claim, Class 2 Claim, Class 3 Claim, etc., shall mean the specific Class into which Claims or Interests are classified in the Plan.

Class 3 Claims shall mean the following claims:

| Debtor (Claim Number) | Claimant | Amount Claimed |
|---|---|---|
| Ivankovich Family LLC (5-1) | **Jeanette Ivankovich** | $1,138,785.14*    (and continuing to increase) |
| Ivankovich Family LLC (7-1) | **Schiller Ducanto & Fleck LLP** | $425,000.00 |
| A&O Family, LLC (FL) (7-1) | **Jeanette Ivankovich** | $1,138,785.14*    (and continuing to increase) |
| A&O Family, LLC (FL)(9-1) | **Schiller Ducanto & Fleck LLP** | $425,000.00 |
| A&O Family, LLC (IL) (5-1) | **Jeanette Ivankovich** | $1,138,785.14*    (and continuing to increase) |
| A&O Family, LLC (IL)  (7-1) | **Schiller Ducanto & Fleck LLP** | $425,000.00 |
| Atlas P2 Managing Member LLC (6-1) | **Jeanette Ivankovich** | $1,138,785.14*    (and continuing to increase) |

81632608;2

| Atlas P2 Managing Member LLC (9-1) | **Schiller Ducanto & Fleck LLP** | $425,000.00 |
|---|---|---|

Confirmation means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

Confirmation Date means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

Confirmation Hearing means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

Confirmation Order means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

Contingent means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

Creditor(s) means "Creditor" as defined in Bankruptcy Code § 101(1).

Debtors refers to Ivankovich Family LLC, A&O Family LLC, a limited liability company organized under the laws of Florida ("**A&O Family (FL)**"), A & O Family LLC, a limited liability company organized under the laws of Illinois ("**A&O Family (IL)**"), and Atlas P2 Managing Member, LLC ("**Atlas P2**").

Disallowed means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court

Disposable Income shall have the same definition and meaning as the same term is defined under 11 U.S.C. § 1191(d).

Disputed Claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

Disputed Equity Interest shall mean an Interest in the Debtors which is not an Allowed Interest and which has not been disallowed by a Final Order or the Bankruptcy Court.

Distribution means a distribution under the terms of the Plan to the Holders of Allowed Claims.

Effective Date means the first business day following the date that is fourteen days after the entry of the Confirmation Order. If, however, a stay of the confirmation order is in effect on

that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

Estate(s) means the bankruptcy estates of the Debtors created under Bankruptcy Code § 541.

Equity Interest means any and all issued or authorized equity interests, common stock, stock options, membership interests and warrants in the Debtors.

Executory Contract means every unexpired lease to which any of the Debtors are a party, and every other contract that is subject to being assumed or rejected by the Debtors under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

Final Decree means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rule 3022 closing the Bankruptcy Case after the Estate has been fully administered.

Final Order means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

Holder means the holder of a Claim or Interest, as applicable.

Impaired Class means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124.

Insider means "insider" as defined in Bankruptcy Code § 101(31).

Interest(s) means an issued or authorized outstanding equity interest, membership interest, warrant or warrants for the issuance of such equity interests, or any other equity instruments in the Debtor.

Lien shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtors or any other party with stand to bring such challenge.

Nonordinary Course Administrative Claim shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

Order shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

Ordinary Course Administrative Claim shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; provided, however, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

32

81632608;2

Payment shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

Person means "person" as defined in Bankruptcy Code § 101(41).

Personal Property means all tangible personal property of the Debtors.

Petition Date means June 10, 2024, the date on which Debtors filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

Plan means this Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

Plan Payments means payments made by the Debtors pursuant to the terms of the Plan.

Prepetition means the period of time preceding the Petition Date and concluding on the Petition Date.

Priority Claim means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

Priority Tax Claim means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

Priority Unsecured Claim means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

*Pro Rata* means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

Professional means: (i) any professional retained by any of the Debtors in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

Professional Fees means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

Proof of Claim means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

Property of the Estate means "property of the estate" as defined in Bankruptcy Code § 541.

Reorganized Debtors means the Debtors upon the Effective Date of the Plan.

Schedules means the schedules of assets and liabilities and any amendments thereto filed by the Debtors with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

Security Interest means "security interest" as defined in Bankruptcy Code § 101(51).

Unimpaired Class means any Class the members of which are the holders of Claims or Interests, which are not impaired within the meaning of Bankruptcy Code § 1124.

Unsecured Claim means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

United States Trustee shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. Seq.* and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Southern District of Florida, Miami, Florida.

**Debtors:**

**A&O Family LLC, a limited liability company organized under the laws of Florida**

_____
By: Nancy Webber, COO and Authorized Representative

**Ivankovich Family LLC**
**A & O Family LLC, a limited liability company organized under the laws of Illinois**
**Atlas P2 Managing Member, LLC**

_____
By: Mark Brown
Title: Authorized Representative

**Plan Funders:**

**Dr. Anthony Ivankovich**

_____

**Dr. Olga Ivankovich**

_____

34

81632608;2

**Yacht Daddy, LLC**

_____
By: Steven Ivankovich
Title: Director

**<u>Plan Guarantors:</u>**

**Pilgrim Warwick Owner LLC**
**Pilgrim Coulter Owner LLC**
**Pilgrim Windtree Owner LLC**

_____
By: Mark Brown
Title: Asset Manager

35

---

**AKERMAN LLP**
Eyal Berger, Esq.
Amanda Klopp, Esq.
201 E. Las Olas Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel:  954-463-2700
Fax:  954-463-2224
Email:   eyal.berger@akerman.com
Email:   amanda.klopp@akerman.com
*Counsel for Debtors-In-Possession*

Field Code Changed

Field Code Changed

36

81632608;2