UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION
www.flsb.uscourts.gov

In re:

| | |
|---|---|
| IVANKOVICH FAMILY LLC, | Chapter 11 |
| A&O FAMILY LLC (FLORIDA), | Case Nos.:    24-15755-LMI |
| A & O FAMILY LLC (ILLINOIS),   and | 24-15762-LMI |
| ATLAS P2 MANAGING MEMBER, LLC. | 24-15767-LMI |
| | 24-15770-LMI |

    Debtors-In-Possession.
_____/

IVANKOVICH FAMILY LLC,
A&O FAMILY LLC (FLORIDA),
A & O FAMILY LLC (ILLINOIS),    Adv. Case No.:  24-01411-LMI
ATLAS P2 MANAGING MEMBER, LLC,
ANTHONY IVANKOVICH, and
OLGA IVANKOVICH,

    Plaintiffs,
v.

JEANETTE IVANKOVICH,
SCHILLER DUCANTO & FLECK LLP,
AND STEVEN IVANKOVICH,

    Defendants.
_____/

**DEFENDANTS JEANETTE IVANKOVICH'S AND SCHILLER'S
MOTION TO COMPEL PRODUCTION, ON AN EXPEDITED BASIS,
OF DOCUMENTS THAT PLAINTIFFS AND STEVEN IVANKOVICH
<u>AGREED TO PRODUCE</u>**

Defendants Jeanette Ivankovich ("Jeanette") and Schiller DuCanto & Fleck, LLP ("Schiller") (the "Defendants"), by and through undersigned counsel, hereby file this *Motion to Compel Production, on an Expedited Basis, of Documents That Plaintiffs and Steven Ivankovich Agreed to Produce* (the "Motion"), pursuant to Federal Rule of Civil Procedure 37 ("Rule 37"), which is made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy

Procedure 7037. The Motion seeks an order requiring the expedited production of documents that the Plaintiffs/Debtors and Steven Ivankovich ("Steven") agreed to produce, but have not yet produced, including for discovery that the Debtors have been aware of since at least February 2025. The key categories of documents include:

(1) documents sufficient to evidence the general nature, value and corporate structure of those entities and projects listed on the Debtors' schedules;

(2) K-1 statements to and by the Debtors;

(3) generally, documents reflecting Steven's role and involvement in the Debtors and Debtors' affiliates, including authority over accounts, transfers, use of assets for personal benefit, "capital calls", and the nature and value for Debtors' Affiliates, etc.; and

(4) documents responsive to the 3rd RFP (defined below).

The grounds for the Motion are set forth below.

## BACKGROUND

1. This adversary proceeding and the main bankruptcy case arise from the efforts of Steven to avoid responsibility for his substantial debts, including basic family support obligations to Steven's estranged wife, Jeanette, and his children. Steven is the manager of three of the four debtors, and the record (including devastatingly detailed rulings in two independent courts: the Illinois Divorce Court and the District Court for the Northern District of Illinois) has already established that Steven is the primary decision-maker controlling virtually all decisions relating to the transfer and use of alleged debtor funds and assets, including extensive use of assets titled in the name of the debtors or other affiliates (or transferred to/through debtor accounts) for his own personal use and benefit. *See e.g.* May 23, 2024 Preliminary Injunction, entered by the Illinois Divorce Court; May 14, 2025 Report and Recommendation, entered by Hon. Sidney I. Schenkier (Ret.) in District Court for the Northern District of Illinois.

2.      This adversary proceeding challenges the basis and propriety of the Defendants' claims, which are based in part on Steven's dominion and control of certain assets and his use of such assets for his personal benefit, even though the assets may have been transferred to accounts, or titled, in the name of the Debtors or Debtors' affiliates. Thus, identification of the basic nature of Debtor assets and Steven's role in the control and use of such assets are critical to the adversary proceeding.

