**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

|  |  |
|---|---|
| In re:<br><br>IVANKOVICH FAMILY LLC,<br>A&O FAMILY LLC,<br>A & O FAMILY LLC,<br>ATLAS P2 MANAGING MEMBER, LLC,[1]<br><br>     Debtors.<br>_____/ | Chapter 11<br><br>Case Nos.: 24-15755-LMI<br>          24-15762-LMI<br>          24-15767-LMI<br>          24-15770-LMI<br><br>(Jointly Administered) |

**DEBTORS' RESPONSE TO**
**JEANETTE IVANKOVICH AND SCHILLER**
**DUCANTO & FLECK LLP'S OBJECTION TO CONFIRMATION**
**OF THE DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION**

## I.    INTRODUCTION

Debtors Ivankovich Family LLC ("IF LLC"), A&O Family LLC, ("A&O Family FL"),

A & O Family LLC ("A & O IL") and Atlas P2 Managing Member, LLC ("Atlas P2")

(collectively, the "Debtors"), by and through their undersigned counsel, submit this Response to

*Jeanette Ivankovich and Schiller Ducanto & Fleck LLP's Objection to Confirmation of the*

*Debtors' Amended Joint Plan of Reorganization* (Docket No. 518) (the "Objection") and respond

as follows:

1.        On March 20, 2025, the Debtors in the above captioned cases (these "Cases") filed

*Debtors' Amended Joint Plan of Reorganization* (Docket No. 290) and four plan supplements

(Docket Nos. 534, 549, 554, and 565) (collectively, the "Amended Plan").  As set forth in the

---

[1]    The cases are jointly administered. The last four digits of each Debtor's EIN are as follows: Ivankovich Family, LLC (4590), A&O Family, LLC, a Florida limited liability company (6789), A&O Family, LLC, an Illinois limited liability company (6865), and Atlas P2 Managing Member, LLC (8311).

Amended Plan and *Second Amended Joint Disclosure Statement of Debtors In Support of Debtors'*
*Amended Joint Plan of Reorganization* (Docket No. 289) (the "Amended Disclosure Statement"),
which the Court approved on June 27, 2025 (Docket No. 419), the Debtors have committed over
$94,000,000 in cash, guarantees from solvent non-debtors, and exit financing of up to $15,000,000
so that all creditor claims in any amount are paid 100% if the Amended Plan is confirmed.

2.      The hearing to consider approval of the Amended Plan is scheduled for August 26,
2025, August 27, 2025 and August 28, 2025 (Docket No. 520).

3.      On August 11, 2025, Jeanette Ivankovich ("Jeanette") and Schiller Ducanto &
Fleck LLP ("SDF LLP") (collectively, the "Jeanette Creditors") filed their Objection.

4.      The theme behind the Jeanette Creditors' Objection is essentially limited to the
argument that the Amended Plan was not filed in good faith because these Cases were filed as
litigation tactics to delay Jeanette's collection efforts against her former husband Steven
Ivankovich ("Steven"); yet, the Debtors' Amended Plan provides for payment of 100% of all
allowed claims, the Debtors equity holders remain intact, and sets appropriate reserves for payment
in full of any contingent or unliquidated claim asserted by the Jeanette Creditors so that they are
paid in full if allowed after claims reconciliation.  Moreover, the Debtors have demonstrated good
faith because they solicited a Judicial Settlement Conference with Judge Hyman to negotiate a
consensual plan with the Jeanette Creditors.  As a result, the *Amended Fourth Plan Supplement*
(Docket No. 565) incorporates specific provisions expressly solicited by the Jeanette Creditors as
part of negotiations.  The testimony and evidence presented at the confirmation hearing will show
that the Debtors' Amended Plan is feasible.

5.      As an initial matter, the Jeanette Creditors do not have standing to object to the
Amended Plan under Section 1129(a)(3) of the Bankruptcy Code because the Amended Plan

82843142;1

proposes to pay their claims in full, they are unimpaired, and the Amended Plan as supplemented has the support of every allowed claim asserted against the Debtors' estates.

6.      "To have standing in bankruptcy court, a party must meet three requirements: (1) Article III's constitutional requirements, (2) federal court prudential standing requirements, and (3) the 'party in interest' requirements under Bankruptcy Code 1109(b). *In re Old Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013) (citing *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 884 (9th Cir. 2012)); *In re Saratoga & N. Creek Ry., LLC*, 635 B.R. 581, 602–03 (Bankr. D. Colo. 2022).

