

**ORDERED in the Southern District of Florida on September 16, 2025.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

In re:

IVANKOVICH FAMILY LLC
A&O FAMILY LLC,
A & O FAMILY LLC,
ATLAS P2 MANAGING MEMBER, LLC,[1]

    Debtors.

_____/

Case Nos. 24-15755-LMI
24-15762-LMI
24-15767-LMI
24-15770-LMI

(Jointly Administered)

**ORDER**
**CONFIRMING DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION**

    Debtors, Ivankovich Family LLC, A&O Family LLC (FL), A & O Family LLC (IL), Atlas

P2 Managing Member, LLC (collectively, the "Debtors"), Dr. Anthony Ivankovich, Dr. Olga

---

[1]   The cases are jointly administered. The last four digits of each Debtor's EIN are as follows: Ivankovich Family, LLC (4590), A&O Family, LLC, a Florida limited liability company (6789), A&O Family, LLC, an Illinois limited liability company (6865), and Atlas P2 Managing Member, LLC (8311).

Ivankovich, Yacht Daddy, LLC, Pilgrim Warwick Owner, LLC, Pilgrim Coulter Owner, LLC, and Pilgrim Windtree Owner, LLC (collectively, with the Debtors, the "Plan Proponents") having jointly proposed and filed the *Debtors' Amended Joint Plan of Reorganization* (ECF #290) (the "Plan"),[2] as supplemented,[3] with the United States Bankruptcy Court for the Southern District of Florida (the "Court"), and this Court having entered that certain *Order (A) Approving Second Amended Disclosure Statement, (II) Setting Hearing on Confirmation of Plan; (III) Setting Hearing on Fee Applications; (IV) Setting Various Deadlines; and (V) Describing Plan Proponents' Obligations* (ECF #419) (the "Order Approving Disclosure Statement") approving, among other things, the disclosures contained in the Debtors' Second Amended Disclosure Statement (ECF #289) (the "Disclosure Statement") setting out various confirmation deadlines and requirements for confirmation; upon the filed certificate of service documenting service of the Solicitation Package ordered by the Court (ECF #461) (the "Certificate of Service of Solicitation Package") in accordance with the Order Approving Disclosure Statement; upon the *Certificate of Proponent of Plan on Acceptance of Plan, Report on Amount to Be Deposited, Certificate of Amount Deposited and Payment of Fees* (ECF #562) (the "Voting Certificate"); and upon the *Confirmation Affidavit of Steven Ivankovich* (ECF #560), the *Confirmation Affidavit of Nancy Webber* (ECF #557), the *Confirmation Affidavit of Olga Ivankovich* (ECF #558), the *Confirmation Affidavit of Mark Brown* (Debtors' Exhibit 9), the *Declaration of Stuart Neiberg In Support of Confirmation* (Debtors' Exhibit 10), the *Affidavit of Andrew Hahm* (Debtors' Exhibit 11), the

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Confirmation Order.

[3]  Plan Supplement No. 1 (ECF #534), Plan Supplement No. 2 (ECF #549), Plan Supplement No. 3 (ECF #553), Plan Supplement No. 4 (ECF #565),  and Plan Supplement No. 5 (ECF #599).

*Affidavit of Mark Elliot* (Debtors' Exhibit 12), and the *Declaration of Shanna Willis* (Debtors' Exhibit 81) (collectively, the "Confirmation Affidavits") filed in support of confirmation of the Plan; and this Court having held a hearing to consider confirmation of the Plan on August 26-28, 2025, continuing on September 4, 2025, and concluding on September 12, 2025 (the "Hearing"); and any responses or objections to confirmation of the Plan raised at or prior to the Hearing by the Objecting Creditors (collectively, the "Objections") having been considered at the Hearing; and after due deliberation and sufficient cause appearing therefor; and this Court having conducted the Hearing, considered all of the evidence proffered or adduced and the arguments of counsel made at the Hearing, reviewed all documents in connection therewith, and having heard all parties desiring to be heard; and upon the full record of the Chapter 11 Cases and after due deliberation and consideration of all of the foregoing, this Court hereby finds and determines that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Findings and Conclusions. The findings and conclusions set forth herein and on the record of the Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. The Court incorporates by reference all findings of fact and conclusions of law set forth on the record at the Hearing as if set forth fully herein. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    Jurisdiction: Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan and approval of the Claim Settlements (as defined below) are each core

proceedings pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. The Debtors are proper plan proponents under section 1121(c) of the Bankruptcy Code.

C.     <u>Judicial Notice</u>.   The Court takes judicial notice of (and deems admitted into evidence for the Hearing) the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, the Voting Declaration, all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

D.     <u>Findings Regarding the Debtors</u>. As debtors in possession, the management of the Debtors was duly authorized and empowered to take any and all such actions contemplated by and giving rise to the Plan, including pursuit of approval of the Disclosure Statement and confirmation of the Plan. Each action, agreement, and transaction contemplated by the Plan and this order (this "<u>Confirmation Order</u>"), and all related actions, agreements, and transactions necessary to implement, effectuate, and confirm the Plan are authorized by this Confirmation Order. The Plan Proponents are duly authorized and empowered to take any and all such actions as any of the Plan Proponents may determine are necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan and this Confirmation Order. The Plan Proponents have been duly authorized, or are empowered to duly authorize, each of the acts, documents, agreements, and transactions contemplated in the Plan and this Confirmation Order to implement, effectuate, and consummate the Plan.

E.    <u>Burden of Proof</u>. The Plan Proponents have the burden of proving the elements of sections 1123, 1125, and 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Plan Proponents have met their burden with respect to each element of sections 1123, 1125, and 1129(a) and (b) of the Bankruptcy Code.

F.    <u>Chapter 11 Petitions</u>. On the Petition Date, the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. The Debtors continue as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

G.    <u>Notice and Service of Solicitation Materials</u>. The Voting Certificate and Certificate of Service of Solicitation Package (including, without limitation, any re-notices of hearing, and of all deadlines for objecting to, or voting to accept or reject the Plan, and of the proposed release, exculpation, and injunction provisions set forth in Article IX of the Plan) are in accordance with the Order Approving Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Under the circumstances, such transmittal and service constitute due, adequate, and sufficient notice of the Plan and the Hearing to all parties entitled to such notice under the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is necessary or required. All parties in interest in the Chapter 11 Case had a full and fair opportunity to appear and be heard at the Hearing, and no other or further notice is or shall be required.

H.    <u>Solicitation</u>. Based on the record before this Court, the Plan Proponents and their respective counsel, advisors, and agents have acted and solicited votes for acceptance and rejection of the Plan in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Order Approving Disclosure Statement, all applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The Plan Proponents and their respective counsel, advisors, and agents are entitled to the protections of section 1125(e) of the Bankruptcy Code. Notice of the Hearing complied with the terms of the Order Approving Disclosure Statement, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and complied with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

I.    <u>Voting Certification</u>. Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125(a)(1) of the Bankruptcy Code. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. As evidenced by the Voting Declaration, Class 1 (Celadon Financial Group LLC), Class 2 (Royal Bank of Canada), and Class 4 (The Township Claims and P-5GRA Claim) voted to accept the Plan. Classes 3, 5, 6, 7, and 8 are unimpaired and a ballot was not required.

