**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case Nos.: 24-15755-LMI |
| IVANKOVICH FAMILY LLC, | 24-15762-LMI |
| A&O FAMILY LLC, | 24-15767-LMI |
| A & O FAMILY LLC, | 24-15770-LMI |
| ATLAS P2 MANAGING MEMBER, LLC,[1] |  |
|  | (Jointly Administered) |
| Reorganized Debtors. |  |

**REORGANIZED DEBTORS' MOTION FOR ENTRY OF
AN ORDER AUTHORIZING THE REORGANIZED DEBTORS
TO DISBURSE FUNDS FROM THE DISPUTED CLAIM RESERVE
TO SATISFY THE REMAINING JEANETTE AND SCHILLER CLAIMS**

The above-captioned reorganized debtors (the "**Reorganized Debtors**")[2], by and through their undersigned counsel, hereby file this motion for entry of an order authorizing, but not directing, the Reorganized Debtors to disburse funds from the Disputed Claim Reserve to satisfy the Remaining Jeanette and Schiller Claims (each as defined below) (this "**Motion**"). By this Motion, the Reorganized Debtors also request authority for Stuart A. Neiberg, who was appointed as the disbursing agent (the "**Disbursing Agent**") of the disputed claim reserve (the "**Disputed Claim Reserve**") for the benefit of Jeanette Ivankovich ("**Jeanette**") and Schiller DuCanto & Fleck, LLP ("**Schiller**"), to effectuate the disbursement of the Loan (as defined herein) to Steven Ivankovich ("**Steven**"), who shall use the Loan solely to pay Jeanette and Schiller in full

---

[1] The last four digits of each of the Debtor's and Reorganized Debtor's EIN are as follows: Ivankovich Family, LLC (4590), A&O Family, LLC, a Florida limited liability company (6789), A&O Family, LLC, an Illinois limited liability company (6865), and Atlas P2 Managing Member, LLC (8311).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Confirmation Order (each as defined herein), as applicable.

84530340;4

satisfaction of the Remaining Jeanette and Schiller Claims (as defined herein). In support of this Motion, the Reorganized Debtors respectfully state as follows:

## BACKGROUND

1. Prior to the Petition Date (as defined below), Jeanette and Steven commenced a divorce proceeding in the Illinois Domestic Relations Court (the "**Divorce Proceeding**"), in the Circuit Court of Cook County, Illinois (the "**Illinois Divorce Court**"), styled as *In re: Marriage of Jeanette Ivankovich and Steven Ivankovich*, and filed under Case No. 2021D9220.

2. On November 6, 2023, the Illinois Divorce Court entered an order (the "**Temporary Support Order**") finding that Steven shall pay Jeanette child support and temporary maintenance, and awarding Jeanette over $500,000 in retroactive support. *See* Temporary Support Order at 1-2. The Illinois Divorce Court ruling did not determine ownership rights regarding any of the Debtor entities and only required that Steven make certain payment based on his "access to assets." *Id.*

3. On March 12, 2024, the Illinois Divorce Court entered a *Preliminary Injunction on the Petition for TRO and Ex Parte Supplement* (the "**Preliminary Injunction**"), granting injunctive relief against the Debtors and P2 Portfolio. The Preliminary Injunction, among other things, directed payment of $425,000 in attorneys' fees and experts' fees to Jeanette's attorneys in the Divorce Proceeding that had been awarded by a May 18, 2023 interim fee award order in the Illinois Divorce Court.

4. On June 10, 2024 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") before this Court. The Plan went effective on October 1, 2025, and the Debtors became the Reorganized Debtors.

5. On June 27, 2025, the Reorganized Debtors filed their *Amended Complaint for Objection to Claims and Interests of Jeanette Ivankovich and Schiller, DuCanto & Fleck LLP and Declaratory Relief* (Adv. Docket No. 86) in the adversary case against Jeanette and Schiller (the "**Adversary Proceeding**"), seeking, among other things, to disallow and expunge the proofs of claim and proofs of interest[3] filed by Jeanette and the proofs of claim filed by Schiller.