3.      Defendants served their First and Second Request for Production to the Plaintiffs on April 3, 2025 ("1st RFP" and "2nd RFP", respectively).[1] Plaintiffs' responses to the 1st RFP and 2nd RFP were served on May 2, 2025.[2] Defendants served their Third Request for Production to Plaintiffs on April 30, 2025 ("3rd RFP").[3] Plaintiffs' responses to the 3rd RFP were served on May 30, 2025.[4] Defendants served their subpoena and document request to Steven on May 2, 2025 ("RFP to Steven").[5] Steven served a response to the RFP to Steven on June 26, 2025.[6]

4.      Despite being aware of the particular document requests relating to basic information about the nature of all the entities and projects listed on the Debtors' schedules, since no later than March 3, 2025, and being aware of the K-1 requests since no later than February 21, 2025, the Debtors have still failed and refused to produce most of the documents agreed to be

---

[1] Plaintiffs' responses and objections to the requests are extremely lengthy and repetitive. For example, the response to the 2nd RFP consists of five pages, single-spaced. Further, these specific objections are not the subject of the Motion, which focuses on documents that the Plaintiffs and Steven agreed to produce. Therefore, in the interests of judicial economy and efficiency, Defendants are providing full copies of both the requests and responses, in lieu of quoting verbatim each request and objection that is at issue, as contemplated by Local Rule 7026-1(E)(2). The language demonstrating the agreement to produce certain documents is also repetitive, but is quoted verbatim in the Motion. The 1st RFP and 2nd RFP are attached as Exhibits 1 and 2, respectively. These requests were originally served in the main bankruptcy proceeding on February 21, 2025 ("Main Case 1st RFP") and March 3, 2024 ("Main Case 2nd RFP"), attached as Exhibits 3 and 4, respectively. The Debtors served responses objecting to the production of all documents on March 7, 2025 (response to Main Case 1st RFP) and on March 17, 2025 (response to Main Case 2nd RFP), attached as Exhibits 5 and 6, respectively.
[2] Plaintiffs' responses to the 1st RFP and 2nd RFP are attached as Exhibits 7 and 8, respectively.
[3] The 3rd RFP is attached as Exhibit 9.
[4] Plaintiffs' response to the 3rd RFP is attached as Exhibit 10.
[5] The RFP to Steven is attached as Exhibit 11.
[6] Steven's response is attached as Exhibit 12.

3

produced in response to these requests. The Debtors' continued delay also impacts issues regarding plan confirmation, currently set for hearing in a few weeks, to the extent the documents have some relevance to the underlying plan of reorganization in the main bankruptcy case.[7]

5. Similarly, even though the RFP to Steven was served more than 3 months ago, on May 2, 2025, Steven has produced absolutely no documents, and none of the documents he agreed to produce.[8]

<u>Documents Evidencing the General Nature, etc. of Debtor Entities, Projects</u>

6. In response to numerous requests, the Debtors asserted extensive objections, but also specifically agreed as follows:

> *In the interim, Debtors will produce additional documents sufficient to evidence the general nature, value and corporate structure of those entities and projects listed on the Debtors' schedules, to the extent available to the Debtors, and on a rolling basis as additional documents become available.*[9]

---

[7] After a meet and confer in which the Debtors represented that they would withdraw most of their objections and promptly produce responsive documents, Plaintiffs served the 1st RFP and 2nd RFP in this adversary, but did not withdraw any requests in the main case. To the extent that responsive documents may apply only to the main case (or may also be relevant to the main case), in the interests of efficiency and judicial economy, Plaintiffs request that the Court consider the relevance to the main case to the extent that relevance may be asserted as an issue and enter an order providing for immediate production, allowing use of the discovery in the main case, whether the documents may be relevant in either matter. In particular, because plan confirmation is currently set for this month, to the extent the documents are relevant to the contested issues relating to the Defendants' informal and (forthcoming) formal objections to the plan, including feasibility, the best interests of creditors, and good faith, Plaintiffs request that the Court consider the need for transparency regarding these documents in connection with plan confirmation. For example, the Defendants have discussed with the Plaintiffs that there is no need for third party financing from Steven's Parents if other Debtor assets, including the projects and entities identified in the Debtors' filings, have value that can be liquidated for purposes of paying creditors without using third party financing. As explained in this motion, Defendants have not disclosed relevant documents *"sufficient to evidence the general nature, value and corporate structure of [the] entities and projects listed on the Debtors' schedules."* But, as noted above, because the Motion is directed at documents that were agreed to be produced, relevance is not an issue.