7.      A party seeking Constitutional standing must demonstrate an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent," and that such injury "fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). This standard is "very generous" and can be met as long as the party alleges a "specific, 'identifiable trifle' of injury," or a "personal stake in the outcome of [the] litigation." *Id.* (citing *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)). Conversely, prudential standing merely requires the party raise its own legal rights and cannot rest their claim on the legal rights or interests of third parties. *See In re Quigley Co., Inc.*, 391 B.R. 695, 702 (Bankr. S.D.N.Y. 2008) (citing *Warth v. Seldin*, 422 U.S. 490 (1975)); *Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976).

8.      Based on all of the above principals, bankruptcy courts have found that, although "[a] party in interest may object to confirmation of a plan . . . it cannot challenge portions of the plan that do not affect its direct interests." *Quigley*, 391 B.R. at 703 (internal citations omitted); *In re Johns-Manville Corp.*, 68 B.R. 618, 623 (Bankr. S.D.N.Y. 1986) ("[N]o party may

82843142;1

successfully prevent the confirmation of a plan by raising the rights of third parties who do not object to confirmation"), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988)); *Greer v. Gaston & Snow (In re Gaston & Snow)*, 1996 WL 694421, at *7 (S.D.N.Y. 1996) (finding that a creditor, who did not allege that he would receive more under a Chapter 7 liquidation than under the plan, could not argue that the plan violated the "best interest of the creditors" test as to other creditors.).

9.      Therefore, in order to determine whether any unsecured creditors, whose claims are being paid in full pursuant to the Amended Plan, have standing to object to confirmation, or seek related discovery, "the question is simply whether [the unsecured creditors] have legally protected interests that could be affected by the [Plan]." *In re Global Indus. Techs.*, 645 F.3d 201, 212 (3d Cir. 2012). Because all creditor claims are being paid in full pursuant to the Amended Plan and all creditors except for the Jeanette Creditors have voted in favor of the Amended Plan, no unsecured creditor, including the Jeanette Creditors, has any standing to object to the Amended Plan, other than as to feasibility or otherwise complain about any other business term included in the Amended Plan.

10.     The bankruptcy court in *In re Tonopah Solar Energy, LLC*, 657 B.R. 393 (D. Del. 2022) dealt with this very issue now before the Court— i.e. the standing of unimpaired creditors to object to a plan other than as to feasibility. In *Tonopah*, holders of general unsecured litigation claims against the debtor whose claims were unimpaired under the terms of the confirmed plan sought to reverse confirmation on appeal and argued, among other things, that (i) the plan was not feasible, (ii) it failed to satisfy the best interests of creditors test, (iii) the plan was not proposed in good faith, (iv) the release and exculpation provisions were overbroad, and (iv) settlements

contained in the plan were improper.  In agreeing with the debtor that the unimpaired creditors

lacked standing to object to the plan other than as to feasibility, the *Tonopah* court held that:

> Appellants do not have standing to appeal the Bankruptcy Court's finding that the Plan satisfied the best interests of creditors test under § 1129(a)(7) of the Bankruptcy Code because, by its terms, this provision applies only to ***impaired*** creditors. 11 U.S.C. § 1129(a)(7) ("With respect to each ***impaired*** class of claims or interests, each holder of a claim ... has accepted the plan; or will receive or retain under the plan on account of such claim or interest property of a value ... that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code.]") (emphasis added). Section 1129(b) similarly applies only in the context of a "cramdown" of a plan over the objection of an impaired class of creditors or equity holders. *In re Abeinsa Holding, Inc.*, 562 B.R. 265, 276 (Bankr. D. Del. 2016) ("[T]he Bankruptcy Code allows a plan proponent to 'cram down' the plan on non-accepting ***impaired*** classes under § 1129(b)(1)[.]") (emphasis added). Nor do Appellants possess standing to question the good faith of the Plan, the release and exculpation provisions, or the appropriateness of settlements embodied in the Plan. Even assuming a better settlement could be reached by Tonopah, DOE, and Cobra, any enhancement from such settlement would not inure to the benefit of unimpaired general unsecured creditors, who are already recovering 100% on account of their claims.

*Tonopah*, 657 B.R. at 407 (emphasis in original).