J.    <u>Plan Supplements</u>. The Debtors have filed a total of five supplements to the Plan: *Supplement to Debtors' Amended Joint Plan of Reorganization* (ECF #534) (the "<u>First Plan Supplement</u>"), the *Celadon Supplement to Debtors' Amended Joint Plan of Reorganization* (ECF #549) (the "<u>Second Plan Supplement</u>"), the *Third Supplement to Debtors' Amended Joint Plan of Reorganization* (ECF #553) (the "<u>Third Plan Supplement</u>"), the *Fifth Plan Supplement* (ECF #599) (the "<u>Fifth Plan Supplement</u>" and collectively, the "<u>Plan Supplements</u>"), as well as the *Amended Fourth Plan Supplement* (ECF #565) (the "<u>Fourth Plan Supplement</u>") which presented alternative proposed treatment by the Plan Proponents to Jeanette Ivankovich and Schiller Ducanto & Fleck, LLP (collectively, the "<u>Objecting Creditors</u>") in the form of an offer. The information

and documents comprising the Plan Supplements are integral to, part of, and incorporated by reference into the Plan. To the extent consistent with the terms of the Disclosure Statement and/or Plan, the Plan Proponents' rights to further alter, amend, update, or modify the Plan Supplements before the Effective Date are fully reserved.

K.     <u>Fourth Plan Supplement.</u> The Fourth Plan Supplement is an offer which contains certain requirements to be accepted. A dispute has arisen regarding whether the offer was timely accepted by the Objecting Creditors. The Court finds that, notwithstanding extensive negotiations prior to, and during the contested confirmation Hearing, the offer of the Fourth Plan Supplement remained open as of the close of evidence on September 4, 2025. However, negotiations between the parties continued after the evening of September 4, 2025. Under basic contract law, a counteroffer is a rejection of an offer. *See Racing Properties, L.P. v. Baldwin,* 885 So. 2d 881, 883 (Fla. 3d DCA 2004). Thus, notwithstanding that the offer of the Fourth Plan Supplement remained open on September 4, 2025, the continued negotiations after the close of evidence constituted rejection of the outstanding offer, and the Objecting Creditors' attempt to accept on September 11, 2025 was ineffective.

L.     <u>Releases, Exculpation, and Injunction.</u>[4] The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the Bankruptcy Code to approve the Releases, Exculpation Provisions, and Injunction set forth in Article IX of the Plan, because, *inter alia*, these provisions are an integral part of the Plan. Moreover, approval of the Releases, Exculpation Provisions, and Injunction set forth in Article IX of the Plan are core matters under section 157 of title 28 of the

---

[4] The Objecting Creditors argue that the Releases, Exculpation and Injunction are not necessary, but the Court has considered the additional argument of the Plan Proponents at the Hearing on September 12, and finds that, with the changes the Court has made to the requested Releases, Exculpation and Injunction, those objections are overruled.

United States Code because, *inter alia*, these provisions arise in the context of confirmation of the Plan and are integral parts of the Plan. Section 105(a) of the Bankruptcy Code permits approval of the releases and issuance of the injunction set forth in Article IX of the Plan if, as has been established in these Chapter 11 Cases based upon the record in the Chapter 11 Cases, the Disclosure Statement, the Confirmation Affidavits, and the evidence presented at the Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are important and necessary to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates and creditors, (iii) are justified based upon the circumstances of these Chapter 11 Cases, and are narrowly tailored, and (iv) are in the best interests of the Debtors, their estates, and creditors. The Releases, Exculpation, and Injunction are limited in scope, and granting the Releases and Exculpation represents a valid exercise of the Debtors' business judgment, is in the best interests of the estates, and falls well above the lowest point in the range of reasonableness.  The Court further finds that the Injunction is both reasonable and necessary to allow the Debtors, Reorganized Debtors, and the Plan Proponents to complete all obligations under the Plan.    Further, the Releases and Exculpation Provisions in the Plan are subject to certain carve-outs that do not relieve any party of, among other things, obligations of the Released Parties pursuant to the Plan. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Releases, Exculpation Provisions, and Injunction set forth in Article IX of the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors and their estates and creditors. The failure to include such provisions could seriously impair the Debtors' ability to confirm and implement the Plan in these Chapter 11 Cases. Based upon the record of these Chapter 11 Cases and the evidence

proffered or adduced in support of confirmation of the Plan, and the Court noting that the U.S. Trustee does not object to Article IX of the Plan, this Court finds that the Releases, Exculpation Provisions, and Injunction set forth in Article IX of the Plan are consistent with the Bankruptcy Code and applicable law.

M.    <u>Disputed Claim Reserves</u>. The Disputed Claim Reserves identified in section 7.12 of the Plan, as supplemented by the Third Plan Supplement are both reasonable and necessary to effectuate the Debtors' Plan.

N.    <u>Transmittal of Solicitation Materials</u>. In satisfaction of sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 2002(b), on or about July 10, 2025 as evidenced by the Certificate of Service of Solicitation Package (ECF #461) the Debtors mailed by first-class United States Mail the Order Approving Disclosure Statement scheduling the Hearing of the Plan and other solicitation materials to all parties on its creditor's matrix and known Holders of Claims against or Interests in the Debtors. The Order Approving Disclosure Statement notified Holders of Claims and Interests and other parties of the deadline and procedures for filing objections to the Plan and that the Hearing of the Plan would start  on August 26, 2025 at 9:00 a.m. (ET), continue on August 27, 2025, and conclude on August 28, 2025. Further, the solicitation materials also included, in bold and conspicuous font, that the Plan contained certain injunction, exculpation, and release provisions.

O.    <u>Claim Settlements</u>. The Debtors have entered into settlements (collectively, the "<u>Claim Settlements</u>") with certain holders of claims (collectively, the "<u>Claimants</u>" and their claims, the "<u>Resolved Claims</u>"), as reflected in certain of the Plan Supplements. The Court has jurisdiction under sections 1334(a) and (b) of the Bankruptcy Code to approve the Claim

Settlements, as set forth in the Plan Supplements, because, *inter alia*, these supplements are an integral part of the Debtors' Plan. The Plan Supplements incorporate these Claim Settlements to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties in interest. Approval of the Claim Settlements is appropriate pursuant to sections 363, 1123(b), and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, because in consideration for the distributions and other benefits provided pursuant to the Plan Supplements, the provisions of the Claim Settlements constitute a good faith compromise and settlement of the Resolved Claims, and because the Claim Settlements fall well above the lowest point in the range of reasonableness and meet the standards for approval of settlements set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).

**<u>RBC Settlement.</u>** As set forth in the First Plan Supplement, the Debtors and Royal Bank of Canada ("<u>RBC</u>") have agreed to a resolution of RBC's claim (the "<u>RBC Claim Settlement</u>"). The RBC Claim Settlement, among other things, provides certain improved recovery to RBC, in exchange for a discount capture for the Debtors and mutual releases. The RBC Settlement was heavily negotiated, at arms' length, and reflects a good faith compromise of the treatment of RBC's claims. Entry of this Confirmation Order constitutes approval of the resolution of the Debtor's treatment of RBC's claims pursuant to 11 U.S.C. § 1123 and, if and to the extent necessary, Bankruptcy Rule 9019, as well as a finding that the agreed treatment of RBC's claims is fair, equitable, reasonable and in the best interests of Debtors, the estate and the creditors and otherwise meets the settlement standards set forth by the Eleventh Circuit in *Justice Oaks*, 898 F.2d at 1549 and is well above the "lowest range of reasonableness" as contemplated by applicable law. *See,*

*e.g. In re Martin*, 490 F. 3d 1272, 1275-76 (11th Cir. 2007). The RBC Settlement included in the First Plan Supplement is approved in all respects.