6. On September 16, 2025, this Court entered the Confirmation Order, and on October 1, 2025, the Plan went effective (the "**Effective Date**"). Pursuant to the *Order Confirming Debtors' Amended Joint Plan of Reorganization* (Docket No. 652) (the "**Confirmation Order**"), which confirmed the *Debtors' Amended Joint Plan of Reorganization*, dated March 20, 2025 (Docket No. 290) (as supplemented, the "**Plan**"), the Disputed Claim Reserve was established as of the Effective Date. By the terms of the Plan, the Disbursing Agent is tasked with, among other things, completing payments of any Allowed Claims, once all disputes are resolved with finality, from the Disputed Claim Reserve. Specifically, paragraph 14 of the Confirmation Order provides in relevant part as follows:

> The Debtors and P2 Portfolio Managing Member, LLC, pursuant to the Plan, are authorized and directed to create . . . disputed claim reserves as follows: (i) a disputed claim reserve for the benefit of Jeanette Ivankovich and Schiller Ducanto & Fleck, LLP identified as the "Jeanette/Schiller Disputed Claim Reserve" . . . . Upon the Effective Date, the Reorganized Debtors shall provide the Disbursing Agent with sole authority to withdraw any funds from the P2 Portfolio Managing Member, LLC Celadon Account ending in 1443, all accounts at Debtor Ivankovich Family, LLC, and all accounts at Debtor A&O Family, LLC (IL) (or any substitute accounts opened with the approval of the Court by the Disbursing Agent to retain the securities or deposits in the aforementioned accounts) to fund any Allowed Claim granted in favor of Jeanette Ivankovich or Schiller Ducanto & Fleck, LLP . . . . Within two (2) business days of a final adjudication of all disputed claims alleged by Jeanette Ivankovich and Schiller Ducanto & Fleck, LLP against the Debtors, the Disbursing Agent shall be authorized to disburse to A&O Family, LLC (FL) any surplus assets remaining in the Jeanette/Schiller Disputed Claim Reserve

---

[3] The Court has abstained from adjudicating Jeanette's asserted Proofs of Interest against any of the Debtors by separate order (Adv. Docket No. 53).

and otherwise close any accounts holding the Jeanette/Schiller Disputed Claim Reserve.

Confirmation Order, ¶ 14.

7.     On October 16, 2025, the Reorganized Debtors filed their *Joint Motion for Partial Summary Judgment* in the Adversary Proceeding (Adv. Docket No. 111) (the "**MSJ**"), requesting, among other things, that the Court disallow and expunge Jeanette's amended claims that are duplicative and include legal fees that have not been awarded by the Illinois Divorce Court.

8.     On November 20, 2025, the Court held a hearing on the MSJ (the "**Hearing**"), during which it granted in part and denied in part the relief request in the MSJ.  In particular, the Court held that (i) the claims filed by Jeanette, which consisted of Proofs of Claim numbers 5-1, 5-2, 5-3, and 6-2 asserted against Ivankovich Family; Proof of Claim number 7-1 asserted against A&O Family (FL); Proof of Claim number 5-1 asserted against A&O Family (IL); and Proof of Claim number 6-1 asserted against Atlas P2 (collectively, the "**Filed Jeanette Claims**") and (ii) the claims filed by Schiller, which consisted of Proof of Claim number 7-1 asserted against Ivankovich Family; Proof of Claim number 9-1 asserted against A&O Family (FL); Proof of Claim number 7-1 asserted against A&O Family (IL); and Proof of Claim number 9-1 asserted against Atlas P2 (collectively, the "**Filed Schiller Claims**"), were duplicative and should be disallowed and expunged except for (i) one (1) consolidated proof of claim in favor of Jeanette for unpaid principal of $992,311.00 and interest of $135,906.67 accruing through September 30, 2025 (the "**Remaining Jeanette Claim**")[4] and (ii) one (1) proof of claim in favor of Schiller in the amount of $425,000, for the legal fees actually adjudicated by the Illinois Divorce Court

---

[4]    The amount of the Remaining Jeanette Claim was represented by Jeanette to be the amount remaining with the exception of any per diem interest on the support claims.

(the "**Remaining Schiller Claim**" and, together with the Remaining Jeanette Claim, the "**Remaining Jeanette and Schiller Claims**").