[8] During the meet and confer in May 2025, neither the Debtors nor Steven would agree to a firm date for producing documents they agreed to produce. The parties discussed mutual firm dates for all production by all parties but were unable to reach agreement. During the meet and confers in late July and early August, the Defendants requested a specific prompt date for production, of August 4, 2025, but the Plaintiffs have not agreed nor committed to another specific date for production. The Defendants recognize that the parties agreed to a general stand-down on discovery to roll-over certain hearings, but Plaintiffs served new discovery on July 30, 2025, and there are matters are proceeding to hearing on August 8, 2025, and the plan confirmation hearing is only a few weeks away, and the Defendants are therefore seeking relief on these discovery matters, where it appears other matters at issue are moving forward.

[9] *See* responses to 2nd RFP No. 1 (Ex. 8), at p. 6 (financial statements, etc.); and incorporating response to 2nd RFP No. 1, No. 2 (valuations), No. 3 (nature of project), No. 4 (profitability), No. 5 (transfers, Capital Calls, etc.), No. 6 (ownership), No. 7 (organizational), No. 9 (transfer of interests), No. 10 (efforts to sell), No. 12 (Saucer Sled luxury Copper Mountain home), No. 13 (Hahm, CohnReznick review).

4

7. Despite this agreement, the Debtors have failed and refused to produce documents sufficient to evidence the general nature, value and corporate structure of the following entities and projects listed on the Debtors schedules, including but not limited to: Contessa Marine Research, LLC (superluxury yacht "Octopussy," apparently recently moved to Dubai), IMG Marine LLC (other yachts), Saucer Sled, LLC (vacation home in Copper Mountain), Contessa Properties, LLC, Portage Run, Palm Jumeriah, Contessa Realty, LLC, Turtle Way, LLC, Ocean Force Marine, LLC, IGY Trident Services, LLC, HafBorg, Inc., Intesa Sanpaoloa SPA, KJI Marine Manufacturing, LLC, Lionfish, LLC, Ciovo Project, Capital Calls for numerous entities;[10] KJI Marine Manufacturing, LLC, Bequia Fast Ferry Ltd., Skosk Ltd., PTCG Ptd. Ltd., and Zus Tennis LLC.[11] Many of these entities received hundreds of thousands of dollars transferred through and from accounts titled in the name of Debtors. This list is not comprehensive, but a quick review of Debtors' schedules shows the extent to which funds ostensibly held in Debtor accounts have been used to fund an array of personal expenses and projects related to Steven.[12]

8. Upon information and belief, most of these entities and projects are controlled by Steven or involved material involvement by Steven, and largely represent vehicles for Steven's personal use and benefit. The long-awaited CohnReznick final report on sources and uses of funds,

---

[10] *See* Case No. 24-15755, ECF 55, at 9-10, 30-37.

[11] *See* Case No. 24-15733, ECF 53 at 6 (list of entities/projects), 19 (bare description of only nature of business).

[12] The most obvious example involves Yacht Daddy, LLC, the non-debtor entity that owns a 100 Sunseeker luxury yacht named "Contessa." Although Debtors have not produced documents reflecting the "general nature" of Yacht Daddy, LLC, there are documents provided in discovery indicating Yacht Daddy is a single-purpose entity holding title to the "Contessa" luxury yacht, that the Debtors propose to sell as part of the plan of reorganization. Importantly, the only documents produced to date by the Debtors reflect that Steven is the sole director of Yacht Daddy, LLC. Steven thus presently controls the ability of the Debtor to access an asset the Debtor claims are necessary for reorganization, putting at issue the feasibility of the plan if Steven fails or refuses to cooperate in liquidating the "Contessa." Upon information and belief, the "Contessa" is essentially an asset of Steven's, used for his personal use and benefit, purchased at Steven's direction using funds that were passed through Debtor accounts. Debtors have produced no documents reflecting any business plan involving the "Contessa" or use of the yacht as a charter, and have produced no income or expense statements relating to this entity or Yacht Daddy. Debtors have produced no documents reflecting Steven's Parents use the "Contessa" for their own personal use or benefit, and not Steven's

and potential avoidance claims, is expected to disclose Steven's actual role in causing the distribution and transfer of funds to and from the Debtors, and well as to and from these various entities, as well as the actual personal benefit he received from these transactions.[13] However, the Defendants are entitled to production of these documents, on an expedited basis, particularly where there is no objection and no explanation as to why documents have been withheld or cannot be produced immediately.