11.     As all unsecured creditors are unimpaired and are getting paid 100% of their claim

amount regardless of the sum, unsecured creditors like the Jeanette Creditors lack Constitutional

standing to object to the Amended Plan, including the releases and exculpations provided therein,

other than as to feasibility.  **And most notably, the Jeanette Creditors do not object to the**

**Amended Plan based on feasibility.**

12.     Yet, even if the Jeanette Creditors did have standing to object to the Amended Plan

based on good faith through their tortured argument that these Cases and the Amended Plan lack

good faith because they were designed as a litigation tactic, this Court should also overrule those

objections.

13.    The Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).  Courts have adopted the position that, as a matter of policy, debtors must "make substantial or meaningful efforts to pay their obligations." *In re Osborne*, 8 B.R. 200, 202 (Bankr. N.D. Ill. 1981).  Further, the phrase "good faith" is described to be "broad, indefinite and of necessity tied to the facts of a specific case." *Id*.  This requirement has been held to not be satisfied if the plan does not provide meaningful payments to unsecured creditors.  *See In re Smith*, 39 B.R. 57, 58 (Bankr. S.D. Fla. 1984) (citing *In re Fredrickson*, 5 B.R. 199 (Bankr. M.D. Fla. 1980)); *Matter of Ward*, 6 B.R. 93 (Bankr. M.D. Fla. 1980).

14.    Courts have repeatedly held that plans that propose to pay creditors in *full* satisfy the good faith requirement under Section 1129(a)(3) of the Bankruptcy Code.  *See Matter of Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984) (finding that a plan was proposed in good faith where "[i]n light of the totality of the circumstances, including the fact that [the Debtor's] plan will pay all creditors in full and thereby allow [the Debtor] to continue as a viable entity in accord with the purposes of Chapter 11").  What is more, in *In re S B Bldg. Assocs. Ltd. P'ship*, the bankruptcy court for the District of New Jersey held that a chapter 11 plan was proposed in good faith where it proposed to pay creditors 100%—explaining that a plan that "proposes to pay creditors in full clearly promotes the objectives and purposes of the Bankruptcy Code." (quoting *In re Couture Hotel Corp.*, 536 B.R. 712, 735 (Bankr. N.D. Tex. 2015)).  Even in *In re Rosewood at Providence, LLC*, the bankruptcy court for the Middle District of Georgia confirmed a chapter 11 plan over a good faith objection, finding that the plan satisfied section 1129(a)(3) of the Bankruptcy Code because the totality of circumstances indicated the plan was filed in good faith—because it was "the result of extensive negotiations" and provided for

"payment in full" of class 1A claims and "distribution to other creditors who would have received nothing in a liquidation." 470 B.R. 619, 630 (Bankr. M.D. Ga. 2011). All the same, courts have overruled confirmation objections in scenarios in which the chapter 11 plan paid 100% to creditors. *See generally In re Marshall*, 298 B.R. 670 (Bankr. C.D. Cal. 2003); *In re 431 W. Ponce De Leon, LLC*, 515 B.R. 660 (Bankr. N.D. Ga. 2014). The same is true for chapter 13 plans—for which courts have used the same good faith analysis—in *In re Draper*, the court found that a plan was proposed in good faith as its provisions provided for funding "sufficient to pay all creditors of the bankruptcy estate one hundred percent of their allowed claims." No. 15-34127-KRH, 2015 WL 7264669, at *4 (Bankr. E.D. Va. Nov. 17, 2015). In a similar vein, a finding that a chapter 13 plan provides for the entire amount of allowed claims appears to be a significant factor in making a good faith determination. *See In re Fillion*, 181 F.3d 859, 862 (7th Cir. 1999). Moreover, it has been held that a chapter 13 plan that proposes to pay one hundred percent of unsecured claims satisfies the Bankruptcy Code's good faith requirement. *See In re Brigance*, 219 B.R. 486, 497 (Bankr. W.D. Tenn. 1998).

15.     In *In Matter of Madison Hotel Assocs.*, the Seventh Circuit reversed the District Court's reversal of a bankruptcy court's ruling of good faith under section 1129(a)(3). The Seventh Circuit pointed out that the District Court improperly "reasoned that section 1129(a)(3) requires the bankruptcy court to evaluate the debtor's pre-filing conduct as well as the feasibility of the plan itself." *Madison Hotel*, 749 F.2d at 424 (internal quotations omitted). The Seventh Circuit contended that the District Court "erroneously construed the good faith requirement of 11 U.S.C. § 1129(a)(3)" by finding relevant the secured creditor's assertion that that the bankruptcy filing "may have been motivated by the sole purpose of hindering and delaying its creditors" and *inappropriately* held that "indications of misuse of the bankruptcy court are