 ***Celadon Settlement.*** As set forth in the Second Plan Supplement, the Debtors and Wedbush Securities, Inc. and Celadon Financial Group, LLC (collectively, "Celadon") have agreed to a resolution of Celadon's claim (the "Celadon Settlement"). The Celadon Settlement, among other things, provides certain improved recovery to Celadon, including a discount capture for the Debtors, and mutual releases. The Celadon Settlement was heavily negotiated, at arms' length, and reflects a good faith compromise of the treatment of Celadon's claims. Entry of this Confirmation Order constitutes approval of the resolution of the Debtor's treatment of Celadon's claims pursuant to 11 U.S.C. § 1123 and, if and to the extent necessary, Bankruptcy Rule 9019, as well as a finding that the agreed treatment of Celadon's claims is fair, equitable, reasonable and in the best interests of Debtors, the estate and the creditors and otherwise meets the settlement standards set forth by the Eleventh Circuit in *Justice Oaks*, 898 F.2d at 1549 and is well above the "lowest range of reasonableness" as contemplated by applicable law. *See, e.g. In re Martin*, 490 F. 3d 1272, 1275-76 (11th Cir. 2007). The Celadon Settlement included in the Second Plan Supplement is approved in all respects.

 ***P-5 GRA, LLC Claim Settlement.*** As set forth in the Fifth Plan Supplement, the Debtors and P-5 GRA, LLC ("GRA") entered into that certain *Stipulation and Settlement Regarding the Claim of P-5 GRA, LLC*, dated as of August 21, 2025 annexed to the Fifth Plan Supplement as Exhibit A (the "GRA Claim Settlement"). The GRA Claim Settlement, among other things, resolves GRA's proof of claim number 2-3 and GRA's pending motion seeking reconsideration of the DE Opinion (as defined in the Fifth Plan Supplement), and any objection that GRA may have

had to the Debtors' Plan, in exchange for allowance of GRA's claim and payment thereof on 60-day terms. The GRA Claim Settlement was heavily negotiated, at arms' length, and reflects a good faith compromise of the treatment of GRA's claims. Entry of this Confirmation Order constitutes approval of the resolution of the Debtor's treatment of GRA's claims pursuant to 11 U.S.C. § 1123 and, if and to the extent necessary, Bankruptcy Rule 9019, as well as a finding that the agreed treatment of GRA's claims is fair, equitable, reasonable and in the best interests of Debtors, the estate and the creditors and otherwise meets the settlement standards set forth by the Eleventh Circuit in *Justice Oaks*, 898 F.2d at 1549 and is well above the "lowest range of reasonableness" as contemplated by applicable law. *See, e.g. In re Martin*, 490 F. 3d 1272, 1275-76 (11th Cir. 2007). The GRA Claim Settlement included in the Fifth Plan Supplement setting forth the agreement between the Debtors and the Celadon is approved in all respects.

Accordingly, in consideration for the distributions and other benefits provided pursuant to the Plan Supplements, this Confirmation Order shall constitute the Court's approval of the Claim Settlements as well as a finding by the Court that such Claim Settlements are in the best interests of the Debtors, their estates, and the Claimants and are fair, equitable, and reasonable. Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Hearing and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the Court's approval of the Claim Settlements incorporated in the Plan (by the Plan Supplements) and this Confirmation Order, because, among other things: (a) the Claim Settlements reflect a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the

Debtors to expeditiously exit chapter 11, on the other hand; (b) absent the Claim Settlements, there is a potential for complex and protracted litigation involving, among other things, the Resolved Claims, with the attendant expense, inconvenience, and delay that have a possibility to derail the Debtors' reorganization efforts; (c) each of the parties supporting the Claim Settlements, including the Debtors, are represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) the Claim Settlements are the product of arm's-length bargaining and good faith negotiations between sophisticated parties; and (e) the Claim Settlements are fair, equitable, and reasonable and in the best interests of the Debtors, the Reorganized Debtors, their respective estates and property, creditors, and other parties in interest, will maximize the value of the estates by preserving and protecting the ability of the Reorganized Debtors to continue operating outside of bankruptcy protection and in the ordinary course of business, and are essential to the successful implementation of the Plan. Based on the foregoing, the Claim Settlements satisfy the requirements of applicable Eleventh Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

P.    <u>Class Conclusively Presumed To Accept the Plan</u>. Classes 3, 5, 6, 7, and 8 are unimpaired and are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 4 was originally also unimpaired when the Amended Plan was originally filed.  Subsequent to the filing of the Amended Plan, the Debtors reached settlements with the Township Entities and P-5GRA, LLC, two creditors holding the vast majority of Class 4 Claims, wherein both parties consented to receive less than the full amount of their asserted claim over payment terms negotiated with the Debtors.  Accordingly, as of the date of the Hearing, Class 4 is impaired.

13

Q.    <u>Approval of the Plan and Entry of Confirmation Order</u>. This Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the Plan and to enter this Confirmation Order.

R.    <u>Plan's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(l))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code, thereby satisfying section 1129(a)(l) of the Bankruptcy Code.

i.    *Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1))*. In addition to Administrative Claims, Professional Claims, and Statutory Fees, which are not and do not need to be classified, the Plan designates separate Classes of Claims and Interests for and against the Debtors.  The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests or the Holders of such Claims and Interests have consented to such classification. Thus, the Plan satisfies sections 1122 and 1123(a)(l) of the Bankruptcy Code.

ii.    *Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))*. Classes 3, 5, 6, 7, and 8 are unimpaired which satisfies section 1123(a)(2) of the Bankruptcy Code.

iii.    *Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))*. Section 4.01 of the Plan provides that Holders of Claims in Class 1 (Celadon Financial Group LLC), Class 2 (Royal Bank of Canada), and Class 4 (The Township Claims and GRA Claim)  are Impaired under the Plan and the treatment of the Holders of Claims or Interests in Classes 1, 2, and 4, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

•    The treatment of Class 1 in the Plan, comprised of the secured claims of Wedbush Securities, Inc. ("<u>Custodian</u>") and Celadon Financial Group, LLC ("<u>Celadon</u>") (collectively, the "<u>Secured Parties</u>"), is as follows:

<u>OPTION A. Sale of Collateral.</u>

14

The Debtors shall instruct Celadon in writing to sell all securities serving as collateral to the Secured Parties on a "not held" basis according to a sale schedule set by the Debtors and Reorganized Debtors to be executed by Celadon on behalf of the Debtors and Reorganized Debtors on the earlier of: (i) 60 days from the entry of an order confirming the Plan; and (ii) October 27, 2025 (the "Sale Completion Date"). A not held order is a type of brokerage order where the Debtors give Celadon limited discretion over the timing and/or price of execution, rather than requiring immediate execution at the best available price. This allows Celadon to "work" the order, potentially getting a better price or filling the order at a more favorable time, but it also means the order might not be filled immediately or at the originally intended price. Celadon shall use reasonable diligence to ascertain the best market for the subject securities, and buy or sell in such market so that the resultant price to the Debtors is as favorable as possible under prevailing market conditions.

Allowance and Payment of Class 1 Claims. The Secured Parties shall have an Allowed Claim in the aggregate amount that shall not exceed $ 6,284,022.67 ("Option A Secured Parties Allowed Claim"), subject to the terms that govern the Debtors' obligations to the Secured Parties and  conditioned upon (i) the Celadon Parties Allowed Claim being paid in full as of  the Sale Completion Date; and (ii) no increase to the existing federal funds rate currently in effect prior to the Sale Completion Date.  The Option A Secured  Parties Allowed Claim includes (i) a $30,000 courtesy discount of accrued interest and legal fees asserted by the Secured  Parties against the Debtors' estates; (ii) a $14,111.25 charge reflecting Celadon's brokerage fee to liquidate the Debtors' securities; and (iii) a $10,000 contingency fee against unbilled margin interest which will be paid to the Debtors if not utilized. To the extent that the Debtors liquidate the securities that serve as the Secured Parties' collateral and pay off the Secured Parties prior to or after the Sale Completion Date, the Option A Secured  Parties Allowed Claim shall be adjusted in accordance with the terms that govern the Debtors' obligations to the Secured Parties.