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

10. Venue is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

**I. The Debtors Should Be Permitted to Satisfy the Remaining Jeanette and Schiller Claims from the Disputed Claim Reserve**

11. In order to satisfy the Remaining Jeanette and Schiller Claims in the most time-efficient manner, the Reorganized Debtors request entry of an order, pursuant to sections 1142(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), section 7.12 of the Plan, and paragraph 14 of the Confirmation Order, authorizing, but not directing, the Reorganized Debtors to satisfy the Remaining Jeanette and Schiller Claims from the Disputed Claim Reserve and for the Disbursing Agent to effectuate this disbursement by loaning funds to Steven, who shall then use the disbursed funds solely to satisfy the Remaining Jeanette and Schiller Claims (the "**Loan**"). The Reorganized Debtors and all relevant parties necessary to effectuate the Loan (collectively, the "**Loan Parties**") shall execute a *Memorandum of Understanding* substantially in the form attached hereto as **Exhibit A**, which sets forth the terms of the Loan (the "**MOU**")[5] that binds the Loan Parties to performing under this Motion in the event it is approved by the Court.

12. Under sections 1142(b) and 105(a) of the Bankruptcy Code, the Court has broad authority to issue any order necessary to implement the provisions of the Bankruptcy Code and

---

[5] The Reorganized Debtors will file the fully-executed MOU prior to any hearing on the Motion.

the Plan.  *See* 11 U.S.C. §§ 1142(b), 105(a).  The purpose of section 1142(b) of the Bankruptcy Code is to provide the Court with broad jurisdiction to implement the terms of a confirmed Plan.  *See United States Trustee v. Gryphon*, 166 F.3d 552, 556 (3d Cir. 1999).  In addition, under Article X of the Plan, the Court expressly retained jurisdiction to "insure that the purpose and intent of the Plan are carried out" by hearing and determining: (i) "the allowance of any claim against the Debtors or Reorganized Debtors" and (ii) "the enforcement and interpretation of the terms and conditions of this Plan."  Plan, Art. X, 10.2.  Pursuant to the Confirmation Order, "all requests for any disbursements from the Disputed Claim Reserves" shall be subject to this Court's jurisdiction.  Confirmation Order, ¶ 25(m).  Finally, the Plan and Confirmation Order established the Disputed Claim Reserve for the benefit of Jeanette and Schiller, the very purpose for which the Reorganized Debtors seek to utilize the Disputed Claim Reserve.

13. Accordingly, the Reorganized Debtors should be authorized to satisfy, through the Loan, the Remaining Jeanette and Schiller Claims from the Disputed Claim Reserve, which was implemented pursuant to the confirmed Plan for this very purpose.  In addition, the Disbursing Agent should be authorized to disburse the funds from the Disputed Claim Reserve because the Plan and Confirmation Order permit the Disbursing Agent to make distributions such as this requested distribution.  To date, no distributions have been made from the Disputed Claim Reserve and the amount remaining in the Disputed Claim Reserve is greater than the amount necessary to satisfy the Remaining Jeanette and Schiller Claims.  If the relief requested by this Motion were not granted, the Reorganized Debtors will continue to incur substantial, additional litigation expenses associated with the Remaining Jeanette and Schiller Claims disproportionate to the amount of the Remaining Jeanette and Schiller Claims.  Accordingly, the Court should grant the Motion and

authorize the Disbursing Agent to make the disbursement and fund the Loan to satisfy in full the Remaining Jeanette and Schiller Claims.

**II. Illinois Law Mandates that Payment of the Remaining Jeanette and Schiller Claims Is Subject to Setoff, Recoupment, and Refund of Any Overpayment**

14. Under Illinois state law, any overpayment of temporary support or legal fees, as determined upon final judgment in a divorce case, is subject to setoff, recoupment, and/or refund at the end of the case. As the Illinois Appellate Court explained in *In re Marriage of Hochstatter*, Section 501 operates as a stopgap while the case is pending, and at final judgment, the court sets the legally correct support amount retroactive to the petition. *See* 2020 IL App (3d) 190132, ¶¶ 16–18. This means that the payor may be credited for any overpayment, and if temporary payments exceed the final obligation, reimbursement can be ordered. What is more, by statute the Illinois Marriage and Dissolution of Marriage Act sets forth that interim fee awards are without prejudice and that "[a]ny portion of any interim award constituting an overpayment shall be remitted back to the appropriate party or parties . . . ." after an evidentiary reasonableness hearing at final judgment. 750 ILCS 5/501.