<u>K-1s to and from the Debtors</u>

9. In connection with the long-standing request for all material K-1s, the Debtors asserted objections and presented additional argument, but as to K-1s the four Debtor entities the Debtors specifically agreed as follows:

> *Debtors further object to the request as premature, given that the applicable returns for 2020 – 2024 are in the process of being prepared or amended by the tax accountant, Andrew Hahm and Mandell Advisory Group, retained by the estates.* ***When the K-1s are substantially complete and filed, they will be produced with all attachments.*** *The Debtors object to producing incomplete, draft, or non-final returns or K-1 statements to the Creditors, as same have no conceivable relevance to this proceeding,* ***and given the relatively near timeframe estimated for completion it will not result in undue delay of the production*** *(emphasis supplied).*[14]

10. Debtors also specifically agreed as follows:

> *Debtors object to producing further documents in response to the request beyond the K-1 statements for 2020 to 2024, which Debtors have already agreed to produce in response to the First Request for Production Issued by Creditors ("First RFP"), and (2) the operating statements of Debtors.*[15]

---

[13] Debtors have disclosed to the Court that they produced certain reports from CohnReznick, but the reports were only preliminary and the preliminary reports do not yet disclose Steven's role in the transfer and use of Debtor funds, nor yet disclose Steven's role in the various entities and projects that received funds. The reports were labeled confidential, but the Defendants will provide copies to the Court, for *in camera* review, upon request. Because Debtors have disclosed the existence of the reports and certain information about the reports, Defendants assert that any confidentiality obligation has been waived and request that the Court so order.
[14] *See* Response to 1st RFP, No. 1, at 2 (Ex. 7). As noted above, Debtors incorporated this statement into most of their other responses, so it is not clear whether Debtors have agreed to produce all K-1s received by the Debtors and K-1s relating to the various affiliates, entities and projects listed on Debtors' schedules. All these K-1s should be produced.
[15] *See* Response to 2nd RFP, No. 8, at 11 (Ex. 8).

11. Contrary to the Debtors' agreement to produce, all the K-1s have not been produced. The Debtors produced no K-1s issued by Debtor A&O FL for 2022 through 2024. *See* IvankovichBK_014040 – 014049. The Debtors produced no K-1s issued by any of the other three Debtors for 2020 through 2024 (other than for Debtor Atlas P2 Managing Member, LLC, for 2020 only) (IvankovichBK_013678 - 013686). The Debtors produced no K-1s that were issued to (received by) any Debtor for any of the many entities and companies in which the Debtors have an equity or ownership interest, including entities and companies listed in Debtors' schedules. It is not clear whether any existing K-1s are being withheld because they are subject to revision, or whether no K-1s exist for certain years. Debtors' counsel previously suggested that counsel may not have access to certain K-1s that may exist.[16]

12. In any event, for K-1s relating to tax returns that were not completed as of the bankruptcy filing, Andrew Hahm was retained more than a year ago specifically to prepare tax returns and any balance sheets, profit and loss statements to evidence the current assets, liabilities, and cash flow of the Debtors.[17] It has now been more than three months since the Debtors represented that the tax returns and K-1s were estimated to be completed in a "***...relatively near timeframe...***" *See* Ex. 7 (May 2, 2025 Response to 1st RFP). There is no claim that tax returns, and K-1s, could have not been completed. Any decision to delay completion of tax returns to avoid full transparency and disclosures is not proper and not a basis for withholding relevant information.

---

[16] Counsel for the Debtors also seemed to indicate during meet and confer efforts that Debtors would not withhold K-1s received by the Debtors, whether from Debtor affiliates, entities or projects listed on Debtors' schedules, or K-1s issued by such affiliates, entities or projects. But, based on the responses, Debtors may not have agreed to produce such K-1s, even if in the Debtors' possession, custody or control. Debtors' counsel verbally represented at one point in time, after a hearing in February, that the K-1s had been erroneously placed in the wrong data room. But no additional K-1s from a different data room have been produced. In any event, these K-1s and all K-1s, should be produced, including particularly the K-1s they agreed to produce long ago.
[17] *See* Case No. 24-15755-LMI, ECF 34, ECF 58.