82843142;1

sufficient to require an evidentiary hearing by the bankruptcy court to determine whether [the debtor's] pre-filing conduct demonstrates by a preponderance of the credible evidence that its sole purpose in filing for Chapter 11 reorganization was to hinder or delay its secured creditors." *Id.* (emphasis added).  In its determination, the Seventh Circuit held that "for purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *Id.* at 425 ("The district court's decision failed to make this legal distinction between the good faith that is required to *confirm a plan* under section 1129(a)(3) and the good faith that has been established as a *prerequisite to filing* a Chapter 11 petition for reorganization.").  Thus, irrespective of any pre-bankruptcy conduct that the Jeanette Creditors complain about (which the Debtors obviously dispute), the Debtors' good faith in promoting their Amended Plan is evidenced by cash, guarantees and financing commitments of over $94,000,000, which provides for payment of 100% of all allowed claims with equity holders receiving the same, and a reserve set up to pay all contingent claims in full.  Moreover, the Amended Plan is supported by competent evidence (financials and testimony) which shows the Amended Plan is feasible and satisfies all requirements of Section 1129(a) of the Bankruptcy Code.

16.     Even more hypocritical, the Jeanette Creditors now contend for the first time that the Debtors are utilizing Chapter 11 and the Amended Plan in bad faith for an improper purpose of: a) divesting the Illinois Divorce Court from decision making authority with respect to marital assets belonging to Jeanette; b) immunizing non-debtors Steven Ivavkovich and his parents from liability for wrongful actions and misconduct; and c) continuing efforts to keep away assets from creditors and to avoid compliance with non-bankruptcy court orders;[2] yet, the record is clear that

---

[2]     *See* Introduction to Objection.

82843142;1

the Jeanette Creditors never sought dismissal of these Cases as bad faith filings which is fatal to

their arguments. *See In re Landing Associates, Ltd.*, 157 B.R. 791, 812 (W.D. Tex. 1993) (finding

that the eve of confirmation was too late to raise the issue of whether a Chapter 11 case should be

dismissed for a "bad faith" filing; if there were any real merit to creditor's contention, it should

have sought immediate dismissal of case and its failure to do so was fairly strong indication that

there was no merit to its contention).[3]

17.    Moreover, the Jeanette Creditors should be the last parties to complain about bad

faith with respect to these cases or the Amended Plan as the Debtors are currently seeking sanctions

against the Jeanette Creditors for willfully violating the automatic stay.[4]  "[T]he unclean hands

doctrine is a self-imposed ordinance that closes the doors of a court of equity to one tainted with

the inequitableness or bad faith relative to the matter in which he seeks relief, however improper

may have been the behavior of the defendant." *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372,

401 (Bankr. D. Del. 2011).  "As an equitable doctrine, application of unclean hands rests within

the sound discretion of the trial court." *New Valley Corp. v. Corporate Prop. Assoc. 2 and 3 (In

re New Valley Corp.)*, 181 F.3d 517, 525 (3rd Cir. 1999).  Parties should not be able obtain

equitable relief "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad

faith directly related to the matter at issue that injures the other party and affects the balance of

equities." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3rd Cir. 1999).  The

---

[3]    Courts employ a different legal standard when evaluating "a bad faith motive in filing the bankruptcy and the good faith test for a plan confirmation under § 1129(a)(3)." *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 393 (Bankr. W.D. Tenn. 1991). Rather, "[t]he inquiry focuses on examining the totality of the circumstances surrounding the *proposed* plan, in light of the underlying goal of the Code to encourage efforts at rehabilitation." *In re Landing Associates, Ltd.*, 157 B.R. 791, 812 (W.D. Tex. 1993).

[4]    *See* Debtors' *Expedited Motion for Entry of an Order to Show Cause Against Jeanette Ivankovich and Schiller, Ducanto & Fleck LLP, and Neal H Levin for Willful Violations of the Automatic Stay* (Docket No. 354) and the Debtors' supplement thereto (Docket No. 372) (together, the "Show Cause Motion"), currently scheduled for final hearing on August 26, 2025.  The Debtors incorporate by reference all allegations and exhibits in the Show Cause Motion.