- The treatment of Class 2 in the Plan, comprised of the secured claims of  the Royal Bank of Canada ("RBC"), is as follows:

RBC shall have an Allowed Claim in the amount of $6,130,000 (the "RBC Allowed Claim"), which includes a discount of at least

15

$7,500 from alleged interest and legal fees in the aggregate amount exceeding $137,500. The RBC Allowed Claim shall (a) be paid on the earlier of (i) 60 days from the entry of an order confirming the Plan, and (ii) October 27, 2025; or (b) receive such other treatment as RBC and the Debtors mutually agree in writing by the earlier of (i) 60 days from the entry of an order confirming the Plan, and (ii) October 27, 2025; provided, however, that such other treatment shall include the above referenced discount of at least $7,500 from the interest and legal fees owing to RBC. For the avoidance of doubt, if RBC and the Debtors do not mutually agree in writing on "such other treatment" in accordance with clause (b) above, then the Debtors shall be required to pay in full the RBC Allowed Claim as set forth above in clause (a).

- The treatment of Class 3 in the Plan, comprised of the claims of Jeannette Ivankovich is as follows:

  Any Allowed Class 3 Claim shall be satisfied in full by the Reorganized Debtors within fourteen (14) days of entry of a final order allowing any Class 3 Claim. Additionally, Drs. Anthony and Olga Ivankovich shall fund the Support Trust on behalf of the Debtors to advance reasonable and necessary expenses of their grandchildren, and any payments made by the Support Trust shall reduce the amount of any allowed Class 3 Claim.

- The treatment of Class 4 in the Plan, comprised of the claims of Allowed Unsecured Claims is as follows:

  Reorganized Debtors shall pay, respectively from each of their assets, the holder of an Allowed Class 4 Claim the full amount of any Allowed Class 4 Claim within fourteen (14) days of entry of a final order allowing any Class 4 Claim.

- The treatment of the Class 4 Allowed Unsecured Claims of Township Capital, LLC, Township GP Fund II, and Township Orlando LLC (collectively, the "Township Entities"), consistent with the Court approved settlement between the Debtors and the Township Entities (ECF Nos. 415 and 472) is as follows:

  The Township Entities shall have one claim for $11,363,554.80, against each of the Debtors' estates, jointly and severally. For the avoidance of doubt, the Township Entities are not entitled to multiple recoveries of the claim beyond $11,363,554.80 and any payments made on the Judgment Amount from any non-debtor

> shall reduce the amount of the claim. The claim can be fully satisfied by the Debtors making timely discounted payments aggregating no more than $8,500,000 as detailed in ECF Nos. 415 and 472.
>
> • The treatment of the Class 4 Allowed Unsecured Claim of GRA shall be consistent with the Fifth Plan Supplement.

iv.   _No Discrimination (11 U.S.C. § 1123(a)(4))_. Article V of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, which satisfies section 1123(a)(4) of the Bankruptcy Code.

v.   _Implementation of the Plan (11 U.S.C. § 1123(a)(5))_. Article VII of the Plan provides adequate means for the Plan's implementation, including, without limitation, funding for the Plan. Thus, the Plan provides adequate and proper means for its implementation, which satisfies section 1123(a)(5) of the Bankruptcy Code.

vi.   _Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))_. Section 1123(a)(6) of the Bankruptcy Code does not apply to the Plan because the Debtors do not propose to issue any equity securities under the Plan.

vii.   _Selection of Disbursement Agent (11 U.S.C. § 1123(a)(7))_. Pursuant to Article 7.11 of the Plan, which section was added in the Third Plan Supplement, the Debtors appoint Stuart A. Neiberg, a partner of CohnReznick Advisory LLC, who served as the Debtors' financial advisors in these Chapter 11 cases, as the Disbursement Agent for the Reorganized Debtors. The Disbursement Agent is tasked with completing payments of any Allowed Claims, once all disputes are resolved with finality, from the Disputed Claim Reserve that will be established upon confirmation of the Plan. As required by section 1123(a)(7) of the Bankruptcy Code, the Disbursement Agent has been selected in a manner consistent with the interests of creditors and with public policy.

viii.   _Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))_. As permitted by section 1123(b)(l) of the Bankruptcy Code, pursuant to Article IV of the Plan, the Claims in Class 1 (Celadon Financial Group LLC), Class 2 (Royal Bank of Canada), and Class 4 (The Township Claims and GRA Claim) are Impaired.

ix.   _Additional Plan Provisions (11 U.S.C. § 1123(b)(6))_. The additional provisions of the Plan are consistent with section 1123(b)(6) of the

Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.

S.    <u>Compliance with Bankruptcy Rule 3016</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).   The Plan Proponents appropriately filed the Disclosure Statement and the Plan, thereby satisfying Bankruptcy Rule 3016(b).

T.    <u>Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Order Approving Disclosure Statement thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

U.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan Proponents, as well as their officers, directors, employees, managers, financial advisors, attorneys, accountants, consultants, agents, and other representatives, as applicable, have proposed and solicited the Plan in good faith and not by any means forbidden by law, and have otherwise acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, thus satisfying the "good faith" requirement of section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, this Court has examined the circumstances surrounding the filing of the Chapter 11 Cases, the formulation of the Plan and the Plan Supplements, the record of the Hearing, and all pleadings, exhibits, statements, and comments regarding the confirmation of the Plan, and approval of the Plan by Holders of Class 1 (Celadon Financial Group LLC), Class 2 (Royal Bank

of Canada), and Class 4 (The Township Claims and P-5GRA Claim) that voted to accept the Plan.[5] Furthermore, the Plan proposes to pay all holders of allowed claims 100% of their allowed claim and provides the treatment solicited by each holder of an allowed claim with the exception of the Objecting Creditors. The Plan further provides significant safeguards with the appointment of a disbursing agent and two substantial disputed claim reserves further evidencing the Plan Proponents good faith in proposing the Plan.

      V.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtor in connection with the Chapter 11 Case satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

      W.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. Pursuant to section 1129(a)(5)(A)(i) of the Bankruptcy Code, the Plan Proponents disclosed the identity and affiliation of the proposed Disbursement Agent and all post-confirmation managers of the Reorganized Debtors, including Mark Brown, Nancy Webber, and Dr. Olga Ivankovich. Further, in accordance with section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the appointment of the Disbursement Agent is consistent with the interests of creditors and with public policy, as no objection to the appointment was received. The selection of the Disbursement Agent and post-confirmation management is consistent with the requirements of section 1129(a)(5) of the Bankruptcy Code and

---

[5] The Objecting Creditors challenged the Debtors' good faith on the basis that these bankruptcy cases were filed solely to interfere with the Illinois divorce proceedings of Steven Ivankovich and Jeanette Ivankovich. There is no doubt that rulings in the Illinois divorce proceeding precipitated these bankruptcy filings, but the Debtors had other creditors, whether or not disputed, whose interests are entitled to be protected, and were protected, by virtue of the filing of these bankruptcy cases.

public policy, and is in the best interests of creditors, and, therefore, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

X.    No Rate Changes (11 U.S.C. § 1 129(a)(6)). The Plan does not provide for the change of any rates subject to the oversight of a governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

Y.    Best Interests Test (11 U.S.C. § 1129(a)(7)). Based on the evidence presented, the Plan meets the requirements of section 1129(a)(7) of the Bankruptcy Code. The Plan is therefore (i) reasonable, persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Holders of Allowed Claims and Interests will receive or retain property of a value as of the Effective Date, that is not less than the amount that such Holder would have received if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Plan payments are equal to or in excess of those that would be available if the Debtors were liquidated pursuant to chapter 7 of the Bankruptcy Code, and, therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

Z.    Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8)). As evidenced by the Voting Declaration, Class 1 (Celadon Financial Group LLC), Class 2 (Royal Bank of Canada), and Class 4 (The Township Claims and P-5GRA Claim) have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. Classes 3, 5, 6, 7, and 8 are unimpaired and conclusively presumed to have accepted the Plan. Therefore, the Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code.