15. In fact, when entering its Temporary Support Order, the Illinois Divorce Court *expressly* reserved the accounting of credits spanning October 25, 2021 through October 31, 2023, ordering that "Steven shall be given credit for all rent payments made by him or on behalf of him and credit card payments ($5,000) per month and utility payments" for that period. That reservation appears in the Temporary Support Order and is reaffirmed in the Illinois Divorce Court's February 27, 2024 order.

16. Therefore, this Court should order that disbursement from the Disputed Claim Reserve in satisfaction of the Remaining Jeanette and Schiller Claims shall be subject to setoff,

recoupment, and refund, and preserve such rights on behalf of Steven and the Ivankovichs, to the extent there is any overpayment as determined by the Illinois Divorce Court.

### III. After the Remaining Jeanette and Schiller Claims Are Paid, the Surplus of the Disputed Claim Reserve Shall Be Used to Fund Remaining Plan Obligations In Accordance with the Confirmed Plan

17. Once there is a final adjudication of the disputed claims alleged by Jeanette and Schiller, i.e. the requested satisfaction of the Remaining Jeanette and Schiller Claims, the confirmed Plan directs that within two business days the "Disbursing Agent shall be authorized to disburse to A&O Family, LLC (FL) any surplus assets remaining in the Jeanette/Schiller Disputed Claim Reserve and otherwise close any accounts holding the Jeanette/Schiller Disputed Claim Reserve." Plan, *Third Supplement to Debtors' Amended Joint Plan of Reorganization*, Doc. No. 553 at 5–6; Confirmation Order, ¶ 15.

18. What is more, at the Hearing this Court acknowledged that the Disputed Claim Reserve "is [only] for the claims in this estate" "so it's not going to apply to any additional fee awards, because I've just ruled that those are not allowed claims in this estate, the additional fee awards." Hearing Tr., 76:13–15, 78:9–13.

19. Accordingly, once the Reorganized Debtors satisfy the Remaining Jeanette and Schiller Claims from the Disputed Claim Reserve, the Disputed Claim Reserve may be closed and the surplus shall be disbursed to A&O Family, LLC (FL) to fund any remaining Plan obligations. After the surplus is disbursed in accordance with the Plan, A&O Family, LLC (FL) shall be authorized, but not directed, to fund certain remaining Plan obligations, including but not limited to: (i) the remaining settlement payment in the amount of $4,000,000 payable on or before December 23, 2027 plus interest at 5% from June 23, 2025, in the amount of $500,000, to Township Capital, LLC, Township GP Fund II, and Township Orlando LLC (collectively,

the "**Township Entities**") pursuant to the *Order Granting Motion to Approve Compromise of Controversy with Township Entities* (Docket No. 472); (ii) any remaining amounts owed to P-5 GRA, LLC ("**P-5 GRA**"); (iii) additional post-confirmation accruing administrative claims owed to the Disbursing Agent, Akerman LLP, as counsel to the Reorganized Debtors, and the Reorganized Debtors' accountant; and (iv) any other amounts reasonably necessary to fund insurance, taxes, and final renovations of P-5 GRA.

20. Jeanette and Schiller did not appeal entry of the Confirmation Order that established the Disputed Claim Reserve—and its use, and they are thus bound by the terms of the Confirmation Order that provide for the use of the Disputed Claim Reserve for this purpose, and for disbursement of the surplus to A&O Family, LLC (FL).