13. As a further example, Debtor A&O FL produced some K-1s for 2008, and for 2017-2019, but the Debtors have not produced K-1s for .75 of equity interests in 2008, and for .5 of equity interests in 2017-2019. *See e.g.* Case No. 24-15755-LMI, ECF 310; IvankovichBK_013979 - 013992. It appears that the Debtors have the ability to access (or create) K-1s when it serves their interest (in connection with Steven's Parents' motion to "return" funds), but Debtors are otherwise stonewalling on discovery when it suits their interests.

14. All K-1s received by or issued by the Debtors for 2020 through 2024 should be produced immediately, including any K-1s that are subject to possible revision.[18]

Documents evidencing Steven's role and control

15. In connection with the RFP to Steven, Steven asserted objections, but also represented as follows:

> *Steven shall coordinate with the Debtors to produce relevant, non-privileged documents responsive to the Request, which are reasonably within Steven's custody or control after reasonable search, and which have not already been produced by the Debtors in response to the Plaintiffs' RFPs or by Steven's counsel in the Divorce Proceeding.*[19]

16. Thus, Steven agreed to produce documents, to the extent not already produced, including: generally, documents reflecting Steven's role and involvement in the Debtors and

---

[18] The Debtors also agreed to produce operating statements, at least for all of the Debtors. *See* Response to 2nd RFP, No. 8. The Motion also seeks production of those documents. The Defendants do not require production of documents that the Debtors have already coordinated with Steven or other parties and confirmed have already been produced (whether in the adversary, the main case, or other litigation) (such as some documents relating to the P-5 or P-2 projects). It is sufficient to identify such documents by bates-number, as Debtors have done with some responses. However, to the extent there may be different versions of operating statements, operating agreements, K-1s, or amended K-1s, the Debtors must produce all such documents in their possession, custody or control.

[19] *See* Response to RFP to Steven, No. 1 (Ex. 12) (accounts with Steven as signatory, transfer authority, etc.). Steven provided the same response and representation regarding documents that he agreed to produce, for each of the requests. *See e.g.* No. 2 (transfers); No. 4 (use for personal benefit); Nos. 5-8 (nature/value of entities, projects), No. 9 (capital calls).

Debtors' affiliates, including authority over accounts, transfers, use of assets for personal benefit, "capital calls", and the nature and value for Debtors' Affiliates, etc.[20]

17. Steven served his response on June 26, 2025, well after the 14-day extension that he sought in connection with the RFP to Steven, but failed to produce any documents at all or provide any information about efforts to collect and make available documents. There has been no disclosure of documents that were already in the hands of Steven or his counsel and could have been promptly produced. There has been no disclosure of efforts made to locate and produce documents, regardless of Steven's temporary incarceration or Steven's present whereabouts. In his response, Steven did not commit to any date for the production of even the documents he agreed to produce. Steven's counsel requested extensions of time that were agreed; but Steven did not produce documents on July 16, 2025, the agreed extended deadline for producing the first tranche, nor request a further extension, nor provide agreed dates for depositions, as agreed.

18. Steven agreed to "coordinate" with the Debtors on producing documents, but of course Steven is the manager of three of the four Debtors (and Steven is apparently the guiding hand behind the transfers and control of the fourth Debtor, A&O FL), so the continued failure to produce documents falls directly upon Steven. Steven is obligated to produce documents in his possession, custody or control, regardless of whether he holds the documents in his individual capacity, or his role as manager or person of authority for the Debtors, or his role in any of the affiliates, entities and projects listed in the schedules. The requests were served to Steven primarily to capture documents that are Debtors' documents but have not been produced because Steven controls the documents, as well as any documents that Steven has possession, custody or control

---

[20] *See* Response to RFP to Steven, No. 1 (accounts with Steven as signatory, transfer authority, etc.). Steven provided the same response and representation regarding documents that he agreed to produce, for each of the requests. *See e.g.* No. 2 (transfers); No. 4 (use for personal benefit); Nos. 5-8 (nature/value of entities, projects), No. 9 (capital calls).

of in his individual capacity, including documents relating to entities or projects in which Debtors have an interest, and Steven has some ownership interest or control.