82843142;1

"equitable doctrine of unclean hands allows a court to bar equitable relief when a party asserting an equitable claim against another can be shown to have engaged in fraud or bad faith behavior with that person." *In re Austin*, No. 07-20702, 2009 WL 3193167, at *14 (Bankr. W.D. La. Oct. 2, 2009) (citing *Alcatel U.S.A., Inc. v. DGI Technologies, Inc.,* 166 F.3d 772, 796 (5th Cir.1999)). Here, and as more particularly set forth in the Show Cause Motion, the Jeanette Creditors have unclean hands and this Court should discount entirely or not consider at all any arguments by the Jeanette Creditors that the Debtors have proceeded in bad faith.

18.     The Jeanette Creditors cite on page 8 of their Objection to several cases that courts will find a lack of good faith when there is no real business to reorganize; however, each of the cases cited by the Jeanette Creditors involve situations where the objecting creditors sought dismissal of a bankruptcy case as opposed to objecting to confirmation of a Chapter 11 Plan for not being proposed in good faith.  Moreover, solvent entities are not prohibited from filing Chapter 11 cases and there are many examples of successful reorganizations where plans have been confirmed for solvent Debtors.[5] Thus, this argument should likewise be discounted or disregarded completely.

19.     The Jeanette Creditors cite to *In re Epic Metals Corp.*, 232 B.R. 806 (M.D. Fla. 1999) for the proposition that confirmation of a Chapter 11 Plan can be denied if the Chapter 11 case was filed as a litigation tactic; however, the *Epic Metals* case is clearly distinguishable and inapposite to this case for three compelling reasons: 1) the debtor in *Epic Metals* put on no evidence that its Chapter 11 plan was filed in good faith, *see Epic Metals*, 232 B.R. at 809, while in this case the record will be replete with evidence shown at the confirmation hearing through testimony and

---

[5]     *See In re Local Union 722 International Brotherhood of Teamsters*, 414 B.R. 443 (Bankr. N.D. Ill. 2009) (insolvency is not a requirement for filing a bankruptcy case under any chapter).

82843142;1

declarations that the Amended Plan was filed in good faith (it is a 100% plan); 2) confirmation was denied in *Epic Metals* partially because the debtor manipulated two classes of creditors to create artificial impairment, *see id. at* 809; yet, here there is no artificial impairment and this is a 100% payout case for all creditors if the Amended Plan is confirmed; and 3) these Cases were filed due to the overaggressive collection actions initiated by the Jeanette Creditors which resulted in the freezing of bank accounts and the potential for forced liquidation of assets which would have negatively impacted the value of the Debtors' assets if a forced liquidation had occurred or the Debtors could not pay their obligations if accounts continued to be frozen.

20.     The Jeanette Creditors also argue that the Debtors' Amended Plan was not filed in good faith because the Debtors are not filing avoidance actions to recover fraudulent transfers for the benefit of the Debtors' estates; however, this is clearly a bad faith argument for two reasons: 1) the Amended Plan provides for the payment of funds sufficient to pay 100% distributions to creditors and contingent creditors; and 2) the Jeanette Creditors never sought the appointment of a trustee to pursue such claims, an examiner to evaluate such claims, or filed a motion for derivative standing for themselves to pursue such claims.  As the Debtors' Amended Plan is scheduled for a confirmation hearing and trial on August 26, 2025, it is obviously a little late in the game (and clearly disingenuous) to throw this type of mud against the wall in the hope that it sticks.

21.     The Jeanette Creditors also make the baseless argument that the sale of the Yacht Daddy vessel called "Sun Seeker" is unnecessary and shows additional bad faith of the Debtors; yet, the record is clear that the Debtors have sought approval of the retention of a broker and sale of the vessel (which could be worth over $11 million dollars) with all proceeds from the sale (net of expenses) being committed to the Amended Plan.  So the exact opposite is actually true in that

82843142;1

the Debtors' promise to sell the Yacht (owned by a non-debtor and only indirectly owned by the Debtors) and devote the entirety of the sale proceeds (less sale expenses) to their Amended Plan is actually the epitome of good faith. Irrational arguments such as the objection to good faith based on the sale of the Yacht Daddy vessel "Sun Seeker" highlight a clear pattern of bad faith and obfuscation on the part of the Jeannete Creditors who seem more concerned with ruining the businesses of the Debtors and their insiders to their own detriment as opposed to rational consideration of an Amended Plan which provides a 100% dividend to creditors with funding sources reaching over $94,000,000.

22.     The Amended Plan, as supplemented, also clarifies that the releases, exculpation, and injunction do not impair any independent claim that Jeanette may assert against any non-debtor and are narrowly tailored to release solely claims by the Debtors. It is axiomatic that the Debtors lack viable claims against the released parties in the context of a plan that pays all creditors in full.