AA.    Treatment of Administrative, Priority, and Tax Claims (11 U.S.C. § 1129(a)(9)). The Plan provides for treatment of Allowed Claims entitled to priority pursuant to section

507(a)(2)-(8) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code. As applicable, such Claims will be satisfied by the Debtor in accordance with the terms of the Plan.  Accordingly, the Plan satisfies the requirements of, and complies in all respects with, applicable provisions in section 1129(a)(9) of the Bankruptcy Code.

BB.    <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. Pursuant to section 1129(a)(10) of the Bankruptcy Code, Class 1 (Celadon Financial Group LLC), Class 2 (Royal Bank of Canada), and Class 4 (The Township Claims and P-5GRA Claim) are Impaired and have voted to accept the Plan, and do not include acceptances by any insider (as such term is defined in section 101(31) of the Bankruptcy Code).  Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

CC.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan provides for sufficient Plan Funding to satisfy all Allowed Claims.  The Debtors have sufficient budgeted funds available to pay all Allowed Claims and expenses that are required to be paid on the Effective Date under the Plan and to pay any Allowed Claims post-conformation once those claims are adjudicated with finality. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

DD.    <u>Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))</u>. The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

EE.    <u>Non-Applicability of Certain Sections – (11 U.S.C. §§ 1129(a)(13), (14), and (15))</u>. Sections 1129(a)(13) – 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case, as the Debtors did not offer "retiree benefits," as the term is defined in the Bankruptcy Code, owes no domestic support obligations, is not a nonprofit, and is not an individual.

FF.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>. The Plan's

classification scheme is appropriate as similarly situated Holders of Claims and Interests receive

substantially similar treatment under the Plan and valid business, factual, and legal reasons exist

for the separate classification and treatment of the Claims or Interests across the various Classes

established under the Plan. Accordingly, the Plan does not discriminate unfairly and is fair and

equitable with respect to each Class, and the Plan complies with section 1129(b) of the Bankruptcy

Code and may be confirmed.

GG.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan, as supplemented, including,

without limitation, previous versions thereof as applicable, is the only chapter 11 plan filed in the

Chapter 11 Case. Accordingly, section 1129(c) of the Bankruptcy Code has been satisfied.

HH.    <u>Principal Purpose (11 U.S.C. § 1129(d))</u>. The avoidance of Section 5 of the

Securities Act of 1933 is not the principal purpose of the Plan, nor is the avoidance of taxes or any

provision of applicable tax law a principal purpose of the Plan. Therefore, the Plan satisfies the

requirements of section 1129(d) of the Bankruptcy Code.

II.    <u>Modifications of the Plan (11 U.S.C. § 1127)</u>. Modifications, as applicable, made

to the Plan since it was initially filed, including those contained in any of the Plan Supplements,

have complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule

3019. Any modifications to the Plan made after solicitation of the Plan or in this Confirmation

Order (including those modifications announced on the record of the Confirmation Hearing)

constitute technical or clarifying changes, changes with respect to particular claims by agreement

(including settlements) with holders of such claims, or such modifications do not materially and

adversely affect or change the treatment of any other claim under the Plan. In accordance with

Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125

of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code,

and they do not require that holders of claims or interests be afforded any further opportunity to

change previously cast acceptances or rejections of the Plan. Accordingly, the Plan is properly

before this Court, and all votes cast with respect to the Plan prior to such modification shall be

binding and shall apply with respect to the Plan.

JJ.  Satisfaction of Confirmation Requirements. The Plan satisfies the requirements for

confirmation set forth in section 1129 of the Bankruptcy Code.

KK.  Claims Reconciliation. After the Effective Date, the Reorganized Debtors shall

(i) have the sole authority to file, withdraw, or litigate to judgment, objections to all Claims and

(ii) have the authority to settle or compromise any disputed claim without any further notice to or

action, order, or approval by the Bankruptcy Court provided, however, that nothing herein affects

Dr. Anthony Ivankovich and Dr. Olga Ivankovich's standing or authority to object to claims with

respect to the adversary proceeding styled *Ivankovich Family LLC, et al. v. Jeanette Ivankovich,*

*et al.*, Adv. No. 24-01411-LMI. Provided further that nothing in this Confirmation Order will affect

this Court's previous Order on Motion to Abstain (ECF #53) in the adversary proceeding styled

*Ivankovich Family LLC, et al. v. Jeanette Ivankovich, et al.*, Adv. No. 24-01411-LMI.  No claims

shall be expunged or disallowed without notice to each affected creditor and an opportunity to be

heard.

LL.  Conditions to Confirmation.  Any and all conditions to confirmation set forth in the

Plan have been satisfied or waived in accordance with the terms of the Plan.

MM.    <u>Conditions to Effective Date</u>.  Each of the conditions to the Effective Date under the Plan is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

NN.    <u>Implementation</u>.  All documents necessary to implement the Plan have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

### **<u>ORDER</u>**

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.    <u>Findings of Fact and Conclusion of Law.</u> The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.    <u>Confirmation of the Plan</u>.  The Plan, including all exhibits and modifications thereto, including, without limitation, the Plan Supplements, are deemed amended by this Confirmation Order, if at all, is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan are an integral part of this Confirmation Order. The terms of the Plan and the Plan Supplements, and any exhibits, amendments, or annexations thereto (all of which are subject to further modifications, to the extent permitted by section 1127(b) of the Bankruptcy Code, and subject to the procedures set forth in section 1127(b) of the Bankruptcy Code, which modifications shall not be inconsistent with the Plan or this Confirmation Order), and any documents necessary in the judgment of the Plan Proponents to implement, effectuate, and finalize the Plan (which documents shall be consistent with the Plan and this Confirmation Order), whether or not specifically contemplated in the Plan, are approved, are an integral part of the Plan, and are incorporated by reference therein.

3.      <u>Solicitation and Tabulation of Votes</u>. To the extent applicable, the solicitation and tabulation of votes on the Plan complied with the Order Approving Disclosure Statement and applicable bankruptcy law, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.

4.      <u>Objections Resolved, Withdrawn, or Overruled</u>. All parties in interest have had a full and fair opportunity to litigate all issues raised, or which could have been raised, by the Objections. The Objections, and any other applicable objections, responses, and reservations of rights with respect to the Plan, not heretofore withdrawn or resolved, as set forth herein, or otherwise resolved at the Hearing as announced on the record, are overruled in their entirety or deemed withdrawn with prejudice.

5.      <u>Amendments, Modifications, or Alterations</u>. To the extent the Plan has been amended, modified, or supplemented subsequent to solicitation, including, without limitation, as modified herein, or through any of the Plan Supplements, such revisions do not materially and adversely affect the treatment of any Claims or Interests pursuant to the Plan and are otherwise consistent with the Plan, pursuant to Bankruptcy Rule 3019. Such revisions do not require additional disclosures under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

6.      <u>Plan Classification Controlling</u>. The classifications of Claims and Interests for purposes of Final Distributions under the Plan shall be governed solely by the terms of the Plan.

7.     <u>Authorization and Direction to Act</u>. In accordance with section 1142 of the

Bankruptcy Code and any other applicable Law of any jurisdiction, the Debtors and each other

appropriate entity are hereby authorized and directed to take all steps and perform such acts as

may be necessary, desirable, or appropriate to comply with, implement, and effectuate the Plan,

whether or not such action is specifically contemplated by the Plan or this Confirmation Order.