### IV. An Ownership Determination of the Celadon Accounts Is Moot

21. Once payment from the Disputed Claim Reserve has been effectuated, and satisfies in full the Remaining Jeanette and Schiller Claims, a determination regarding the ownership of the Debtors' investment accounts at Celadon Financial Group (the "**Celadon Accounts**") is rendered moot. Not only is the issue of ownership of the Celadon Accounts moot once the Remaining Jeanette and Schiller Claims are satisfied, but a determination regarding whether the funds in the Celadon Accounts are marital assets is something that this Court repeatedly stated at the Hearing that it was without jurisdiction to decide.[6] The Confirmation Order that confirmed the Plan is a final order, to which Jeanette did not object or appeal, which expressly directs the use of funds in the Celadon Accounts. In this way, regardless of ownership, the use of the Celadon Accounts is

---

[6] "Me and marital assets had a divorce a year ago", Hearing Tr., 36:12–13; "Now all of a sudden you're bringing the marital assets back in. That is not the basis of any relief for—in terms of jurisdiction that I retained", Hearing Tr., 36:18–19; "So I just want to make very clear, marital assets is a bad word in this court. You can— it's a good word in Illinois, not good here", Hearing Tr., 37:7–9; "Marital asset is not allowed", Hearing Tr., 43:20–21.

restricted to the terms of the Confirmation Order. Finally, the issue of the ownership of the Reorganized Debtors is already before the Illinois Divorce Court rendering any additional adjudication of the ownership of the Celadon Accounts or any assets therein an unnecessary exercise. The Reorganized Debtors intend to file a separate motion in the Adversary Proceeding seeking to dismiss Count Five of the Amended Complaint regarding the Celadon Accounts as moot.[7]

## WAIVER OF BANKRUPTCY RULE 6004(H)

22.     Given the nature of the relief requested herein, the Reorganized Debtors respectfully request a waiver of any stay of the effectiveness of the order granting this Motion, to the extent that it applies to the relief requested in this Motion. Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The relief requested herein is essential to carrying out the terms of the confirmed Plan and reducing expenses of the estate by minimizing the accrued interest owed on account of the Remaining Jeanette and Schiller Claims. Accordingly, the Reorganized Debtors submit that, to the extent that Federal Rule of Bankruptcy Procedure 6004(h) applies, ample cause exists to justify a waiver of the fourteen-day stay.

**WHEREFORE**, the Reorganized Debtors respectfully request that the Court enter an order (i) authorizing, but not directing, (a) the Reorganized Debtors to satisfy the Remaining

---

[7] In the event that ownership of the Celadon Accounts is not rendered moot, Jeanette's marital property interest, as a marital obligation and not a contractual obligation, is a derivative claim—not a direct claim—against the Debtors, and is thus subordinate to Steven and the Debtors' entire creditor body that hold direct claims against the Debtors, such as the Township Entities. In this way, Jeanette's derivative claims against the Debtors would be subordinate to direct claims by other creditors, thus yielding payment to direct claimants ahead of payment to derivative claimants, such as Jeanette, who are subordinate. The principles of equity demand that a direct claimholder be paid before a derivative claimholder, such as Jeanette, whose derivative claim derives from Steven's property interest, which is ultimately an equity interest subordinate to claims of general unsecured creditors.

84530340;4

Jeanette and Schiller Claims from the Disputed Claim Reserve; (b) the Disbursing Agent to effectuate the disbursement of funds from the Disputed Claim Reserve to fund the Loan to Steven in accordance with the terms of this Motion and the MOU; and (c) the Disbursing Agent to transfer all remaining funds in the Disputed Claim Reserve to A&O Family, LLC (FL)'s account at Royal Bank of Canada and close any accounts holding the Jeanette/Schiller Disputed Claim Reserve after such transfer has been completed; (ii) deeming all Remaining Jeanette and Schiller Claims satisfied upon the disbursement of funds made in accordance with the terms of this Motion and the MOU; (iii) waiving the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 6004(h); and (iv) granting such other and further relief consistent with this Motion as the Court deems just and proper.