19. Steven should be ordered to immediately produce the responsive documents he agreed to produce.[21]

## Local Rule 7026-1(F) Certification

20. The undersigned counsel certifies that counsel for the Defendants conferred with counsel for the Plaintiffs and Steven in a good faith effort to resolve by agreement the issues raised in this Motion but has been unable to do so. The conferences between and among counsel for the Defendants and counsel for the Plaintiffs and/or Steven occurred on multiple dates, including January 10-15, 2025 (emails); January 16, 2025 (telephone conference); March 7-11, 2025 (emails); May 15-16, 2025 (emails); May 27, 2025 (telephone conference); July 10, 2025 (email with Steven's counsel for agreed extension to July 16, 2025); July 31, 2025 (telephone conference and emails with counsel for Plaintiffs); and August 1, 2025 (emails with counsel for Plaintiffs).

---

[21] The Debtors' Response to the 3rd RFP (Ex. 10) also included categories of documents that the Debtors agreed to produce. There has been no communication that such documents have been produced or a particular date upon which such documents will be produced. Thus, the Debtors should be ordered to produce such documents on an expedited basis. This Motion is filed without waiver to the Defendants' challenge of the Debtors' and Steven's various objections and the Debtors intend to promptly pursue such relief, whether after further meet and confers or after reviewing the production that was agreed to be produced or otherwise.

**CONCLUSION**

WHEREFORE, the Defendants respectfully request entry of an order requiring the expedited production, within 3 calendar days, of documents that the Plaintiffs/Debtors and Steven Ivankovich ("Steven") agreed to produce, but have not yet produced, including but not limited to:

1) documents sufficient to evidence the general nature, value and corporate structure of those entities and projects listed on the Debtors' schedules;

2) K-1 statements to and by the Debtors;

3) generally, documents reflecting Steven's role and involvement in the Debtors and Debtors' affiliates, including authority over accounts, transfers, use of assets for personal benefit, "capital calls", and the nature and value for Debtors' Affiliates, etc.; and

4) the documents the Debtors agreed to produce in response to the 3rd RFP.

The Defendants also request an award of fees and costs for bringing this Motion, and such other and further relief as is just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on August 4, 2025 electronically through the Court's CM/ECF system upon counsel to the parties registered to receive electronic notice in this case.

Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3200

By: *s/Patricia A. Redmond*
Patricia A. Redmond, Esq.
Florida Bar Number 303739
predmond@stearnsweaver.com
Darrell Payne, Esq.
Florida Bar Number 773300
dpayne@stearnsweaver.com
cveguilla@stearnsweaver.com

*Counsel for Defendants Jeanette Ivankovich and Schiller DuCanto & Fleck LLP*

12

**SERVICE LIST**
**United States Bankruptcy Court, Southern District of Florida**
**Case No. 24-01411-lMI**

The following parties are registered to receive NEF and will be served electronically through the Court's CM/ECF system:

Eyal Berger, Esq. on behalf of Debtor A & O Family LLC
Altas P2 Managing Member LLC
Ivankovich Family LLC
Interested Party A&O Family LLC
Interested Party A&O Family LLC (Illinois)
Interested Party Altas P2 Managing Member LLC
eyal.berger@akerman.com, jeanette.martinezgoldberg@akerman.com

Michael S Budwick, Esq on behalf of Interested Party Steven Ivankovich
mbudwick@melandbudwick.com,
ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;mbudwick@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com

Alexa Garcia Chinchilla on behalf of Interested Party Anthony Ivankovich and Interested Party Olga Ivankovich
achinchilla@kttlaw.com

Amanda Klopp on behalf of Debtor A & O Family LLC
A&O Family LLC
Altas P2 Managing Member LLC
Ivankovich Family LLC
Interested Party A&O Family LLC
Interested Party A&O Family LLC (Illinois)
amanda.klopp@akerman.com, jeanette.martinezgoldberg@akerman.com

Darrell Winston Payne on behalf of Defendant Schiller DuCanto & Fleck, LLP
and on behalf of Defendant Jeanette Ivankovich
dpayne@stearnsweaver.com, cveguilla@stearnsweaver.com

David L Rosendorf, Esq on behalf of Interested Party Anthony Ivankovich
and On behalf of Interested Party Olga Ivankovich
dlr@kttlaw.com, rcp@kttlaw.com; ycc@kttlaw.com