23.     The same bad faith/baseless argument holds true on the Jeanette Creditors' objection under Section 1129(a)(5) of the Bankruptcy Code to the management of the Debtors post-confirmation by Mark Brown, Nancy Webber and Dr. Olga Ivankovich (the "Post-Confirmation Managers"). The proposed Post-Confirmation Managers are the same people who have primarily assisted in operating the Debtors since these Cases were filed, excluding Steven Ivankavich, who is not part of the Debtors' post-confirmation management team. All monthly operating reports have been filed. The Debtors have responded to countless subpoenas from the Jeanette Creditors. And, the Debtors have proposed the Amended Plan in a relatively short period of time through the hard work of the Post-Confirmation Managers and is backed up by significant financial historicals and projections—and a loan commitment from Dr. Olga Ivankovich for up to 15,000,000 which support the feasibility of the Amended Plan. Fourteen months into these Cases

82843142;1

and the Jeanette Creditors have not moved for dismissal, the appointment of a trustee or examiner nor have they sought to convert these Cases to Chapter 7.  Until the Objection, the Jeanette Creditors have not made one sincere objection to how the Debtors have been managed post-petition by the Post-Confirmation Managers.  The Jeanette Creditors complaint about the lack of the Debtors' good faith, yet the arguments made in their Objection show that it is the Jeanette Creditors who are acting in bad faith seeking to derail a plan that pays all creditors in full, including the Jeanette Creditors in whatever amount of claim they end up receiving, by asserting borderline frivolous or desperate objections to the Amended Plan.

24.    As set forth in the Court-approved Amended Disclosure Statement, retention of the Post-Confirmation Managers is important as they have the institutional and operational knowledge of the Debtors and their assets which eliminates potential disruptions to operations and preserves value attributable to their experience.  Bringing in a liquidating trustee now who would want to retain new counsel and other financial advisors would increase the administrative costs of these Cases dramatically to the detriment of all involved.  Last on this point, the Debtors posit that senseless arguments now about liquidating trustees with no knowledge of these cases and no proof that the Post-Confirmation Managers have done anything improper is further proof that the Ivankovich Creditors will stupe to as low as they can in an irrational effort to derail the Debtors' legitimate efforts to reorganize and treat their creditors' claims in good faith by proposing a 100% Plan.  A liquidating trustee is also entirely unnecessary where the Debtors have designated a disbursing agent with a segregated disputed claims reserve solely for the benefit of the Jeanette Creditors.

25.    Last, the Jeanette Creditors make a half-hearted argument that the Amended Plan does not pass the best interest of creditors test under Section 1129(a)(7) of the Bankruptcy Code

82843142;1

because there is no analysis of avoidance actions; however, and again, this is a 100% payment plan to secured and unsecured creditors, all of whom (other then the Jeanette Creditors) voted in favor of the Amended Plan.  Therefore, the Objection should be easily overruled by this Court.  *See In re Polytherm Industries, Inc.*, 33 B.R. 823, 836 (W.D. Wis. 1983) (unimpaired creditors are considered to have accepted the plan, thereby relieving the debtor of the need to solicit votes or adhere to the best interests standard for those creditors); *In re Sentinel Mgmt. Grp., Inc.*, 398 B.R. 281, 310 (Bankr. N.D. Ill. 2008) (the court emphasized that the best interests test applies only to individual creditors holding an impaired claim, regardless of the class's overall acceptance of the reorganization plan).


*[Remainder of Page Intentionally Left Blank]*

82843142;1

**WHEREFORE,** Debtors respectfully requests that the Court confirm the Amended Plan, overrule the Objection, and grant such other and further relief as this Court deems just and proper.

Dated: August 22, 2025

Respectfully submitted,

By: */s/ Eyal Berger*
Eyal Berger
Florida Bar No.: 011069
Email: eyal.berger@akerman.com
AKERMAN LLP
201 East Las Olas Blvd., Suite 1800
Fort Lauderdale, FL 33301
Tel: 954-463-2700
Fax: 954-463-2224

-and-

Amanda Klopp, Esq.
Florida Bar No.: 124156
Email: amanda.klopp@akerman.com
AKERMAN LLP
777 South Flagler Drive, Suite 1100, West Tower
West Palm Beach, FL 33401
Tel: 561-653-5000
Fax: 561-659-6316

*Counsel for the Debtors*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case as listed in the attached Service List.

By: */s/ Eyal Berger*
Eyal Berger, Esq.

82843142;1