Pursuant to this Confirmation Order, the Plan Proponents are hereby authorized and empowered,

without action by their officers, managers, or members, as applicable, or further action by their

boards of directors, to take any and all actions as are consistent with the Plan, and as are reasonably

determined by any of their officers, managers, or members, as applicable, to be necessary or

appropriate to implement, effectuate, or consummate any and all instruments, documents, or

transactions contemplated by the Plan or this Confirmation Order.   Without further order or

authorization of this Court, the Plan Proponents are authorized to make all modifications to the

Plan and its related documents in accordance with the Plan, subject to the requirements of section

1127(b) of the Bankruptcy Code.  Execution versions of the Plan and its related documents, where

applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties

thereto, enforceable in accordance with their terms.   No further approval by this Court shall be

required for any action, transaction, or agreement that is necessary or appropriate to implement

and effectuate or consummate the Plan. This Confirmation Order shall further constitute all

approvals, consents, and directions required for the Disbursement Agent to act consistent with the

Plan, as well as the regulations of all states and any other governmental authority with respect to

the implementation or consummation of the Plan and any documents, instruments, or agreements,

and any other acts and transactions referred to in, or contemplated by, the Plan. Unless specifically

directed by this Confirmation Order or the Plan, no further action of the Plan Proponents shall be necessary to perform any act to comply with, implement, and effectuate the Plan.  The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Plan Proponents to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

8.      <u>Corporate Action</u>. Prior to, on, or after the Effective Date, as appropriate, all matters expressly provided for under Plan that would otherwise require approval of the officers, shareholders, directors, members, or managers, as applicable, of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporate or other applicable law of the jurisdictions in which the Debtors were formed or incorporated without any requirement of further action by such officers, shareholders, directors, members, or managers, as applicable, of the Debtors.

9.      <u>Liens Granted to Plan Funders.</u> Pursuant to Section 7.02 of the Plan, as modified in the Third Plan Supplement and the Fifth Plan Supplement, Dr. Olga Ivankovich and Dr. Anthony Ivankovich are granted a first position lien on all assets of the Reorganized Debtors, including all commercial tort claims in the amounts, and to the extent, that are respectively loaned to each Reorganized Debtor to pay the allowed claims against such entities, but expressly excluding: (i) all claims under Chapter 5 of the Bankruptcy Code,; and (ii) collateral securing the RBC Allowed Claim. Neither Dr. Olga Ivankovich or  Dr. Anthony Ivankovich is  required to record their liens granted pursuant to the Plan and this Confirmation Order, which liens are binding on all creditors of the Debtors' estates. Notwithstanding the foregoing, with respect to the replacement lien granted

to Jeanette Ivankovich pursuant to this Court's *Amended Order Granting Debtors' Use of Cash Collateral and Authorizing Payment of U.S. Trustee Fees and Township Settlement Payment* (ECF #643) any lien granted to Dr. Olga Ivankovich and Dr. Anthony Ivankovich shall be subordinate to such replacement lien.

10.    <u>Liens Granted to GRA.</u> Pursuant to the GRA Claim Settlement, as more fully set forth in the Fifth Plan Supplement, GRA is granted (i) the GRA Yacht Lien (as defined in the Fifth Plan Supplement) and (ii) cash proceeds from the sale of the Yacht, which is currently being marketed by International Yacht Corporation. To the extent GRA is unable to obtain all documents necessary or appropriate to fully perfect the GRA Yacht Lien prior to the Effective Date of the Plan, the Debtors shall provide GRA lien a replacement lien on cash or securities valued at no less than $5,000,000 until such time as the GRA Yacht Lien is fully perfected.

11.    <u>Binding Effect.</u> Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind: (a) the Plan Proponents; (b) all Professionals; (c) any and all non-Debtor parties to judicial or administrative proceedings in which the Debtor is a party; (d) any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns (irrespective of (i) whether such Claims or Interests are Impaired under the Plan, (ii) whether the Holders of such Claims or Interests accepted, rejected, or are deemed to have accepted or rejected the Plan, or (iii) whether such Claims or Interests have been asserted in a filed proof of Claim, proof of Interest, request for Administrative Claim, or other pleading or filing); (e) any and all non-Debtor parties to executory contracts with the Debtor; (f) any Entity that received or may be deemed to have received actual or constructive notice of the Plan and the

28

Hearing; and (g) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors, or assigns, if any, of any of the foregoing.  All settlements, compromises, releases, waivers, exculpations, and injunctions set forth in the Plan, the Plan Supplements, and this Confirmation Order shall be, and hereby are, effective and binding on all Persons and Entities who may have had standing to assert any settled, released, exculpated, or enjoined causes of action, and no other Person or Entity shall possess such standing to assert such causes of action after the Effective Date.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, and all documents related to the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to occurrence of the Effective Date and subject to the terms of the Plan, the Plan Supplements, and this Confirmation Order, all motions or request for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon the Reorganized Debtors.  **Notwithstanding the foregoing**, no provision of this Confirmation Order, including, without limitations, the Releases, the Exculpation Provisions, or the Injunctions set forth in the Plan, as modified herein, other than those provisions regarding payment to creditors and the assets used for those payments, may be used to limit or restrict the rights of Jeanette Ivankovich or Schiller Ducanto & Fleck, to pursue and obtain marital support (alimony), child support, and any claims of marital interests, including with respect to any entity in which the Debtors claim or may claim an interest except that any such claim against (a) the Plan Guarantors shall be second in priority to the first priority lien granted to Dr. Olga Ivankovich and Dr. Anthony Ivankovich pursuant to Section 7.02 of the Plan; and (b) the "Sunseeker" shall be second in priority

to the first priority ship mortgage in favor of P-5GRA, LLC, pursuant to Section 7.12 of the Plan. In addition, the Disputed Interests that are the subject of Counts II and VI of the Complaint filed by the Debtors, Dr. Anthony Ivankovich, and Dr. Olga Ivankovich against Defendants Steven Ivankovich, Jeanette Ivankovich, and Schiller Ducanto & Fleck, LLP in Adv. No. 24-1411-LMI filed before this Court, which disputes the Court abstained from adjudicating in its Order on Motion to Abstain from Adjudicating Counts II, IV, and VI of Plaintiffs' Adversary Complaint (Adv. Docket No. 53) are also not affected by the Releases, the Exculpation Provisions or the Injunctions set forth in the Plan as modified herein.

12.    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  In accordance with Section 6.01 of the Plan, except for those executory contracts that are rejected pursuant to the Plan, all executory contracts and unexpired leases of the Debtors shall be assumed pursuant to section 365 of the Bankruptcy Code.

13.    <u>Releases, Exculpations and Injunction</u>. The Releases, Exculpation Provisions, and Injunction contained in the Plan, including, without limitation, those set forth in Article IX of the Plan, as supplemented and modified in this Confirmation Order are hereby authorized and approved and shall be effective and binding on all Persons and Entities to the extent provided therein.  Such provisions were proposed in good faith, given for good and valuable consideration, and are essential to the Plan.