Dated: December 2, 2025

                                                          Respectfully submitted,

                                                          By: */s/ Eyal Berger*
                                                          Eyal Berger, Esq.
                                                          Florida Bar Number: 0011069
                                                          Email: eyal.berger@akerman.com
                                                          **AKERMAN LLP**
                                                          201 East Las Olas Boulevard, Suite 1800
                                                          Fort Lauderdale, FL 33301
                                                          Tel: 954-463-2700
                                                          Fax: 954-463-2224

                                                          *Counsel for the Reorganized Debtors*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 2, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

By: <i>/s/ Eyal Berger</i>

84530340;4

# Exhibit A

## MEMORANDUM OF UNDERSTANDING

This memorandum of understanding (this "**MOU**") is made effective as of the [•] day of December 2025, by and among Ivankovich Family LLC, A&O Family LLC, a limited liability company organized under the laws of Florida, A&O Family LLC, a limited liability company organized under the laws of Illinois, and Atlas P2 Managing Member, LLC, (collectively, as reorganized, the "**Reorganized Debtors**"), Anthony and Olga Ivankovich (the "**Ivankovichs**"), Steven Ivankovich ("**Steven**"), and Stuart A. Neiberg ("**Neiberg**", and collectively with the Reorganized Debtors, the Ivankovichs, and Steven, the "**Agreed Parties**").  This MOU outlines the general terms of the agreement among the Agreed Parties with respect to loaning funds to Steven to satisfy in full the Remaining Jeanette and Schiller Claims (the "**Loan**") in connection with the *Reorganized Debtors' Motion for Entry of an Order Authorizing the Reorganized Debtors to Disburse Funds from the Disputed Claims Reserve to Satisfy the Remaining Jeanette and Schiller Claims* filed in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") under lead case number 24-15755-LMI (Docket No. [•]) (the "**Disbursement Motion**").[1]

Prior to filing the Disbursement Motion, the Reorganized Debtors and Steven agreed to certain material terms of the Loan, which include (i) interest-only payments commencing on the third anniversary of the date that the loaned funds are disbursed (the "**Closing Date**"); (ii) interest shall accrue at the SOFR rate used on the Closing Date, compounded annually; and (iii) all interest and principal shall be due and owing on the tenth anniversary of the Closing Date (collectively,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disbursement Motion.

1

84566550;1

2

the "**Terms**").  The Terms shall be incorporated into a loan agreement between the Agreed Parties, which shall be executed prior to disbursement of the Loan.

Pursuant to the confirmed Plan, Neiberg was appointed as the disbursing agent (the "**Disbursing Agent**") of the disputed claim reserve for the benefit of Jeanette Ivankovich and Schiller DuCanto & Fleck, LLP (the "**Disputed Claim Reserve**").  The Disbursing Agent, as an Agreed Party, understands the Terms and has agreed to disburse the Loan from the Disputed Claim Reserve.

On December [2], 2025, the Reorganized Debtors filed the Disbursement Motion, seeking, among other things, authorization for the Disbursing Agent to disburse $1,128,217.67 to Steven from the Disputed Claims Reserve on account of the Remaining Jeanette Claim and $425,000 on account of the Remaining Schiller Claim (together, the "**Disbursement**").  The purpose of the Loan is to fund this Disbursement to satisfy in full the Remaining Jeanette and Schiller Claims, which shall be conditioned upon the Bankruptcy Court's entry of an order granting the Disbursement Motion and shall made on the Terms.

The Bankruptcy Court shall have exclusive jurisdiction with respect to interpretation and enforcement of this MOU.  This MOU is conditioned upon, and shall only be binding upon, entry of an order approving the Disbursement Motion.

In the event that any of the Agreed Parties breach this MOU, the non-breaching Agreed Parties shall be entitled to seek specific performance to compel any nonperforming Agreed Party to fulfill his or her obligations pursuant to this MOU.

This MOU may be executed in counterparts, and such counterparts shall collectively constitute one agreement.

*[Signature Page Follows]*

2

84566550;1

**AGREED TO BY:**

**Ivankovich Family LLC**

SIGNED: _____
BY:
ITS:

**A&O Family LLC (FL)**

SIGNED: _____
BY:
ITS:

**A&O Family LLC (IL)**

SIGNED: _____
BY:
ITS:

**Atlas P2 Managing Member, LLC**

SIGNED: _____
BY:
ITS:

**Anthony Ivankovich, INDIVIDUALLY**

SIGNED: _____

**Olga Ivankovich, INDIVIDUALLY**

SIGNED: _____

**Steven Ivankovich, INDIVIDUALLY**

SIGNED: _____

**Stuart A. Neiberg, IN HIS CAPACITY AS DISBURSING AGENT**

SIGNED: _____

[Signature Page to Memorandum of Understanding]