**a.    <u>Releases</u>.  On the Effective Date of this Plan, without the need for execution or delivery of any additional documentation or orders of the Bankruptcy Court, and in exchange for valuable consideration of under this Plan, Dr. Anthony Ivankovich and Dr. Olga Ivankovich ("<u>Released Parties</u>") will be fully and finally released and forever**

discharged from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, controversies, agreements, promises, damages, judgments, debts, encumbrances, liens, remedies, and demands, of every kind and nature whatsoever, in law or in equity, which could be brought or asserted by or on behalf of the Debtors against the Released Parties, including: (a) claims for the avoidance or recovery of any transfer made by any of the Debtors to or for the benefit of the Released Parties prior to the Effective Date; (b) claims for breach of fiduciary duty; (c) remedies seeking to hold the Released Parties liable for any of the Debtors' obligations under the theories of alter ego or pierce the corporate veil  (collectively, "<u>Released Claims</u>").  The Released Claims shall expressly exclude any obligations of the Released Parties pursuant to the Plan.  For the avoidance of all doubt, the aforementioned Released Claims expressly exclude any independent claims that a non-debtor can assert against any Released Party ("<u>Independent Claims</u>"), including the existing judgments by the Township Entities under the settlement agreement approved by the Court. Notwithstanding the foregoing,  and for the avoidance of doubt, the Releases provided in the Plan as modified herein shall not in any way impact any claims of Jeanette Ivankovich and Schiller Ducanto & Fleck, LLP (the "<u>Jeanette Independent Claims</u>"), except as set forth in Paragraph 11 of this Confirmation Order.  In addition, the Disputed Interests that are the subject of Counts II and VI of the Complaint filed by the Debtors, Dr. Anthony Ivankovich, and Dr. Olga Ivankovich against Defendants Steven Ivankovich, Jeanette Ivankovich,  and Schiller Ducanto & Fleck, LLP in Adv. No. 24-1411-LMI filed before this Court, which disputes the Court abstained from adjudicating in its Order on Motion to Abstain from Adjudicating Counts II, IV, and VI of Plaintiffs'

31

**Adversary Complaint (Adv. Docket No. 53) with respect to any Released Party are also not released pursuant to this Order.**

**b.    Exculpation.    Except as specifically provided in the Plan and expressly excepting out Steven Ivankovich, neither the Debtors, nor their employees, retained professionals, members, advisors, attorneys, accountants, or financial advisors (the "Exculpated Parties"), shall have or incur, any claim, obligation, cause of action or liability to one another or to any holder of a claim or interest, or any other party in interest, or any of their respective officers, directors, shareholders, members, employees, representatives, advisors, attorneys, accountants, financial advisors, or agents, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases from the Petition Date through the Effective Date of this Plan, including: (i) the negotiation and pursuit of confirmation of this Plan, (ii) the consummation of this Plan, (iii) the administration of this Plan, or (iv) the property to be distributed under the Plan, except for their gross negligence, willful misconduct, or actual fraud, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan. Notwithstanding the foregoing, and for the avoidance of doubt, the Exculpation provisions do not apply to Steven Ivankovich and do not impact the Jeanette Independent Claims except as set forth in Paragraph 11 of this Confirmation Order.**

**c.    Injunction. Except as otherwise specifically provided in the Plan or this Confirmation Order, all entities and persons, and any successor, assigns or representatives of such entities and persons (the "Enjoined Parties"), who: (i) have filed a proof of claim or proof of interest against any of the Debtors; or (ii) held, hold, or may hold claims, rights,**

causes of action, liabilities, equity interests, or any other interests against any of the Debtors, any act or omission, transaction, or other activity of any kind or nature related to the Debtors, Debtors in Possession, or the Chapter 11 Cases that occurred prior to the Effective Date (the "Enjoined Claims"), regardless of the filing, lack of filing, allowance or disallowance of such claim or interest, and regardless of whether such entity or person has voted to accept the Plan, shall be precluded and permanently enjoined on and after the Effective Date from: (a) the commencement or continuation in any manner of any claim, action or other proceeding of any kind with respect to any Enjoined Claim, against (i) any assets of the Debtors, (ii) any assets re-vested in the Reorganized Debtors, (iii) the Debtors, Reorganized Debtors, the Released Parties, or the Exculpated Parties (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order with respect to any Enjoined Claim, against (i) any assets of the Debtors, (ii) any assets re-vested in the Reorganized Debtors, (iii) the Debtors, Reorganized Debtors, the Released Parties, or the Exculpated Parties; (c) the creation, perfection, or enforcement of any encumbrance or lien of any kind with respect to any Enjoined Claim, against (i) any assets of the Debtors, (ii) any assets re-vested in the Reorganized Debtors, (iii) the Debtors, Reorganized Debtors, the Released Parties, or the Exculpated Parties; (d) taking any action whatsoever with respect to any Enjoined Claim against (i) any assets of the Debtors, (ii) any assets re-vested in the Reorganized Debtors, (iii) the Debtors, Reorganized Debtors, the Released Parties, or the Exculpated Parties; and (e) continued enforcement of any injunction or similar relief entered prior to the Effective Date related to an Enjoined Claim against (i) any assets of the Debtors, (ii) any assets re-vested in the Reorganized Debtors, or (iii) the

**Debtors, Reorganized Debtors, the Released Parties, or the Exculpated Parties. Notwithstanding the foregoing, and for the avoidance of doubt, the Plan Injunction does not enjoin: (a) Township Entities from enforcement of any rights under their existing judgments under the settlement agreement approved by the Court; (b) any parties from initiating or continuing any claims against Steven Ivankovich; and (c) any Jeanette Independent Claims except as set forth in Paragraph 11 of this Confirmation Order.**

14.     <u>Disputed Claim Reserves</u>. The Debtors and P2 Portfolio Managing Member, LLC, pursuant to the Plan, are authorized and directed to create two disputed claim reserves as follows: (i) a disputed claim reserve for the benefit of Jeanette Ivankovich and Schiller Ducanto & Fleck, LLP identified as the "Jeanette/Schiller Disputed Claim Reserve"; and (ii) a disputed claim reserve for P5-GRA, LLC identified as the "P-5 GRA Disputed Claim Reserve." Upon the Effective Date, the Reorganized Debtors shall provide the Disbursing Agent with sole authority to withdraw any funds from the P2 Portfolio Managing Member, LLC Celadon Account ending in 1443, all accounts at Debtor Ivankovich Family, LLC, and all accounts at Debtor A&O Family, LLC (IL) (or any substitute accounts opened with the approval of the Court by the Disbursing Agent to retain the securities or deposits in the aforementioned accounts) to fund any Allowed Claim granted in favor of Jeanette Ivankovich or Schiller Ducanto & Fleck, LLP. In addition, upon the Effective Date, the Debtors shall grant a first priority lien and ship mortgage against that certain 2023 Sunseeker Yacht flagged in Jamaica under the name "Contessa" and having official number JMP24104 (the "GRA Yacht Lien"), together with all engines, machinery, sails, masts, rigging, towers, boats, anchors, cables, chains, tackle, apparel, furniture, fittings, tools, pumps, radar, radios, electronic instruments and equipment, other equipment and supplies, fishing gear and

equipment, and all other appurtenances, attachments and accessories, and all additions, improvements and replacements now or hereafter used in or on or belonging to the Yacht, whether or not removed from the Yacht, all of which shall be deemed to be included in the term "Yacht", all insurance claims and proceeds and return of unearned premiums, all monies and claims for monies which may be payable due to the actual, constructive, agreed, arranged or compromised total loss of the Yacht, or due to the requisition for title or use, seizure, condemnation, confiscation, sequestration or compulsory acquisition or other interference with Yacht Daddy LLC's ownership or use of the Yacht by act of any country or of any governmental authority or otherwise, all freights, charter hire or other earnings, revenue or profits of the Yacht, all claims for damages or compensation with respect to the Yacht (the "Yacht"), and owned by Yacht Daddy LLC, and (ii) cash proceeds from the sale of the Yacht, which is currently being marketed by International Yacht Corporation. To the extent GRA is unable to obtain all documents necessary or appropriate to fully perfect the GRA Yacht Lien prior to the Effective Date of the Plan, the Debtors shall provide GRA lien a replacement lien on cash or securities valued at no less than $5,000,000 until such time as the GRA Yacht Lien is fully perfected. For the avoidance of doubt, the Debtors shall maintain cash or securities valued at no less than $5,000,000 under the sole possession and control of the Escrow Agent until the GRA Yacht Lien is fully perfected.  The GRA Disputed Claim Reserve Escrow Agent (as defined in the Fifth Plan Supplement) shall continue to hold the GRA Yacht Lien, or its cash proceeds of not less than the GRA Reserve Amount (as defined in the Fifth Plan Supplement), until the GRA Overlook Interest Dispute (as defined in the Fifth Plan Supplement) is settled between the parties and they issue mutual written instructions or a court of competent jurisdiction fully adjudicates the GRA Overlook Interest Dispute and issues an order thereon that is a final

order which fully and finally resolves the GRA Overlook Interest Dispute, in which case the GRA Disputed Claim Reserve Escrow Agent shall disburse cash from the P-5 GRA Disputed Claim Reserve in an amount to satisfy payment to GRA of its remaining GRA Overlook Interest consistent with the Overlook LLCA (as defined in the Fifth Plan Supplement) and any operating agreements of its subsidiaries or affiliates. The Disbursing Agent shall be subject to this Court's supervision and shall provide semi-annual reporting as to the funds held in the Jeanette/Schiller Disputed Claim Reserve and the P5-GRA Disputed Claim Reserve. Within two (2) business days of a final adjudication of all disputed claims alleged by Jeanette Ivankovich and Schiller Ducanto & Fleck, LLP against the Debtors, the Disbursing Agent shall be authorized to disburse to A&O Family, LLC (FL) any surplus assets remaining in the Jeanette/Schiller Disputed Claim Reserve and otherwise close any accounts holding the Jeanette/Schiller Disputed Claim Reserve. Within two (2) business days of a final adjudication of all disputed obligations P5GRA, LLC asserts against the Plan Guarantors, the Disbursing Agent shall be authorized to disburse to A&O Family, LLC (FL) any surplus assets remaining in the P5-GRA Disputed Claim Reserve and otherwise close any accounts opened to hold the P5-GRA Disputed Claim Reserve.

15.      <u>References to Provisions of the Plan</u>. The failure to specifically include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be confirmed in its entirety, and such provisions shall have the same binding effect, enforceability, and legality as every other provision of the Plan. Each term and provision of the Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

16.     <u>Conditions to Effectiveness.</u> The Plan shall not become effective unless the conditions set forth in the Plan have been satisfied or waived.

17.     <u>Administrative Claims and Professional Fees</u>. All Administrative Claims and Professional Claims shall be asserted in accordance with Article III of the Plan and all allowed Administrative Claims of the Debtors shall be funded by the Reorganized Debtors on the Effective Date of the Plan.

18.     <u>Modifications</u>.  Any modifications made to the Plan after the Confirmation Date shall be made in accordance with the Bankruptcy Code.

19.     <u>Choice of Law</u>. Choice of law for this Confirmation Order shall be consistent with Section 14.3 of the Plan.

20.     <u>Effect of Non-Occurrence of Conditions to the Effective Date.</u> Notwithstanding the entry of this Confirmation Order, if the Effective Date of the Plan does not occur with regard to any of the Debtors, the Plan and Plan Supplements, as applicable, shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or Plan Supplements, as applicable, shall: (a) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

21.     <u>Injunctions and Automatic Stay.</u> Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 362 or 105 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation

Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

22.    <u>Waiver or Estoppel.</u> Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument concerning such Claim or Interest, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated, by virtue of an agreement made with the Debtors or their counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed before the Hearing. For the avoidance of doubt, nothing in this section shall bar a creditor from enforcing any of its rights or remedies contained in any written agreement with the Debtors or the Reorganized Debtors that is entered into after the Confirmation Date.

23.    <u>Treatment is in Full Satisfaction.</u> All distributions under the Plan shall be made in accordance with the Plan and the Plan Supplements. The treatment set forth in the Plan and Plan Supplements is in full satisfaction of the legal, contractual and equitable rights (including any liens) that each entity holding a Claim or Interest may have in or against the Debtors, the estates, or their respective property. This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtors, the estates, or their respective property.

24.    <u>Notice of Effective Date.</u> A Notice of Effective Date will be filed and served in these cases.

25.    <u>Retention of Jurisdiction</u>. Upon the Effective Date, this Court shall retain jurisdiction over:

a.  the classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting and the determination of such objections as may be filed against creditor's claims;

b.  the allowance of any claim against the Debtors or Reorganized Debtors;

c.  the determination of all questions and disputes regarding title to the assets of the estates and the determination of all causes of action, controversies, disputes or conflicts whether or not subject to action pending as of the date of confirmation between the Debtors and any other party including but not limited to any rights of parties in interest to recover assets pursuant to the provisions of Title 11 of the United States Code;

d.  the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan;

e.  the modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code;

f.  the enforcement and interpretation of the terms and conditions of this Plan, including the enforcement of any settlements, and terms thereof, effectuated through the Plan, the Plan Supplements, and/or the Confirmation Order;

g.  the issuance of any injunctions, and the entry and implementation of other orders, and taking such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation, implementation, or enforcement of the Plan, the Plan Supplements, the Confirmation Order, or any other order of the Bankruptcy Court;

h.  the adjudication of all adversary proceedings pending as of the Effective Date of the Plan;

i.  the entry of an Order including injunctions necessary to enforce the title rights and powers of parties in interest and to impose such limitations, restrictions, terms and conditions of such title rights and powers as this Court may deem necessary, including hearing, adjudicating, deciding, or resolving any and all matters related to Article IX of the Plan, including, without limitation, the Releases, the Exculpation Provisions, and the Injunction issue thereunder;

j.  the entry of an order concluding and terminating this case;

k.  the interpretation and enforcement of the Releases, Exculpations, and Injunction contained in this Order;

l.   all post-confirmation claims asserted by the Reorganized Debtors as necessary to implement the Plan;

m.  all requests for any disbursements from the Disputed Claim Reserves;

n.   the discharge of the Disbursing Agent under the terms of the Plan.

26.   <u>Reorganized Debtors Retention of Claims</u>.  Subsequent to the Effective Date of the Plan, all claims that the Debtors possessed against  any party shall be expressly vested and retained by the Reorganized Debtors, including: (i) all claims under Chapter 5 of title 11, which the Debtors specifically chose not to advance; (ii) any derivative claim asserting a breach of any fiduciary duty; and (iii) any other claim that the Debtors' bankruptcy estate could assert prior to the Effective Date of the Plan.

27.   <u>Waiver of Stay</u>. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof. The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), 6006(d) and 7062), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective immediately upon its entry by this Court.

28.   <u>Vacatur of Order</u>. If this Confirmation Order is vacated or deemed vacated, or the Effective Date does not occur, then the Plan shall be deemed null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Interests in the Debtors, (b) prejudice in any manner the rights of the Holder of any Claim against, or Interest in, the Debtors, (c) prejudice in any manner any right, remedy, or claim of the Debtors, or (d) be deemed an admission against interest by the Debtors or any other Person or Entity.

Case Nos. 24-15755-LMI
24-15762-LMI
24-15767-LMI
24-15770-LMI
(Jointly Administered)

29.    <u>Confirmation Order Controlling</u>. To the extent that any provisions of this Confirmation Order conflict with, or are in any way inconsistent with, any provisions of the Plan, this Confirmation Order shall govern and control.

30.    <u>Severability of Plan Provisions</u>. Each term and provision of the Plan, as it may have been amended by this Confirmation Order, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Plan Proponents' consent; and (c) non-severable and mutually dependent.

# # #

<u>Copy furnished to:</u>
**AKERMAN LLP**
Eyal Berger, Esq.
Florida Bar No.: 011069
Email: eyal.berger@akerman.com
201 East Las Olas Blvd., Suite 1800
Fort Lauderdale, FL 33301
Tel: 954-463-2700
Fax: 954-463-2224

*(Attorney Berger shall serve copies of this order upon all interested parties and file a certificate of service.)*